1  Ben F. Pierce Gore (SBN 128515)
2  PRATT & ASSOCIATES
   1901 S. Bascom Avenue, Suite 350
3  Campbell, CA  95008
   Telephone: (408) 429-6506
4  Fax: (408) 369-0752
   pgore@prattattorneys.com
5
   *Attorneys for Plaintiff*
6

E-FILING

ADR

FILED

MAY 29 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7
8
9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12

CV12-02724  HRL

13  CHRIS WERDEBAUGH, individually and        Case No.
    on behalf of all others similarly situated,
14                                             **CLASS ACTION AND REPRESENTATIVE
                    Plaintiff,                 ACTION**
15
    v.                                         **COMPLAINT FOR DAMAGES,
16                                             EQUITABLE AND INJUNCTIVE RELIEF**
    BLUE DIAMOND GROWERS,
17                                             **JURY TRIAL DEMANDED**
                    Defendant.
18

19

20        Plaintiff, through Plaintiff's undersigned attorneys, brings this lawsuit against Defendant

21  Blue Diamond Growers ("Blue Diamond" or "Defendant") as to Plaintiff's own acts upon

22  personal knowledge, and as to all other matters upon information and belief.  In order to remedy

23  the harm arising from Defendant's illegal conduct, which has resulted in unjust profits, Plaintiff

24  brings this action on behalf of a nationwide class of consumers who, within the last four years,

25  purchased Defendant's almond products (1) labeled with the ingredient "evaporated cane juice"

26  and/or (2) labeled "All Natural" despite the fact that the product contains artificial or synthetic

27  ingredients, flavorings, coloring, and/or chemical preservatives (collectively referred to herein as

28  "Misbranded Food Products").

*Class Action Complaint*

**INTRODUCTION**

1.     Every day, millions of Americans purchase and consume packaged foods. Identical federal and California laws require truthful, accurate information on the labels of packaged foods. This case is about a company that flouts those laws. The law is clear: misbranded food cannot legally be manufactured, held, advertised, distributed or sold. Misbranded food is worthless as a matter of law, and purchasers of misbranded food are entitled to a refund of their purchase price.

2.     Blue Diamond, a cooperative of approximately five thousand growers, is the world's largest almond processing and marketing company.  Blue Diamond sells its products throughout the United States and worldwide.  Blue Diamond brands include Baked Nut Chips, Traditional Flavored Almonds, Bold Flavored Almonds, Cooking & Baking Almonds, Nut Thins, and Almond Breeze Almond Milk.

3.     In the late nineteen nineties, Blue Diamond saw an emerging market niche in "natural foods" and introduced two products to establish a presence in the market -- Nut Thins, introduced in 1997, and Almond Breeze, in 1998.  Blue Diamond saw a nearly six hundred percent growth in sales between 1999 and 2009 for its products in the United States alone. According to Blue Diamond's website, its natural food products are the fastest growing segment of its branded business.

4.     As part of its overall marketing strategy, Blue Diamond has recognized the desire of many of its consumers to eat a healthier diet.  Blue Diamond recognizes that health claims drive sales, and actively promotes the health benefits of its products.

5.     On the website for its Almond Breeze products, Blue Diamond states:

- "…[A]dding almonds to your diet every day just might help keep the doctor away."

- "[Almond Breeze is] also a great milk alternative for people with other conditions, including diabetes, heart disease, celiac disease and obesity."

- "…[A]dding almonds to your daily diet can help people with certain conditions enjoy healthier lives."

1    •    "Almonds and Almond Breeze also provide welcome alternatives to people who

2    need to stay away from foods and food ingredients because of certain health conditions."

3    •    "Do the natural flavors in Almond Breeze® contain any artificial ingredients or

4    colors?  All flavors listed in our ingredient statement are derived from natural sources as defined

5    by the FDA.  No artificial flavors are used."

6    http://www.almondbreeze.com/?navid=347 and http://bluediamond.com/index.cfm?navid=211

7        6.    Defendant actively promotes the purported health benefits of its Misbranded Food

8    Products, notwithstanding the fact that such promotion violates California and federal law.

9        7.    For example, the principal display panel of Blue Diamond's Almond Breeze

10   Chocolate Almond Milk label is as follows:

11

12   

13

14

15

16

17

18

19

20

21

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

8.    The label also lists the ingredients as: "almond milk (filtered water, almonds), evaporated cane juice, cocoa (dutch process), calcium carbonate, sea salt, potassium citrate, carrageenan, natural flavors, sunflower lecithin, vitamin a palmitate, vitamin d2, d-alpha-tocopherol (natural vitamin e)."

9.    The principal display panel of Blue Diamond's Almond Breeze Chocolate Almond Milk states, in part, that the product is "All Natural," despite the fact that the product contains the following artificial and unnatural ingredients: cocoa (dutch process), potassium citrate, vitamin a palmitate, vitamin d2 and d-alpha-tocopherol.

10.   The Nutritional Facts for Blue Diamond's Almond Breeze Chocolate Almond Milk are as follows:

11.    The Nutrition Facts for Blue Diamond's Chocolate Almond Milk states that it has 20 grams of sugar, yet the ingredients section fails to list "sugar" or "syrup" as an ingredient. Instead, the label lists "evaporated cane juice" as an ingredient, when such is not "juice" at all. Blue Diamond fails to disclose the fact that "evaporated cane juice" is, in its ordinary and commonly understood terms, "sugar" or "dried cane syrup." Blue Diamond unlawfully uses the term "evaporated cane juice" on its labels despite the fact that the FDA has indicated that such a practice is "false and misleading" to consumers and that any such use resulted in a product being "misbranded."

12.    If a manufacturer is going to make a claim on a food label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled.  As described more fully below, Defendant has made, and continues to make, false and deceptive claims in violation of federal and California laws that govern the types of representations that can be made on food labels.  These laws recognize that reasonable consumers are likely to choose products claiming to have a health or nutritional benefit over otherwise similar food products that do not claim such benefits or that disclose certain ingredients.  More importantly, these laws recognize that the failure to disclose the presence of risk-increasing nutrients is deceptive because it conveys to consumers the net impression that a food makes only positive contributions to a diet, or does not contain any nutrients at levels that raise the risk of diet-related disease or health-related condition.

13.    Identical federal and California laws regulate the content of labels on packaged food.  The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law, California Health & Safety Code § 109875, *et seq.* (the "Sherman Law").  Under FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. 21 U.S.C. § 343(a).

14.    Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any one representation in the

1  labeling is misleading, the entire food is misbranded, nor can any other statement in the labeling

2  cure a misleading statement.  "Misleading" is judged in reference to "the ignorant, the unthinking

3  and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-*

4  *Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove

5  that anyone was actually misled.

6       15.    In promoting ingredients of its Misbranded Food Products and the naturalness and

7  health benefits of its Misbranded Food Products, Defendant claims to understand the importance

8  of communicating responsibly about its products.  Nevertheless, Defendant has made, and

9  continues to make, false and deceptive claims on its Misbranded Food Products in violation of

10  federal and California laws that govern the types of representations that can be made on food

11  labels.

12       16.    In particular, in making its unlawful "evaporated cane juice" claims on its

13  Misbranded Food Products, Defendant has violated labeling regulations mandated by federal and

14  California law by listing sugar and/or sugar cane syrups as "evaporated cane juice."  According to

15  the FDA, the term "evaporated cane juice" is not the common or usual name of any type of

16  sweetener, including dried cane syrup.  Because cane syrup has a standard of identity defined by

17  regulation in 21 CFR § 168.130, the common or usual name for the solid or dried form of cane

18  syrup is "dried cane syrup."  Further, according to the FDA, sweeteners derived from sugar cane

19  syrup should not be listed in the ingredient declaration by names which suggest that the

20  ingredients are juice, such as "evaporated cane juice."  The FDA considers such representations

21  to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. § 343(a)(1)) because

22  they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the

23  ingredients are sugars or syrups) as required by 21 CFR § 102.5.

24       17.    In making its unlawful "All Natural" claims on its Misbranded Food Products,

25  Defendant has violated labeling regulations mandated by federal and California law that forbid

26  the use of such labeling if the product contains any artificial or synthetic ingredient that has been

27  included in or added to a food and  that would not normally be expected in the food.

28       18.    Defendant has made, and continues to make, unlawful labeling claims on food

1 | labels of its Misbranded Food Products that are prohibited by federal and California law and
2 | which render these products misbranded.   Under federal and California law, Defendant's
3 | Misbranded Food Products cannot legally be manufactured, advertised, distributed, held or sold.
4 | Defendant's false and misleading labeling practices stem from its global marketing strategy.
5 | Thus, the violations and misrepresentations are similar across product labels and product lines.

6 | 19.     Defendant's violations of law include the illegal advertising, marketing,
7 | distribution, delivery and sale of Defendant's Misbranded Food Products to consumers in
8 | California and throughout the United States.

9 | **PARTIES**

10 | 20.     Plaintiff Chris Werdebaugh is a resident of Los Gatos, California who purchased
11 | Blue Diamond Misbranded Food Products during the four (4) years prior to the filing of this
12 | Complaint (the "Class Period").

13 | 21.     Defendant Blue Diamond Growers is a California corporation with its principal
14 | place of business in Sacramento, California.  Defendant can be served with process by service on
15 | its registered agent in California: Robert Donovan, 1802 C Street, Sacramento, California 95811.

16 | 22.     Defendant is a leading producer of retail food products, including the Misbranded
17 | Food Products at issue herein.  Defendant sells its food products to consumers through grocery
18 | and other retail stores throughout the United States.

19 | **JURISDICTION AND VENUE**

20 | 23.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)
21 | because this is a class action in which:  (1) there are over 100 members in the proposed class;
22 | (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims
23 | of the proposed class members exceed $5,000,000 in the aggregate.

24 | 24.     The Court has jurisdiction over the federal claim alleged herein pursuant to 28
25 | U.S.C. § 1331, because it arises under the laws of the United States.

26 | 25.     The Court has jurisdiction over the California claims alleged herein pursuant to 28
27 | U.S.C. § 1367, because they form part of the same case or controversy under Article III of the
28 | United States Constitution.

26.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

27.     The Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Complaint occurred in California, Defendant is authorized to do business in California, has sufficient minimum contacts with California, and otherwise intentionally avail itself of the markets in California through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

28.     California law applies to all claims set forth in this Complaint because Plaintiff lives in California and purchased Blue Diamond products here.  Also, Blue Diamond is a California entity with its principal place of business in California.  All of the misconduct alleged herein was contrived in, implemented in, and has a shared nexus with California.  The formulation and execution of the unlawful practices alleged herein occurred in, or emanated from, California.  Accordingly, California has significant contacts and/or a significant aggregation of contacts with the claims asserted by Plaintiff and all Class members.

29.     Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because the Court has personal jurisdiction over Defendant, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

## FACTUAL ALLEGATIONS

### A.     Identical California And Federal Laws Regulate Food Labeling

30.     Food manufacturers are required to comply with identical federal and state laws and regulations that govern the labeling of food products.  First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

31.     Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."  California Health &

1    Safety Code §110100.

2         32.    In addition to its blanket adoption of federal labeling requirements, California has

3    also enacted a number of laws and regulations that adopt and incorporate specific enumerated

4    federal food laws and regulations.  For example, food products are misbranded under California

5    Health & Safety Code § 110660 if their labeling is false and misleading in one or more

6    particulars; are misbranded under California Health & Safety Code § 110665 if their labeling fails

7    to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and

8    regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if

9    their labeling fails to conform with the requirements for nutrient content and health claims set

10   forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California

11   Health & Safety Code § 110705 if words, statements and other information required by the

12   Sherman Law to appear on their labeling are either missing or not sufficiently conspicuous; are

13   misbranded under California Health & Safety Code § 110735 if they are represented as having

14   special dietary uses but fail to bear labeling that adequately informs consumers of their value for

15   that use; and are misbranded under California Health & Safety Code § 110740 if they contain

16   artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose

17   that fact on their labeling.

18        **B.    FDA Enforcement History**

19        33.    In recent years the FDA has become increasingly concerned that food

20   manufacturers were disregarding food labeling regulations. To address this concern, the FDA

21   elected to take steps to inform the food industry of its concerns and to place the industry on notice

22   that food labeling compliance was an area of enforcement priority.

23        34.    In October 2009, the FDA issued a *Guidance For Industry: Letter regarding Point*

24   *Of Purchase Food Labeling* to address its concerns about front of package labels ("2009 FOP

25   Guidance").  The 2009 FOP Guidance advised the food industry:

26        FDA's research has found that with FOP labeling, people are less likely to check
          the Nutrition Facts label on the information panel of foods (usually, the back or
27        side of the package). It is thus essential that both the criteria and symbols used in
          front-of-package and shelf-labeling systems be nutritionally sound, well-designed
28

to help consumers make informed and healthy food choices, and not be false or misleading. The agency is currently analyzing FOP labels that appear to be misleading. The agency is also looking for symbols that either expressly or by implication are nutrient content claims. We are assessing the criteria established by food manufacturers for such symbols and comparing them to our regulatory criteria.

It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies. Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that does not comply with the regulatory criteria for the claim as defined in Title 21 Code of Federal Regulations (CFR) 101.13 and Subpart D of Part 101 is misbranded. We will consider enforcement actions against clear violations of these established labeling requirements. . .

… Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP labeling systems and their effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are explicit or implied nutrient content claims and that are not consistent with current nutrient content claim requirements. FDA will also proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading.

http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm187208.htm

35.     The 2009 FOP Guidance recommended that "manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA law and regulations" and specifically advised the food industry that it would "proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading."

36.     Also in October 2009, the FDA issued *Guidance for Industry: Ingredients Declared as Evaporated Cane Juice* ("2009 Evaporated Cane Juice Guidance"), which advised industry and stated that:

"…the term "evaporated cane juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. However, FDA's current policy is that sweeteners derived from sugar

cane syrup should not be declared as "evaporated cane juice" because that term falsely suggests that the sweeteners are juice…

"Juice" is defined by 21 CFR 120.1(a) as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree." …

"As provided in 21 CFR 101.4(a)(1), "Ingredients required to be declared on the label or labeling of a food . . . shall be listed by common or usual name . . . ." The common or usual name for an ingredient is the name established by common usage or by regulation (21 CFR 102.5(d)). The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 CFR 102.5(a))…

"Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR 168.130). Other sugar cane products have common or usual names established by common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar, and demerara sugar)…

"The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."…

"Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5. Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 CFR 101.30).

http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm181491.htm.

37.     Despite the issuance of the 2009 FOP Guidance and 2009 Evaporated Cane Juice Guidance, Defendant did not remove the unlawful and misleading food labeling claims from its Misbranded Food Products.

38.     On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg" (hereinafter, "Open Letter"). The Open Letter reiterated the FDA's

concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter stated:

> In the early 1990s, the Food and Drug Administration (FDA) and the food industry worked together to create a uniform national system of nutrition labeling, which includes the now-iconic Nutrition Facts panel on most food packages. Our citizens appreciate that effort, and many use this nutrition information to make food choices. Today, ready access to reliable information about the calorie and nutrient content of food is even more important, given the prevalence of obesity and diet-related diseases in the United States. This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.
>
> With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs. The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling. The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections....
>
> As we move forward in those areas, I must note, however, that there is one area in which more progress is needed. As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.
>
> At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.
>
> To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices.
>
> . . . .
>
> These examples and others that are cited in our warning letters are not indicative

of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling. I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

http://www.fda.gov/Food/LabelingNutrition/ucm202733.htm?utm_campaign=Google2&utm_sou rce=fdaSearch&utm_medium=website&utm_term=Open    Letter    to    Industry    from    Dr. Hamburg&utm_content=1

39.    Notwithstanding the express guidance of the FDA in the Open Letter, Defendant continued to utilize unlawful food labeling claims.

40.    In addition to its guidance to industry, the FDA has previously sent warning letters to various food companies, including many of Defendant's peer food manufacturers, for the same types of unlawful label claims described herein. In particular the FDA has issued warning letters to at least a half-dozen companies for utilizing the unlawful term evaporated cane juice and for making natural claim about products that contained unnatural ingredients.

41.    In these letters the FDA indicated that, as a result of the same type of "evaporated cane juice" description utilized by Defendant, products were "misbranded under Section 403(i)(2) of the [Federal Food, Drug, and Cosmetic] Act in that the ingredient statement on the product label fails to declare all of the ingredients in the product by their common or usual names, as required by 21 CFR 101.4(a) and (b)." Similarly, these letters indicated that products were "misbranded under section 403(a)(1) of the [Federal Food, Drug, and Cosmetic] Act" because given the presence of "synthetic ingredient[s], the use of the claim "All Natural" on … product label[s] is false and misleading.

42.    The FDA has stated in its guidance to industry that it not only expected companies that received warning letters to correct their labeling practices but also anticipated that other firms

1    would examine their food labels to ensure that they are in full compliance with food labeling

2    requirements and make changes where necessary. Defendant did not change the labels on its

3    Misbranded Food Products in response to these warning letters.

4    43.   Defendant also continued to ignore the 2009 FOP Guidance which detailed the

5    FDA's guidance on how to make food labeling claims.  As such, the Defendant's Misbranded

6    Food Products continue to run afoul of 2009 FOP Guidance as well as federal and California law.

7    44.   Despite the FDA's numerous warnings to industry, Defendant has continued to sell

8    products bearing unlawful food labeling claims.

9    45.   Plaintiff did not know, and had no reason to know, that Defendant's Misbranded

10   Food Products were misbranded because of false and misleading food labeling claims.

11   **C.   Defendant Makes Unlawful "All Natural" Claims**

12   46.   The FDA considers use of the term "natural" on a food label to be truthful and

13   non-misleading when "nothing artificial or synthetic…has been included in, or has been added to,

14   a food that would not normally be expected to be in the food." *See* 58 FR 2302, 2407, January 6,

15   1993. The FDA distinguishes between natural and artificial flavors in 21 C.F.R. § 101.22.

16   47.   The FDA has sent out numerous warning letters to companies in which it has

17   addressed "All Natural" claims.  In these letters, the FDA has informed the receiving companies

18   that their products labeled "All Natural" were misbranded where they contained synthetic and

19   artificial ingredients.

20   48.   For example, on August 16, 2001, the FDA sent a warning letter to Oak Tree

21   Farm Dairy, Inc. ("Oak Tree warning letter").  The letter "found serious violations" of the Federal

22   Food, Drug and Cosmetic Act and Title 21, Code of Federal Regulations, Part 101 – Food

23   Labeling (21 CFR 101), and stated in pertinent part:

24       The term "all natural" on the "OAKTREE ALL NATURAL LEMONADE" label
         is inappropriate because the product contains potassium sorbate.  Although FDA
25       has not established a regulatory definition for "natural," we discussed its use in the
         preamble to the food labeling final regulations (58 Federal Register 2407, January
26       6, 1993, copy enclosed).  FDA's policy regarding the use of "natural," means
         nothing artificial or synthetic has been included in, or has been added to, a food
27       that would not normally be expected to be in the food.  The same comment applies

28

to use of the terms "100 % NATURAL" and "ALL NATURAL" on the "OAKTREE REAL BREWED ICED TEA" label because it contains citric acid.

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2001/ucm178712.htm

49.     Similarly, on November 16, 2011, the FDA sent a warning letter to Alexia Foods, Inc., informing Alexia of its failure to comply with the requirements of the Federal Food, Drug and Cosmetic Act and Title 21, Code of Federal Regulations, Part 101 – Food Labeling (21 CFR 101) ("Alexia Warning Letter"). The Alexia Warning Letter stated, in pertinent part:

> The U.S. Food and Drug Administration (FDA) has reviewed the labels for your Alexia brand Roasted Red Potatoes & Baby Portabella Mushrooms products. Based on our review, we have concluded that these products are in violation of the Federal Food, Drug, and Cosmetic Act (the Act). You can find copies of the Act and the FDA regulations through links in FDA's home page at http://www.fda.gov.

> Your Alexia brand Roasted Red Potatoes & Baby Portabella Mushrooms product is misbranded within the meaning of section 403(a)(1) of the Act [21 U.S.C. 343(a)(1)], which states that a food shall be deemed to be misbranded if its labeling is false or misleading in any particular. The phrase "All Natural" appears at the top of the principal display panel on the label. FDA considers use of the term "natural" on a food label to be truthful and non-misleading when "nothing artificial or synthetic...has been included in, or has been added to, a food that would not normally be expected to be in the food." [58 FR 2302, 2407, January 6, 1993].

> Your Alexia brand Roasted Red Potatoes & Baby Portabella Mushrooms product contains disodium dihydrogen pyrophosphate, which is a synthetic chemical preservative. Because your products contain this synthetic ingredient, the use of the claim "All Natural" on this product label is false and misleading, and therefore your product is misbranded under section 403(a)(1) of the Act.

> We note that your Alexia brand products market a number of food products with the "All Natural" statement on the label. We recommend that you review all of your product labels to be consistent with our policy to avoid additional misbranding of your food products.

> This letter is not intended to be an all-inclusive review of your products and their labeling. It is your responsibility to ensure that all of your products and labeling comply with the Act and its implementing regulations. You should take prompt action to correct the violations cited in this letter. Failure to do so may result in enforcement action without further notice. Such action may include, but is not limited to, seizure or injunction.

> http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm281118.htm

50.     Defendant knew or should have known of these warning letters and other similar ones.  Despite FDA's numerous warnings to industry, Defendant has continued to sell products labeled "All Natural" that in fact contain artificial and synthetic ingredients.  Seeking to profit from consumers' desire for natural food products, Blue Diamond has falsely misrepresented its almond products as "All Natural."

51.     For example, on the principal display panel of its Almond Breeze Chocolate Almond Milk, Blue Diamond claims that its product is "All Natural."  However, the back panel of Blue Diamond's Almond Breeze Chocolate Almond Milk product label lists, among other ingredients, cocoa (dutch process), potassium citrate, vitamin a palmitate, vitamin d2 and d-alpha-tocopherol.

52.     Because the aforementioned ingredients are artificial or synthetic, Defendant has unlawfully labeled its Almond Breeze Chocolate Almond Milk as "All Natural" when it is not.

53.     Defendant has also made the same false, misleading and illegal claims on other almond products and on its websites and advertising in violation of federal and California law.

54.     A reasonable consumer would expect that when Defendant labels its products as "All Natural," the product's ingredients are "natural" as defined by the federal government and its agencies.  A reasonable consumer would also expect that when Defendant labels its products as "All Natural," the product ingredients are "natural" according to the common use of that word.  A reasonable consumer would, furthermore, expect that "All Natural" products do not contain synthetic, artificial or excessively processed ingredients.

55.     Plaintiff did not know, and had no reason to know, that Defendant's Misbranded Food Products were misbranded, and bore claims of "All Natural" despite their failure to meet the requirements necessary to make this claim.

56.     Consumers are thus misled into purchasing Defendant's products with synthetic and artificial ingredients that are not "All Natural" as falsely represented on their labeling.

57.     Defendant's products are in this respect misbranded under federal and California law.  Misbranded products cannot be legally sold and are legally worthless. Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

**E.      Defendant Makes Unlawful "Evaporated Cane Juice" Claims**

58.     In its guidance for industry and warning letters to manufacturers, the FDA has repeatedly stated its policy of restricting the ingredient names listed on product labels to their common or usual name, as provided in 21 C.F.R. § 101.4(a)(1).

59.     An ingredient's common or usual name is the name established by common usage or regulation, as provided in 21 C.F.R. § 102.5(d).

60.     The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name," as provided in 21 C.F.R. § 102.5(a).

61.     Ignoring these regulations and guidance, Defendant mislabeled its Misbranded Food Products. For example, the back panel of Blue Diamond's Almond Breeze Chocolate Almond Milk lists "evaporated cane juice" as an ingredient.  In listing "evaporated cane juice" as an ingredient in its Almond Breeze Chocolate Almond Milk, Blue Diamond has made false and misleading misrepresentations in violation of 21 U.S.C. § 343(a)(1) because it has failed to reveal the basic nature of the food and its characterizing properties.  Specifically, Blue Diamond has failed to call dried cane syrup or sugar by its common or usual name, as required by 21 C.F.R. § 102.5.

62.     Defendant has also made the same illegal claims on other almond products and its websites and advertising in violation of federal and California law.

63.     In the above-referenced 2009 Evaporated Cane Juice Guidance, issued in October 2009, the FDA stated, in pertinent part, as follows:

. . . . .

Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR 168.130). Other sugar cane products have common or usual names established by common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar, and demerara sugar).

. . . . .

…the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."  Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice."  FDA considers such representations to be false and

1   misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail
2   to reveal the basic nature of the food and its characterizing properties (i.e., that the
    ingredients are sugars or syrups) as required by 21 CFR 102.5.

3   http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocument
4   s/FoodLabelingNutrition/ucm181491.htm

5       64.   On November 15, 2004, prior to its issuance of the aforementioned industry

6   guidance, the FDA sent a warning letter to Upscale Foods, Inc., in which it stated that "[y]our

7   product label declares 'organic evaporated cane juice' in the ingredient list; however, the

8   common or usual name for this ingredient is sugar."  Likewise, on April 3, 2008, the FDA sent a

9   warning letter to Hato Portero Farm, Inc., in which it stated "'evaporated sugar cane juice' is not

10  a common or usual name.  It is your responsibility to determine what this ingredient is (i.e.,

11  whether it is sucrose or another sweetener) and declare its common or usual name (see 21 CFR §

12  101.4(b)(20)).

13      65.   A reasonable consumer would expect that when Defendant lists the ingredients on

14  its products, the product's ingredients are given their common or usual name as defined by the

15  federal government and its agencies.

16      66.   Plaintiff did not know, and had no reason to know, that Defendant's Misbranded

17  Food Products were misbranded and listed "evaporated cane juice" as an ingredient despite FDA

18  regulations requiring the use of the ingredient's common or usual name.

19      67.   Consumers are thus misled into purchasing Defendant's products with false and

20  misleading ingredient names, which do not describe the basic nature of the food or its

21  characterizing properties or ingredients and which are "confusingly similar to the name of"

22  another food, i.e., juice, "... not reasonably encompassed within the same name," as provided in

23  21 C.F.R. § 102.5(a).

24      68.   Defendant's products are in this respect misbranded under federal and California

25  law.  Misbranded products cannot be legally sold and are legally worthless. Plaintiff and members

26  of the Class who purchased these products paid an unwarranted premium for these products.

27  **F.    Defendant Has Violated California Law**

28

69.     Defendant has violated California Health & Safety Code § 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

70.     Defendant has violated California Health & Safety Code § 110395, which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

71.     Defendant has violated California Health & Safety Code §§ 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

72.     Defendant has violated California Health & Safety Code § 110660 because its Misbranded Food Products' labeling is false and misleading in one or more ways and are thus misbranded. Defendant's Misbranded Food Products are also misbranded under California Health & Safety Code § 110665 because their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations adopted thereto. Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110670 because their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto; Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on their labeling either are missing or not sufficiently conspicuous.

73.     Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110710 because they purport to be, or are represented as, a food for which a definition and standard of identity has been established under Section 110505 and the label fails to bear the name of the food specified in the standard or otherwise fails to conform to the definition and standard. Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110725 because they are food fabricated from two or more ingredients but fail to bear a label clearly stating the common or usual name of each ingredient.

74.     Defendant has violated California Health & Safety Code § 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

75.     Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110755 because they purport to be or are represented for special dietary uses, and their labels fail to bear such information concerning their vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

76.     Defendant has violated California Health & Safety Code § 110765, which makes it unlawful for any person to misbrand any food.

77.     Defendant has violated California Health & Safety Code § 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for deliver any such food.

78.     Defendant has violated the standard set by 21 C.F.R. §§ 101.4 and 102.5, which has been incorporated by reference in the Sherman Law, by using prohibited terms and failing to include on its product labels the information required by law.

**G.      Plaintiff Purchased Defendant's Misbranded Food Products**

79.     Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.

80.     During the Class Period, Plaintiff purchased Defendant's Misbranded Food Products, including Almond Breeze Chocolate Almond Milk.

81.     Plaintiff read the labels on Defendant's Misbranded Food Products, including the "All Natural" label claims and list of ingredients referencing "evaporated cane juice" on the back panel, before purchasing them.

82.     Plaintiff relied on Defendant's package labeling including the "All Natural" label claims and back panel ingredients list referencing "evaporated cane juice", and based and justified the decision to purchase Defendant's products in substantial part on Defendant's package labeling, including the labeling claiming that Defendant's product was "All Natural" and

contained as an ingredient "evaporated cane juice."

83.     At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's products were misbranded as set forth herein, and would not have bought the products had Plaintiff known the truth about them.

84.     At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's "All Natural" label claims or "evaporated cane juice" ingredient name was unlawful and unauthorized as set forth herein, and would not have bought the products had Plaintiff known the truth about them.

85.     As a result of Defendant's unlawful "All Natural" label claims and "evaporated cane juice" ingredient name, Plaintiff and thousands of others in California and throughout the United States purchased the Misbranded Food Products at issue.

86.     Defendant's labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue.   Defendant's misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendant's misrepresentations in determining whether to purchase the products at issue.

87.     A reasonable person would also attach importance to whether Defendant's products were legally salable, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiff would not have purchased Defendant's Misbranded Food Products had Plaintiff known they were not capable of being legally sold or held.

## CLASS ACTION ALLEGATIONS

88.     Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in the United States who, within the last four years, purchased Defendant's almond products (1) labeled with the ingredient "evaporated cane juice" and/or (2) labeled "All Natural" despite containing artificial or synthetic ingredients, flavorings, coloring, and/or chemical preservatives (the "Class").

89.     The following persons are expressly excluded from the Class:  (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

90.     This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

91.     <u>Numerosity</u>:  Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that joinder of all Class members is impracticable.

92.     <u>Common Questions Predominate</u>:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, just for example:

a.      Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label its Misbranded Food Products sold to consumers;

b.      Whether the food products at issue were misbranded as a matter of law;

c.      Whether Defendant made unlawful and misleading "All Natural" claims with respect to its food products sold to consumers;

d.      Whether Defendant made unlawful and misleading "evaporated cane juice" claims with respect to its food products sold to consumers;

e.      Whether Defendant violated California Bus. & Prof. Code § 17200, et seq., California Bus. & Prof. Code § 17500, et seq., the Consumers Legal Remedies Act, Cal. Civ. Code §1750, et seq., California Civ. Code § 1790, et seq., 15 U.S.C. § 2301, et seq., and the Sherman Law;

f.      Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

g.      Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class; and

h.      Whether Defendant was unjustly enriched by its deceptive

- 21 -
*Class Action Complaint*

practices.

93.    Typicality:   Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendant's Misbranded Food Products during the Class Period.   Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.   Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct in violation of California law.   The injuries of each member of the Class were caused directly by Defendant's wrongful conduct.   In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.   Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

94.    Adequacy:   Plaintiff will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.   Plaintiff has retained highly competent and experienced class action attorneys to represent Plaintiff's interests and those of the members of the Class.   Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

95.    Superiority:   There is no plain, speedy or adequate remedy other than by maintenance of this class action.   The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.   Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender.   Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or

1   impossible for individual members of the Class to redress the wrongs done to them, while an

2   important public interest will be served by addressing the matter as a class action.   Class

3   treatment of common questions of law and fact would also be superior to multiple individual

4   actions or piecemeal litigation in that class treatment will conserve the resources of the Court and

5   the litigants, and will promote consistency and efficiency of adjudication.

6      96.   The prerequisites to maintaining a class action for injunctive or equitable relief

7   pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds

8   generally applicable to the Class, thereby making appropriate final injunctive or equitable relief

9   with respect to the Class as a whole.

10      97.   The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3)

11   are met as questions of law or fact common to class members predominate over any questions

12   affecting only individual members, and a class action is superior to other available methods for

13   fairly and efficiently adjudicating the controversy.

14      98.   Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be

15   encountered in the management of this action that would preclude its maintenance as a class

16   action.

17   **CAUSES OF ACTION**

18   **FIRST CAUSE OF ACTION**
19   **Business and Professions Code § 17200,** *et seq.*
     **Unlawful Business Acts and Practices**
20

21      99.   Plaintiff incorporates by reference each allegation set forth above.

22

23      100.   Defendant's conduct constitutes unlawful business acts and practices.

24      101.   Defendant sold Misbranded Food Products in California and throughout the United

25   States during the Class Period.

26      102.   Defendant is a corporation and, therefore, a "person" within the meaning of the

27   Sherman Law.

28      103.   Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

1    Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the

2    misbranded food provisions of Article 6 of the Sherman Law.

3         104.    Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

4    Defendant's violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

5         105.    Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

6    Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

7    Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being

8    sold, or held legally and which were legally worthless. Plaintiff and the Class paid a premium

9    price for the Misbranded Food Products.

10        106.    As a result of Defendant's illegal business practices, Plaintiff and the Class,

11   pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future

12   conduct and such other orders and judgments which may be necessary to disgorge Defendant's

13   ill-gotten gains and to restore to any Class Member any money paid for the Misbranded Food

14   Products.

15        107.    Defendant's unlawful business acts present a threat and reasonable continued

16   likelihood of injury to Plaintiff and the Class.

17        108.    As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business

18   and Professions Code § 17203, are entitled to an order enjoining such future conduct by

19   Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's

20   ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by

21   Plaintiff and the Class.

22                         **SECOND CAUSE OF ACTION**
                    **Business and Professions Code § 17200, *et seq.***
23                    <u>**Unfair Business Acts and Practices**</u>

24

25        109.    Plaintiff incorporates by reference each allegation set forth above.

26        110.    Defendant's conduct as set forth herein constitutes unfair business acts and

27   practices.

28        111.    Defendant sold Misbranded Food Products in California and throughout the United

States during the Class Period.

112.   Plaintiff and members of the Class suffered a substantial injury by virtue of buying Defendant's Misbranded Food Products that they would not have purchased absent Defendant's illegal conduct.

113.   Defendant's deceptive marketing, advertising, packaging and labeling of their Misbranded Food Products and their sale of unsalable misbranded products that were illegal to possess was of no benefit to consumers, and the harm to consumers and competition is substantial.

114.   Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being legally sold or held and that were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

115.   Plaintiff and the Class who purchased Defendant's Misbranded Food Products had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

116.   The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefor.  Defendant's conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the Class.

117.   As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

**THIRD CAUSE OF ACTION**
**Business and Professions Code § 17200,** *et seq.*
**Fraudulent Business Acts and Practices**

118.   Plaintiff incorporates by reference each allegation set forth above.

119.   Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

120.   Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

121.   Defendant's misleading marketing, advertising, packaging and labeling of the Misbranded Food Products and misrepresentation that the products were salable, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff and members of the Class were deceived.  Defendant has engaged in fraudulent business acts and practices.

122.   Defendant's fraud and deception caused Plaintiff and the Class to purchase Defendant's Misbranded Food Products that they would otherwise not have purchased had they known the true nature of those products.

123.   Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally and that were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

124.   As a result of Defendant's conduct as set forth herein, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

**FOURTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**<u>Misleading and Deceptive Advertising</u>**

125.   Plaintiff incorporates by reference each allegation set forth above.

126.   Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500, *et seq.* for misleading and deceptive advertising against Defendant.

127.   Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

128.   Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products. Defendant's advertisements and inducements were made within California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products and are statements disseminated by Defendant to Plaintiff and the Class that were intended to reach members of the Class. Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

129.   In furtherance of its plan and scheme, Defendant prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Defendant's Misbranded Food Products. Plaintiff and the Class necessarily and reasonably relied on Defendant's materials, and were the intended targets of such representations.

130.   Defendant's conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendant's Misbranded Food Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq*.

131.   As a result of Defendant's violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the Class. Misbranded products cannot be legally sold or held and are legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

132.   Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any

money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

**FIFTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**<u>Untrue Advertising</u>**

133.   Plaintiff incorporates by reference each allegation set forth above.

134.   Plaintiff asserts this cause of action against Defendant for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

135.   Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

136.   Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional materials.   These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products.   Defendant's advertisements and inducements were made in California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products, and are statements disseminated by Defendant to Plaintiff and the Class.   Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

137.   In furtherance of their plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendant's Misbranded Food Products, and falsely misrepresented the nature of those products.   Plaintiff and the Class were the intended targets of such representations and would reasonably be deceived by Defendant's materials.

138.   Defendant's conduct in disseminating untrue advertising throughout California deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of Defendant's Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

139.   As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the Class.   Misbranded products cannot be legally sold or held and are legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

140.   Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

## SIXTH CAUSE OF ACTION
### Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*

141.   Plaintiff incorporates by reference each allegation set forth above.

142.   This cause of action is brought pursuant to the CLRA.   This cause of action does not currently seek monetary damages and is limited solely to injunctive relief.   Plaintiff intends to amend this Complaint to seek damages in accordance with the CLRA after providing Defendant with notice pursuant to Cal. Civ. Code § 1782.

143.   At the time of any amendment seeking damages under the CLRA, Plaintiff will demonstrate that the violations of the CLRA by Defendant were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

144.   Consequently, Plaintiff and the Class will be entitled to actual and punitive damages against Defendant for its violations of the CLRA.   In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

145.   Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

146.   Defendant sold Misbranded Food Products in California and throughout the United

1    States during the Class Period.

2        147.    Plaintiff and members of the Class are "consumers" as that term is defined by the

3    CLRA in Cal. Civ. Code §1761(d).

4        148.    Defendant's Misbranded Food Products were and are "goods" within the meaning

5    of Cal. Civ. Code §1761(a).

6        149.    By engaging in the conduct set forth herein, Defendant violated and continues to

7    violate Sections 1770(a)(5) of the CLRA, (because Defendant's conduct constitutes unfair

8    methods of competition and unfair or fraudulent acts or practices in that they misrepresent the

9    particular ingredients, characteristics, uses, benefits and quantities of the goods.

10       150.    By engaging in the conduct set forth herein, Defendant violated and continues to

11   violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods

12   of competition and unfair or fraudulent acts or practices in that they misrepresent the particular

13   standard, quality or grade of the goods.

14       151.    By engaging in the conduct set forth herein, Defendant violated and continues to

15   violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods

16   of competition and unfair or fraudulent acts or practices in that they advertise goods with the

17   intent not to sell the goods as advertised.

18       152.    By engaging in the conduct set forth herein, Defendant has violated and continues

19   to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair

20   methods of competition and unfair or fraudulent acts or practices in that they represent that a

21   subject of a transaction has been supplied in accordance with a previous representation when it

22   has not.

23       153.    Plaintiff requests that the Court enjoin Defendant from continuing to employ the

24   unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If

25   Defendant is not restrained from engaging in these practices in the future, Plaintiff and the Class

26   will continue to suffer harm.

27

28

## SEVENTH CAUSE OF ACTION
### Restitution Based on Unjust Enrichment/Quasi-Contract

154.  Plaintiff incorporates by reference each allegation set forth above.

155.  As a result of Defendant's fraudulent and misleading labeling, advertising, marketing and sales of Defendant's Misbranded Food Products, Defendant was enriched at the expense of Plaintiff and the Class.

156.  Defendant sold Misbranded Food Products to Plaintiff and the Class that were not capable of being sold or held legally and which were legally worthless.  It would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class, in light of the fact that the products were not what Defendant purported them to be.  Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class of all monies paid to Defendant for the products at issue.

157.  As a direct and proximate result of Defendant's actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### Beverly-Song Act (Cal. Civ. Code § 1790, *et seq.*)

158.  Plaintiff incorporates by reference each allegation set forth above.

159.  Plaintiff and members of the Class are "buyers" as defined by Cal. Civ. Code § 1791(b).

160.  Defendant is a "manufacturer" and "seller" as defined by Cal. Civ. Code § 1791(j) & (l).

161.  Defendant's food products are "consumables" as defined by Cal. Civ. Code § 1791(d).

162.  Defendant's "All Natural" and "evaporated cane juice" claims constitute "express warranties" as defined by Cal. Civ. Code § 1791.2.

163.  Defendant, through its package labels, creates express warranties by making affirmations of fact and promising that its Misbranded Food Products comply with food labeling regulations under federal and California law.

164.    Despite Defendant's express warranties regarding its food products, they do not comply with food labeling regulations under federal and California law.

165.    Defendant breached its express warranties regarding its Misbranded Food Products in violation of Cal. Civ. Code § 1790, *et seq.*

166.    Defendant sold Plaintiff and members of the Class Defendant's Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

167.    As a direct and proximate result of Defendant's actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial pursuant to Cal. Civ. Code § 1794.

168.    Defendant's breaches of warranty were willful, warranting the recovery of civil penalties pursuant to Cal. Civ. Code § 1794.

## NINTH CAUSE OF ACTION
### Magnuson-Moss Act (15 U.S.C. § 2301, *et seq.*)

169.    Plaintiff incorporates by reference each allegation set forth above.

170.    Plaintiff and members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3).

171.    Defendant is a "supplier" and "warrantor" as defined by 15 U.S.C. § 2301(4) & (5).

172.    Defendant's food products are "consumer products" as defined by 15 U.S.C. § 2301(1).

173.    Defendant's "All Natural" and "evaporated cane juice" claims constitute "express warranties."

174.    Defendant, through its package labels, creates express warranties by making affirmations of fact and promising that its Misbranded Food Products comply with food labeling regulations under federal and California law.

175.    Despite Defendant's express warranties regarding its food products, they do not comply with food labeling regulations under federal and California law.

176.    Defendant breached its express warranties regarding its Misbranded Food Products

1  in violation of 15 U.S.C. §§ 2301, *et seq.*

2      177.    Defendant sold Plaintiff and members of the Class Misbranded Food Products that

3  were not capable of being sold or held legally and which were legally worthless. Plaintiff and the

4  Class paid a premium price for the Misbranded Food Products.

5      178.    As a direct and proximate result of Defendant's actions, Plaintiff and the Class

6  have suffered damages in an amount to be proven at trial.

7                                **JURY DEMAND**

8      Plaintiff hereby demands a trial by jury of Plaintiff's claims.

9                              **PRAYER FOR RELIEF**

10      WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on

11  behalf of the general public, prays for judgment against Defendant as follows:

12      A.    For an order certifying this case as a class action and appointing Plaintiff and

13  Plaintiff's counsel to represent the Class;

14      B.    For an order awarding, as appropriate, damages, restitution or disgorgement to

15  Plaintiff and the Class for all causes of action other than the CLRA, as Plaintiff does not seek

16  monetary relief under the CLRA, but intends to amend this Complaint to seek such relief;

17      C.    For an order requiring Defendant to immediately cease and desist from selling its

18  Misbranded Food Products listed in violation of law; enjoining Defendant from continuing to

19  market, advertise, distribute, and sell these products in the unlawful manner described herein; and

20  ordering Defendant to engage in corrective action;

21      D.    For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

22      E.    For an order awarding attorneys' fees and costs;

23      F.    For an order awarding punitive damages;

24      G.    For an order awarding pre-and post-judgment interest; and

25  ///

26  ///

27  ///

28  ///

H.      For an order providing such further relief as this Court deems proper.

Dated: May 29, 2012                         Respectfully submitted,

                                            _Pierce Gore_
                                            _____
                                            Ben F. Pierce Gore (SBN 128515)
                                            PRATT & ASSOCIATES
                                            1901 S. Bascom Avenue, Suite 350
                                            Campbell, CA  95008
                                            Telephone:  (408) 429-6506
                                            Fax:  (408) 369-0752
                                            pgore@prattattorneys.com

                                            *Attorneys for Plaintiff*