1  Ben F. Pierce Gore (SBN 128515)
2  PRATT & ASSOCIATES
   1871 The Alameda, Suite 425
3  San Jose, CA  95126
   Telephone:  (408) 429-6506
4  Fax:  (408) 369-0752
   pgore@prattattorneys.com
5
   (Co-counsel listed on signature page)
6
   *Attorneys for Plaintiff*
7

8

9              IN THE UNITED STATES DISTRICT COURT

10        FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                    SAN JOSE DIVISION

12

13  CHRIS WERDEBAUGH, individually and      Case No. 5: 12-CV-02724 LHK
    on behalf of all others similarly situated,
14                                           **CLASS ACTION AND REPRESENTATIVE
                  Plaintiff,                 ACTION**
15
    v.                                       **FIRST AMENDED COMPLAINT FOR
16                                           DAMAGES, EQUITABLE AND
    BLUE DIAMOND GROWERS,                    INJUNCTIVE RELIEF**
17
                                             **JURY TRIAL DEMANDED**
18                Defendant.

19

20

21        Plaintiff, Chris Werdebaugh (hereinafter "Plaintiff"), through his undersigned attorneys,

22  brings this lawsuit against Defendant Blue Diamond Growers (hereinafter, "Blue Diamond" or

23  "Defendant") as to his own acts upon personal knowledge, and as to all other matters upon

24  information and belief.

    I.    **DEFINITIONS**
25
          1.  "Class Period" is April 11, 2008 to the present.
26

27

28

First Amended Class Action Complaint
Case No. 5: 12-CV-02724 LHK

2.      "Purchased Product" is Blue Diamond's Almond Breeze Chocolate Almond Milk that was purchased by Plaintiff during the Class Period. Pictures of the Purchased Product along with specific descriptions of the labels are included within Section VIII *infra*.

3.      "Substantially Similar Products" are the Blue Diamond products listed in Paragraph 4 *infra*.  Each of these listed products: (i) make the same label misrepresentations, as described herein, as the Purchased Product and (ii) violate the same regulations of the Sherman Food Drug & Cosmetic Law, California Health 7 Safety Code § 109875, *et seq.* (the "Sherman Law") as the Purchased Product, as described herein.

4.      Upon information and belief, these Substantially Similar Products are Blue Diamond products, sold during the class period, listed below.  Plaintiff reserves the right to supplement this list if evidence is adduced during discovery to show that other Blue Diamond products had labels which violate the same provisions of the Sherman Law and have the same label representations as the Purchased Product:

(A)      Blue Diamond Growers' almond products labeled with the ingredient "evaporated cane juice" including:

-      Oven Roasted Cinnamon Brown Sugar Almonds;

-      100 Calorie Packs Cinnamon Brown Sugar Almonds;

-      Almond Breeze Shelf Stable Original Almond Milk;

-      Almond Breeze Shelf Stable Vanilla Almond Milk;

-      Almond Breeze Shelf Stable Chocolate Almond Milk;

-      Almond Breeze Refrigerated Original Almond Milk;

-      Almond Breeze Refrigerated Vanilla Almond Milk;

-      Almond Breeze Refrigerated Chocolate Almond Milk;

-      Almond Breeze Shelf Stable Almond Coconut Vanilla Almond Milk;

-      Almond Breeze Refrigerated Almond Coconut Original Almond Milk; and

-      Blue Diamond Breeze Almondmilk Coconutmilk Blend Shelf Stable Almond Milk.

(B)     Blue Diamond Growers' products labeled "All Natural" despite containing artificial or synthetic ingredients, flavorings, coloring, and/or chemical preservatives including:

- Almond Breeze Chocolate Refrigerated Almond Milk;
- Almond Breeze Original Refrigerated Almond Milk;
- Almond Breeze Original Unsweetened Refrigerated Almond Milk;
- Almond Breeze Shelf Stable Original Unsweetened Almond Milk;
- Almond Breeze Refrigerated Almond Coconut Original Unsweetened Almond Milk;
- Almond Breeze Refrigerated Almond Coconut Original Almond Milk;
- Almond Breeze Shelf Stable Almond Coconut Vanilla Unsweetened Almond Milk;
- Almond Breeze Shelf Stable Almond Coconut Vanilla Almond Milk;
- Almond Breeze Vanilla Refrigerated Almond Milk;
- Almond Breeze Vanilla Unsweetened Refrigerated Almond Milk;
- Almond Breeze Shelf Stable Vanilla Almond Milk;
- Almond Breeze Shelf Stable Chocolate Unsweetened Almond Milk;
- Almond Breeze Shelf Stable Chocolate Almond Milk;
- Almond Breeze Shelf Stable Original Almond Milk;
- Almond Breeze Shelf Stable Vanilla Unsweetened Almond Milk;
- Blue Diamond Breeze Almondmilk Coconutmilk Blend Shelf Stable Almond Milk;
- Blue Diamond Nut Chips Sour Cream and Chive; and
- Blue Diamond Nut Chips Sea Salt.

## II.     SUMMARY OF THE CASE

5.     Plaintiff's case has two facets.  The first is the "UCL unlawful" part. Plaintiff's first cause of action is brought pursuant to the unlawful prong of California's Unfair Competition

Law, Cal. Bus. & Prof. Code § 17200 ("UCL").  *See* First Cause of Action, ¶¶ 97-107. Plaintiff alleges that Defendant packages and labels the Purchased Product in violation of California's Sherman Law which adopts, incorporates – and is identical – to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA").  These violations (which do not require a finding that the labels are "misleading") render the Purchased Product "misbranded" which is no small thing.  Under California law, a food product that is misbranded cannot legally be manufactured, advertised, distributed, held or sold.  Misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless.  Indeed, the sale, purchase or possession of misbranded food is a criminal act in California and the FDA even threatens food companies with seizure of misbranded products.  This "misbranding" – standing alone without any allegations of deception by Defendants or review of or reliance on the labels by Plaintiff – gives rise to Plaintiff's first cause of action under the UCL.

6.     The second aspect to this case is the "deceptive" part. Plaintiff alleges that the labels on the Purchased Product – aside from being unlawful under the Sherman Law – are also misleading, deceptive, unfair and fraudulent.  Plaintiff describes these labels and the ways in which they are misleading.  Plaintiff alleges that he reviewed the labels on the Purchased Product, reasonably relied in substantial part on the labels, and was thereby deceived, in deciding to purchase these products.  Moreover, the very fact that Defendant sold such Purchased Product and Substantially Similar Products and did not disclose this fact to consumers is a deceptive act in and of itself.  Plaintiff would not have purchased a product that is illegal to own or possess.  Had Defendant informed Plaintiff of this fact there would have been no purchases.

7.     Plaintiff did not know, and had no reason to know, that Defendant's Purchased Product was misbranded under the Sherman Law and bore food labeling claims that failed to meet the requirements to make those food labeling claims. Similarly, Plaintiff did not know, and had no reason to know, that Defendant's Purchased Product was false and misleading.

8.     In order to remedy the harm arising from Defendant's illegal conduct, which has resulted in unjust profits, Plaintiff brings this action on behalf of a nationwide class of consumers who, within the Class Period, purchased Defendant's Almond Breeze Chocolate Almond Milk

and Substantially Similar Products (1) labeled "All Natural" where said label also states that the product contains artificial or synthetic ingredients, flavorings, coloring, and/or chemical preservatives; (2) labeled with the ingredient "evaporated cane juice" when such ingredient was not "juice" but was actually sugar(s) or syrup(s).

## III.   BACKGROUND

9.      Identical California and federal laws require truthful, accurate information on the labels of packaged foods. This case is about companies selling misbranded food to consumers. The law is clear: misbranded food cannot legally be sold, possessed, has no economic value and is legally worthless. Purchasers of misbranded food are entitled to a refund of their purchase price.

10.     Identical California and federal laws regulate the content of labels on packaged food.  The requirements FDCA were adopted by the California Sherman Law.  Under both the Sherman Law and FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. 21 U.S.C. § 343(a).

11.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any one representation in the labeling is misleading, the entire food is misbranded, nor can any other statement in the labeling cure a misleading statement.

12.     Under California law, a food product that is "misbranded" cannot legally be manufactured, advertised, distributed, held or sold.  Misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless.  Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

13.     Blue Diamond's websites, www.bluediamond.com and www.almondbreeze.com, are incorporated into the label for each of Defendant's product that bears the web address www.bluediamond.com and/or www.almondbreeze.com. The Purchased Product and/or the Substantially Similar Products bear this website. According to the FDA and as a matter of law,

the Blue Diamond websites and all linked websites constitute the labeling of any product bearing this web address.

14.     If a manufacturer, like Blue Diamond, is going to make a claim on a food label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled and that label claims are truthful, accurate, and backed by scientific evidence.   As described more fully below, Defendant has sold products that are misbranded and are worthless because (i) the labels violate the Sherman Law and, separately, (ii) Defendant made, and continues to make, false, misleading and deceptive claims on its labels.

15.     Plaintiff brings this action under California law, which is identical to federal law, for a number of the Defendant's food labeling practices which are both (i) unlawful and (ii) deceptive and misleading to consumers.  These include:

a.     Representing food products to be "all natural," when they contain chemical preservatives, synthetic chemicals, added artificial color and other artificial ingredients;

b.     Making unlawful and misleading "evaporated cane juice" claims;

c.     Making unlawful health claims on its website regarding the Purchased Product and the Substantially Similar Products.

## IV.     PARTIES

16.     Plaintiff Chris Werdebaugh is a resident of Los Gatos, California who purchased the Blue Diamond Purchased Product during the Class Period.

17.     Defendant Blue Diamond Growers is a California corporation with its principal place of business in Sacramento, California.  Defendant can be served with process by service on its registered agent in California: Robert Donovan, 1802 C Street, Sacramento, California 95811 and/or pursuant to Rule 5 of the Federal Rules of Civil Procedure by service upon its counsel of record.

18.     Defendant is a leading producer of retail food products, including the Purchased Product and Substantially Similar Products at issue herein.  Defendant sells its food products to consumers through grocery and other retail stores throughout the United States.

19.     California law applies to all claims set forth in this *First Amended Complaint* because Plaintiff lives in California and purchased the Purchased Product there.   Also, the Defendant sold its products through California and availed itself to this state. All of the misconduct alleged herein was contrived in, implemented in, and has a shared nexus with California.   The formulation and execution of the unlawful practices alleged herein, occurred in, or emanated from California.

20.     Accordingly, California has significant contacts and/or a significant aggregation of contacts with the claims asserted by Plaintiff and all Class members.

## V.   JURISDICTION AND VENUE

21.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which:  (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

22.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

23.     The Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this *First Amended Complaint* occurred in California, Defendant is authorized to do business in California, has sufficient minimum contacts with California, and otherwise intentionally avails itself of the markets in California through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

24.     Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because the Court has personal jurisdiction over Defendant, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

## VI.   FACTUAL ALLEGATIONS

### A.   Identical California and Federal Laws Regulate Food Labeling

25.     Food manufacturers are required to comply with identical state and federal laws and regulations that govern the labeling of food products.  First and foremost among there is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

26.     Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."  California Health & Safety Code § 110100.

27.     In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations.  See California Health & Safety Code § 110660 (misbranded if label is false and misleading); California Health & Safety Code § 110665 (misbranded if label fails to conform to the requirements set forth in 21 U.S.C. § 343(q)); California Health & Safety Code § 110670 (misbranded if label fails to conform with the requirements 21 U.S.C. § 343(r)); California Health & Safety Code § 110705 (misbranded if words, statements and other information required by the Sherman Law are either missing or not sufficiently conspicuous); and California Health & Safety Code § 110740 (misbranded if contains artificial flavoring, artificial coloring and chemical preservatives but fails to adequately disclose that fact on label).

**B.     FDA Enforcement History**

28.     In recent years the FDA has become increasingly concerned that food manufacturers have been disregarding food labeling regulations. To address this concern, the FDA elected to take steps (like the October 2009, the FDA issued a Guidance for Industry: Letter regarding Point Of Purchase Food Labeling and the March 3, 2010 FDA issued "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg") to inform the food industry of its concerns and to place the industry on notice that food labeling compliance was an area of enforcement priority.  Additionally, the FDA has sent warning letters to the industry, including many of Defendants' peer food manufacturers, for the same types of misbranded labels and deceptive labeling claims described herein.

29.     Defendant did see, or should have seen, these warnings.  Defendant did not change the labels in response to the warning letters sent to other companies.

**VII.     OVERVIEW OF APPLICABLE SHERMAN LAW VIOLATIONS**

**A.     "All Natural" Claims**

30.     The Purchased Product contains an unlawful "All Natural" claim.

31.     Defendant's use of "all natural" claims on products containing unnatural ingredients such as added color, synthetic and artificial substances, and added colors violates the Sherman Law, California Health & Safety Code § 110660 because such label claims are "false and misleading."  § 110660 is identical to the prohibition in 21 U.S.C. § 343(a) against labeling that is "false or misleading in any particular."

32.     The FDA has repeatedly stated its policy to restrict the use of the term "natural" in connection with added color, synthetic substances and flavors addressed in 21 C.F.R. § 101.22.

33.     The FDA has also repeatedly affirmed its policy regarding the use of the term "natural" as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food.  See 58 FR 2302, 2407, January 6, 1993.

34.     Any coloring or preservative can preclude the use of the term "natural" even if the coloring or preservative is derived from natural sources.  Further, the FDA distinguishes between natural and artificial flavors in 21 C.F.R. § 101.22.

35.     Defendant's "All Natural" labeling practices violate FDA Compliance Policy Guide Sec. 587.100, which states:  "[t]he use of the words 'food color added,' 'natural color,' or similar words containing the term 'food' or 'natural' may be erroneously interpreted to mean the color is a naturally occurring constituent in the food.  Since all added colors result in an artificially colored food, we would object to the declaration of any added color as 'food' or 'natural.'"

36.     The FDA has sent out numerous warning letters concerning this issue.  Defendant is aware of these FDA warning letters.

37. Defendant has nonetheless unlawfully labeled food products, both the Purchased Product and Substantially Similar Products, as being "All Natural" when they actually contain artificial ingredients and flavorings, artificial coloring and chemical preservatives.

38. A reasonable consumer would expect that when Defendant labels its products as "All Natural," the products' ingredients are "natural" as defined by the federal government and its agencies. A reasonable consumer would also expect that when Defendant labels its products as "All Natural" the products' ingredients are "natural" under the common use of that word. A reasonable consumer would understand that such "All Natural" products do not contain synthetic, artificial, or excessively processed ingredients.

39. Consumers are thus misled into purchasing Defendant's products with synthetic unnatural ingredients that are not "All Natural" as falsely represented on its labeling.

40. Defendant's products in this respect are both unlawful (being misbranded under the Sherman Law) and misleading and deceptive.

**B.    "Evaporated Cane Juice" Claims.**

41. The Purchased Product contains an unlawful "evaporated cane juice" claim.

42. Defendant's use of "evaporated cane juice" claims on products when the ingredient is not "juice" but was actually sugar(s) or syrup(s) violate the Sherman Law, California Health & Safety Code § 110660 because such label claims are "false and misleading."

43. In its guidance for industry and warning letters to manufacturers, the FDA has repeatedly stated its policy of restricting the ingredient names listed on product labels to their common or usual name, as provided in 21 C.F.R. § 101.4(a)(1).

44. An ingredient's common or usual name is the name established by common usage or regulation, as provided in 21 C.F.R. § 102.5(d).

45. The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of the other food that is not reasonably encompassed within the same name," as provided in 21 C.F.R. § 102.5(a).

46.     In October 2009, the FDA issued Guidance for Industry concerning "evaporated cane juice" claims stating:

- "…the term "evaporated cane juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. However, FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as "evaporated cane juice" because that term falsely suggests that the sweeteners are juice…

- "Juice" is defined by 21 CFR 120.1(a) as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree." …

- "As provided in 21 CFR 101.4(a)(1), "Ingredients required to be declared on the label or labeling of a food . . . shall be listed by common or usual name . . . ." The common or usual name for an ingredient is the name established by common usage or by regulation (21 CFR 102.5(d)). The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 CFR 102.5(a))…

- "Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR 168.130). Other sugar cane products have common or usual names established by common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar, and demerara sugar)…

- "The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."…

- "Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5. Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 CFR 101.30).

http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm181491.htm

47.     Defendant was aware of the guidance and regulations concerning "evaporated cane juice."

48.     Defendant nonetheless unlawfully listed "evaporated cane juice" as an ingredient on its products, including the Purchased Product and Substantially Similar Products, when it actually contained sugar(s) and/or syrup(s).

49.     Defendant also made the same illegal claims on its websites and advertising in violation of federal and California law.

50.     A reasonable consumer would expect that when Defendant lists the ingredients on its products, the products' ingredients are given their common or usual name as defined by the federal government and its agencies.

51.     Consumers are thus misled into purchasing Defendant's products with false and misleading ingredient names, which do not describe the basic nature of the food or its characterizing properties or ingredients and which are "confusingly similar to the name of" another food, i.e., juice, "…not reasonably encompassed within the same name," as provided in 21 C.F.R. § 102.5(a).

52.     Defendant's products are in this respect misbranded under federal and California law. Misbranded products cannot be legally sold and are legally worthless.

53.     Defendant's products in this respect are both unlawful (being misbranded under the Sherman Law) and misleading and deceptive.

## VIII.   THE PURCHASED PRODUCT (1) UNLAWFULLY VIOLATES THE SHERMAN LAW AND (2) IS MISLEADING AND DECEPTIVE

54.     There is one (1) Purchased Product, Blue Diamond's Almond Breeze Chocolate Almond Milk. Plaintiff purchased the Purchased Product during the Class Period.

55.     The Purchased Product has a label that violates the Sherman Law and is therefore misbranded and may not be sold or purchased.

56.     The Purchased Product has a label that is false, misleading and deceptive.

57.     The label (front, back and side) of the package of the Purchased Product purchased by Plaintiff is as follows:

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





58.     The following unlawful and misleading language appears on the label:
        *"All Natural"*

        * * *
        *"Almond Breeze® Almondmilk is an all natural, great tasting NON-DAIRY BEVERAGE."*

        * * *
        *"All Natural with added Vitamins and Minerals."*

59.     Further, the following unlawful and misleading language appears in the label's list of ingredients:

*"INGREDIENTS": ALMONDMILK (FILTERED WATER, ALMONDS), EVAPORATED CANE JUICE, COCOA (DUTCH PROCESS), CALCIUM CARBONATE, SEA SALT, POTASSIUM CITRATE, CARRAGEENAN, NATURAL FLAVORS, SUNFLOWER LECITHIN, VITAMIN A PALMITATE, VITAMIN D-2 AND D-ALPHA-TOCOPHERAL (NATURAL VITAMIN E).*

60.     Plaintiff reasonably relied on these label representations in paragraphs 58 and 59 and based and justified his decision to purchase the product, in substantial part, on these label misrepresentations. Also, Plaintiff reasonably relied on the fact that this product was not misbranded under the Sherman Law and was therefore legal to buy and possess.

61.     Plaintiff was misled by Defendant's unlawful and misleading label on this product. Plaintiff would not have otherwise purchased this product had he known the truth about this product. Plaintiff had other food alternatives that satisfied legal standards and Plaintiff also had cheaper alternatives.

62.     The Purchase Product is unlawful, misbranded and violates the Sherman Law, California Health & Safety Code § 110660, as well as the guidance, regulations and statutes listed in Section VII (A) *supra* because the label uses the phrase "All Natural" even though this product contains the following artificial ingredients: cocoa (Dutch process), potassium citrate, Vitamin A Palmitate, Vitamin D-2 and Vitamin D-Alpha-Tocopherol. This product is also misleading and deceptive because the label uses the phrases "[a]ll natural" on food that contains artificial ingredients and, therefore, is not truly "all natural." Defendant also made those same unlawful representations concerning this product on its website, and Plaintiff saw and relied on those website representations.

63.     The Purchase Product is unlawful, misbranded, misleading, deceptive and violates the Sherman Law, California Health & Safety Code § 110660, as well as the guidance, regulations and statutes listed in Section VII (B) *supra* because the label lists "EVAPORATED CANE JUICE" as an ingredient, when such is not a "juice," but rather, in ordinary and commonly understood terms "sugar," "syrup" and/or a product of sugar cane or sugar cane syrup. Defendant

also made those unlawful representations concerning this product on its website, representations Plaintiff saw and relied upon.

## IX.   DEFENDANT VIOLATED CALIFORNIA LAW BY MANUFACTURING, ADVERTISING, DISTRIBUTING AND SELLING MISBRANDED FOOD

64.    Defendant has manufactured, advertised, distributed and sold products that are misbranded under California law.   Misbranded products cannot be legally manufactured, advertised, distributed, sold or held and are legally worthless as a matter of law.

65.    Defendant has violated California Health & Safety Code § 110390 which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

66.    Defendant has violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

67.    Defendant has violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

68.    Defendant violated California Health & Safety Code § 110660 because its labeling is false and misleading in one or more ways.

69.    Defendant violated California Health & Safety Code § 110725 because its labeling failed to state the common or usual names of ingredients.

70.    Defendant violated California Health & Safety Code § 110720 because its labeling failed to state the common or usual names of food.

71.    Defendant violated California Health & Safety Code § 110735 because they purport to be or are represented for special dietary uses, and its labeling fail to bear such information concerning their vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

72.    Defendant violated California Health & Safety Code § 110740 because they contain artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose that fact on their labeling.

73.    Defendants violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

74.    Defendant violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

75.    Defendant violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

76.    Defendant has violated the standards set by 21 C.F.R. § 101.22, 21 C.F.R. § 101.4(a)(1), 21 C.F.R. § 102.5(d), 21 C.F.R. § 102.5(a), 21 C.F.R. § 120.1(a), 21 U.S.C. §343, and 21 C.F.R. § 101.30.

## X.    PLAINTIFF BOUGHT THE PURCHASED PRODUCTS

77.    Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.  During the Class Period, Plaintiff spent more than twenty-five dollars ($25.00) on the Purchased Product.

78.    Plaintiff read and reasonably relied on the labels on Defendant's Purchased Product before purchasing it as described herein.  Plaintiff relied on Defendant's labeling as described herein and based and justified the decision to purchase Defendant's product, in substantial part, on the label.

79.    At point of sale, Plaintiff did not know, and had no reason to know, that the Purchased Product was unlawful and misbranded as set forth herein, and would not have bought the product had he known the truth about it, i.e., that the product was illegal to purchase and possess.

80.     After Plaintiff learned that Defendant's Purchased Product was falsely labeled, he stopped purchasing it.

81.     As a result of Defendant's unlawful misrepresentations, Plaintiff and thousands of others in California and throughout the United States purchased the Purchased Product and the Substantially Similar Products at issue.

82.     Defendant's labeling as alleged herein is false and misleading and was designed to increase sales of the products at issue.  Defendant's misrepresentations are part of its systematic labeling practice and a reasonable person would attach importance to Defendant's misrepresentations in determining whether to purchase the products at issue.

83.     A reasonable person would also attach importance to whether Defendant's products are "misbranded," i.e., legally salable, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiff would not have purchased Defendant's products had he known they were not capable of being legally sold or held.

84.     Plaintiff's purchase of the Purchased Product damaged Plaintiff because misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless.

## XI.   SUBSTANTIALLY SIMILAR PRODUCT CLAIMS

85.     The products listed in paragraph 4 have the same claims and share the same label representations and Sherman Law violations as the Purchased Product as described herein.

(A) Improperly listing "evaporated cane juice" as an ingredient:

-       Oven Roasted Cinnamon Brown Sugar Almonds;
-       100 Calorie Packs Cinnamon Brown Sugar Almonds;
-       Almond Breeze Shelf Stable Original Almond Milk;
-       Almond Breeze Shelf Stable Vanilla Almond Milk;
-       Almond Breeze Shelf Stable Chocolate Almond Milk;
-       Almond Breeze Refrigerated Original Almond Milk;
-       Almond Breeze Refrigerated Vanilla Almond Milk;
-       Almond Breeze Refrigerated Chocolate Almond Milk;
-       Almond Breeze Shelf Stable Almond Coconut Vanilla Almond Milk;
-       Almond Breeze Refrigerated Almond Coconut Original Almond Milk; and
-       Blue Diamond Breeze Almondmilk Coconutmilk Blend Shelf Stable Almond Milk.

(B) Improperly labeled "All Natural;"

-       Almond Breeze Chocolate Refrigerated Almond Milk;
-       Almond Breeze Original Refrigerated Almond Milk;
-       Almond Breeze Original Unsweetened Refrigerated Almond Milk;
-       Almond Breeze Shelf Stable Original Unsweetened Almond Milk;
-       Almond Breeze Refrigerated Almond Coconut Original Unsweetened Almond Milk;
-       Almond Breeze Refrigerated Almond Coconut Original Almond Milk;
-       Almond Breeze Shelf Stable Almond Coconut Vanilla Unsweetened Almond Milk;
-       Almond Breeze Shelf Stable Almond Coconut Vanilla Almond Milk;
-       Almond Breeze Vanilla Refrigerated Almond Milk;
-       Almond Breeze Vanilla Unsweetened Refrigerated Almond Milk;
-       Almond Breeze Shelf Stable Vanilla Almond Milk;
-       Almond Breeze Shelf Stable Chocolate Unsweetened Almond Milk;
-       Almond Breeze Shelf Stable Chocolate Almond Milk;
-       Almond Breeze Shelf Stable Original Almond Milk;
-       Almond Breeze Shelf Stable Vanilla Unsweetened Almond Milk;
-       Blue Diamond Breeze Almondmilk Coconutmilk Blend Shelf Stable Almond Milk;
-       Blue Diamond Nut Chips Sour Cream and Chive; and
-       Blue Diamond Nut Chips Sea Salt.

## XII.     CLASS ACTION ALLEGATIONS

86.     Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in the United States who, within the last four years, purchased Defendants' almond milk and substantially related products (1) labeled "All Natural" despite containing artificial or synthetic ingredients, flavorings, coloring, and/or chemical preservatives and/or (2) labeled with the ingredient "EVAPORATED CANE JUICE" (the "Class").

87.   The following persons are expressly excluded from the Class:

(1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

88.   This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

89. Numerosity:  Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that joinder of all Class members is impracticable.

90. <u>Common Questions Predominate</u>:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, just for example:

<div style="margin-left:2em;">

a.   Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label products sold to consumers;

b.   Whether the food products at issue were misbranded or unlawfully packaged, labeled and sold under the Sherman Law;

c.   Whether Defendant made unlawful and misleading "All Natural" claims with respect to its food products sold to consumers;

d.   Whether Defendant made unlawful and misleading "evaporated cane juice" claims with respect to its food products sold to consumers;

e.   Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*, California Bus. & Prof. Code § 17500, *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, California Civ. Code § 1790, *et seq.*, 15 U.S.C. § 2301, *et seq.*, and the Sherman Law;

f.   Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief; and

g.   Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class.

</div>

91. <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendant's Purchased Product during the Class Period.  Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct in violation of California law.  The injuries of each member of the Class were caused directly by Defendant's wrongful conduct.  In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

1
2
3
4
5
6
7
8

92. <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Class.  Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.  Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and those of the members of the Class.  Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

93. <u>Superiority</u>:  There is no plain, speedy or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

24
25
26
27

94.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

28

95.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3)

1    are met as questions of law or fact common to class members predominate over any questions

2    affecting only individual members, and a class action is superior to other available methods for

3    fairly and efficiently adjudicating the controversy.  Plaintiff and Plaintiff's counsel are unaware

     of any difficulties that are likely to be encountered in the management of this action that would

4    preclude its maintenance as a class action.

5

6    **XIII.   CAUSES OF ACTION**

7
                                    **FIRST CAUSE OF ACTION**
8                          **Business and Professions Code § 17200, *et seq.***
                                **Unlawful Business Acts and Practices**
9

10        96.    Plaintiff incorporates by reference each allegation set forth above.

11        97.    Defendant's conduct constitutes unlawful business acts and practices.

12        98.    Defendant sold the Purchased Product in California and throughout the United

13   States during the Class Period.

14        99. Defendant is a corporation and, therefore, a "person" within the meaning of the

15   Sherman Law.

16
          100.    Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of
17
     Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the
18
     misbranded food provisions of Article 6 of the Sherman Law.
19

20        101.    Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

21   Defendant's violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

22
          102.    Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of
23
     Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*
24
          103.    Defendant sold Plaintiff and the Class Purchased Product and Substantially Similar
25
     Products that were not capable of being sold, or held legally and which were legally worthless.
26
     Plaintiff and the Class paid a premium price for these products.
27

28        104.    As a result of Defendant's illegal business practices, Plaintiff and the

Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any Class Member any money paid for the Purchased Products and Substantially Similar Products.

105.     Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and the Class.

106.     As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchase Product and Substantially Similar Products by Plaintiff and the Class.

## SECOND CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### Unfair Business Acts and Practices

107.     Plaintiff incorporates by reference each allegation set forth above.

108.      Defendant's conduct as set forth herein constitutes unfair business acts and practices.

109.     Defendant sold the Purchased Product in California and throughout the United States during the Class Period.

110.     Plaintiff and members of the Class suffered a substantial injury by virtue of buying Defendant's  Purchased Product and Substantially Similar Products that they would not have purchased absent Defendant's illegal conduct.

111.     Defendant's deceptive marketing, advertising, packaging and labeling of its Purchased Product and its sale of unsalable misbranded products that were illegal to possess was of no benefit to consumers, and the harm to consumers and competition is substantial.

112.     Defendant sold Plaintiff and the Class the Purchased Product and Substantially

Similar Products that were not capable of being legally sold or held and that were legally worthless. Plaintiff and the class paid a premium for those products.

113.     Plaintiff and the Class who purchased Defendant's Purchased Product and Substantially Similar Products had no way of reasonably knowing that the products were misbranded and were not properly  marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

114.     The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefor.  Defendant's conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the Class.

115.     As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchase Product and Substantially Similar Products by Plaintiff and the Class.

<div align="center">

**THIRD CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.***
**<u>Fraudulent Business Acts and Practices</u>**

</div>

116.   Plaintiff incorporates by reference each allegation set forth above.

117.   Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

118.   Defendant sold the Purchased Product in California and throughout the United States during the Class Period.

119.   Defendant's misleading marketing, advertising, packaging and labeling of the Purchase Product and Substantially Similar Products and misrepresentation that the products were salable, capable of possession and not misbranded were likely to deceive reasonable consumers,

and in fact, Plaintiff and members of the Class were deceived.  Defendant has engaged in fraudulent business acts and practices.

120.   Defendant's fraud and deception caused Plaintiff and the Class to purchase Defendant's Purchased Product and Substantially Similar Products that they would otherwise not have purchased had they known the true nature of those products.

121.   Defendant sold Plaintiff and the Class Purchased Products and Substantially Similar Products that were not capable of being sold or held legally and that were legally worthless.

122.   As a result of Defendant's conduct as set forth herein, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's  Purchased Product and Substantially Similar Products by Plaintiff and the Class.

## FOURTH CAUSE OF ACTION
### Business and Professions Code § 17500, *et seq.*
### Misleading and Deceptive Advertising

123.   Plaintiff incorporates by reference each allegation set forth above.

124.   Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500*, et seq*. for misleading and deceptive advertising against Defendant.

125.   Defendant sold the Purchased Product in California and throughout the United States during the Class Period.

126.   Defendant engaged in a scheme of offering Defendant's Purchased Product for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendant's Purchased Product and Substantially Similar Products.  Defendant's advertisements and inducements were made within California and throughout the United States

and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Purchased Product and are statements disseminated by Defendant to Plaintiff and the Class that were intended to reach members of the Class. Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

127. In furtherance of its plan and scheme, Defendant prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Defendant's Purchased Product. Plaintiff and the Class necessarily and reasonably relied on Defendant's materials, and were the intended targets of such representations.

128. Defendant's conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendant's Purchased Product and Substantially Similar Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq*.

129. As a result of Defendant's violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the Class. The Purchased Product cannot be legally sold or held and is legally worthless.

130. Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Product and Substantially Similar Products by Plaintiff and the Class.

1
2

**FIFTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
<u>**Untrue Advertising**</u>

3      131.   Plaintiff incorporates by reference each allegation set forth above.

4      132.   Plaintiff asserts this cause of action against Defendant for violations of

5   California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

6      133.    Defendant sold the Purchased Product in California and throughout the United

7   States during the Class Period.

8      134.   Defendant engaged in a scheme of offering Defendant's Purchased Product for

9   sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional

10  materials.   These materials misrepresented and/or omitted the true contents and nature of

11  Defendant's Purchased Product and Substantially Similar Products.  Defendant's advertisements

12  and inducements were made in California and throughout the United States and come within the

13  definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the

14  product packaging and labeling, and promotional materials were intended as inducements to

15  purchase Defendant's Purchased Product, and are statements disseminated by Defendant to

16  Plaintiff and the Class.   Defendant knew, or in the exercise of reasonable care should have

17  known, that these statements were untrue.

18

19      135.   In furtherance of their plan and scheme, Defendant prepared and distributed in

20  California and nationwide via product packaging and labeling, and other promotional materials,

21  statements that falsely advertise the composition of Defendant's Purchased Product, and falsely

22  misrepresented the nature of those products.  Plaintiff and the Class were the intended targets of

23  such representations and would reasonably be deceived by Defendant's materials.

24      136.   Defendant's conduct in disseminating untrue advertising throughout California

25  deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of

26  Defendant's Purchased Product in violation of the "untrue prong" of California Business and

27  Professions Code § 17500.

28

137.   As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the Class. The Purchased Product and Substantially Similar Products cannot be legally sold or held and are legally worthless.

138.   Plaintiff and the Class, pursuant to Business and Professions Code §17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Product and Substantially Similar Products by Plaintiff and the Class.

<div align="center">

**SIXTH CAUSE OF ACTION**
**Consumers Legal Remedies Act, Cal. Civ. Code §1750,** ***et seq.***

</div>

139.   Plaintiff incorporates by reference each allegation set forth above.

140.   This cause of action is brought pursuant to the CLRA.  Defendant's violations of the CLRA were and are willful, oppressive and fraudulent, thus supporting an award of punitive damages.

141.   Plaintiff and the Class are entitled to actual and punitive damages against Defendants for its violations of the CLRA.  In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the Class are entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

142.   Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

143.   Defendant sold the Purchased Product and Substantially Similar Products in California and throughout the United States during the Class Period.

144.   Plaintiff and members of the Class are "consumers" as that term is defined by

the CLRA in Cal. Civ. Code §1761(d).

145.   Defendant's Purchased Product and Substantially Similar Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

146.   By engaging in the conduct set forth herein, Defendant violated and continues to violate Sections 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

147.   By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

148.   By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not to sell the goods as advertised.

149.   By engaging in the conduct set forth herein, Defendant has violated and continues to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

150.   Plaintiff requests that he and the Class be awarded the damages requested herein, and that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If Defendant is not restrained from engaging in these practices in the future, Plaintiff and the Class will continue to suffer harm.

151.   Plaintiff requests that the Court enjoin Defendant from continuing to employ the

1   unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).   If

2   Defendant is not restrained from engaging in these practices in the future, Plaintiff and the Class

3   will continue to suffer harm.

4          152.     On July 17, 2012, pursuant to Section 1782(a) of the CLRA, Plaintiff's counsel

5   served Blue Diamond with notice of its violations of the CLRA.   As authorized by Blue

6   Diamond's counsel, Plaintiff's counsel served Blue Diamond by certified mail, return receipt

7   requested.

8          153.     Blue Diamond has failed to provide appropriate relief for its violations of the

9   CLRA within 30 days of its receipt of the CLRA demand notice.   Accordingly, pursuant to

10  Sections 1780 and 1782(b) of the CLRA, Plaintiff is entitled to recover actual damages, punitive

11  damages, attorneys' fees and costs, and any other relief the Court deems proper.

12         154.     Defendant's violations of the CLRA were willful, oppressive and fraudulent,

13  thus supporting an award of punitive damages.

14         155.     Consequently, Plaintiff and the Class are entitled to actual and punitive damages

15  against Defendant for its violations of the CLRA. In addition, pursuant to Cal. Civ. Code §

16  1782(a)(2), Plaintiff and the Class are entitled to an order enjoining the above-described acts and

17  practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys'

18  fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code

19  § 1780.

20                                **JURY DEMAND**

21         Plaintiff hereby demands a trial by jury of his claims.

22                              **PRAYER FOR RELIEF**

23         WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on

24  behalf of the general public, prays for judgment against Defendant as follows:

25         A.       For an order certifying this case as a class action and appointing Plaintiff and his

26  counsel to represent the Class;

27         B.       For an order awarding, as appropriate, damages, monetary relief, restitution or

28

1   disgorgement to Plaintiff and the Class for all causes of action;

2       C.      For an order requiring Defendant to immediately cease and desist from selling its

3   Purchased Products listed in violation of law; enjoining Defendant from continuing to market,

4   advertise, distribute, and sell these products in the unlawful manner described herein; and

5   ordering Defendant to engage in corrective action;

6       D.      For all equitable and monetary remedies available pursuant to Cal. Civ. Code §

7   1780;

8       E.      For an order awarding attorneys' fees and costs;

9       F.      For an order awarding punitive damages;

10      G.      For an order awarding pre-and post-judgment interest; and

11      H.      For an order providing such further relief as this Court deems proper.

12

13  Dated:  May 24, 2013                    Respectfully submitted,

14

15                                          *Ben F. Pierce Gore*
                                            Ben F. Pierce Gore (SBN 128515)
16                                          PRATT & ASSOCIATES
                                            1871 The Alameda, Suite 425
17                                          San Jose, CA  95126
                                            Telephone:  (408) 429-6506
18                                          Fax:  (408) 369-0752
                                            pgore@prattattorneys.com
19
                                            Jay Nelkin
20                                          Carol Nelkin
                                            Stuart M. Nelkin
21                                          NELKIN & NELKIN, P.C.
                                            5417 Chaucer Drive
22                                          P.O. Box 25303
                                            Houston, Texas 77005
23                                          Telephone:  (713) 526-4500
                                            Facsimile:  (713) 526-8915
24                                          jnelkin@nelkinpc.com
                                            cnelkin@nelkinp.com
25                                          snelkin@nelkinpc.com

26

27

28

1

2

3

4

5

6

7

8

9

Don Barrett
David McMullan, Jr.
Brian Herrington
Katherine B. Riley
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Telephone: (662) 834-2488
Toll Free: (877) 816-4443
Fax: (662) 834-2628
dbarrett@barrettlawgroup.com
donbarrettpa@yahoo.com
bherrington@barrettlawgroup.com
kbriley@barrettlawgroup.com
kbriphone@yahoo.com
dmcmullan@barrettlawgroup.com

10

11

12

13

Charles Barrett
CHARLES BARRETT, P.C.
6518 Hwy. 100, Suite 210
Nashville, TN 37205
Telephone: (615) 515-3393
Fax: (615) 515-3395
charles@cfbfirm.com

14

15

16

17

Richard Barrett
LAW OFFICES OF RICHARD R. BARRETT, PLLC
2086 Old Taylor Road, Suite 1011
Oxford, MS 38655
Telephone: (662) 380-5018
Fax: (866) 430-5459
rrb@rrblawfirm.net

18

19

20

21

J. Price Coleman
COLEMAN LAW FIRM
1100 Tyler Avenue, Suite 102
Oxford, MS 38655
Telephone: (662) 236-0047
Fax: (662) 513-0072
colemanlawfirmpa@bellsouth.net

22

23

24

25

26

Dewitt M. Lovelace
Valerie Lauro Nettles
LOVELACE LAW FIRM, P.A.
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone: (850) 837-6020
Fax: (850) 837-4093
dml@lovelacelaw.com

27

28

First Amended Class Action Complaint
Case No. 5: 12-CV-02724 LHK

- 32 -

David Shelton
ATTORNEY AT LAW
1223 Jackson Avenue East, Suite 202
Oxford, MS 38655
Telephone: (662) 281-1212
Fax: (662-281-1312
david@davidsheltonpllc.com

Keith M. Fleischman
Frank Karam
Ananda  N. Chaudhuri
FLEISCHMAN LAW FIRM
565 Fifth Avenue, 7th Floor
New York, New York  10017
Telephone:  212-880-9571
keith@fleischmanlawfirm.com
frank@fkaramlaw.com
achaudhuri@fleischmanlawfirm.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned counsel does hereby certify that he has this day served a true and correct copy of the above and foregoing upon counsel of record via the Court's ECF system and also by US Mail, postage prepaid.


This the 24th day of May, 2013          Signed: *Dewitt M. Lovelace*

Dewitt M. Lovelace