1  HANSON BRIDGETT LLP
   LAWRENCE M. CIRELLI, SBN 114710
2  lcirelli@hansonbridgett.com
   MEGAN OLIVER THOMPSON, SBN 256654
3  moliverthompson@hansonbridgett.com
   GEOFFREY R. PITTMAN, SBN 253876
4  gpittman@hansonbridgett.com
   425 Market Street, 26th Floor
5  San Francisco, California 94105
   Telephone:   (415) 777-3200
6  Facsimile:   (415) 541-9366

7  Attorneys for Defendant Blue Diamond
   Growers

8

9              UNITED STATES DISTRICT COURT

10     NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

11

12  CHRIS WERDEBAUGH, individually and       CASE NO. 4:12-cv-02724 LHK
    on behalf of other similarly situated,
13                                           **DEFENDANT'S NOTICE OF MOTION
             Plaintiff,                      AND MOTION TO DISMISS FIRST
14                                           AMENDED COMPLAINT;
             v.                              MEMORANDUM OF POINTS AND
15                                           AUTHORITIES**
    BLUE DIAMOND GROWERS,
16                                           Judge:  Hon. Lucy H. Koh
             Defendant.                      Date:   October 3, 2013
17                                           Time:   1:30 p.m.
                                             Crtrm.: 8
18

19

20

21

22

23

24

25

26

27

28

5193549.1

4:12-cv-02724 LHK
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................ 2

II.   STATEMENT OF ISSUES TO BE DECIDED ......................................... 3

III.  STATEMENT OF FACTS .................................................................. 4

IV.  PROCEDURAL HISTORY ................................................................ 6

V.   ARGUMENT .................................................................................. 6

    A.    All Of Plaintiff's Claims Are Preempted By The FDCA ............................. 6

          1.    Plaintiff's claims are impliedly preempted under *Perez v. Nidek* because they "exist solely by virtue of the FDCA." ................. 7

          2.    Plaintiff's claims are impliedly preempted because they conflict with the FDCA's enforcement scheme which bars private enforcement. ......................................................... 8

          3.    Plaintiff's claims are expressly preempted because they depend on non-binding FDA guidance and policies that are not identical to the FDCA's labeling requirements. ........................... 9

          4.    The FAC should be dismissed to allow the FDA to resolve Plaintiff's questions regarding the use of "all natural" and "evaporated cane juice" on food product labels. ........................... 14

    B.    Plaintiff Lacks Standing To Challenge Products He Did Not Buy ............... 15

    C.    Plaintiff Has Not Pled His Case with the Requisite Particularity Under Federal Rule of Civil Procedure 9(b) ......................................... 16

    D.    Plaintiff is Precluded from Bringing Claims Under California Law on Behalf of a Nationwide Class .................................................. 19

    E.    Plaintiff's Prayer For Monetary Remedies Under The CLRA Should Be Stricken Because Plaintiff Did Not Seek Leave To Amend On This Basis ..................................................................... 20

VI.  CONCLUSION .............................................................................. 20

1

2

## TABLE OF AUTHORITIES

**Page**

3

4

### CASES

5

6

*Banks v. Nissan North America, Inc.*,
No. C 11-2022-PJH, 2012 U.S. Dist. LEXIS 37754 (N.D. Cal. Mar. 20,
2012)..........................................................................................................................19

7

8

*Buckman Co. v. Plaintiffs' Legal Committee*,
531 U.S. 341 (2001)......................................................................................................7

9

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
No. C-10-01044 JSW, 2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan. 10,
2011).........................................................................................................................16

10

11

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ...................................................................................15

12

*Clark v. Time Warner Cable*,
523 F.3d 1110 (9th Cir. 2008) ...................................................................................14

13

14

*Decker v. Glenfed, Inc.*,
42 F.3d 1541 (9th Cir. 1994) .....................................................................................17

15

*Edmunson v. Procter & Gamble Co.*,
No. 10-CV-2256-IEG (NLS), 2011 U.S. Dist. LEXIS 53221 (C.D. Cal. May
17, 2011)...............................................................................................................16, 17

16

17

*Eromon v. Grand Auto Sales, Inc.*,
351 F. Supp. 2d 825 (N.D. Ill. 2004) ........................................................................18

18

*Forcellati v. Hyland's, Inc.*,
876 F. Supp. 2d 1155 (C.D. Cal. 2012) .....................................................................19

19

20

*Frezza v. Google, Inc.*,
No. 5:12-cv-00237-RMW, 2013 U.S. Dist. LEXIS 57462 (N.D. Cal. April 22,
2013).........................................................................................................................19

21

22

*Hartless v. Clorox Co.*, No. 06CV2705-JAH(CAB), 2007 U.S. Dist. LEXIS 81686
(S.D. Cal. 2007) ...........................................................................................................9

23

*In re Epogen Aranesp Off-Label Marketing & Sales Practices Litigation*,
590 F. Supp. 2d 1282 (C.D. Cal. 2008)........................................................................9

24

25

*In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liability Litigation*,
623 F.3d 1200 (8th  Cir. 2010) .............................................................................7, 11

26

*In re: Sony Gaming Networks and Customer Data Security Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) .......................................................................20

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

*Johns v. Bayer Corp.*,
    No. 09CV1935 DMS (JMA), 2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9,
    2010) ................................................................................................................ 16

*Kearns v. Ford Motor Co.*,
    587 F.3d 1120 (9th Cir. 2009) ..................................................................... 16, 17

*Koehler v. Litehouse, Inc.*
    No. CV 12-04055-SI, 2012 U.S. Dist. LEXIS 176971 (N.D. Cal. December
    13, 2012) ........................................................................................................... 19

*Lanovaz v. Twinings N. Am., Inc.*,
    No. C-12-02646-RMW, 2013 U.S. Dist. LEXIS 25612 (N.D. Cal. Feb. 25,
    2013) ................................................................................................................ 16

*Littlehale v. Hain Celestial Group, Inc.*,
    No. C 11-6342 PJH, 2012 U.S. Dist. LEXIS 162530 (N.D. Cal. July 2, 2012) ....... 19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................ 15

*Mazza v. American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ..................................................................... 19, 20

*Meaunrit v. Lozano*,
    No. C 09-04555-CW, 2010 U.S. Dist. LEXIS 43858 (N.D. Cal. 2010) .................. 10

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) ........................................................................................ 10

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ........................................................................................ 15

*Perez v. Nidek Co., Ltd.*,
    711 F.3d 1109 (9th Cir. 2013) ................................................................. passim

*Photomedex, Inc. v. Irwin*,
    601 F.3d 919 (9th Cir. 2010) ......................................................................... 9, 12

*Pom Wonderful LLC v. The Coca-Cola Co.*,
    679 F.3d 1170 (9th Cir. 2012) ..................................................................... 11, 12

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008) ........................................................................................ 10

*Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*,
    902 F.2d 222 (3d Cir. 1990) .............................................................................. 9

*Sato v. Wachovia Mortgage*,
    *FSB*, 2012 U.S. Dist. LEXIS 46554 (N.D. Cal. 2012) ........................................ 20

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) ........................................................................... 17

1  *Stengel v. Medtronic, Inc.*,
        704 F.3d 1224 (9th Cir. 2013) ................................................. 10
2
3  *Swartz v. KPMG LLP*,
        476 F.3d 756 (9th Cir. 2007) ................................................... 17
4  *Turek v. General Mills, Inc.*,
        662 F.3d 423 (7th Cir. 2011) ................................................... 10
5
6  *Vess v. Ciba-Geigy Corp. USA*,
        317 F.3d 1097 (9th Cir. 2003) ................................................ 17
7  *Warth v. Seldin*,
        422 U.S. 490 (U.S. 1975) ...................................................... 15
8
9  *Yumul v. Smart Balance, Inc.*,
        733 F. Supp. 2d 1117 (C.D. Cal. 2010) ................................. 17
10

11  **STATUTES**

12  21 U.S.C. § 332 ................................................................................. 9

13  21 U.S.C. § 333 ................................................................................. 9

14  21 U.S.C. § 334 ................................................................................. 9

15  21 U.S.C. § 337(a) ............................................................................ 8

16  21 U.S.C. § 343 ............................................................................... 10

17  21 U.S.C. § 360k(a) .................................................................. 10, 11

18  21 U.S.C. § 372 ................................................................................. 9

19  21 U.S.C.§ 343-1(a) ................................................................. 10, 11

20  Cal. Bus. & Prof. Code § 17200 .................................................. 6, 13

21  Cal. Bus. & Prof. Code § 17203 .................................................... 15

22  Cal. Bus. & Prof. Code § 17204 .................................................... 15

23  Cal. Bus. & Prof. Code § 17535 .................................................... 15

24  Cal. Civ. Code § 1750 ..................................................................... 6

25  Cal. Civ. Code § 1780 ................................................................... 15

26  Cal. Civ. Code § 1782 ................................................................... 20

27  Cal. Health & Saf. Code § 111900 ................................................. 9

28

-iv-                                    4:12-cv-02724 LHK
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

**OTHER AUTHORITIES**

H.R. Rep. No. 101-538 at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337 ..............7

**RULES**

56 Fed. Reg. 60421 (Nov. 27, 1991) ......................................................................... 13, 15

58 Fed. Reg. 2302 (Jan. 6, 1993) ........................................................................7, 13, 15

Federal Rule of Civil Procedure 12(b)(1) ......................................................................15

Federal Rule of Civil Procedure 15(a)(2) ......................................................................20

Federal Rule of Civil Procedure 9(b).................................................................16, 17, 18

**REGULATIONS**

21 C.F.R. § 10.115 ........................................................................................................12

21 C.F.R. § 101.22 ..........................................................................................................7

21 C.F.R. § 101.4(a)(1)....................................................................................................8

21 C.F.R. § 102.5(a) ........................................................................................................8

21 C.F.R. § 102.5(d) ........................................................................................................8

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

## TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

3      PLEASE TAKE NOTICE THAT on October 3, 2013 at 1:30 p.m. or as soon

4   thereafter as this matter may be heard, in Courtroom 8 of the above-entitled Court,

5   located at 280 South 1st Street, San Jose, California 95113, Defendant Blue Diamond

6   Growers, by and through its attorneys, will and hereby does move to dismiss the First

7   Amended Complaint or, in the alternative, to strike particular allegations in the First

8   Amended Complaint.  Blue Diamond makes this motion pursuant to Federal Rules of Civil

9   Procedure 9(b), 12(b)(1), 12(b)(6), and 12(f).

10     Blue Diamond's motion to dismiss is made on the following grounds: (1) all of

11  Plaintiff's state law claims are preempted by the Federal Food, Drug, and Cosmetic Act

12  and, therefore, must be dismissed under Federal Rule of Civil Procedure 12(b)(1); (2) the

13  Food and Drug Administration has primary jurisdiction to determine the issues presented

14  in the First Amended Complaint; (3) Plaintiff lacks standing pursuant to Federal Rule of

15  Civil Procedure 12(b)(1) to pursue any claims for relief with respect to any Blue Diamond

16  products he did not purchase; and (4) Plaintiff's claims regarding the Purchased Product

17  and the "all natural" labeling statements on Blue Diamond products other than the

18  product he allegedly purchased must be dismissed pursuant to Federal Rule of Civil

19  Procedure 12(b)(6) because he fails to plead these claims with the requisite particularity

20  under Federal Rule of Civil Procedure 9(b).

21     In addition, pursuant to Federal Rule of Civil Procedure 12(f), Blue Diamond asks

22  this Court to strike Plaintiff's allegations regarding (1) products Plaintiff does not allege to

23  have purchased for the reasons stated above; (2) Plaintiff's nationwide class allegations

24  because the California consumer protection laws do not protect consumers who

25  purchased Blue Diamond products in another states; and (3) Plaintiff's request for

26  monetary remedies under the Consumer Legal Remedies Act for failure to seek leave to

27  add the same pursuant to Federal Rule of Civil Procedure 15(a)(2).

28     This motion is based on the accompanying Memorandum of Points and

Authorities, Exhibit A attached thereto, and any other evidence, materials, and argument presented at or before the time this matter is heard.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

This action is an improper attempt to obtain a jury's assessment of Blue Diamond Growers' food product labels.  In particular, Plaintiff is asking that a jury determine whether Blue Diamond has "misbranded" twenty of its almond products by labeling them as either "all natural" or as containing "evaporated cane juice."  Although Plaintiff's claims for relief are shrouded in layers of California's consumer protection laws and California's Sherman Food, Drug, and Cosmetic Law, Plaintiff's claims are actually rooted in alleged violations of non-binding guidance and policy statements of the U.S. Food and Drug Administration (FDA).  The non-binding FDA guidance and policy statements exist solely by virtue of the FDA's authority to regulate food labeling pursuant to the Federal Food, Drug, and Cosmetic Act (FDCA).  Thus, Plaintiff's claims exist solely by virtue of the FDCA.

Plaintiff cannot use the state consumer protection laws or the Sherman Law as the vehicle to enforce the FDCA or non-binding FDA guidance and policy statements.  Allowing a jury to pass judgment on Blue Diamond's labels would disrupt the FDA's regulatory scheme and usurp and undermine the FDA's regulatory authority.  Accordingly, Plaintiff's state law claims, purportedly based on the Sherman Law but actually based on the FDCA through non-binding FDA guidance and policy statements, are expressly and impliedly preempted by the FDCA.  Alternatively, the risk of inconsistent jury verdicts warrants dismissal for the purpose of allowing the FDA to answer the questions presented in the first instance.

In addition to this fatal jurisdictional defect, the First Amended Complaint (FAC) suffers from other pleading deficiencies despite the parties' stipulation that Plaintiff would attempt to cure several identified deficiencies by amending his complaint.  As a threshold matter, Plaintiff cannot be injured by products he never purchased and thus cannot

1  establish the requisite injury in fact under Article III or the state consumer protection laws

2  to pursue claims related to such products.  Moreover, Plaintiff failed to specifically alleged

3  what Blue Diamond product he purchased, when and how many products he purchased,

4  or what website statements he read or relied upon.  Further, with respect to his "all

5  natural" claims, Plaintiff failed to allege with specificity the supposedly offending

6  ingredients in any of the products he did not purchase.

7       Finally, Plaintiff cannot maintain a nationwide class action using California's

8  consumer protection statutes.  It is well-settled that the claims of consumers in other

9  states must be governed by the consumer protection statutes in those states.  There is

10  ample authority for striking Plaintiff's class allegations at the pleading stage.

11       The First Amended Complaint does not cure all of the deficiencies identified in the

12  parties' stipulation, nor does it survive under recent, binding Ninth Circuit precedent

13  regarding preemption by the FDCA.  Accordingly, the First Amended Complaint must be

14  dismissed.

15  ## II.     STATEMENT OF ISSUES TO BE DECIDED

16       (1)     All of Plaintiff's claims "exist solely by virtue of the FDCA."  Are Plaintiff's

17  claims impliedly preempted as a result?

18       (2)     Neither the FDCA nor the Sherman Law provides a private right of action.

19  Are Plaintiff's claims impliedly preempted as a result?

20       (3)     The FDCA, as amended by the NLEA, expressly preempts all state law

21  claims that are not identical to FDCA regulations.  Although California's Sherman Law

22  adopts as its own regulations the FDA's food labeling regulations, Plaintiff's claims

23  depend instead on non-binding FDA guidance and policies.  Are Plaintiff's claims with

24  respect to Blue Diamond's use of "evaporated cane juice" and "all natural" on its product

25  labels expressly preempted because the claims rely on non-binding guidance and

26  policies of the FDA that are not identical to the FDCA?

27       (4)     There is significant risk of inconsistent results if a jury determines Blue

28  Diamond's labeling obligations with respect to the terms "all natural" and "evaporated

5193549.1

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

1 cane juice" instead of the FDA, which is the regulatory agency with jurisdiction over these

2 issues.  Should the Court thus apply the primary jurisdiction doctrine and dismiss this

3 action to allow the FDA to enforce its own regulations and policies?

4       (5)    Plaintiff must establish injury in fact and loss of money or property in order

5 to establish standing to pursue claims as to all Blue Diamond products identified in the

6 FAC.  Does Plaintiff have standing to pursue claims as to products he did not himself

7 purchase?

8       (6)    Plaintiff's state law claims based on Blue Diamond's alleged scheme of

9 false advertising must be pled with particularity under Rule 9(b).  The FAC does not

10 specifically allege what product Plaintiff purchased, when and how many products he

11 purchased, what website statements he read or relied upon, or facts to show how Blue

12 Diamond's "All Natural" labeling statements on Substantially Similar products are false or

13 misleading.  Has Plaintiff pled his claims with particularity as required by Rule 9(b)?

14       (7)    California's consumer protection statutes do not protect consumers who

15 suffered alleged harm in other states.  Should Plaintiff's nationwide class allegations,

16 brought for the purpose of protecting consumers in other states, be stricken?

17       (8)    Plaintiff failed to seek leave to add a prayer for monetary remedies under

18 the Consumer Legal Remedies Act before the court-imposed deadline of December 20,

19 2012.  Should Plaintiff's new request for the same in the First Amended Complaint be

20 stricken?

21                  **III.    STATEMENT OF FACTS**

22       At some time "during the Class Period," Plaintiff allegedly purchased Blue

23 Diamond's Almond Breeze Chocolate Almond Milk, referred to as the "Purchased

24 Product" in the First Amended Complaint ("FAC").  (FAC, ¶ 2.)  Plaintiff claims that the

25 Chocolate Almond Milk label is unlawful in two respects.  First, Plaintiff complains that the

26 Chocolate Almond Milk label bears the phrase "All Natural," even though the product

27 contains the following allegedly artificial ingredients: cocoa (dutch process), potassium

28 citrate, vitamin a palmitate, vitamin d2, and d-alpha-tocopherol.  (*Id.*, ¶ 62.)  According to

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

1   Plaintiff, this labeling renders the Chocolate Almond Milk "unlawful, misbranded and

2   violat[ive of] the Sherman Law" as well as various food labeling regulations, statutes,

3   policies, and guidance promulgated by the FDA.  (*Id.*, ¶¶ 62, 31-26.)  Second, Plaintiff

4   complains that the label of Blue Diamond's Chocolate Almond Milk lists "'evaporated

5   cane juice' as an ingredient, when such is not a 'juice,' but rather, in ordinary and

6   commonly understood terms 'sugar,' 'syrup' and/or a product of sugar cane or sugar cane

7   syrup."  (*Id.*, ¶ 63.)  According to Plaintiff, this labeling renders the Chocolate Almond Milk

8   "unlawful, misbranded, misleading, deceptive and violat[ive of] the Sherman Law" as well

9   as various food labeling regulations, statutes, policies, and guidance promulgated by the

10   FDA.  (*Id.*, ¶¶ 63, 43-52.)

11   　　　Although Plaintiff alleges to have purchased only one Blue Diamond product,

12   Plaintiff attempts to include several other Blue Diamond products in the FAC.  (*Id.*, ¶ 4.)

13   Plaintiff defines these products as "Substantially Similar Products" and alleges

14   generically that each of these products makes the same label misrepresentations and

15   violates the same Sherman Law regulations as the Chocolate Almond Milk.  (*Id.*, ¶ 3.) For

16   Plaintiff's claims regarding Blue Diamond's use of "evaporated cane juice" on the label,

17   Plaintiff identifies eleven other Blue Diamond products, including nine different varieties

18   of Almond Milk and two varieties of almonds.  (*Id.*, ¶ 4.)  For Plaintiff's claims regarding

19   Blue Diamond's use of "All Natural" on the product label, Plaintiff identifies eighteen other

20   Blue Diamond products, including sixteen different varieties of Almond Milk and two

21   varieties of Nut Chips.  (*Id.*)

22   　　　Indeed, Plaintiff's allegations regarding the specific instances of supposed

23   unlawful labeling reference only the labels appearing on the Chocolate Almond Milk.  (*Id.*,

24   ¶¶ 57-59.)  Plaintiff generally claims to have read the Chocolate Almond Milk label before

25   purchasing the product.  (*Id.*, ¶ 78.)  Plaintiff also generically claims he relied on the

26   labeling, thereby justifying his decision to purchase the product.  (*Id.*)  Despite claiming to

27   have read all of the labeling, Plaintiff states that he did not know, and had no reason to

28   know, that the product was "unlawful and misbranded" and "illegal to purchase and

5193549.1

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

1 possess." (*Id.*, ¶ 79.)

2        Based on these allegations, Plaintiff seeks relief on six causes of action, namely

3 (1) violation of the California unfair competition law (Cal. Bus. & Prof. Code § 17200)

4 ("UCL") based on allegedly unlawful business practices, (2) violation of the UCL based

5 on allegedly unfair business practices, (3) violation of the UCL based on fraudulent

6 business practices, (4) deceptive advertising under California Business & Professions

7 Code § 17500 ("FAL"), (5) untrue advertising under the FAL, and (6) violation of the

8 Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*) ("CLRA").  All of Plaintiff's

9 state consumer protection law claims are grounded in alleged violations of the Federal

10 Food, Drug, and Cosmetic Act, guidance and policies of the Food and Drug

11 Administration, and California's Sherman Law.

12             **IV.    PROCEDURAL HISTORY**

13        This action was filed on May 29, 2012.  After answering the original complaint,

14 Blue Diamond advised the Court during the May 1, 2013 case management conference

15 that it intended to file a motion for judgment on the pleadings to address several

16 deficiencies in the complaint.  At the Court's order, in lieu of filing the motion, the parties

17 entered into a stipulation on May 10, 2013 in which Plaintiff agreed to attempt to cure

18 numerous deficiencies identified in the stipulation by amending his complaint.  (Dkt. Nos.

19 35, 36.)  The identified deficiencies were related to the complaint's lack of specificity with

20 respect to several aspects of Plaintiff's first, second, third, fourth, fifth, and sixth causes of

21 action.  (Dkt. No. 36.)  The Court approved the stipulation on May 13, 2013 and Plaintiff

22 filed his First Amended Complaint on May 24, 2013.  (Dkt. Nos. 37, 38.)

23               **V.    ARGUMENT**

24 **A.    All Of Plaintiff's Claims Are Preempted By The FDCA**

25        The Federal Food, Drug, and Cosmetic Act (FDCA) comprehensively and

26 extensively regulates food and beverage labeling and prohibits the misbranding of food.

27 Congress amended the FDCA in 1990 through the passage of the Nutrition Labeling and

28 Education Act (NLEA), which aimed to "clarify and . . . strengthen the Food and Drug

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

1   Administration's legal authority to require nutrition labeling on foods, and to establish the

2   circumstances under which claims may be made about nutrients in foods." H.R. Rep. No.

3   101-538 at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337. The source for

4   "misbranding" is 21 U.S.C. § 343 and its many subsections. Generally, food is

5   misbranded under section 343(a)(1) if "its labeling is false or misleading in any particular."

6   Sections 343(q) and (r) – both referenced in the FAC - impose more specific

7   requirements with respect to nutrition information and nutrition levels and health-related

8   claims, respectively. (FAC, ¶ 27.)

9       **1.    Plaintiff's claims are impliedly preempted under *Perez v. Nidek***
            **because they "exist solely by virtue of the FDCA."**

10

11      Plaintiff cannot thread the narrow gap through which a state law claim must fit to

12   escape preemption by the FDCA. As the Ninth Circuit recently echoed the Eighth Circuit:

13   "The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is

14   expressly preempted . . .), but the plaintiff must not be suing *because* the conduct

15   violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Perez*

16   *v. Nidek Co., Ltd.*, 711 F.3d 1109, 1119 (9th Cir. 2013)(citing *In re Medtronic, Inc., Sprint*

17   *Fidelis Leads Prods. Liability Litigation*, 623 F.3d 1200, 1204 (8th Cir. 2010).) Because

18   Plaintiff's claims "exist solely by virtue of the FDCA," they are impliedly preempted.

19   *Perez*, 711 F.3d at 1119; *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 352-

20   53 (2001)(fraud claims that existed "solely by virtue of the FDCA disclosure

21   requirements" were preempted).

22      Plaintiff alleges that Blue Diamond's use of the term "all natural" on labels for

23   products that allegedly contain unnatural ingredients such as added color and synthetic

24   and artificial substances is false and misleading. (FAC, ¶ 31.) Plaintiff contends that his

25   claim is actionable under FDA regulations (21 C.F.R. § 101.22), non-binding FDA policy

26   (58 Fed. Reg. 2302, 2407 (Jan. 6, 1993)), and an FDA Compliance Policy Guide. (FAC,

27   ¶¶ 32-35.) Plaintiff further relies on the FDA's warning letters to other manufacturers on

28   the topic to support his claims. (*Id.*, ¶ 36.) Because Plaintiff's "all natural" claims would

1   not exist but for the FDA regulations and non-binding policy, which would not exist

2   without the FDCA, Plaintiff's claims "exist solely by virtue of the FDCA" and, therefore,

3   are impliedly preempted under *Perez*.

4         Plaintiff also alleges that Blue Diamond's use of the term "evaporated cane juice"

5   is false and misleading because "the ingredient is not 'juice' but was actually sugar(s) or

6   syrup(s) . . ."  (FAC ¶ 42.)  Plaintiff contends that his claim is actionable under FDA

7   regulations (21 C.F.R. § 101.4(a)(1), 21 C.F.R. § 102.5(a), (d)) and a non-binding, draft

8   FDA Guidance for Industry.  (FAC, ¶¶43-46.)  Again, because Plaintiff's "evaporated cane

9   juice" claims would not exist but for the FDA regulations and non-binding guidance, which

10  would not exist without the FDCA, Plaintiff's claims "exist solely by virtue of the FDCA"

11  and, therefore, are impliedly preempted under *Perez*.

12        Moreover, none of Plaintiff's claims hinge on any violation of independent state law

13  obligations that pre-dated the FDCA.  Rather, the existence of the FDA regulations and

14  guidance, which would not exist without the FDCA, is a "critical element" in his case.

15  *Buckman*, 531 U.S. at 353 (fraud claims that existed solely by virtue of FDCA disclosure

16  requirements were preempted).  Accordingly, implied preemption applies and the FAC

17  should be dismissed.

18        **2.      Plaintiff's claims are impliedly preempted because they conflict with
              the FDCA's enforcement scheme which bars private enforcement.**

19

20        Plaintiff's state law claims under the UCL, FAL, and CLRA are an improper attempt

21  to bring a private cause of action based on alleged violations of the FDCA.  Though

22  Plaintiff purports to base his consumer protection claims on alleged violations of the

23  Sherman Law, it is clear that his claims are actually rooted in the FDCA.  Neither the

24  FDCA nor the Sherman law provide for a private right of action, however.

25        The FDCA explicitly reserves enforcement power to the federal government: "all

26  such proceedings for the enforcement, or to restrain violations, of this Act [21 USCS §§

27  301 et seq.] shall be by and in the name of the United States."  21 U.S.C. § 337(a).  As

28  the Ninth Circuit has recognized, "[t]he FDA is responsible for investigating potential

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

1   violations of the FDCA, and the Act provides the agency with a range of enforcement

2   mechanisms, such as injunction proceedings, civil and criminal penalties, and seizure."

3   *Perez*, 711 F.3d at 1119; 21 U.S.C. §§ 332-34, 372.  Similarly, the Sherman Law

4   expressly entrusts California's Attorney General with the power to enforce the law:  "The

5   Attorney General or any district attorney, on behalf of the department, may bring an

6   action in superior court and the court shall have jurisdiction upon hearing and for cause

7   shown, to grant a temporary or permanent injunction restraining any person from violating

8   any provision of this part."  Cal. Health & Saf. Code § 111900.

9          Plaintiffs cannot use California's consumer protection laws to make an "end run"

10  around the FDCA's bar to private actions.  *See, e.g., In re Epogen Aranesp Off-Label*

11  *Marketing & Sales Practices Litigation*, 590 F. Supp. 2d 1282, 1290-91 (C.D. Cal.

12  2008)(plaintiffs could not use other federal statutes or state unfair competition laws as

13  vehicle to bring private cause of action based on violations of FDCA); *Hartless v. Clorox*

14  *Co.*, No. 06CV2705-JAH(CAB), 2007 U.S. Dist. LEXIS 81686, at *12-13 (S.D. Cal.

15  2007)(plaintiff precluded from using Federal Insecticide, Fungicide, and Rodenticide Act

16  as predicate for UCL claim based on Congress' express rejection of private actions to

17  enforce Act); *Photomedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010)(Lanham Act

18  does not create private right of action for FDCA violation when FDA has not concluded

19  there was such violation); *Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, 902

20  F.2d 222 (3d Cir. 1990)(Lanham Act does not create private right of action where FDCA

21  and FTC Act do not).  Because these claims conflict with the FDCA's bar to private

22  enforcement of the statute, the FAC should be dismissed based on the doctrine of

23  implied preemption.

24          **3.      Plaintiff's claims are expressly preempted because they depend on
                      non-binding FDA guidance and policies that are not identical to the**

25                    **FDCA's labeling requirements.**

26          The FDCA, as amended by the NLEA, expressly preempts Plaintiff's "evaporated

27  cane juice" and "all natural" claims because they are rooted in non-binding FDA guidance

28  and policies that are not identical to the labeling requirements of the FDCA.  The NLEA's

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

1   express preemption provision states that, "no state . . . may directly or indirectly establish

2   . . . any requirement . . . made in the . . . labeling of food that *is not identical to*" numerous

3   FDCA requirements, including several of the "misbranding" provisions under 21 U.S.C. §

4   343.  21 U.S.C.§ 343-1(a)(emphasis added).  The obvious purpose of this express

5   preemption provision is to create uniform national standards regarding the labeling of

6   food, thereby avoiding 50 different food labels representing 50 different disclosure

7   requirements.  *See Turek v. General Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011); *see*

8   *also Meaunrit v. Lozano*, No. C 09-04555-CW, 2010 U.S. Dist. LEXIS 43858, at *19-20

9   (N.D. Cal. 2010)(in adulterated food case, court recognized that jury might not evaluate

10  food labels in same way as USDA).

11          The Ninth Circuit's recent decision in *Perez* rejected a similar attempt to pursue

12  state law claims in contravention of an indistinguishable express preemption provision.  In

13  that case, the Ninth Circuit reviewed the plaintiff's common law fraud claims in light of the

14  Medical Device Amendments (MDA) to the FDCA, which include an express preemption

15  provision precluding the states from establishing any requirements that are "different

16  from, or in addition to, any requirement applicable under this chapter to the device . . ."

17  *Perez*, 711 F.3d at 1117 (citing 21 U.S.C. § 360k(a)).  There, the plaintiff's fraud by

18  omission claim improperly depended on a disclosure requirement that was "different

19  from, or in addition to" the applicable federal requirements.  *Id.* at 1118-19; *see also*

20  *Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1232 (9th Cir. 2013).  Further, he "effectively

21  [sought] to write in a new provision to the FDCA."  *Perez,* 711 F.3d at 1118-19.

22  Accordingly, his claim was expressly preempted by the MDA.  *Id.* (discussing preemption

23  analysis under the MDA in *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996), *Riegel v.*

24  *Medtronic, Inc.*, 552 U.S. 312 (2008), and *Stengel*, 704 F.3d 1224).  The Ninth Circuit

25  thus declined to pass judgment on whether it would be wise for the FDA to adopt the rule,

26  satisfied for its inquiry that the FDA had not done so.  *Id.* at 1119.

27          The Ninth Circuit's analysis in *Perez* applies equally to Plaintiff's claims.  The

28  express preemption provision at issue here is strikingly similar to the one applied in

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

5193549.1

1    *Perez*.  The NLEA expressly preempts state law requirements that are "not identical to"

2    relevant FDCA requirements, while the MDA expressly preempts state law requirements

3    that are "different from, or in addition to" relevant FDCA requirements.  *Compare* 21

4    U.S.C. § 343-1(a) to 21 U.S.C. § 360k(a).  "Identical" means "being the same."  <u>Merriam-</u>

5    <u>Webster's Collegiate Dictionary</u> 575 (10th ed. 1998).  Obviously, if a state law

6    requirement is different from, or in addition to, a federal requirement, it is not the same as

7    the federal requirement.

8        Plaintiff seeks to impose labeling requirements that are "not identical to" the FDA's

9    labeling requirements.  In particular, Plaintiff's claims are rooted in non-binding policy

10   statements related to the use of "evaporated cane juice" and "all natural" that do not

11   appear in any FDA regulations.  Even though Plaintiff purports to rely on the Sherman

12   Law's identical provisions, *e.g.*, the food additive regulations, color additive regulations,

13   and food labeling regulations, these regulations do not prohibit Blue Diamond's use of the

14   terminology at issue.  (FAC, ¶¶ 31, 42, 64-75 (citing numerous provisions of the Sherman

15   Law).)  Rather, it is non-binding policy statements and draft guidance that Plaintiff

16   actually asks this Court – and ultimately a jury – to impose as law.  (*Id.*, ¶¶ 33, 46.)  As

17   explained below, these policy statements and draft guidance are not the same as any

18   legally binding FDA regulations; they are in addition to the FDA regulations cited by

19   Plaintiff.  This is precisely what the Ninth Circuit rejected in *Perez*.  711 F.3d at 1118-19;

20   *see also In re Medtronic*, 623 F.3d at 1205 ("Where a federal requirement permits a

21   course of conduct and the state makes it obligatory, the state's requirement is in addition

22   to the federal requirement and thus is preempted").

23       Moreover, *Perez* was not the first time the Ninth Circuit rejected a plaintiff's

24   request to act when the FDA had not.  The Circuit reached the same conclusion, albeit in

25   determining the preemptive effect of a Lanham Act claim for FDCA violations, in *Pom*

26   *Wonderful LLC v. The Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012).  *Pom Wonderful's*

27   reasoning applies here as well.  Just as "the Lanham Act may not be used as a vehicle to

28   usurp, preempt, or undermine FDA authority," neither the Sherman Act nor the California

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

1   consumer protection statutes may be such a vehicle.  *Pom Wonderful*, 679 F.3d at 1176;

2   *see also Photomedex*, 601 F.3d at 928.  The *Pom Wonderful* Court chose not to tread on

3   the FDA's expert judgment and authority with respect to the particular labeling

4   requirements the plaintiff asked the court to impose when the FDA had not yet spoken as

5   to those particular details.  679 F.3d at 1177.  Similarly, the Court should not so tread on

6   the FDA's authority here.

7           ***Evaporated Cane Juice Claims:***

8           Plaintiff asks this Court – and a jury - to interpret the Sherman Law to prevent Blue

9   Diamond from using "evaporated cane juice" on its labels, even though the Sherman Law

10   does not contain the non-binding FDA policy statements on which Plaintiff relies.  (FAC,

11   ¶¶ 41-53.)  Plaintiff bases his claims on a draft FDA "Guidance for Industry" that merely

12   advises the industry of the FDA's view on the use of the term "evaporated cane juice."

13   (*Id.*, ¶ 46; *see* Exhibit A for complete copy of Guidance for Industry excerpted in FAC.)

14   The draft guidance is neither an FDA regulation nor binding law but, rather, represents

15   the FDA's current thinking on the topic as well as the FDA's current policy.  21 C.F.R. §

16   10.115; Ex. A.  As the FDA stated, the guidance "should be viewed only as

17   recommendations, unless specific regulatory or statutory requirements are cited."[1]  (*Id.*)

18   Because this FDA guidance is non-binding, it cannot be one of the FDCA regulations that

19   the Sherman Law has adopted as its own regulation.  *See* Cal. Health & Saf. Code

20   §§ 110085, 110090, 110100; 21 C.F.R. § 10.115.  Thus, it cannot form the basis for

21   Plaintiff's Sherman Law claims.  To the extent that Plaintiff asks this Court to write this

22   FDA guidance into the Sherman Law, Plaintiff improperly seeks to add a non-identical

23   _____

24   [1]  The draft guidance provides, in pertinent part, as follows: "FDA's guidance documents,
     including this guidance, do not establish legally enforceable responsibilities.  Instead,
25   guidance documents describe the Agency's current thinking on a topic and should be
     viewed only as recommendations, unless specific regulatory or statutory requirements
26   are cited.  The use of the word *should* in Agency guidance means that something is
     suggested or recommended, but not required."  (Ex. A.)
27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

labeling requirement to the Sherman Law's provisions.  This Plaintiff cannot do.

Accordingly, Plaintiff's claims that seek to impose this additional, non-identical labeling

requirement on Blue Diamond when it is not set forth in the FDCA are expressly

preempted by the FDCA.

### *All Natural Claims:*

Plaintiff is also asking this Court – and a jury - to interpret the Sherman Law to

prescribe when the term "all natural" may be used on a product label.  (FAC, ¶¶ 30-40.)

To support his claims, Plaintiff relies on FDA policy "regarding the use of 'natural,' as

meaning that nothing artificial or synthetic (including all color additives regardless of

source) has been included in, or has been added to, a food that would not normally be

expected to be in the food."  (FAC, ¶ 33 (citing 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993)).)

Again, this FDA policy is not regulation or binding law and, therefore, cannot form the

basis for Plaintiff's Sherman Act claims.  58 Fed. Reg. at 2407.

The FDA restated this policy after soliciting, reviewing, and considering comments

from consumers and the industry in determining whether to proceed in developing a

definition for the term "natural."  *Id.*; 56 Fed. Reg. 60421, 60466 (Nov. 27, 1991).

Although the FDA stated its continued belief that adequately defining the term "natural"

could abate the ambiguity surrounding the use of the term, the FDA ultimately decided

not to undertake rulemaking to establish a definition for "natural" at that time.[2]  58 Fed.

Reg. at 2407.  The FDA's only reasons for not doing so were "resource limitations and

other agency priorities."  *Id.*

---

[2]  The FDA policy statement provides, in pertinent part, as follows:  "After reviewing and
considering the comments, the agency continues to believe that if the term "natural" is
adequately defined, the ambiguity surrounding use of this term that results in misleading
claims could be abated.  However, as the comments reflect, there are many facets of this
issue that the agency will have to carefully consider if it undertakes a rulemaking to
define the term "natural."  Because of resource limitations and other agency priorities,
FDA is not undertaking rulemaking to establish a definition for "natural" at this time."  58
Fed. Reg. at 2407.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

1    Again, because this FDA policy is non-binding, it cannot be one of the FDCA

2    regulations that the Sherman Law has adopted as its own regulation.  *See* Cal. Health &

3    Saf. Code §§ 110085, 110090, 110100.  Therefore, it cannot form the basis for Plaintiff's

4    Sherman Law claims.  Moreover, the FDA's indication that resource limitations and other

5    priorities kept it from issuing rulemaking on this issue is not a relinquishing of the FDA's

6    regulatory authority or license for the judiciary to act in the FDA's stead.  It would thus be

7    improper for a court to write this non-binding FDA policy into the Sherman Law.

8    Accordingly, Plaintiff's attempt to impose this additional, non-identical labeling

9    requirement on Blue Diamond when it is not set forth in the FDCA must be denied based

10   on express preemption.

11   Accordingly, because Plaintiff's claims depend on these non-identical, non-binding

12   policy statements and guidance, they are expressly preempted by the FDCA.  Just as it

13   was sufficient for the Ninth Circuit's inquiry in *Perez* and *Pom Wonderful* that the FDA

14   had not adopted the requirements the plaintiffs sought to impose, this Court should

15   similarly decline Plaintiff's request here to proceed to a jury on non-binding FDA policy

16   statements and guidance that are not identical to any FDA requirements.

17           **4.      The FAC should be dismissed to allow the FDA to resolve Plaintiff's
18                     questions regarding the use of "all natural" and "evaporated cane
                      juice" on food product labels.**

19   Rather than allowing this case to proceed to a jury trial, the Court should apply the

20   primary jurisdiction doctrine and dismiss the FAC to allow the FDA to resolve the issues

21   presented by Plaintiff's claims.  The doctrine applies in cases like this one where there is:

22   "(1) [a] need to resolve an issue that (2) has been placed by Congress within the

23   jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute

24   that subjects an industry or activity to a comprehensive regulatory authority that (4)

25   requires expertise or uniformity in administration . . ."  *Clark v. Time Warner Cable*, 523

26   F.3d 1110, 1115 (9th Cir. 2008)(citations omitted).  The specific questions presented in

27   this case – whether it is permissible for Blue Diamond to label its food products with the

28   phrase "all natural" and to list the ingredient "evaporated cane juice" – are within the

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

1    FDA's regulatory jurisdiction.  Indeed, the FDA has already spoken on both issues

2    through a draft guidance and policy statements, thereby evidencing its authority over the

3    subject matter.  58 Fed. Reg. at 2407; 56 Fed. Reg. at 60466; Ex. A.  This case presents

4    the classic "policy questions that should be addressed in the first instance by the agency

5    with regulatory authority over the relevant industry rather than by the judicial branch."

6    *Clark*, 523 F.3d at 1114.  Moreover, there is no doubt that uniformity is required.  Several

7    cases have been filed in this jurisdiction alone challenging the use of "all natural" on food

8    labels.  The risk of inconsistent jury verdicts is, by itself, sufficient reason for this Court to

9    stop this case from proceeding.  Accordingly, this Court should exercise its discretion and

10   dismiss this case based on the FDA's primary jurisdiction to determine the issues

11   presented.

12   **B.      Plaintiff Lacks Standing To Challenge Products He Did Not Buy**

13          Plaintiff cannot satisfy the requirements for standing with respect to products he

14   never purchased.  To establish Article III standing, Plaintiff must plead and prove "injury

15   in fact," causation, and redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-

16   61 (1992).  "Injury in fact" requires damage to "a legally protected interest which is (a)

17   concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."

18   *Id.* (citations omitted).  Similarly, the UCL and the FAL require Plaintiff to demonstrate

19   that he "has suffered injury in fact and has lost money or property as a result of" Blue

20   Diamond's alleged conduct in order to establish standing and to serve as a class

21   representative.  Cal. Bus. & Prof. Code §§ 17203-04, 17535.  The CLRA also requires

22   Plaintiff to show that he has suffered damage as a result of Blue Diamond's alleged

23   conduct.  Cal. Civ. Code § 1780.  Further, Plaintiff must show that he was personally

24   injured, "not that injury has been suffered by other, unidentified members of the class" to

25   which he belongs and purports to represent.  *Warth v. Seldin*, 422 U.S. 490, 502 (U.S.

26   1975)(citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).  Standing is properly raised in

27   a Rule 12(b)(1) motion to dismiss.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d

28   1115, 1122 (9th Cir. 2010).

1    In the FAC, Plaintiff alleges to have purchased just one product, though he seeks

2  relief on behalf of himself and a nationwide class of consumers for twenty additional

3  products[3] that he never bought.  (FAC, ¶¶ 2-4, 8.)  Plaintiff cannot be injured by products

4  he never purchased, however.  He cannot establish the "requisite *pecuniary* injury" where

5  he did not himself purchase the products at issue.  *Lanovaz v. Twinings N. Am., Inc.*, No.

6  C-12-02646-RMW, 2013 U.S. Dist. LEXIS 25612, at *5 (N.D. Cal. Feb. 25, 2013); *see*

7  *also Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C-10-01044 JSW, 2011 U.S. Dist.

8  LEXIS 6371, at *7-8 (N.D. Cal. Jan. 10, 2011)(claims as to products plaintiff did not

9  purchase were dismissed for lack of standing); *Johns v. Bayer Corp.*, No. 09CV1935

10  DMS (JMA), 2010 U.S. Dist. LEXIS 10926, at *13 (S.D. Cal. Feb. 9, 2010)(plaintiff

11  "cannot expand the scope of his claims to include a product he did not purchase").

12    Accordingly, Plaintiff's claims with respect to twenty products that he never

13  purchased must be dismissed.

14  **C.    Plaintiff Has Not Pled His Case with the Requisite Particularity Under Federal
       Rule of Civil Procedure 9(b)**

15

16    The FAC does not meet the heightened pleading requirements of Federal Rule of

17  Civil Procedure 9(b).  Because Plaintiff alleges that Blue Diamond engaged in a scheme

18  of false advertising that allegedly violated the UCL, FAL, and CLRA (FAC, ¶¶ 126-127,

19  134-135), the entire FAC must be pled with particularity.  *Kearns v. Ford Motor Co.*, 587

20  F.3d 1120, 1125-27 (9th Cir. 2009); *see also Edmunson v. Procter & Gamble Co.*, No.

21  10-CV-2256-IEG (NLS), 2011 U.S. Dist. LEXIS 53221, at *16 (C.D. Cal. May 17,

22  2011)(citations omitted)("claims under CLRA and the UCL are subject to Rule 9 if they

23  are 'grounded in fraud' . . . and allegations of false representation and nondisclosure are

24  grounded in fraud").

25  _____

26  [3]  Plaintiff lists twenty Substantially Similar Products in paragraph 4 of the FAC, though it
    is unclear from the FAC whether the Purchased Product is the same as any one of the
27  Substantially Similar Products.

28

5193549.1

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

1    To satisfy Rule 9(b), the allegations must be "specific enough to give defendants

2  notice of the particular misconduct which is alleged to constitute the fraud charged so that

3  they can defend against the charge and not just deny that they have done anything

4  wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  The standard of

5  particularity is typically satisfied by pleading "'the who, what, when, where, and how' of

6  the misconduct charged."  *Kearns*, 587 F.3d at 1125-27 (citing *Vess v. Ciba-Geigy Corp.*

7  *USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  Thus, claims sounding in fraud must allege

8  "an account of the 'time, place, and specific content of the false representations as well

9  as the identity of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d

10  756, 764 (9th Cir. 2007)(citation omitted).  The plaintiff must also set forth what is false or

11  misleading about a statement and why it is false.  *Decker v. Glenfed, Inc.*, 42 F.3d 1541,

12  1548 (9th Cir. 1994)(*superseded by statute on other grounds*).

13    Plaintiff's allegations regarding the Purchased Product fail to satisfy Rule 9(b)

14  because the FAC does not specifically allege *what* product Plaintiff actually purchased

15  and *when* he purchased the product.  The FAC repeatedly alleges that Plaintiff

16  purchased Blue Diamond's Almond Breeze Chocolate Almond Milk product (FAC, ¶¶ 2,

17  16, 54, 77); however, the FAC concedes that Blue Diamond sells both refrigerated and

18  shelf stable versions of its Chocolate Almond Milk product and fails to specify which

19  version Plaintiff actually purchased.  (*Id.*, ¶ 4.)  In addition, despite agreeing to try to cure

20  the deficiencies in his original complaint to specify when he purchased Blue Diamond's

21  products, Plaintiff fails to do so in the FAC.  (Dkt. No. 36.)  Rather than specify when and

22  how many products he purchased, Plaintiff generically alleges that he bought the

23  Purchased Product sometime during the proposed Class Period.  (FAC, ¶¶ 16, 54.)  Such

24  generic and vague allegations are insufficient to satisfy Rule 9(b).  *Edmunson*, 2011 U.S.

25  Dist. LEXIS 53221 at *16 (dismissing false advertising claims where plaintiff failed to

26  allege "when during the class period, where, how many, or how many times" plaintiff

27  purchased the products at issue); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117,

28  1124 (C.D. Cal. 2010) (same); *see also Eromon v. Grand Auto Sales, Inc.*, 351 F. Supp.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

2d 825, 828 (N.D. Ill. 2004) ("The heightened standard [under Rule 9(b)] requires more than an allegation that the fraud occurred sometime during a period of months or years"). Therefore, Plaintiff's allegations regarding the Purchased Product are deficient.

Plaintiff's allegations regarding the Substantially Similar Products that have been labeled "All Natural" are equally deficient because they fail to identify the specific "artificial or synthetic ingredients, flavorings, coloring, and/or chemical preservatives" that Plaintiff claims make the products unnatural.  While the FAC specifies which ingredients purportedly make the Purchased Product label false and misleading (FAC, ¶¶ 57-58, 60-62), the FAC does not contain any specific factual allegations regarding how the "All Natural" statement on the Substantially Similar Products is false or misleading.  (FAC, ¶ 4 (generically stating that the Substantially Similar Product labels violate the same provisions of the Sherman Law and have the same label representations as the Purchased Product label).)  Indeed, the FAC is completely silent with respect to which ingredients, if any, that are contained in the Substantially Similar Products are not natural.  Therefore, Plaintiff has failed to satisfy Rule 9(b) and his "All Natural" claims regarding the Substantially Similar Products should be dismissed.

Lastly, to the extent that Plaintiff is attempting to base any of his claims on statements made by Blue Diamond on its website, such allegations fall woefully short of Rule 9(b)'s heightened pleading standard.  (*See* FAC, ¶¶ 13, 15(c), 49, 62-63.)  Rule 9(b) requires Plaintiff to state clearly the statements on which he and the purported class relied.  The FAC, however, makes the bald assertion that Blue Diamond made "unlawful health claims on its website" without stating:  (1) what those statements allegedly were; (2) who viewed and relied on such statements; (3) when those statements were allegedly made; and (4) how the statements were false or misleading.  Plaintiff's factually devoid allegations regarding Blue Diamond's alleged website statements therefore fail to satisfy Rule 9(b) and should be dismissed.

5193549.1

**D.     Plaintiff is Precluded from Bringing Claims Under California Law on Behalf of a Nationwide Class**

Plaintiff cannot assert claims under California's consumer protection statutes (UCL, FAL, and CLRA) on behalf of a nationwide class of consumers that allegedly suffered harm outside of California.  (*Id.*, ¶¶ 8, 86).  In examining class action claims brought under the UCL, FAL, and CLRA in *Mazza v. American Honda Motor Co.*, the Ninth Circuit held that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."  666 F.3d 581, 594 (9th Cir. 2012).  As in *Mazza*, Blue Diamond is headquartered in California and its alleged misrepresentations originated from California, but the alleged harm suffered by putative class members residing outside of California in this case occurred in their home states.  Because Plaintiff's causes of action are identical to those in *Mazza*, Plaintiff's nationwide class action claims should be stricken pursuant to the Ninth Circuit's reasoning in *Mazza*.

The prevailing view is that "the principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss."  *Frezza v. Google, Inc.*, No. 5:12-cv-00237-RMW, 2013 U.S. Dist. LEXIS 57462, at *17-18 (N.D. Cal. April 22, 2013); *contra Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012).  Indeed, in *Banks v. Nissan North America, Inc.*, No. C 11-2022-PJH, 2012 U.S. Dist. LEXIS 37754, at *3 (N.D. Cal. Mar. 20, 2012), Judge Hamilton granted defendant's motion to dismiss plaintiff's nationwide UCL and CLRA class action claims based expressly on the Ninth Circuit's decision in *Mazza*.  Other decisions from district courts in the Ninth Circuit are in accord.  *See Littlehale v. Hain Celestial Group, Inc.*, No. C 11-6342 PJH, 2012 U.S. Dist. LEXIS 162530, at *5-6 (N.D. Cal. July 2, 2012) (plaintiff's UCL, FAL, and CLRA claims were dismissed under *Mazza* because of material differences in the consumer protection laws of Pennsylvania and California); *see also Koehler v. Litehouse, Inc.*, No. CV 12-04055-SI, 2012 U.S. Dist. LEXIS 176971, at *18-19 (N.D. Cal. December 13, 2012).(dismissing UCL, FAL, and CLRA claims under Rule 12(b)(6) because the absent

1   class members who purchased products outside California "do not have the requisite

2   contacts with California"); *In re: Sony Gaming Networks and Customer Data Security*

3   *Breach Litig.*, 903 F. Supp. 2d 942, 964-65 (S.D. Cal. 2012) (same).  Because the choice

4   of law analysis in *Mazza* is equally applicable here and no additional factual development

5   is needed (*Mazza*, 666 F.3d at 590-94), the Court should strike Plaintiff's nationwide

6   class allegations.

7   **E.    Plaintiff's Prayer For Monetary Remedies Under The CLRA Should Be
           Stricken Because Plaintiff Did Not Seek Leave To Amend On This Basis**

8

9          To comply with Rule 15, Plaintiff should have obtained leave to add to his prayer

10   for relief a request for monetary remedies under the CLRA, or sought Defendant's

11   consent, but did not.  Fed. R. Civ. P. 15(a)(2).  Although Plaintiff's original complaint filed

12   on May 29, 2012 contained a CLRA claim, it did not seek monetary remedies because

13   Plaintiff had not provided the requisite 30-day notice and demand in order to do so.  Cal.

14   Civ. Code § 1782.  Despite later providing the requisite notice and demand, Plaintiff failed

15   to amend his complaint to include a request for damages under the CLRA by the

16   December 20, 2012 deadline imposed by the Court.  (Dkt. No. 24.)  Further, the parties'

17   May 10, 2013 stipulation, approved by Court order on May 13, 2013, did not address any

18   potential amendment for this purpose.  (Dkt. Nos. 36 and 37.)  Thus, Plaintiff's request for

19   monetary relief should be dismissed.  *See Sato v. Wachovia Mortgage, FSB*, 2012 U.S.

20   Dist. LEXIS 46554, at *14 (N.D. Cal. 2012).

21                           **VI.    CONCLUSION**

22          The First Amended Complaint suffers from jurisdictional defects from which it

23   cannot recover.  First, Plaintiff's claims, which exist solely by virtue of federal law and

24   policy, are expressly and impliedly preempted by the FDCA.  Plaintiff cannot use the

25   state consumer protection laws, or the state food, drug, and cosmetic law, to enforce the

26   regulations or non-binding guidance and policy statements of the FDA.  These questions

27   are for the FDA, not a California jury, to answer.  As an alternative basis for dismissal,

28   this Court may defer to the FDA's primary jurisdiction to determine Plaintiff's labeling

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

1    claims regarding "all natural" and "evaporated cane juice" because these issues are

2    within the FDA's regulatory authority and present a classic policy question that should be

3    answered by the FDA rather than the judicial branch.  Second, Plaintiff lacks the requisite

4    injury in fact to establish standing under Article III or California's consumer protection

5    laws for claims as to products he did not purchase.

6         The First Amended Complaint also suffers from inadequate pleading.  For

7    Plaintiff's "all natural" claims as to products he did not purchase, he has failed to satisfy

8    Rule 9(b)'s heightened pleading standard by failing to specify the particular ingredients

9    that are not natural.  Plaintiff also fails to provide the requisite specificity as to the "when"

10   and "how much" with respect to the product he allegedly purchased.  Additionally, Plaintiff

11   fails to clearly state which website statements he allegedly relied on.  Moreover, Plaintiff

12   failed to seek leave to pray for monetary relief under the CLRA and, therefore, his prayer

13   for same should be stricken.

14        Finally, the First Amended Complaint inappropriately seeks relief on behalf of a

15   nationwide class even though the California consumer protection laws cannot support

16   claims by consumers who purchased products in other states.  Plaintiff's request for a

17   nationwide class should thus be stricken.

18        Accordingly, for the foregoing reasons, Blue Diamond Growers asks that the Court

19   dismiss Plaintiff's First Amended Complaint with prejudice or, in the alternative, grant its

20   motion to strike, and grant such other and further relief as this Court deems just and

21   proper.

22

23   DATED: June 24, 2013                    HANSON BRIDGETT LLP

24

25                                           By:  /S/ Megan Oliver Thompson
                                                  LAWRENCE M. CIRELLI
26                                                MEGAN OLIVER THOMPSON
                                                  GEOFFREY R. PITTMAN
27                                                Attorneys for Defendant Blue Diamond
                                                  Growers
28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES