United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| CHRIS WERDEBAUGH, individually and on behalf of all others similarly situated, | ) ) ) | Case No.: 12-CV-02724-LHK |
| Plaintiff, | ) ) ) | ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE |
| v. | ) ) | |
| BLUE DIAMOND GROWERS, | ) ) | |
| Defendant. | ) ) ) ) | |

Plaintiff Chris Werdebaugh ("Werdebaugh" or "Plaintiff") brings this putative class action against Blue Diamond Growers ("Blue Diamond" or "Defendant"), alleging that Defendant's package labeling is unlawful and deceptive and thus misbranded in violation of federal and state law. Defendant moves to dismiss Werdebaugh's First Amended Complaint and moves to strike Werdebaugh's claim for damages under the California Consumers Legal Remedies Act, Cal. Civ. Code ("CLRA") §§ 1750 *et seq.*, ("Mot.") ECF No. 46; Werdebaugh opposes, ("Opp'n") ECF No. 48; and Blue Diamond replies, ("Reply") ECF No. 58. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby DENIES Defendant's Motion to Dismiss the First Amended Complaint and DENIES Defendant's Motion to Strike Plaintiff's CLRA damages claim.

United States District Court

For the Northern District of California

# I.    BACKGROUND

## A.    Factual Allegations

Blue Diamond is a California corporation and a leading producer of almond milk products and snack foods. *See* First Am. Compl. ("FAC") ¶¶ 4, 17-18. Blue Diamond sells its products to consumers via grocery and other retail stores throughout the United States. *Id*. ¶¶ 17-18.

Werdebaugh is a California consumer who "cares about the nutritional content of food and seeks to maintain a healthy diet." *Id*. ¶¶ 16, 77. Since April 11, 2008, Werdebaugh has purchased more than $25.00 of Defendant's Almond Breeze Chocolate Almond Milk ("Purchased Product"), *id*. ¶ 77, the label of which, Werdebaugh contends, bears "false and misleading" label claims, *id*. ¶ 7. Specifically, the FAC alleges that false and misleading statements on the Purchased Product include: (1) "[r]epresenting food products to be 'All Natural,' when they contain chemical preservatives, synthetic chemicals, added artificial color and other artificial ingredients," (2) "[m]aking unlawful and misleading 'evaporated cane juice' claims," and (3) "[m]aking unlawful health claims on [Blue Diamond's] website." *Id*. ¶ 15. In his Opposition, however, "Plaintiff expressly states that he is not asserting a claim on website representations." Opp'n at 21. Because Werdebaugh has affirmatively abandoned any claims based on representations on Defendant's websites, the Court DISMISSES these claims with prejudice. The Court will consider only Plaintiff's "All Natural" and evaporated cane juice claims.

Werdebaugh asserts that he "read and reasonably relied on the labels on Defendant's Purchased Product before purchasing it." FAC ¶ 78. He further claims that he "based and justified the decision to purchase Defendant's product, in substantial part, on the label." *Id*. Finally, Werdebaugh asserts that he "did not know, and had no reason to know that the Purchased Product was unlawful and misbranded," and that he "would not have bought the product had he known the truth about it." *Id*. ¶ 79.

Werdebaugh also contends that numerous other Blue Diamond products (collectively, the "Substantially Similar Products") "make the same label misrepresentations [and] . . . violate the same regulations of [federal and California law]" as the Purchased Product. *Id*. ¶ 3. These Substantially Similar Products include (a) eleven "products labeled with the ingredient 'evaporated

2

**United States District Court**
For the Northern District of California

1   cane juice,'" and (b) eighteen "products labeled 'All Natural' despite containing artificial or

2   synthetic ingredients, flavorings, coloring, and/or chemical preservatives." *See id.* ¶ 4 (listing the

3   Substantially Similar Products by name).

4                         **1.**      **Evaporated Cane Juice Claims**

5        Werdebaugh alleges that Blue Diamond's use of the term 'evaporated cane juice' as an

6   ingredient on the package labels of the Purchased Product and Substantially Similar Products

7   violates federal regulation and California law. *See id.* ¶¶ 41-53. Specifically, Werdebaugh contends

8   that Defendant's use of the term evaporated cane juice violates: (a) the FDA's definition of the

9   term "juice;" (b) the FDA's requirements for identifying cane syrup on food labels; and (c) the

10  FDA's blanket requirement that foods must be referred to by their common or usual names and not

11  by names "confusingly similar to the name of another food that is not reasonably encompassed

12  within the same name." *Id.* ¶¶ 43-46 (quoting 21 C.F.R. § 102.5(a)).

13       First, according to Werdebaugh, 21 C.F.R. § 120.1(a) defines "juice" as "the aqueous liquid

14  expressed or extracted from one or more *fruits or vegetables*, purees of . . . *fruits or vegetables*, or

15  any concentrates of such liquid or puree." *Id.* ¶ 46 (emphasis added) (quoting FDA October 2009

16  Guidance for Industry Letter) (internal quotation marks omitted). As sugar cane is not a fruit or

17  vegetable, Werdebaugh claims, any liquid or syrup derived from sugar cane cannot lawfully be

18  identified as "juice." *Id.* ¶¶ 46, 63. Second, Werdebaugh asserts, federal regulations not only

19  proscribe identifying sugar cane and cane syrup as "juice," but mandate that it be identified as

20  "sugar" or "syrup." *Id.* ¶¶ 42, 46, 63 (citing 21 C.F.R. §§ 101.4(b)(20) (sugar); 168.130 (cane

21  syrup)). Finally, Werdebaugh alleges that use of the term evaporated cane juice violates the FDA's

22  requirement that ingredients be described by their common or usual names, as established by

23  regulation or common usage. *Id.* ¶¶ 43-44 (citing 21 C.F.R. §§ 101.4(b)(20), 102.5(d)). Because

24  evaporated cane juice is "'confusingly similar to the name of [another] food that is not reasonably

25  encompassed within the same name,'" Werdebaugh contends that the term cannot satisfy the

26  FDA's common name or usage requirement. *Id.* ¶ 45 (quoting 21 C.F.R. § 102.5(a)).

27       The FAC alleges that the FDA's intention to regulate evaporated cane juice based on these

28  requirements is expressed in an October 2009 Guidance for Industry letter on the topic ("2009

3

Guidance"), *see id*. ¶ 46; *see also* Ex. U, as well as in "warning letters to the industry" on this issue, FAC ¶ 28.

### 2.      "All Natural" Claims

Werdebaugh also alleges that Blue Diamond's use of the term "All Natural" on the Purchased Product and Substantially Similar Products violates federal regulations and California law. *See id*. ¶¶ 30-40. Werdebaugh claims that 21 C.F.R. § 101.22 requires that "natural" may only be used on a label where "nothing artificial or synthetic (including all color additives regardless of source) has been included in[] or . . . added to" the food. *Id*. ¶¶ 32-33. According to Werdebaugh, the FDA has "repeatedly affirmed" this policy in regulatory publications, *see* 58 Fed. Reg. 2302-01, 2407 (Jan. 6, 1993), policy guidelines, *see* FDA Compliance Policy Guide § 587.100, and "numerous warning letters." *See* FAC ¶¶ 33, 35-36. Moreover, Werdebaugh claims, a reasonable consumer would expect that under the "common use" of the word "natural," products labeled "All Natural" "do not contain synthetic, artificial, or excessively processed ingredients." *Id*. ¶ 38.

Werdebaugh asserts that six artificial ingredients are present in the Purchased Product and Substantially Similar Products labeled "All Natural," including "coco (Dutch process), potassium citrate, Vitamin A Palmitate, Vitamin D-2 and Vitamin D-Alpha-Tocopherol." *Id*. ¶ 62; *see also* ¶ 85 ("the [Substantially Similar Products] have the same claims and share the same label representations . . . as the Purchased Product"). Werdebaugh contends that Defendant's claim that the Purchased Product and certain Substantially Similar Products are "All Natural," when in fact they contain the "artificial ingredients and flavorings, artificial coloring[,] and chemical preservatives" listed above, is "false and misleading" in violation of federal regulation and California law. *Id*. ¶¶ 31, 37.

### B.      Putative Class Claims

Werdebaugh seeks to bring this putative class action, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), on behalf of the following proposed class:

> All persons in the United States who, within the last four years, purchased Defendant[']s[] almond milk and substantially related products (1) labeled 'All Natural' despite containing artificial or synthetic ingredients, flavorings, coloring and/or chemical preservatives and/or (2) labeled with the ingredient 'EVAPORATED CANE JUICE.'

1    *Id.* ¶ 86.

2           Werdebaugh alleges that by manufacturing, advertising, distributing, and selling

3    misbranded products, Defendant has violated California Health & Safety Code Sections 110390,

4    110395, 110398, 110400, 110660, 110720, 110725, 110735, 110740, 110760, 110765, and

5    110770. *See* FAC ¶¶ 64-75. In addition, Werdebaugh asserts that Defendant has violated the

6    standards set by 21 C.F.R. §§ 101.4(a)(1), 101.22, 101.30, 102.5(a), 102.5(d), and 120.1(a), as well

7    as by 21 U.S.C. § 343, which have been incorporated by reference into California's Sherman Food,

8    Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code §§ 109875 *et seq. See* FAC

9    ¶¶ 26-27, 76; *see also* Cal. Health & Safety Code § 110100 ("All food labeling regulations and any

10   amendments to those regulations adopted pursuant to [federal statutes governing food labeling] in

11   effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this

12   state.").

13          Based on these alleged regulatory and statutory violations, Werdebaugh's FAC alleges the

14   following causes of action: (1) violation of California's Unfair Competition Law ("UCL"), Cal.

15   Bus. & Prof. Code §§ 17200 *et seq.*, for unlawful, unfair, and fraudulent business acts and practices

16   (claims 1, 2, and 3); (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof.

17   Code §§ 17500 *et seq.*, for misleading, deceptive, and untrue advertising (claims 4 and 5); and (3)

18   violation of the CLRA, Cal. Civ. Code §§ 1750 *et seq.* (claim 6). *See* FAC ¶¶ 96-155.

19          **C.      Procedural History**

20          Werdebaugh filed an Original Complaint on May 29, 2012. ECF No. 1. Blue Diamond filed

21   an Answer on September 25, 2012. ECF No. 20. Following a May 1, 2013 Case Management

22   Conference, the Parties stipulated to Plaintiff filing an amended complaint as well as to the Court

23   dismissing with prejudice claims in the Original Complaint based on the Magnuson-Moss

24   Warranty Act and Song-Beverly Consumer Warranty Act. ECF Nos. 36, 37.

25          On May 24, 2013, Werdebaugh filed his FAC. ECF No. 38. Blue Diamond filed its Motion

26   to Dismiss the FAC on June 24, 2013. ECF No. 46. On July 22, 2013, Werdebaugh filed his

27   Opposition, ECF No. 48, as well as a request that the Court take judicial notice of certain exhibits,

28

**United States District Court**
For the Northern District of California

Case No.: 12-CV-02724-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California

ECF No. 49.[1] Defendant filed its Reply on August 30, 2013. ECF No. 58. In addition to his

Opposition, Werdebaugh has filed three Notices of New Case Law relevant to the pending

Motions. ECF Nos. 54, 60, 62.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant

to Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of subject matter

jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish

subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th

Cir. 2003). If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court

lacks subject matter jurisdiction, and the case must be dismissed. *See Steel Co. v. Citizens for a*

*Better Env't*, 523 U.S. 83, 101-02 (1998). In considering a Rule 12(b)(1) motion, the Court "is not

restricted to the face of the pleadings, but may review any evidence, such as affidavits and

testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United*

*States*, 850 F.2d 558, 560 (9th Cir. 1988). Once a party has moved to dismiss for lack of subject

---

[1] While a district court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, a court may take judicial notice of documents referenced in the complaint, as well as matters in the public record, without converting a motion to dismiss into one for summary judgment. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). A matter may be judicially noticed if it is either "generally known within the territorial jurisdiction of the trial court" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Proper subjects of judicial notice when ruling on a motion to dismiss include materials available on government websites, *see, e.g.*, *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-1166, 2009 WL 6597891, at *2 (S.D. Cal. Dec. 23, 2009), and on other publically accessible websites, *see Caldwell v. Caldwell*, No. 05-4166, 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006).

Plaintiff requests that the Court take judicial notice of twenty-one separate exhibits. *See* ECF No. 49. Defendant does not oppose Plaintiff's request. In accordance with the principles discussed above, the Court GRANTS Plaintiff's Request for Judicial Notice in full. The Court takes notice of Exhibit U, a copy of the FDA's 2009 Guidance regarding the term evaporated cane juice, on the basis that it is available on a government website. The Court notes that Defendant filed this same letter along with its Motion to Dismiss. *See* Mot. at Ex. A. The Court takes notice of Exhibits A-T, twenty separate images from Defendant's websites, www.almondbreeze.com and www.bluediamond.com, on the basis that these images are available on publicly accessible websites. In taking judicial notice of Exhibits A-T, the Court expresses no opinion as to whether these websites constitute part of the "labels" of the Blue Diamond products to which they refer.

Case No.: 12-CV-02724-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction, *see Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010), by putting forth "the manner and degree of evidence required" by whatever stage of the litigation the case has reached, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Barnum Timber Co. v. Envtl. Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011) (at the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts plausibly explaining" why the standing requirements are met).

**B.      Rule 8(a)**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory

7

1    allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."

2    *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

3    Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that

4    [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir.

5    1997) (internal quotation marks and citation omitted).

6        **C.    Rule 9(b)**

7            Claims sounding in fraud or mistake are subject to the heightened pleading requirements of

8    Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with

9    particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor*

10   *Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy Rule's 9(b)'s heightened standard, the

11   allegations must be "specific enough to give defendants notice of the particular misconduct which

12   is alleged to constitute the fraud charged so that they can defend against the charge and not just

13   deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

14   1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific

15   content of the false representations as well as the identities of the parties to the misrepresentations."

16   *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks

17   omitted). The plaintiff must set forth what is false or misleading about a statement, and why it is

18   false." *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by*

19   *statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

20       **D.    Rule 12(f)**

21           Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an

22   insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ.

23   P. 26(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money

24   that must arise from litigating spurious issues by dispensing with those issues prior to trial."

25   *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are

26   generally disfavored and "should not be granted unless the matter to be stricken clearly could have

27   no possible bearing on the subject of the litigation . . . . If there is any doubt whether the portion to

28   be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte*

United States District Court
For the Northern District of California

1   *Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted).

2   "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the

3   light most favorable to the nonmoving party." *Id.* "Ultimately, whether to grant a motion to strike

4   lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, No. 12–

5   846, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi–Craft*

6   *Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

7           **E.      Leave to Amend**

8           If the Court determines that the complaint should be dismissed, it must then decide whether

9   to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

10  "should be freely granted when justice so requires," bearing in mind that "the underlying purpose

11  of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

12  technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation

13  marks omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to

14  'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure

15  deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and]

16  futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir.

17  2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

18  **III.    DISCUSSION**

19          Defendant moves to dismiss Werdebaugh's FAC for four reasons: (1) Plaintiff's claims are

20  preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"), on the bases of implied

21  preemption, express preemption, and the doctrine of primary jurisdiction; (2) Plaintiff lacks

22  standing to challenge the Substantially Similar Products because he did not purchase them; (3)

23  Plaintiff's claims are not pled with the particularity required under Rule 9(b); and (4) California's

24  conflict-of-laws analysis prohibits non-California plaintiffs from bringing a claim under the UCL,

25  FAL, or CLRA. *See* Mot. at i. In addition, Defendant moves to strike Werdebaugh's claim for

26  monetary relief under the CLRA because he did not properly seek leave to amend on that basis. *Id.*

27

28

9

For the reasons stated herein, the Court DENIES Defendant's Motion to Dismiss the FAC and DENIES Defendant's Motion to Strike Werdebaugh's claim for monetary damages under the CLRA.

## A.      Preemption

Defendant contends that Werdebaugh's claims are impliedly preempted because they "exist solely by virtue of the FDCA" and because the FDCA bars private enforcement. In the alternative, Defendant contends that Werdebaugh's claims are expressly preempted because they rely on non-binding policy that is "not identical" to FDCA requirements. Finally, Defendant asserts that all claims should be dismissed in light of the doctrine of primary jurisdiction. For the reasons stated herein, the Court concludes that Plaintiff's claims are not preempted by federal law, and that applying the doctrine of primary jurisdiction is not warranted in this instance.

### 1.      Federal and Statutory Framework

The FDCA, codified at 21 U.S.C. §§ 301 *et seq.*, "gives the FDA the responsibility to protect the public health by ensuring that 'foods are safe, wholesome, sanitary, and properly labeled.'" *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009) (quoting 21 U.S.C. § 393(b)(2)(A)). Section 331 of the FDCA expressly prohibits the misbranding of food in interstate commerce, *see* 21 U.S.C. § 331 (a)-(c), (k), while Section 343 sets forth conditions under which food is considered "misbranded," *see* 21 U.S.C. § 343. In general, a food is "misbranded" if its labeling is "false or misleading in any particular." 21 U.S.C. § 343(a)(1).

In 1990, Congress amended the FDCA with the Nutrition Labeling and Education Act of 1990 ("NLEA"), which imposed additional food labeling requirements. Pub. L. No. 101-535, 104 Stat. 2353 (1990); *see also* H.R. Rep. No. 101-538, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337 (stating that the purpose behind the NLEA was "to clarify and to strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods.").

In addition, through the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that, "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act . . . shall be the food labeling regulations of

10

United States District Court
For the Northern District of California

this state." Cal. Health & Safety Code § 110100. California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. *See, e.g.*, Cal. Health & Safety Code § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular."); Cal. Health & Safety Code § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in . . . 21 U.S.C. § 343(q).").

All of the alleged misbranding violations considered in this case are covered by existing FDA regulations, policies, and guidelines, including "natural" claims, 21 C.F.R. § 101.22; 58 Fed. Reg. 2302-01, 2407 (Jan. 6, 1993); FDA Compliance Policy Guide § 587.1000; "common name" claims, 21 C.F.R. §§ 101.4, 102.5; and ingredient definitions, 21 C.F.R. §§ 101.4(b)(20) (sugar); 120.1 (juice); 168.130 (sugar cane syrup).

## 2.     Implied Preemption

Defendant argues that Werdebaugh's FAC should be dismissed based on implied preemption because his claims "exist solely by virtue of the FDCA" which bars private enforcement of its provisions. *See* Mot. at 7-9. Specifically, Defendant contends that Werdebaugh's evaporated cane juice and "All Natural" claims "would not exist but for the FDA regulations and non-binding policy," and that Werdebaugh therefore "cannot thread the narrow gap through which a state law claim must fit to escape preemption by the FDCA," as required by the Ninth Circuit in *Perez v. Nidek Co.*, 711 F.3d 1109, 1119 (9th Cir 2013). Mot. at 7 (internal quotation marks omitted). Defendant further asserts that Werdebaugh's claims constitute "an improper attempt to bring a private cause of action based on alleged violations of the FDCA." *Id.* at 8.

The Court disagrees. As in previous food labeling cases, the Court finds that the FDCA does not preempt California Sherman Law claims based on requirements identical to FDA regulations. *See, e.g.*, *Gustavson v. Wrigley Sales Co.*, --- F. Supp. 2d ---, 2013 WL 5201190 (N.D. Cal. Sept. 16, 2013); *Bruton v. Gerber Prods. Co.*, --- F. Supp. 2d ---, 2013 WL 4833413 (N.D. Cal. Sept. 6, 2013); *Brazil v. Dole Food Co.* (*Brazil I*), --- F. Supp. 2d ---, 2013 WL 1209955 (N.D. Cal. Mar. 25, 2013).

Case No.: 12-CV-02724-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

**United States District Court**
For the Northern District of California

1    When analyzing the scope of a preemption statute, a court's analysis must "start with the

2 assumption that the historic police powers of the States [are] not to be superseded by the Federal

3 Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S.

4 470, 485 (1996) (internal quotation marks omitted). This approach "is consistent with both

5 federalism concerns and the historic primacy of state regulation of matters of health and safety." *Id.*

6 Therefore, "[p]arties seeking to invalidate a state law based on preemption 'bear the considerable

7 burden of overcoming th[is] starting presumption that Congress does not intend to supplant state

8 law.'" *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227-28 (9th Cir. 2013) (en banc) (quoting *De

9 Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997)) (some internal

10 quotation marks omitted).

11    The presumption against preemption in this case is a strong one. The regulation of health

12 and safety, including laws regulating the proper marketing of food, are traditionally within states'

13 historic police powers. *See Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963)

14 ("States have always possessed a legitimate interest in 'the protection of (their) people against

15 fraud and deception in the sale of food products' at retail markets within their borders.") Indeed,

16 the Supreme Court has stated that "[i]f there be any subject over which it would seem the states

17 ought to have plenary control, and the power to legislate in respect to which . . . it is the protection

18 of the people against fraud and deception in the sale of food products." *Plumley v. Massachusetts*,

19 155 U.S. 461, 472 (1894).

20    The Court also finds it significant that Congress has not set forth a "clear and manifest"

21 statement that it intended state food labeling claims to be subject to implied preemption. *See Chae

22 v. SLM Corp.*, 593 F.3d 936, 944 (9th Cir. 2010) ("We must be cautious about conflict preemption

23 where a federal statute is urged to conflict with state law regulations within the traditional scope of

24 the state's police powers. When we deal with an area in which states have traditionally acted, the

25 Supreme Court has told us to start with the assumption that a state's historic police powers will not

26 be superseded absent a 'clear and manifest purpose of Congress.'" (quoting *Wyeth v. Levine*, 555

27 U.S. 555, 565 (2009))). Indeed, the NLEA explicitly states that the Act "shall *not* be construed to

28

Case No.: 12-CV-02724-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

1    preempt any provision of State law, unless such provision is *expressly* preempted under [21 U.S.C.

2    § 343-1]." NLEA § 6(c)(1) (emphasis added).[2]

3          Further, to the extent that the Ninth Circuit's recent decisions in *Perez* and *Stengel* establish

4    a "narrow gap" through which Plaintiff's claims must fit in order to escape preemption, *see Perez*,

5    711 F.3d at 1120 (quoting *In re Medtronic Inc., Sprint Fidelis Leads Prods. Liability Litig.*, 623

6    F.3d 1200, 1204 (8th Cir. 2010)), the Court finds that Werdebaugh's claims make it through that

7    gap. In *Perez*, the plaintiff brought a common-law fraud-by-omission claim against Nidek, a

8    medical device manufacturer, and certain physicians, alleging that they failed to disclose that the

9    Nidek laser system the physicians used to perform plaintiff's eye surgery was not approved for that

10   use by the FDA. *See Perez*, 711 F.3d 1109. In order "to escape preemption by the FDCA," the

11   court found in *Perez*, "[t]he plaintiff must be suing for conduct that *violates* the FDCA (or else his

12   claim is expressly preempted by [the FDCA's express preemption provision for medical device

13   regulation]), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a

14   claim would be impliedly preempted under *Buckman*)." *Id.* at 1120 (quoting *In re Medtronic*, 623

15   F.3d at 1204).

16          Here, Werdebaugh is suing for conduct that violates the FDCA, so his claims are not

17   expressly preempted. *See infra* Part III.A.4. But, unlike the plaintiff in *Perez*, Werdebaugh is not

18   suing *because* Defendant's conduct violates the FDCA. Rather, Werdebaugh is suing because

19   Defendant's conduct allegedly violates California's Sherman Law, which could have imposed the

20   exact same regulations even if the FDCA were never passed. Because Werdebaugh's claims do not

21   exist "solely by virtue of the FDCA," they successfully squeeze through the narrow gap established

22   by *Perez*.

23

24

---

25   [2] By contrast, in *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), a case on
     which Defendant relies, the presumption against preemption was not in play. The Supreme Court in
26   *Buckman* specifically noted that plaintiffs' "fraud-on-the-FDA" claim regarding the FDCA as
     amended by the Medical Device Amendments of 1976 ("MDA"), 21 U.S.C. § 360c, *et seq.*, did *not*
27   implicate "a field which the States have traditionally occupied . . . such as to warrant a presumption
     against finding federal pre-emption of a state law cause of action." 531 U.S. at 347 (internal
28   quotation marks and citation omitted).

Case No.: 12-CV-02724-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

For the reasons stated above, Defendant has not overcome the presumption against preemption. *See Lohr*, 518 U.S. at 485; *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 373 (N.D. Cal. 2010) ("In view of the Supreme Court's determination in *Wyeth* that Congress did not intend FDA oversight to be [the] exclusive means of ensuring drug safety and effectiveness, and in the absence of authority to the contrary in the food labeling regulatory scheme, defendants have not persuaded the court that plaintiff's state law claims obstruct federal regulation of food labeling."). Accordingly, the Court DENIES Defendant's Motion to Dismiss the FAC on the basis of implied preemption.

### 3.   Express Preemption Based on Claims that are "Not Identical" to Federal Requirements

Defendant next alleges that Werdebaugh's claims are expressly preempted by federal law because they "seek[] to impose labeling requirements that are not identical to the FDA's labeling requirements." Mot. at 11 (internal quotation marks omitted). According to Defendant, Werdebaugh's claims are "rooted in non-binding [FDA] policy statements," and thus they exist "in addition to" but are "not the same as any legally binding FDA regulations." *Id*. at 11. Werdebaugh replies that these policy statements and guidance letters are *identical to*—and not *in addition to*— the requirements of the FDCA because they "merely detail what is already included within the federal regulations," Opp'n at 9, and "provide the agency's interpretation of its own regulations," *id*. at 12.

Pursuant to 21 U.S.C § 343-1(a), "no state . . . may directly or indirectly establish . . . any requirement . . . made in the . . . labeling of food that is not identical to" certain FDA requirements, such as 21 U.S.C. § 343(q), which applies to nutrition information, and 21 U.S.C. § 343(r), which applies to "[n]utrition levels and health-related claims." Per FDA regulations, "'[n]ot identical to' . . . means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that: (i) [a]re not imposed by or contained in the applicable provision . . . or (ii) [d]iffer from those specifically imposed by or contained in the applicable provision." 21 C.F.R. § 100.1(c)(4). Thus, where the Court finds that Werdebaugh's state law claims seek to impose labeling requirements

14

that are not identical to those required by federal regulation, Defendant's Motion to Dismiss those claims must be granted on the basis of express preemption. The Court analyzes Werdebaugh's state law claims below.

### a.   Evaporated Cane Juice Claims

Defendant argues that the 2009 Guidance that Werdebaugh's evaporated cane juice claims rely on is "merely advis[ory]" and "do[es] not establish legally enforceable responsibilities" regarding use of the term evaporated cane juice. Mot. at 12 n.1 (quoting Mot. Ex. A). The Court is not persuaded by this argument and finds that Werdebaugh has pleaded sufficient facts to establish that his evaporated cane juice claims are not expressly preempted.

Despite Defendant's contentions, Plaintiff's evaporated cane juice claims do not rely exclusively on the 2009 Guidance letter. As discussed above, Plaintiff grounds his evaporated cane juice claims in: (a) 21 C.F.R. § 120.1, defining "juice" as "the aqueous liquid expressed or extracted from one or more *fruits or vegetables*;" (b) 21 C.F.R. § 168.130, requiring that "the liquid food derived . . . of the juice of sugarcane . . . or by solution in water of sugarcane concentrate made from such juice" shall go by the name "cane s[y]rup or "sugar cane s[y]rup;" and (c) federal regulations instructing that ingredients must be described by their common or usual names, *see* 21 C.F.R. § 101.4(a)(1), and not by a name that is "confusingly similar to the name of [another] food that is not reasonably encompassed within the same name," 21 C.F.R. § 102.5(a), (d). *See also* FAC ¶¶ 42-46, 63. As Werdebaugh seeks to state claims that the term "evaporated cane juice" violates the explicit requirements of 21 C.F.R. §§ 101.4(a)(1), 102.5(d), 120.1, 168.130, the Court finds that such claims are identical to federal regulations.

Additionally, the Court finds that the 2009 Guidance "advis[ing] the regulated industry of the FDA's view that the term 'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup" represents the viewpoint of the FDA. *See* Ex. U (citing 21 C.F.R. § 101.4); *see also Ivie v. Kraft Foods Global, Inc.*, No. 12-2554, 2013 WL 685372, at *9 (N.D. Cal. Feb. 25, 2013) (holding that evaporated cane juice claims were not expressly preempted because "the FDA has [] articulated a policy position"). The Court observes that the FDA expressed the same view regarding the impropriety of the term "evaporated cane juice" in at least

15

United States District Court
For the Northern District of California

1    three Warning Letters issued over the past nine years. *See FDA's Electronic Reading Room—*

2    *Warning Letters*, *available at* http://www.accessdata.fda.gov/scripts/warningletters/wlSearchResult

3    .cfm?webSearch=true&qryStr=%22Evaporated+cane+juice%22&Search=Search (last visited Oct.

4    2, 2013) (listing evaporated cane juice Warning Letters from November 15, 2004, July 31, 2012,

5    and October 23, 2012). While these Warning Letters are "informal and advisory" and do "not

6    commit FDA to taking enforcement action," they do "communicate[] the agency's position on a

7    matter . . . ." *Inspections, Compliance, Enforcement, and Criminal Investigations*, *available at*

8    http://www.fda.gov/ICECI/ComplianceManuals/RegulatoryProceduresManual/ucm176870.htm

9    (last visited Oct. 2, 2013).

10       In sum, in both binding and non-binding communications, the FDA has articulated a

11   consistent position opposing the use of the term "evaporated cane juice." Accordingly, the Court

12   finds that Defendant has not shown that Werdebaugh's evaporated cane juice claims depart from

13   "what is already included within the federal regulations." Opp'n at 9. Thus, the Court DENIES

14   Defendant's Motion to Dismiss the evaporated cane juice claims on the basis of express

15   preemption.

16                          **b.   "All Natural" Claims**

17       Defendant further argues that the FDA has articulated only non-binding policy on the use of

18   the term "natural" and, despite contemplating formal regulations, the FDA "ultimately decided not

19   to undertake rulemaking to establish a definition for 'natural.'" Mot. at 13 (quoting 58 Fed. Reg. at

20   2407). Thus, Defendant contends, Werdebaugh's "All Natural" claims attempt to impose

21   requirements that are not identical to federal regulations and are therefore expressly preempted. *See*

22   *id*. The Court is not persuaded by Defendant's argument.

23       As discussed *supra* Part I.A.2, Werdebaugh claims that Defendant violates federal

24   regulations and California law by claiming that certain products are "All Natural" when in fact the

25   products contain the artificial and synthetic ingredients "coco (Dutch process), potassium citrate,

26   Vitamin A Palmitate, Vitamin D-2 and Vitamin D-Alpha-Tocopherol." *See* FAC ¶ 62; *see also*

27   Opp'n at 12. In support of these claims, Werdebaugh relies on three FDA regulations and

28   guidelines. The first of these is 21 C.F.R. § 101.22, which distinguishes between and regulates the

Case No.: 12-CV-02724-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

identification of artificial versus natural foods, spices, flavorings, colorings, and preservatives on food labels. *See* FAC ¶¶ 32-34. Second, Werdebaugh relies on FDA conclusions from 1993 in *Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms, Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food*, 58 Fed. Reg. at 2407, in which the FDA explained that, despite soliciting comments on whether to promulgate a uniform definition of "natural," it would:

> maintain its *current policy* . . . not to restrict the use of the term 'natural' *except for added color, synthetic substances, and flavors as provided in § 101.22*. Additionally, the agency will maintain its policy regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food. Further . . . the agency will continue to distinguish between natural and artificial flavors as outlined in § 101.22.

*Id.* at 2407 (emphasis added); *see also* FAC ¶ 33. Third, Werdebaugh relies on FDA Compliance Policy Guide Section 587.100, which requires that any added color be identified as "artificial color" and prohibits the use of the term "natural color." *See* FAC ¶ 35. Werdebaugh also asserts that "[t]he FDA has sent out numerous warning letters concerning this issue." *Id.* ¶ 36.

In short, whether the FDA declined to promulgate a comprehensive general definition of "natural" is not the critical inquiry for Werdebaugh's claims, because Werdebaugh does not rely on a general definition of "natural." Rather, his claims are based on the specific provisions of Section 101.22 prohibiting the use of the term "natural" on foods containing artificial or synthetic ingredients. *See* FAC ¶¶ 32, 34. To the extent that the 1993 FDA statements, the Compliance Policy Guide, and Warning Letters on this issue offer guidance on the use of natural claims on foods containing artificial ingredients, these publications confirm the FDA's commitment to its existing interpretation of Section 101.22, regardless of the FDA's unwillingness to promulgate a more general definition of "natural." *See* 58 Fed. Reg. at 2407 ("the agency *will maintain its policy* regarding the use of 'natural,' as meaning that nothing artificial or synthetic"… "the agency *will continue to distinguish* between natural and artificial flavors" (emphasis added)).[3]

---

[3] The Court notes that several courts in this district and the Third Circuit have held that "All Natural" and "100% Natural" claims are not expressly preempted by federal law on the alternative basis that the FDA has specifically declined to regulate "natural" claims, and thus that no federal regulation exists to preempt state law. *See, e.g.*, *Holk v. Snapple Beverage Corp.*, 575 F.3d 329,

Case No.: 12-CV-02724-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

1    Ultimately, Werdebaugh will bear the burden of proving that Defendant's inclusion of

2   certain ingredients in foods labeled "All Natural" violates the restrictions of Section 101.22.

3   However, for the purposes of this Motion to Dismiss, the Court finds that Plaintiff's "All Natural"

4   claims rely on requirements that are identical to federal regulations and endorsed by FDA

5   guidelines. Thus, these claims are not expressly preempted by federal law. Accordingly, the Court

6   DENIES Defendant's Motion to Dismiss Plaintiff's "All Natural" claims on the basis of express

7   preemption.

8    **4.    Primary Jurisdiction**

9    Defendant contends that, even if the Court finds that Werdebaugh's claims are not

10   impliedly or expressly preempted, the Court should dismiss the case under the doctrine of primary

11   jurisdiction. Mot. at 14-15. The doctrine of primary jurisdiction "allows courts to stay proceedings

12   or to dismiss a complaint without prejudice pending the resolution of an issue within the special

13   competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th

14   Cir. 2008). The doctrine applies when: "(1) [there is a] need to resolve an issue that (2) has been

15   placed by Congress within the jurisdiction of an administrative body having regulatory authority

16   (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory

17   authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co. v.*

18   *Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). However, the doctrine of primary

19   jurisdiction "does not require that all claims within an agency's purview be decided by the agency.

20

21   340-42 (3d Cir. 2009) (claiming that a food containing high fructose corn syrup could not be
labeled "all natural"); *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1031 (N.D. Cal.

22   2009) (same). While this Court finds here as it has in previous cases, *see, e.g.*, *Bruton*, 2013 WL
4833413, at *7-8; *Brazil I*, 2013 WL 1209955, at *9, that federal requirements restrict the use of

23   the term "natural" on foods containing certain artificial and synthetic ingredients, the Court finds
that its reasoning and the alternative line of reasoning employed by some courts do not conflict.

24   Not only do the two analyses lead to the same result—namely, a finding that plaintiffs' state law
claims are not expressly preempted—but the two analyses do not conflict to the extent that

25   plaintiffs' claims in these other cases do not rely on the prohibitions of Section 101.22 regarding
specific artificial and synthetic ingredients. However, the Court acknowledges that in *Astiana v.*

26   *Ben & Jerry's Homemade, Inc.*, No. 10-4387, 2011 WL 2111796 (N.D. Cal. May 26, 2011), Judge
Hamilton found no express preemption of plaintiff's claim concerning the use of the term "all

27   natural" on a food containing Dutch cocoa—one of the ingredients Werdebaugh claims violates

28   Section 101.22—on the basis that no federal regulation existed to preempt state law. *Id.* at *9-10.

18

Case No.: 12-CV-02724-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

1    Nor is it intended to secure expert advice for the courts from regulatory agencies every time a court

2    is presented with an issue conceivably within the agency's ambit." *Brown v. MCI WorldCom*

3    *Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002) (internal quotation marks omitted).

4    Rather, "[p]rimary jurisdiction is properly invoked when a claim is cognizable in federal court but

5    requires resolution of an issue of first impression, or of a particularly complicated issue that

6    Congress has committed to a regulatory agency." *Id.*

7                          **a.      Evaporated Cane Juice Claims**

8            Defendant argues that primary jurisdiction is appropriate for Werdebaugh's evaporated

9    cane juice claims because "the FDA has already spoken on [evaporated cane juice] . . . [and]

10   evidenc[ed] its authority over the subject matter," Mot. at 15, and because "the FDA's position on

11   a manufacturer's use of the term 'evaporated cane juice' is not yet settled," Reply at 6-7. The Court

12   disagrees.

13           Courts in this district have rejected the application of primary jurisdiction to evaporated

14   cane juice claims. In *Samet v. Proctor & Gamble Co.*, No. 12-1891, 2013 WL 3124647 (N.D. Cal.

15   Jun. 18, 2013), Judge Grewal declined to apply the doctrine of primary jurisdiction to evaporated

16   cane juice claims, holding instead that existing FDA regulations identifying the common name of

17   sugar cane juice as "cane syrup" established the FDA's position on the use of the term evaporated

18   cane juice, regardless of whether the 2009 Guidance was understood as non-binding. *Id.* at *8. The

19   Court finds that the logic of *Samet* applies with equal force to Werdebaugh's evaporated cane juice

20   claims.

21           Furthermore, as noted in the Court's discussion of express preemption in Part III.A.3.a, the

22   2009 Guidance and Warning Letters issued over the past nine years demonstrate that

23   Werdebaugh's evaporated cane juice claims do not implicate a question of first impression for

24   which the Court lacks the benefit of the FDA's views. The FDA has articulated a position on the

25   use of evaporated cane juice that is both internally consistent and consistent with existing

26   regulatory requirements. In *Gustavson*, the Court applied the doctrine of primary jurisdiction to

27   dismiss a different food labeling claim because a non-binding proposed rule indicated that the FDA

28   was on the verge of altering its existing regulatory approach. 2013 WL 5201190, at *16-17. Here,

19

Case No.: 12-CV-02724-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California

1  by contrast, the 2009 Guidance and the Warning Letters indicate that the FDA is maintaining its

2  existing position that use of the term evaporated cane juice violates federal regulations. *Accord*

3  *Ivie*, 2013 WL 685372, at *12 (finding that the 2009 Guidance combined with existing regulation

4  regarding the common name of cane syrup demonstrated that primary jurisdiction is inapplicable

5  because "[t]he FDA's position is thus clear that it considers 'evaporated cane juice' labels to be

6  'false and misleading' . . . [and thus] there is no risk of undermining the FDA's rulemaking

7  expertise").[4]

8       As the Court finds that this is neither an issue of first impression nor "a particularly

9  complicated issue that Congress has committed to a regulatory agency," *Brown*, 277 F.3d at 1172,

10  the Court DENIES Defendant's Motion to Dismiss Werdebaugh's evaporated cane juice claims on

11  the basis of primary jurisdiction.

### b.   "All Natural" Claims

13       Defendant argues that this Court should defer to the FDA's regulatory authority as long as

14  the FDA's regulation of the term "natural" is "unsettled." Reply at 7-8; *see* Mot. at 14-15. For the

15  reasons discussed in Part III.A.3.b above, the Court finds that, regardless of whether FDA

16  regulation of the term "All Natural" is unsettled in some contexts, such as in the case of genetically

17  modified organisms ("GMOs"), *see, e.g.*, *Cox v. Gruma Corp.*, No. 12-6502, 2013 WL 3828800, at

18  *2 (N.D. Cal. Jul. 11, 2013) ("the parties appear to be in agreement that the FDA has not

19  addressed, even informally, the question of whether foods containing GMO or bioengineered

20

---

21  [4] The Court recognizes that another court in this district has come to the opposite conclusion. In
   *Hood v. Wholesoy & Co.*, No. 12-5550, 2013 WL 3553979 (N.D. Cal. Jul. 12, 2013), Judge

22  Gonzalez Rogers found that the FDA's decision to issue Warning Letters regarding evaporated
   cane juice was in tension with the assertedly non-binding nature of the 2009 Guidance. *See id.* at

23  *2-3. Based on this perceived tension, Judge Gonzalez Rogers concluded that "the FDA's position
   [on evaporated cane juice] is not settled," and that primary jurisdiction should therefore apply. *See*

24  *id.* at 5. This Court, however, does not perceive any tension in the FDA's position on evaporated
   cane juice. Although the 2009 Guidance is expressly non-binding, while the subsequent Warning

25  Letters evidence a firmer stance, the Guidance and the Warning Letters articulate the same
   substantive position on evaporated cane juice. As the FDA has never spoken on the specific issue

26  of the use of the term "evaporated cane juice" *except* to state that it views the term as violating
   FDA regulations, the Court cannot conclude that the FDA's position on the matter is "unsettled."

27  Accordingly, the Court declines to follow *Hood*'s reasoning and conclusion.

28

Case No.: 12-CV-02724-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

ingredients may be labeled 'natural' or 'all natural,' or whether GMO or bioengineered ingredients would be considered 'artificial or synthetic'"), the FDA has spoken clearly and consistently on its position toward the use of the term "natural" on foods containing artificial and synthetic ingredients. *See* 21 C.F.R. § 101.22; 58 Fed. Reg. at 2407 ("[the FDA will] not restrict the use of the term 'natural' *except for added color, synthetic substances, and flavors as provided in § 101.22*." (emphasis added)). Moreover, Werdebaugh's "All Natural" claims "do not appear to raise highly technical issues uniquely within the FDA's expertise." *Bruton*, 2013 WL 4833413, at *12. Rather, Werdebaugh's allegations are "relatively straightforward claim[s] . . . assert[ing] that defendant has violated FDA regulations and marketed a product that could mislead a reasonable consumer," *Chacanaca v. Quaker Oats Co.,* 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010), which courts are fully equipped to resolve, *see Bruton*, 2013 WL 4833413, at *12. Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiff's "All Natural" claims on the basis of primary jurisdiction.

### B.      Standing

Defendant next argues that Werdebaugh lacks standing—under Article III as well as under the UCL, FAL, and CLRA—to assert claims based on the products he did not buy, because Werdebaugh "cannot be injured by products he never purchased." *See* Mot. at 16. Specifically, Defendant contends that Werdebaugh's claims for the Substantially Similar Products cannot satisfy Article III's injury-in-fact requirement, the CLRA's requirement that Werdebaugh "show that he has suffered damage as a result of Blue Diamond's alleged conduct," *id*. at 15 (citing Cal. Civ. Code § 1780), or the requirement of the UCL and FAL that Werdebaugh have "lost money or property as a result of Blue Diamond's alleged conduct," *id*. (citing Cal Bus. & Prof. Code §§ 17203-04, 17535). The Court disagrees.

To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury is redressable by a favorable ruling. *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Under California's UCL and FAL,

21

Case No.: 12-CV-02724-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California

1   a private person has standing only if she "has suffered injury in fact *and* has lost money or property

2   as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added); *see also*

3   *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). Similarly, to bring a case under the

4   CLRA, "[a] plaintiff . . . must not only be exposed to an unlawful practice but also have suffered

5   some kind of damage." *Bower v. AT & T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011)

6   (internal quotation marks omitted).

7          Werdebaugh alleges that that he paid money for products he would not have purchased but

8   for Defendant's misrepresentations. *See* FAC ¶¶ 77-84. Defendant argues that Werdebaugh cannot

9   rely on this theory of standing for the Substantially Similar Products because Werdebaugh "cannot

10   establish the requisite *pecuniary injury* where he did not himself purchase the products at issue,"

11   whether for purposes of Article III or the UCL, FAL, and CLRA. Mot. at 16 (internal quotation

12   marks omitted).

13          Defendant's argument is at odds with the prevailing view within this district (and elsewhere

14   in the Ninth Circuit), which holds that a plaintiff may, under certain circumstances, have

15   constitutional and statutory standing to assert claims based on misrepresentations appearing on

16   products he did not purchase. As this Court described in *Brazil v. Dole Food Co.* (*Brazil II*), No.

17   12-1831, 2013 WL 5312418, at *6-8 (N.D. Cal. Sept. 23, 2013), some courts decline to address

18   whether a plaintiff may assert claims based on products he did not purchase until ruling on a

19   motion for class certification, *see, e.g.*, *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161

20   (C.D. Cal. 2012); *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012), while others

21   "hold that a plaintiff may have standing to assert claims for unnamed class members based on

22   products he or she did not purchase so long as the products and alleged misrepresentations are

23   substantially similar," *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal.

24   2012) (citing cases); *see also, e.g.*, *Colucci v. ZonePerfect Nutrition Co.*, No. 12-2907, 2012 WL

25   6737800, at *4 (N.D. Cal. Dec. 28, 2012); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-

26   2910, 2012 WL 2990766, at *11-13 (N.D. Cal. July 20, 2012). In either case, these courts allow

27

28

Case No.: 12-CV-02724-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California

1    plaintiffs to proceed past the motion to dismiss stage with claims based on products the plaintiffs

2    did not purchase, at least so long as the products and claims at issue are "substantially similar."[5]

3         This Court has previously applied the "substantially similar" approach when analyzing

4    standing challenges in the food-misbranding context. *See Brazil II*, 2013 WL 5312418, at *7-8;

5    *Kane v. Chobani, Inc.*, No. 12-2425, 2013 WL 5289253, at *10-11 (N.D. Cal. Sept. 19, 2013);

6    *Bruton*, 2013 WL 4833413, at *15. This approach accords with the views of most other courts in

7    this district, and it makes sense as a logical and as a practical matter.

8         Importantly, Werdebaugh is not asserting standing to sue over injuries he did not suffer.

9    Rather, Werdebaugh asserts that he suffered the same injuries as a result of buying the Purchased

10   Product that the unnamed class members suffered as a result of buying the Substantially Similar

11   Products. As explained in *Brazil II*:

12        This is the entire point of the substantially similar approach: by limiting a plaintiff's
          ability to sue over products he did not purchase to situations involving claims and
13        products that are substantially similar to those products he did purchase, courts
          ensure that the plaintiff is seeking to represent only those individuals who have
14        suffered essentially the same injury as the plaintiff. The substantially similar
          approach therefore recognizes the need to limit a plaintiff's standing to injury he has
15        personally suffered. At the same time, however, the approach recognizes that the
          definition of the plaintiff's "injury" is not so narrow as to encompass only the exact
16        set of circumstances that led to the plaintiff's suit.

17   2013 WL 5312418, at *7. The substantially similar approach therefore accommodates the

18   commonsense conclusion that where, as here, a plaintiff claims that he was misled by the improper

19   use of the term "All Natural" on Blue Diamond Almond Breeze Chocolate Almond Milk, *see* FAC

20   ¶ 58, the injury he suffers as a result of that misrepresentation is not meaningfully distinguishable

21   from the injury suffered by an individual who is misled by the use of the term "All Natural" on

22   Almond Breeze Original Refrigerated Almond Milk, *see* FAC ¶ 85. Accordingly, the Court finds

23   that Werdebaugh has adequately demonstrated Article III and statutory standing, at least for

24   _____

25   [5] The Court recognizes that this is not the universal view in this district. Some courts have
     dismissed claims for lack of standing when the plaintiff did not purchase the product on which the
26   claim is based. *See, e.g., Granfield v. NVIDIA Corp.*, No. 11-5403, 2012 WL 2847575, at *6 (N.D.
     Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased
27   and products that she did not purchase, claims relating to products not purchased must be dismissed
     for lack of standing."); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. 10-1044, 2011 WL 159380,
28   at *3 (N.D. Cal. Jan. 10, 2011), *aff'd on other grounds*, 475 F. App'x 113 (9th Cir. 2012).

23

United States District Court
For the Northern District of California

1    purposes of surviving a motion to dismiss, for his claims based on the Substantially Similar

2    Products. The Court therefore DENIES Defendant's Motion to Dismiss the Substantially Similar

3    Product claims on the basis of standing.

4        **C.    Rule 9(b)**

5            Defendant further argues that all of Werdebaugh's claims are subject to the heightened

6    pleading requirements of Federal Rule of Civil Procedure 9(b) and that Werdebaugh has failed to

7    meet these requirements with respect to either his Purchased Product or Substantially Similar

8    Product claims. *See* Mot. at 16-17; *see also Kosta v. Del Monte Corp.*, 12-1722, 2013 WL

9    2147413, at *14 (N.D. Cal. May 15, 2013) ("To satisfy Rule 9(b), any averments of fraud must be

10   accompanied by the 'who, what, when, where, and how' of the misconduct alleged." (quoting

11   *Kearns*, 567 F.3d at 1125–26)). The Court finds that Werdebaugh has met the heightened pleading

12   standards of 9(b) with respect to all of his Purchased Product and Substantially Similar Product

13   claims: for all of the representations challenged, the FAC identifies the regulations that the

14   representations allegedly violated, states why the representations allegedly violate these

15   regulations, and states why a reasonable consumer would be misled by these alleged regulatory

16   violations. *See* FAC ¶¶ 30-85.

17       **1.   Purchased Product**

18           With respect to the Purchased Product, Defendant contends that Werdebaugh failed to

19   "allege *what* product Plaintiff actually purchased and *when* he purchased the product." Mot. at 17

20   (emphasis in original). Specifically, Defendant challenges Werdebaugh's failure to specify whether

21   he purchased the "refrigerated" or "stable shelf" version of Blue Diamond Almond Breeze

22   Chocolate Almond Milk, as well as when and how many times during the class period Werdebaugh

23   purchased the product. *Id.*

24           With regard to Defendant's first objection, Werdebaugh states that he purchased "Almond

25   Breeze Chocolate Almond Milk," *see* FAC ¶¶ 2, 54, and includes pictures of the front, back and

26   side nutrition panels of the Purchased Product, *id.* ¶ 57. Any possible confusion Defendant may

27   have had regarding whether Werdebaugh purchased the refrigerated or stable shelf version of

28   Defendant's Chocolate Almond Milk is remedied by these nearly full-page images in the FAC.

24

United States District Court
For the Northern District of California

1    The Court further finds that Werdebaugh pleads "when" the alleged fraud occurred with the

2    particularity required by Rule 9(b). The FAC states both that, "[d]uring the Class Period [April 11,

3    2008 to present], Plaintiff spent more than twenty five dollars ($25.00) on the Purchased Product,"

4    FAC ¶ 77; *see also* ¶ 1 (identifying the Class Period as "April 11, 2008 to the present"), and that

5    "Defendant sold the Purchased Product . . . during the Class Period," FAC ¶¶ 98, 109, 118, 125,

6    133, 143. Courts in this district ruling on similar food-mislabeling claims have found that the

7    "when" of Rule 9(b) is satisfied when a plaintiff pleads that he has purchased the product at issue

8    during a specified class period or that a label violation occurred during the class period, as long as

9    there is no suggestion that a label changed or varied during that time. *See, e.g.*, *Jones v. ConAgra*

10   *Foods, Inc.*, 912 F. Supp. 2d, 889, 902-03 (N.D. Cal. 2012) ("Plaintiffs' allegations that they

11   bought the products in California since April 2008 are sufficient [to satisfy Rule 9(b)] . . . .

12   However . . . [i]t is necessary to know more specifically when Plaintiffs purchased [a subset of

13   products that had recently changed].")); *see also Astiana*, 2011 WL 2111796, at *5-6 (finding

14   allegations that products had been mislabeled "since at least 2006" and "throughout the class

15   period" sufficient under Rule 9(b)).[6] Since Defendant does not argue that any of the Purchased

16   Product labels changed during the class period, the Court finds that Werdebaugh has pleaded when

17   the alleged fraud occurred with the particularity required to satisfy Rule 9(b). Accordingly, the

18   Court DENIES Defendant's Motion to Dismiss on the basis that Werdebaugh failed to plead the

19   Purchased Product claims with the particularity required under Rule 9(b).

20         **2.   Substantially Similar Products Bearing "All Natural" Claims**

21         Defendant further argues that Werdebaugh's claims regarding the Substantially Similar

22   Products labeled "All Natural" do not meet the heightened pleading standards of Rule 9(b) because

23   the FAC "fail[s] to identify the specific artificial or synthetic ingredients, flavorings, coloring,

24

---

25   [6] As Judge Breyer recognized in *Jones*, however, some courts "have dismissed similar claims where plaintiffs alleged that they purchased the products repeatedly during the class period, but did

26   not allege specific dates on which the purchases were made." *Jones*, 912 F. Supp. 2d at 902 (referencing *Edmunson v. Procter & Gamble Co.*, No. 10-2256, 2011 WL 1897625, at *5 (S.D.

27   Cal. May 17, 2011); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1124 (C.D. Cal. 2010)); *see also Ang v. Bimbo Bakeries USA, Inc.*, No. 13-1196, 2013 WL 5407039, at *3 n.1 (N.D. Cal.

28   Sept. 25, 2013) (same).

Case No.: 12-CV-02724-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

and/or chemical preservatives that . . . make the products unnatural." Mot. at 18 (internal quotation marks omitted).[7] Again, the Court disagrees.

Werdebaugh identifies eighteen Substantially Similar Products labeled "All Natural" despite "containing artificial or synthetic ingredients, flavorings, coloring, and/or chemical preservatives." FAC ¶ 4. The FAC then provides a list of the allegedly artificial ingredients contained in the Purchased Product, *see* FAC ¶¶ 58-59, 62, and states that the Substantially Similar Products "make the same label misrepresentations" and violate the same regulations of the Sherman Law . . . as the Purchased Product, *id.* ¶ 3.[8] This is enough to satisfy Rule 9(b)'s requirement. The Court will not require Werdebaugh to repeat an identical list of ingredients for eighteen separate products. Rather, identifying the ingredients at issue in the Purchased Product, identifying the Substantially Similar Products bearing the "All Natural" claim, and alleging that the Substantially Similar Products make the same misrepresentations as the Purchased Products—as Werdebaugh has done—is sufficient. *Accord Brazil II*, 2013 WL 5312418, at *9.

Accordingly, the Court finds that Werdebaugh has pleaded his allegations regarding the Substantially Similar Products with sufficient particularity for purposes of Rule 9(b) and DENIES Defendant's Motion to Dismiss on this basis.

**D.    Nationwide Class Claims**

Defendant asserts that Werdebaugh's claims on behalf of the nationwide class must be stricken because California's conflict-of-laws analysis, articulated in *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), prohibits the application of California's consumer protection laws to non-California plaintiffs in this case. *See* Mot. at 19-20. Defendant contends that Plaintiff's nationwide claims fail the *Mazza* test because, though "Blue Diamond is headquartered in California and its alleged misrepresentations originated from California," "the alleged harm

---

[7] On page 2, the Court dismissed Werdebaugh's claim that Defendant made "unlawful health claims on its website," FAC ¶ 15, because "Plaintiff expressly states that he is not asserting a claim on website representations," Opp'n at 21. Thus, the Court will not consider whether Defendant pleaded these claims with the particularity required under Rule 9(b). *See* Mot. at 18.

[8] Defendant does not challenge Werdebaugh's claims regarding the Substantially Similar Products that include evaporated cane juice as an ingredient. Neither does Defendant challenge the adequacy of the FAC's allegations that the Purchased Product and Substantially Similar Products are, indeed, substantially similar.

26

Case No.: 12-CV-02724-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

*United States District Court*
For the Northern District of California

1   suffered by putative class members residing outside of California occurred in their home states."

2   *Id.* at 19. Werdebaugh responds that a choice-of-law analysis is premature because no "developed

3   factual record" yet exists upon which the Court may make the "detailed analysis of state law"

4   required by *Mazza*, Opp'n at 21, and because "Defendant has wholly failed to explain how

5   differences in state law would affect the adjudication of Plaintiff's claims," *id.* at 22.

6          In *Mazza*, the plaintiffs sued Honda for violations of the UCL, FAL, and CLRA allegedly

7   committed in connection with Honda's marketing of its "Collision Mitigation Braking System."

8   666 F.3d at 586-87. The Ninth Circuit reversed the district court's certification of a nationwide

9   class after concluding that, "[u]nder the facts and circumstances of this case," California's choice-

10  of-law rules dictated that "each class member's consumer protection claim should be governed by

11  the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 594.

12         Here, the Court finds that striking the nationwide class allegations at this stage of this case

13  would be premature. The Ninth Circuit's opinion in *Mazza*—which was decided at the class

14  certification stage and not on a motion to dismiss—depended heavily on a detailed choice-of-law

15  analysis that compared how various states' consumer protection laws applied to the facts of the

16  plaintiffs' claims. *See id.* at 589-94. By contrast, there has been no choice-of-law analysis in this

17  case: Defendant—who bears the burden of demonstrating "that foreign law, rather than California

18  law, should apply to class claims" in a California choice-of-law analysis, *Wash. Mut. Bank, FA v.*

19  *Superior Court*, 24 Cal. 4th 906, 921 (2001)—provides no support for its position that foreign law

20  conflicts with California law, let alone that this conflict is so severe as to preclude applying

21  California law to Werdebaugh's class claims. Absent the sort of detailed choice-of-law analysis

22  that guided the Ninth Circuit in *Mazza*, the Court declines to evaluate how California's choice-of-

23  law rules affect Werdebaugh's class claims at this time.[9] Accordingly, the Court DENIES

24  Defendant's Motion to Strike Werdebaugh's nationwide class claims.

25  _____

26  [9] This conclusion accords with the Court's conclusion in *Brazil II*, 2013 WL 5312418, at *11, as well as the conclusions of numerous other courts within the Ninth Circuit, which have declined, even after *Mazza*, to conduct the choice-of-law analysis at the pleadings stage. *See, e.g.*, *Clancy v.*

27  *The Bromley Tea Co.*, No. 12-3003, 2013 WL 4081632 (N.D. Cal. Aug. 9, 2013) ("Such a detailed choice-of-law analysis is not appropriate at [the motion for judgment on the pleadings] stage of the

28  litigation. Rather, such a fact-heavy inquiry should occur during the class certification stage, after

Case No.: 12-CV-02724-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

1       **E.      Motion to Strike Prayer for Monetary Remedies Under CLRA**

2               Finally, Defendant argues that Werdebaugh's claim for monetary relief under the CLRA

3       should be stricken from the FAC because it was added without leave of the Court or Defendant's

4       consent. *See* Mot. at 20.

5               The CLRA requires claimants to provide written notice of any demand for relief at least

6       thirty days prior to commencing an action for monetary damages. Cal. Civ. Code § 1782(a); *see*

7       *also Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2009 WL 1635931, at *15 (N.D. Cal.

8       Jun. 5, 2009). "'The purpose of the notice requirement . . . is to give the manufacturer or vendor

9       sufficient notice of alleged defects to permit appropriate corrections or replacements.'" *In re*

10      *Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 826 F.

11      Supp. 2d 1180, 1204 (C.D. Cal. 2011) (quoting *Outboard Marine Corp. v. Superior Court*, 52 Cal.

12      App. 3d 30, 40 (1975)). However, an action for injunctive relief under the CLRA does not require

13      such notice and "may be amended *without leave of court* to include a request for damages thirty

14      days after compliance with the notice provision." *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d

15      843, 857 n.4 (N.D. Cal. 2012) (emphasis added).

16              Defendant acknowledges that Werdebaugh could not include a demand for monetary relief

17      in his original complaint, *see* ECF No. 1, because the thirty-day CLRA notice window had not yet

18      run. *See* Mot. at 20. However, Defendant claims that Werdebaugh lost the opportunity to seek

19      damages under the CLRA entirely when he failed to either make the damages amendment by the

20      Court's general deadline to amend pleadings or to seek Defendant's consent to amend as part of the

21

22

23      discovery."); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012)
        ("Significantly, *Mazza* was decided on a motion for class certification, not a motion to strike. At

24      [the motion to dismiss] stage of the instant litigation, a detailed choice-of-law analysis would be
        inappropriate. Since the parties have yet to develop a factual record, it is unclear whether applying

25      different state consumer protection statutes could have a material impact on the viability of
        Plaintiffs' claims.") (citation omitted); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 923 (N.D. Cal.

26      2012) ("Although *Mazza* may influence the decision whether to certify the proposed class and
        subclass, such a determination is premature. At [the motion to dismiss] stage in the litigation—

27      before the parties have submitted briefing regarding either choice-of-law or class certification—
        plaintiff is permitted to assert claims under the laws of different states in the alternative.").

28

28

1  Parties' stipulations regarding the FAC. *See id.*; ECF No. 26 ("DEADLINE TO FILE MOTION

2  TO AMEND OR ADD PARTIES is December 20, 2012"); ECF Nos. 36, 37.

3       Defendant's argument misses the mark. First, as this Court has recognized before, the plain

4  language of California Civil Code § 1782 states that CLRA actions for injunctive relief may be

5  amended to include a claim for monetary damages *without leave of the court. See* Cal. Civ. Code

6  § 1782(d); *Elias*, 903 F. Supp. 2d at 857 n.4. Thus, Werdebaugh was not required to seek leave to

7  amend under Rule 15 in order to add his claim for monetary damages. Second, although this

8  Court's initial Case Management Order set the deadline for filing amended pleadings for December

9  20, 2012, ECF No. 24, a subsequent Case Management Order mooted that deadline and granted

10  Werdebaugh until May 24, 2014 to file an amended complaint. *See* ECF No. 35. Werdebaugh filed

11  the FAC by this later deadline, and thus the Court finds that the amendment was timely. Finally,

12  this case is distinguishable from *Sato v. Wachovia Mortgage, FSB*, No. 11- 810, 2012 WL 1110054

13  (N.D. Cal. Mar. 31, 2013), on which Defendant relies. In *Sato*, the court struck an entirely new

14  CLRA claim added "without an appropriate stipulation or leave of court" in violation of Rule 15.

15  *Id.* at *5, *7-8. Here, Werdebaugh stated a CLRA claim in his original complaint and then

16  amended that claim according to statutory requirements and the Court's deadline for filing the

17  FAC. Because Werdebaugh's amendment of the CLRA claim was proper, the Court DENIES

18  Defendant's Motion to Strike Werdebaugh's claim for monetary damages under the CLRA.

19  **IV.  CONCLUSION**

20       For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss on the basis

21  that (1) Plaintiff's claims are preempted by the FDCA or subject to the doctrine of primary

22  jurisdiction; (2) Plaintiff lacks constitutional and statutory standing; (3) Plaintiff's claims are not

23  pleaded with the particularity required by Federal Rule of Civil Procedure 9(b); and (4)

24  California's conflict-of-laws analysis prohibits the nationwide class from bringing a claim under

25  the UCL, FAL, or CLRA. The Court DENIES Defendant's Motion to Strike Plaintiff's claim for

26  monetary damages under the CLRA.

27  **IT IS SO ORDERED.**

28

Case No.: 12-CV-02724-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California

Dated: October 2, 2013

LUCY H. KOH
United States District Judge

30