1
2
3
4
5
6
7

PRATT & ASSOCIATES
Ben F. Pierce Gore (SBN 128515)
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
Facsimile:   (408) 369-0752
*pgore@prattattorneys.com*

(Co-counsel listed on signature page)

*Attorneys for Plaintiff*

8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| CHRIS WERDEBAUGH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BLUE DIAMOND GROWERS,<br><br>Defendant. | Case No.  CV12-02724-LHK<br><br>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, FOR APPOINTMENT OF CLASS REPRESENTATIVE AND FOR APPOINTMENT OF CLASS COUNSEL**<br><br>Action Filed:      May 29, 2012<br>Hearing Date:     April 24, 2014<br>Time:                 1:30 p.m.<br>Location:           Courtroom 8, 4th Floor<br>Judge:               The Hon. Lucy H. Koh |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 24, 2014 at 1:30 p.m. or as soon thereafter as the matter may be heard, in Courtroom 8, 4th Floor of the above-entitled Court, located at San Jose, California, Plaintiff will, and hereby does, move for an order, pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying this action as a class action, appointing him as class representative, and appointing his counsel as class counsel.

Specifically, Plaintiff will and hereby does move this Court for the following:

(A)     To certify the following class:  All persons in the United States who, from May 19, 2008, until the date of notice, purchased almond milk products manufactured, distributed and/or sold by Blue Diamond Growers containing the label statements "evaporated cane juice" and/or  "All Natural."

The following persons are expressly excluded from the Class:  (i) Defendant and its subsidiaries and affiliates; (ii) all persons who make a timely election to be excluded from the Class; (iii) governmental entities; and (iv) the Court to which this case is assigned and its staff.

(B)     To appoint Plaintiff Chris Werdebaugh as class representative;

(C)     To appoint the firms of Pratt & Associates, Clifford Law Offices, P.C., Lovelace Law Firm, P.A., and Barrett Law Group, P.A. as counsel for the class; and

(D)     To order the parties to meet and confer and present to this Court, within fifteen (15) days of an order granting class certification, proposed notice to the certified class.

This motion is based upon this Notice of Motion and Motion and Memorandum of Points and Authorities, the accompanying Declarations of Dr. Oral Capps, Dr. Ed Scarbrough, Dr. Julie Caswell, Pierce Gore, Brian Herrington, Colin Dunn, Gary Yarborough, Jr. and Dewitt M. Lovelace as well as the pleadings and papers on file in this action.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………………v

STATEMENT OF THE ISSUES TO BE DECIDED…………………………………………..viii

MEMORANDUM OF POINTS AND AUTHORITIES…………………………………1

INTRODUCTION……………………………………………………………………...1

FACTS COMMON TO THE CLASS………………………………………………………3

ARGUMENT…………………………………………………………………….…..7

I.      Legal Standard for Class Certification……………………………………..…7

II.     The Proposed Class Meets All Requirements of Rule 23(a)……………………………..8

     A.      The Proposed Class Is Sufficiently Numerous…………………………………8

     B.      This Litigation Concerns Common Questions Of Law and Fact………………8

     C.      Plaintiff's Claims Are Typical Of Class Members' Claims………………………12

     D.      The Proposed Class Representative Will Fairly and Adequately
        Protect Class Interests……………………………………………………….....13

          1.      The Representative Plaintiff Has No Conflicts of Interest
             With Other Class Members…………………………………….....13

          2.      The Representative Plaintiff Will Vigorously Prosecute This
             Action…………………………………………………………….....14

          3.      Plaintiff's Counsel Will Continue To Vigorously Represent
             The Class……………………………………………………….…..14

III.    This Case Satisfies Rule 23(B)(2)'s Requirements………………………………14

IV.     This Case Satisfies Rule 23(B)(3)'s Requirements………………………………15

     A.      Common Issues Of Law Or Fact Predominate……………………………......16

          1.      UCL and FAL Claims……………………………………………17

          2.      CLRA Claim……………………………………………….......19

          3.      Trial Plan………………………………………………………..20

          4.      Defendant's Financial Records Provide a Basis For The Court To
             Award Restitution and/or Class-Wide Damages…………………………20

               a.      The Court Has Broad Discretion To Award Restitution Or
                  Restitutionary Disgorgement……………………………………..21

               b.      Werdebaugh's Proposed Method of Proving CLRA Damages

Shows That A Remedy May Be Awarded On A
Class-Wide Basis……………………………………………......22

B.    A Class Action Is Superior……………………………………………....23

1.    Class Members Have No Interest In Pursuing Individual
Litigation……………………………………………………….…23

2.    Other Pending Actions……………………...…………………………….…24

3.    This Court Is The Appropriate Forum For This Litigation…………..…24

4.    There Are No Manageability Issues……………………………......…25

CONCLUSION……………………………………………………………………………..25

# TABLE OF AUTHORITIES

## CASES

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
 133 S. Ct. 1184 (2013) ............................................................. 8, 16

*Ballard v. Equifax Check Servs., Inc.*,
 186 F.R.D. 589 (E.D. Cal. 1999) ................................................. 7, 18

*Blackie v. Barrack*,
 524 F.2d 891 (9th Cir. 1975) ........................................................ 16

*Brown v. Wal-Mart Stores, Inc.*,
 No. 5:09–CV–03339 EJD, 2012 WL 3672957 (N.D. Cal. Aug. 24, 2012) ............ 8

*Carnegie v. Household Int'l, Inc.*,
 376 F.3d 656 (7th Cir. 2004) ........................................................ 25

*Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*,
 20 Cal. 4th 163 (1999) ............................................................. 10

*Comcast Corp. v. Behrend*,
 11-864, 2013 WL 1222646 (U.S. Mar. 27, 2013) ....................................... 21

*Falk v. Gen. Motors Corp.*,
 496 F. Supp. 2d 1088 (N.D. Cal. 2007) ............................................. 20

*General Tel. Co. v. Falcon*,
 457 U.S. 147 (1982) ................................................................. 13

*Greenwood v. Compucredit Corp.*,
 C 08-04878 CW, 2010 WL 291842 (N.D. Cal. Jan. 19, 2010) ...................... 17, 18

*Haley v. Medtronic, Inc.*,
 169 F.R.D. 643 (C.D. Cal. 1996) ..................................................... 7

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) .................................................. passim

*Hanon v. Dataproducts Corp.*,
 976 F.2d 497 (9th Cir. 1992) ........................................................ 13

*Haynes v. Logan Furniture Mart, Inc.*,
 503 F.2d 1161 (7th Cir. 1974) ....................................................... 25

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
 M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ........................ 12

*In re Ferrero Litig.*,
 768 F. Supp. 2d 1074 (S.D. Cal. 2011) .............................................. 25

*In re Steroid Hormone Prod. Cases*,
 181 Cal. App. 4th 145 (2010) ...................................... 11, 17, 18, 19

*In re Tobacco II Cases*,
 46 Cal. 4th 298 (2009) ........................................ 11, 15, 17, 18

*In re Visa Checks/MasterMoney Antitrust Litig.*,
 280 F.3d 124 (2d Cir. 2001) .................................................. 16, 25

*Kasky v. Nike Inc.*,
 27 Cal. 4th 939 (2002) .............................................................. 11

*Keilholtz v. Lennox Hearth Products Inc.*,
 268 F.R.D. 330 (N.D. Cal. 2010) .................................................... 19

*Kwikset Corp. v. The Superior Court of Orange County*,
 246 P.3d 877 (Cal. 2011) ....................................................... 5, 12, 20

*Moeller v. Taco Bell Corp.*,
 220 F.R.D. 604 (N.D. Cal. 2004) ................................................... 14

*Molski v. Gleich*,
 318 F.3d 937 (9th Cir. 2003) ......................................................... 7

*Rafton v. Rydex Series Funds*,
 C 10-1171 CRB, 2010 WL 2629579 (N.D. Cal. June 29, 2010) ...................... 25

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
 559 U.S. 393, 130 S. Ct. 1431 (2010) ............................................... 7

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) ...................................................... 8, 13

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S. Ct. 2541 (2011) ............................................................... 9

*Weiss v. York Hosp.*,
 745 F.2d 786 (3d Cir. 1984) ......................................................... 15

*Wolin v. Jaguar Land Rover N. Am., LLC*,
 617 F.3d 1168 (9th Cir. 2010) ....................................................... 12

*Zeisel v. Diamond Foods, Inc.*,
 2011 WL 2221113 (N.D. Cal. 2011) ................................................... 8

## RULES

FED. R. CIV. P. 23 ............................................................ 6, 7, 8, 13

FED. R. CIV. P. 23(a)(1) ............................................................ 8

FED. R. CIV. P. 23(b)(3) ................................................... 9, 17, 18, 23

FED. R. CIV. P. 23(b)(3)(B) ........................................................ 24

FED. R. CIV. P. 23(g)(1)(A) ........................................................ 16

FED. R. CIV. P. 23(g)(1)(B) ........................................................ 16

FED. R. CIV. P. 23(g)(1)(c)(i) ...................................................... 16

## STATUTES AND
## OTHER AUTHORITIES

3 Alba Conte & Newberg, Newberg on Class Actions §7.20 (4th ed. 2002) .............. 8

3 Alba Conte & Newberg, Newberg on Class Actions §7.24 (3d ed. 1992) .............. 15

7A Wright & Miller, Federal Practice and Procedure, § 1779 (2d ed. 1986) ........... 23

## <u>STATEMENT OF THE ISSUES TO BE DECIDED</u>

1.     Whether the proposed class satisfies the requirements of Fed. R. Civ. P. 23(a).

2.     Whether the proposed class satisfies the requirements of Fed. R. Civ. P. 23(b)(2).

3.     Whether the proposed class satisfies the requirements of Fed. R. Civ. P. 23(b)(3).

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Defendant makes, among other things, sweetened almond milk products. Only two of these sweetened almond milk products are at issue in this case – Shelf Stable Almond Milk and Refrigerated Almond Milk. Each of these products comes in four flavors, but in terms of Defendant's unlawful labeling, the flavors are a distinction without a difference. For example, the use of the label statement "evaporated cane juice" on vanilla almond milk is unlawful for the exact same reason that the use of the label statement "evaporated cane juice" on chocolate almond milk is unlawful. The lawfulness, *vel non*, of the label statement has nothing to do with the flavor. Stated another way, the Sherman Law does not make use of the term "evaporated cane juice" dependent on the flavor of the product.  The same applies to Defendant's use of the label statement "All Natural."

Plaintiff seeks to certify as a class all purchasers of Defendant's Shelf Stable Almond Milk and Refrigerated Almond Milk products.  The two products are misbranded for two straightforward reasons.  First, Defendant sweetened those products with "sugar," but listed the sugar not as "sugar," which would have been lawful, but as "evaporated cane juice," which is unlawful.

Second, the products include the statement "All Natural" when, in fact, the products contain synthetic ingredients that preclude the use of the term "All Natural."  Put simply, the products are not all natural.

Defendant admits that the labels of thest two products are materially identical and the products themselves are substantially similar.[1] The only difference in the labels is the product's different flavors.[2]

This illegal conduct forms the basis for Plaintiff's and the Class Members' claims, which present common factual and legal questions which predominate over any potential individual differences.  Plaintiff's claims are typical of those of absent class members, even if those class

---

[1] Ng Deposition at pp. 83, line 20 through p. 86, line 12.

[2] See Exhibits "A" – "K"—Front of Pack and Ingredient labels for Purchased and Substantially Similar Almond Milk products.

members purchased different flavors of Defendant's almond milk products.

Through the unlawful and misleading use of the terms "evaporated cane juice" and "All Natural" on each of the class products, Defendant deprives consumers of the ability to know what ingredients are in the products. Defendant has a duty to supply an accurate and understandable meaning on the labels of its products. Defendant is aware that consumers are interested in knowing (and in some cases, must know for health reasons) the ingredients in products they purchase. California recognizes that label statements relating to ingredients are material in regulating food products and providing objective standards. It is important that labels comply with California law to ensure consumers are informed.[3] Documents produced by Defendant demonstrate ██████████████████████████████████████████."[4]  Driven by the sales needs of its marketing department, Defendant ignored relevant California law and FDA guidance and warning letters by continuing to mislabel the sugar in its almond milk products as "evaporated cane juice."[5]

In addition to the misbranding with regard to "evaporated cane juice," the principal display panel of Blue Diamond's Almond Breeze Chocolate Almond Milk states, in part, that the product is "All Natural," despite the fact that the product contains the artificial and unnatural ingredient potassium citrate.  Plaintiff's claims concerning the "All Natural" labeling on Defendant's products are based on the use of this label designation despite the fact that the products contain the artificial and unnatural ingredient potassium citrate.  The presence of this synthetic and unnatural substance precludes the use of the label statement "All Natural." In laymen's terms, a manufacturer cannot say that its product is "all natural" when it is not all natural.

Defendant's wrongful conduct is systematic and uniform. The labels at issue are exactly alike regardless of where the product is sold and regardless of flavor. The ingredient labels are

---

[3] Ng Deposition at p. 92, lines 5 through 24.

[4] *See* Exhibit "L" BDG 000033-BDG 000036 and BDG 000140 – 000144 ████████████ ████████████████████████████████████████████████

[5] Ng Deposition at p. 53, line 11 through p. 54, line 2.

identical for the almond milk products purchased by the Class Members. The unlawfulness of the "evaporated cane juice" and "All Natural" ingredient labeling applies no matter the individual circumstances of the buyer, and the question of law regarding that labeling is identical. This presents a classic case for class certification under Federal Rules of Civil Procedure 23 (b)(2) and 23 (b)(3).

<u>**FACTS COMMON TO THE CLASS**</u>

Defendant is a leading retailer and is best known for its almond milk products. In addition to the product purchased by Plaintiff Chris Werdebaugh, Almond Breeze Chocolate Almond Milk, Defendant's identically misbranded products with the label statements "evaporated cane juice" and "All Natural" are listed on Exhibits A-K to this Motion.  Additional labels with the label statements "All Natural" are included as Exhibits AA-GG to this Motion.

Defendant misbranded all of the relevant products in an identical way by listing "evaporated cane juice" as an ingredient instead of the ingredient's common name of "sugar."[6] Defendant admits that the relevant statement is identical across the class products and those product labels are substantially similar; Plaintiff's expert agrees.[7] The representation of "evaporated cane juice" ("ECJ") as an ingredient is a material representation to consumers that affects their purchasing decisions.[8]

Plaintiff was also misled by Defendant's use of the term ECJ because that term falsely suggests that the sweetener was a juice and not what it really was – either sugar or dried cane syrup.  Defendant's illegal use of the term ECJ allowed it to conceal the fact that the added sugar was actually the second greatest ingredient by weight.

"Juice" is defined by 21 CFR 120.1(a) as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables,

---

[6] See Exhibit "A"-"K" containing the front of package and ingredient labels for the Purchased Product and the Substantially Similar Products.

[7] Exhibit "M"—Ng Deposition at p. 83, line 20 through p. 86, line 12; See also Exhibit "N"—Declaration of F. Edward Scarbrough at pp. 4-6.

[8] Exhibit "O"—Declaration of Julie A. Caswell, Ph.D.; see also Exhibit "M"—Ng Deposition at p. 92, lines 5 through 24 (stating FDA compliance on labeling is important to consumers).

or any concentrates of such liquid or puree." Although the FDA does not dispute that sugar cane is a member of the vegetable kingdom in the broad sense of classifying an article as "animal," "vegetable," or "mineral," the agency considers the term "vegetable" in the context of the juice definition to refer more narrowly to edible plant parts that consumers are accustomed to eating as vegetables in their diet. Sugar cane is not a vegetable in this sense. There are other plant juices used for human food that similarly are not "vegetable juice" or "fruit juice" for purposes of the juice definition; e.g., maple syrup and sorghum syrup. In summary, FDA's view is that the juice or extract of sugar cane is not the juice of a plant that consumers are accustomed to eating as a vegetable in their diet and is not, therefore, "juice" as contemplated by the regulation defining that term.

Plaintiff was also misled by Defendant's use of the term ECJ because that term does not accurately describe the basic nature of the food nor its characterizing properties or ingredients. The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 CFR 102.5(a)). Here the true nature of the ingredient is a type of added sugar added to sweeten food. The characterizing properties of this ingredient were falsely misrepresented as a juice when in fact they were a sugar or syrup. The Defendant hid this fact from the Plaintiff by unlawfully using a confusing name (a type of juice) that is not reasonably encompassed within the same name. In doing so the Defendants deceived the Plaintiff about the presence of added sugars that the Plaintiff sought to avoid.

Defendant unlawfully listed the prevalent ingredient as "evaporated cane juice" instead of the ingredient's common name "sugar," knowing California and federal law required Defendant to use the common or usual name of the ingredient.[9]

---

[9] See Exhibit "M"—Ng Deposition at p. 42, lines 3-12 and p. 47, lines 7-13. Also, the FDA's stance on the impropriety of using "evaporated cane juice" as an ingredient name is staunch. FDA regulation 21 C.F.R. § 102.5 (a) mandates that "[t]he common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients…" Defendants use "sugar" to sweeten its products, and, hence, must use that common name on its ingredient labels. There is a regulatory definition of "juice" [21 C.F.R. § 120.1 (a)] and specific regulations concerning the use of that term [see 21 C.F.R.

Defendant knew that evaporated cane juice was simply sugar,[10] and it used it in all of its sweetened almond milk products.[11] Defendant knew that listing "evaporated cane juice" as an ingredient made its label noncompliant with California law and federal regulations.[12] California law is clear that where labeling is proscribed by legislation, the legislature has therefore "recognized the materiality of [the] representation by specifically outlawing [the unlawful] representation." *Kwikset Corp. v. The Superior Court of Orange Cty.*, 51 Cal. 4th 310, 332-33 (2011). Regulated statements are material as a matter of law, and hence are statements upon which a reasonable consumer—like Plaintiff here—would rely. *Id.* at 332-35; *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106-07 (9th Cir. 2013). Defendant's misbranding is regulated, is thus material as a matter of law, and Plaintiff here reasonably relied on those statements for his purchase decision, and would not have bought the product otherwise.

This is not a case of simple oversight of an arcane regulation. California law and FDA regulations provide that "evaporated cane juice" should not be used on a label because it is misleading.[13] That guidance has been consistent since 2004.[14] Defendant knew of but ignored those regulations.[15] Similarly, the principal display panel of Blue Diamond's Almond Breeze Chocolate Almond Milk states, in part, that the product is "All Natural," despite the fact that the product contains the artificial and unnatural ingredient potassium citrate..  Plaintiff's claims concerning the "All Natural" labeling on Defendant's sweetened and unsweetened almond milk products are based on the use of this label designation despite the fact that the products contain artificial and unnatural ingredients.  The labels marked Exhibits A-K (sweetened almond milk)

---

§ 101.30] with which "evaporated cane juice" does not comply. The ingredient here is "sugar," not a juice. Defendant must call it such.

[10] Exhibit "M"—Ng Deposition at p. 59, line 17 through p. 60, line 18 (demonstrating that Blue Diamond's suppliers listed the produce as "sugar," not "evaporated cane juice.")

[11] Exhibit "M"—Ng Deposition at p. 44, lines 3-8.

[12] Exhibit "M"—Ng Deposition at p. 53, line 11 through p. 54, line 2.

[13] Exhibit "M"—Ng Deposition at p. 61, lines 12-19; see also Exhibit "N"—Declaration of F. Edward Scarbrough; see also 21 C.F.R. § 102.5 and October 2009 FDA Guidance (Exhibit "P").

[14] See Exhibits "Q" (Guidance for Industry: Ingredients Declared as Evaporated Cane Juice) and "R" (FDA November 15, 2004 , Warning Letter) to Ng Deposition.

[15] Exhibit "M"—Ng Deposition at p. 53, line 11 through p. 54, line 2.

and Exhibits T-Z (unsweetened almond milk) demonstrate the "All Natural" statement present on the labels.

[redacted]

[16] Exhibit "S" – Blue Diamond internal emails, BDGP000483 through BDGP000490; see also Exhibit "M"—Ng Deposition at pp 12, line 20 through p. 13, line 1, and at p. 15, lines 20-25.

[17] See Exhibit "N"—Declaration of F. Edward Scarbrough at pp. 4-6; see also Ng Deposition at p. 61, lines 12-19 and p. 53, lines 11-23.

[18] Exhibit "S" – Blue Diamond internal emails, at BDGP000483.

[19] *Id.* at BDGP000487.

[20] *Id.*

[21] *Id.*

██████████████████████████████████████

████████   As concerns "evaporated cane juice" on the listed class products, Defendant's conduct resulted in an unlawful, misleading and regulatory non-compliant label.

California law specifically prohibits the sale of: 1) misbranded and 2) misleading products. California has adopted the federal regulations for labeling through the Sherman Act. Defendant's misbranded almond milk products should have never been on the shelves. But they were and Plaintiff purchased them to his detriment.  This case is entirely appropriate for class treatment.

## ARGUMENT

### I.   Legal Standards for Class Certification

Rule 23 of the Federal Rules of Civil Procedure states, "'[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 394 (2010).  Class actions are appropriate in instances where, as here, individual damages are small. *See, e.g., Ballard v. Equifax Check Servs., Inc*., 186 F.R.D. 589, 600 (E.D. Cal. 1999) ("Class action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'").  The decision regarding whether to certify a class is committed to the discretion of the district court. *See Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003).

Although the plaintiff bears the burden of satisfying the elements of Rule 23, *see Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996), the requirements of Rule 23 "should be liberally construed." *See* 3 Alba Conte & Newberg, Newberg on Class Actions §7.20 (4th ed. 2002). The Supreme Court recently affirmed this position, stating:

> Although we have cautioned that a court's class-certification analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim," Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

---

[22] Exhibit "M"—Ng Deposition at p. 15, line 14 through p. 16, line 6.

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) (internal quotes and citations omitted).[23]

## II.    The Proposed Class Meets All Requirements of Rule 23(a)

### A.    The Proposed Class Is Sufficiently Numerous

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable." FED. R. CIV. P. 23(a)(1). In this context, "impracticability" is not equated with impossibility; it is only an apparent difficulty or inconvenience from joining all members of the class. *Ohayon v. Hertz Corp.*, 2012 WL 4936058, at *2 (N.D. Cal. Oct. 16, 2012). The exact size of the class need not be known as long as general knowledge and common sense indicate that the class is sufficiently numerous. *Id*. "The numerosity requirement does not mean that the class must be so numerous that joinder is impossible but rather simply that joinder of the class is impracticable." *Brown v. Wal-Mart Stores, Inc*., 2012 WL 3672957, at *9 (N.D. Cal. Aug. 24, 2012); *see also Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, at *7 (N.D. Cal. 2011) (inferring "there are thousands of potential class members" from number of labels at issue).

Defendant admits that it is "a cooperative of more than 3000 growers and world's largest almond processing and marketing company."[24] Those facts, along with Defendant's publicly available sales data with respect to the products Class Members purchased [25] and Defendant's documents produced during discovery make it clear that the proposed class numbers in the thousands if not millions. The Court can also infer that the numerosity requirement is met because of the number of labels at issue. *Zeisel*, 2011 WL 2221113, at *7 (N.D. Cal. 2011). The numerosity requirement is satisfied in this case.

### B.    This Litigation Concerns Common Questions Of Law and Fact

Like all the requirements of Rule 23(a), the commonality requirement is to be construed permissively. *See Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). "All questions of fact

---

[23]     However, an inquiry into the merits of this case reveals that if one labeling claim is unlawful, then all labels with that claim are unlawful. The challenged labels in this case are indeed unlawful. (Ex. E, Scarbrough Declaration).

[24] Defendant's *Answer [Doc. 20]*, at ¶ 2.

[25] See, e.g., Exhibit "T"—Press Release from Defendant indicating sales data.

and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* (*quoting Hanlon*, 150 F.3d at 1019-1020).

Here, there is a common core of immutable facts that binds the entire class— the purchase of Defendant's products or distributed products with the same misleading and misbranded aspect(s) of the products' labels.  California law reflects FDA regulations and guidance, which makes it clear that labels must bear "[t]he common or usual name of a food" and shall "identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients."[26] Plaintiff alleges that each member of the putative class was exposed to the same misleading and misbranded label of the Almond Breeze Chocolate Almond Milk. That label, as well as identical labels on those of the other listed almond milk products, bears the misbranded label statement  "evaporated cane juice" in lieu of the ingredient's common name of sugar.  Further, Plaintiff alleges that each member of the putative class was exposed to the same label statement "All Natural" which is identical across the labels of the other listed almond milk products.

The commonality requirement may be satisfied if the claims of the prospective class have even one significant issue common to the class. *See, e.g., Hanlon*, 150 F.3d at 1019-1020.  To satisfy this provision, a common question "must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011). In *Dukes*, Justice Scalia emphasized that Rule 23(a)(2)'s commonality requirement remains distinct from the predominance analysis of Rule 23(b)(3) (discussed below), and that "for purposes of Rule 23(a)(2), even a single common question will do."  *Id.* at 2556 (internal quotation and alterations omitted).

There are numerous common questions in this case, the answers to which will resolve the claims of all of the Class members at the same time. If Defendant's products are misbranded, they

---

[26] 21 C.F.R. § 102.5.

1   are misbranded nationwide and in their entirety. If the label statements are unlawful and

2   misleading with regard to one container of Almond Breeze Chocolate Almond Milk, they are

3   unlawful as to all containers of Defendant's almond milk products marked and labeled with the

4   label statements.  The key common question of law and fact with regard to Plaintiff's UCL and

5   CLRA claims is whether the label statements at issue are unlawful, unfair, deceptive, or

6   misleading to reasonable consumers. *See Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co*.,

7   20 Cal. 4th 163, 180 (1999) (UCL prohibits conduct that is unfair or deceptive, even if it is not

8   unlawful).

9         The question of "unlawfulness" is a common question. If Defendant's products are

10  "misbranded" under the Sherman law, Defendant could not lawfully sell the products. Cal. Health

11  and Safety Code § 110760. The at-issue label statements are the glue that holds the Plaintiff's

12  legal theories together. Plaintiff alleges that he relied on the label statements in making his

13  decision to purchase Defendant's product.  Therefore, Plaintiff has a cognizable claim under Cal.

14  Health and Safety Code § 110760 and the question of whether a class-wide claim exists is a

15  common question supporting certification of the class.   Plaintiff has standing to present these

16  claims for the class, since he reasonably relied on the material misbranding statements in making

17  his purchase decisions, and would not have made those purchases otherwise.

18        Defendant's labels fail to comply with the FDA regulations concerning the use of

19  "evaporated cane juice" as an ingredient.[27] Defendant's labels also fail to comply with the FDA

20  regulations concerning the use of the statement "All Natural".  Defendant knew that its labels

21  were unlawful and not compliant with applicable regulations.[28] That labeling was and is identical

22  as it concerns all of the products listed for class certification.[29] Accordingly, the question of

23  lawfulness can be resolved on a class-wide basis for all of these almond milk products.

24        The issue of deceptiveness under the UCL is common to all members of the class, as it

---

[27] Exhibits "R" and "S" (demonstrating that "evaporated cane juice" is a misleading name and it should be listed as "sugar," the ingredient's common name).

[28] Exhibit "M"—Ng Deposition at p. 48, lines 7-18; see also Ng Deposition at pp. 52, line 11 through p. 54 line 2.

[29] Exhibit "M"—Ng Deposition at p. 83, line 20 through p. 86, line 12; See also Exhibit "*"— Scarbrough Declaration.

1    asks whether "members of the public are likely to be deceived." *Kasky v. Nike Inc.,* 27 Cal. 4th

2    939, 951 (2002).  As long as Plaintiff relied on the misrepresentations or omissions (which he

3    did), it is not necessary to show reliance by absent class members. *See In re Tobacco II Cases*, 46

4    Cal. 4th 298, 306, 313 (2009). In a decision reversing the decertification of a class, the California

5    Supreme Court held that "[t]he class, as certified, consists of members of the public who were

6    exposed to defendants' allegedly deceptive advertisements and misrepresentations and who were

7    also consumers of defendants' products during a specific period of time. The nature of the claim

8    is the same--the right to be protected against defendants' alleged deceit--and the remedies remain

9    the same--injunctive relief and restitution." *Id.* at 324.

10       For reasons similar to Plaintiff's UCL claims, Plaintiff's FAL claims also raise common

11   questions.  The California Supreme Court "has recognized that '[a]ny violation of the false

12   advertising law ... necessarily violates' the UCL." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002)

13   (quoting *Committee on Children's Television, Inc. v. General Foods Corp.,* 35 Cal.3d 197, 210

14   (1983)). These laws prohibit "not only advertising which is false, but also advertising which [,]

15   although true, is either actually misleading or which has a capacity, likelihood or tendency to

16   deceive or confuse the public." *Kasky*, 27 Cal. 4th 939, 951 (quoting *Leoni v. State Bar,* 39 Cal.3d

17   609, 626 (1985)).  "Thus, to state a claim under either the UCL or the false advertising law, based

18   on false advertising or promotional practices, 'it is necessary only to show that members of the

19   public are likely to be deceived.'" *Kasky*, 27 Cal. 4th 939, 951 (quoting *Committee on Children's

20   Television, Inc. v. General Foods Corp., supra,* 35 Cal.3d at p. 211).

21       Regarding Plaintiff's CLRA claim, although it is necessary to show reliance by the class,

22   such reliance may be presumed when the alleged misrepresentations and omissions were material.

23   *Steroid Hormone,* 181 Cal. App. 4th at 156-57.  Materiality, in turn, is demonstrated by showing

24   that "a reasonable man would attach importance to its existence or nonexistence in determining

25   his choice of action in the transaction in question, and as such materiality is generally a question

26   of fact unless the fact misrepresented is so obviously unimportant that the jury could not

27   reasonably find that a reasonable man would have been influenced by it." *Id.* at 157 (citations

28   omitted). As is discussed *supra*, Defendant's label statements are regulated by California's

1   legislature, and are, thus, material as a matter of law; hence, they are by definition statements

2   upon which a reasonable consumer would rely. *Kwikset*, 51 Cal. 4th at 330-334. Thus, the

3   question of materiality—how a reasonable person would perceive the labeling—creates another

4   issue that is common for all class members, and California law clearly provides the statement is

5   material. Further, as set forth in the declaration of Julie Caswell, a reasonable consumer would

6   attach significance to the at-issue statements on the labels. (Ex. "O", Caswell Declaration).

7        **C.      Plaintiff's Claims Are Typical of Class Members' Claims.**

8        Typicality results if the representative plaintiff's claims "arise[ ] from the same event,

9   practice or course of conduct that gives rise to the claims of the absent class members and if their

10  claims are based on the same legal or remedial theory." *In re Dynamic Random Access Memory*

11  *(DRAM) Antitrust Litig.,* 2006 WL 1530166, at *4 (N.D. Cal. June 5, 2006) (citations omitted);

12       Any factual variations do not defeat typicality where the underlying claims rely on the

13  same legal or remedial theory. *Wolin v. Jaguar Land Rover N. Am.*, *LLC*, 617 F.3d 1168, 1175

14  (9th Cir. 2010) (reversing district court's denial of class certification in breach of warranty case).

15  Thus, the typicality requirement is satisfied even if there are factual distinctions between the

16  claims of the named plaintiff and those of other class members. *Armstrong v. Davis*, 275 F.3d

17  849, 869 (9th Cir. 2001).

18       Plaintiff's claims are typical of those of the putative class.  Plaintiff's claims are centered

19  on Defendant's products that Defendant misbranded in an identical fashion. Plaintiff, and the

20  other putative class members, purchased Defendant's almond milk products that unlawfully list

21  "evaporated cane juice" as an ingredient and make the claim that the products are "All Natural."

22  Plaintiff's claims even if those class members purchased different flavors of Defendant's almond

23  milk products.  All of the products listed in Plaintiff's proposed class are milk, and all are

24  misbranded in an identical manner.

25       Moreover, the law is clear that it is proper to certify a class in which the product or

26  products purchased by the proposed class representative are not identical with, but substantially

27  similar to, other products included in the class definition.  Such a finding of typicality would be in

28  keeping with this Court's previous rulings on substantially similar non-purchased products in

*Donohue v. Apple, Inc.,* 871 F.Supp. 2d 913 (N.D. Cal. 2012) (consumer has standing to assert claims on behalf of consumers who purchased other models of phones) and *Koh v. S.C. Johnson & Son, Inc.,* No. C-09-0927, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010)(Plaintiff has standing to assert claims on both purchased (Windex) and non-purchased (Shout) cleaning products). *See also, Astiana v. Dreyer's Ice Cream, Inc.,* Nos. C-11-2910 and C-11-3164, 2012 WL 2990766 (N.D. Cal. July 20, 2012)(Judge Chen cites both *Donohue* and *Koh* in holding that a plaintiff had standing to represent a class of Plaintiffs for both purchased and non-purchased ice cream products.  "Plaintiffs are challenging the same type of food products (i.e. ice cream) as well as the same labels for all of the products…[P]laintiffs are challenging the same basic mislabeling practices across different product flavors."  *Id.* at *13).

### D.     The Proposed Class Representative Will Fairly And Adequately Protect Class Interests

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." The Ninth Circuit has established a two-prong test for this requirement: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957.

#### 1.     The Representative Plaintiff Has No Conflicts Of Interest With Other Class Members

Typicality requires that the named plaintiff have claims "reasonably coextensive with those of absent class members," but her claims do not have to be "substantially identical." *Hanlon*, 150 F.3d at 1020. The test for typicality "'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon*, 976 F.2d at 508 (citation omitted).

Because adequacy is closely related to typicality, where, as here, the claims of the class members and the class representative are reasonably co-extensive, there is no conflict. *See Falcon*, 457 U.S. at 157-8, n.13. Moreover, if there are any doubts as to the adequacy of

representation or potential conflicts, they should be resolved in favor of upholding the class, subject to later possible reconsideration. *See* Newberg on Class Actions §7.24 (3d ed. 1992).

### 2. The Representative Plaintiff Will Vigorously Prosecute This Action

"It is not necessary that a class representative be intimately familiar with every factual and legal issue in the case; rather, it is enough that the representative understand the gravamen of the claim." *Moeller v. Taco Bell Corp*., 220 F.R.D. 604, 611 (N.D. Cal. 2004) (citations and internal quotes omitted). To date, the class representative's participation in this litigation has been exemplary. He has reviewed drafts of pleadings, stayed up-to-date on all of the proceedings, communicated with counsel throughout this litigation, and agreed to appear for a deposition by counsel for Defendant. He has demonstrated his willingness to prosecute this action vigorously.

### 3. Plaintiff's Counsel Will Continue to Vigorously Represent the Class

When a court certifies a class, the court must also appoint class counsel unless a specific statute provides otherwise. FED. R. CIV. P. 23(g)(1)(A). The basic requirement for appointment as class counsel is that counsel must fairly and adequately represent the interests of the class. *See* FED. R. CIV. P. 23(g)(1)(B). In appointing class counsel, the court considers "the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class…." FED. R. CIV. P. 23(g)(1)(c)(i).

Plaintiff's counsel are well qualified for appointment as class counsel. Plaintiff's counsel have considerable experience in complex litigation and with consumer class actions. Plaintiff's counsel have no conflicts that would prevent them from adequately representing the interests of the Class. (Ex. "U," Gore Declaration; Ex. "V," Lovelace Declaration; Ex. "W," Herrington Declaration; Ex. "X," Dunn Declaration; Ex. "Y," Yarborough Declaration).  Plaintiff's proposed class counsel are well qualified, and have the resources, knowledge and willingness to represent the class.

### III.    This Case Satisfies Rule 23(b)(2)'s Requirements

Class certification requires that Plaintiff show that the requirements of Rule 23(a) and one of the three subsections of Rule 23(b) are met.  Plaintiff seeks certification of his claim for injunctive relief under Rule 23(b)(2). Certification of this claim under Rule 23(b)(2) does **not** require a showing of predominance of common questions of law or fact over individualized ones, but instead requires that Plaintiff show that Defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  FED. R. CIV. P. 23(b)(2). Plaintiff can make this showing. The labels at issue are uniform across the class and they are unlawful in precisely the same ways. Declaring the label to be unlawful (and the label statement thus material) on one product would be to declare that all labels on those products are unlawful.

Plaintiff's FAL and restitution claims, too, are ripe for certification. Variation among class members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they paid does not defeat the relatively "minimal" showing required to establish commonality. *Hanlon*, 150 F.3d at 1020. Moreover, it is immaterial for purposes of plaintiffs' state law claims because injunctive and restitutionary relief under the UCL and FAL "is available without individualized proof of deception, reliance, and injury." *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012), citing *Tobacco II*, 46 Cal. 4th at 320). Plaintiff's reliance is presumed to the class. *Id.*

There could not be a clearer example of a defendant "act[ing] or refus[ing] to act on grounds that apply generally to the class." FED. R. CIV. P. 23(b)(2).  In fact, the Advisory Committee envisioned just this type of case when it stated that Rule 23(b)(2) certification is appropriate where "settling the legality of the behavior with respect to a class as a whole is appropriate."  FED. R. CIV. P. 23 is appropriate "[w]hen a suit seeks to define the relationship between the defendant(s) and the world at large."  *Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d Cir. 1984).  The Court should certify the injunctive and restitution claims under Rule 23(b)(2).

## IV.    This Case Satisfies Rule 23(b)(3)'s Requirements

In addition to meeting the prerequisites of Rule 23(a) and (b)(2), the present action also satisfies the requirements of Rule 23(b)(3) because common questions of law or fact predominate over any purported individual questions, and a class action is the superior method for the fair and efficient adjudication of this controversy.

### A.      Common Questions of Law or Fact Predominate

"Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc*, 133 S. Ct. at 1191 (emphasis in original). Questions that are common to the class predominate over individual questions where a plaintiff alleges a common course of conduct of misrepresentations, omissions, and other wrongdoing that affected all the class members in the same or similar manner. *See Blackie v. Barrack*, 524 F.2d 891, 905-908 (9th Cir. 1975). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Visa Checks/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). This criterion is normally satisfied when there is an essential common factual link between all class members and the defendant for which the law provides a remedy. *Id.* at 136.

Here, Defendant engaged in the common conduct of misbranding its "sugar" ingredient as "evaporated cane juice" and representing that the products were "All Natural" when they contained artificial and/or unnatural ingredients.  Those labels all violate labeling law and regulations, and were false. Those misrepresentations are material to a reasonable consumer.[30] Each Class member was subject to the same unlawful and deceptive labeling statements during the proposed class period, and each suffered injury from that purchase of the unlawful and misbranded product. Defendant's conduct of making a material misrepresentation on its labels is the source of the class members' harm and their claims.

---

[30] See *Kwikset*, 51 Cal. 4th at 330-34 (holding statements regulated by legislation are material as a matter of law, and thus are by definition statements upon which a reasonable consumer would rely); see also Exhibit "O"—Declaration of Caswell; See also Exhibit "M"—Ng Deposition at p. 92, lines 5 through 24 (stating that whether or not labels accurately list ingredients and comply with FDA regulations is material to consumers).

The FDA regulations and guidance prohibiting the use of "evaporated cane juice" are clear. 21 C.F.R. § 102.5 requires companies to use "[t]he common or usual name of a food" and to "identify or describe, in as simple terms as possible, the basis nature of the food or its characterizing properties or ingredients." The ingredient in Defendant's products is "sugar," not "evaporated cane juice," and should have been labeled as sugar.[31] Even if Defendant disagrees with that legal application, it will have the opportunity to address that on a class-wide basis. That question of law, and the legality and propriety of Defendant's label, predominates.

By the same token, 21 C.F.R. § 101.22 prohibits Defendant from labeling its products as "All Natural" when those products contained potassium citrate.  Each Class member proffers the same legal theories and the same theories of recovery. A decision of whether Defendant is liable for its labeling an ingredient as "evaporated cane juice" and/or being "All Natural" will yield the same result for all. Inasmuch as the claims against Defendant arise out of the same unlawful, unfair and deceptive practices and are premised on the same legal theories, the predominance of common questions of law and fact is clear.[32] A determination of the unlawfulness of one of the labels at issue resolves the unlawfulness of all such labels.

Further, there are no individual reliance components (individual issues) for Plaintiff's UCL, FAL, and CLRA claims.

### 1.      UCL and FAL Claims

California law is now well-settled that classwide reliance is not required for UCL and FAL claims. *See, e.g., Greenwood v. Compucredit Corp.*, C 08-04878 CW, 2010 WL 291842 (N.D. Cal. Jan. 19, 2010); *In re Tobacco II Cases*, 46 Cal. 4th at 326-27; *Steroid Hormone Product Cases*, 181 Cal. App. 4th at 155. A practice is "unlawful" if it violates a law other than

---

[31] See Declaration of Scarbrough (Exhibit "N") and Exhibit "M"—Ng Deposition at p. 61, lines 12-19.

[32] Differences among class members concerning the amount of their individual damages, which are unavoidable in class action litigation, do not prevent a suit from proceeding as a class action. *Blackie*, 524 F.2d at 905. Remedies, whether they be in the form of disgorgement, restitution, or damages, can be proven on a classwide basis. *See* Capps Decl., Ex. M, which is consistent with the Supreme Court's decision  in *Comcast Corp. v. Behrend*, , 2013 WL 1222646, *5 (U.S. Mar. 27, 2013).

the UCL.  The UCL "'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [the UCL].'" *Farmers Ins. Exch. v. Super. Ct*., 2 Cal. 4th 377, 383 (1992). Unlawful claims have been predicated on laws and regulations both federal and state. *See, e.g.*, *Ballard v. Equifax Check Serv., Inc*., 158 F. Supp. 2d 1163, 1176 (E.D. Cal. 2001) (federal Fair Debt Collection Practices Act); *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc*., 720 F. Supp. 805, 808 (N.D. Cal. 1989) (federal environmental laws); *Sw. Marine*, 720 F. Supp. at 807-08 (Navy procurement regulation); *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 649 (1996) (CLRA); *People ex rel. Van de Kamp v. Cappuccio, Inc.*, 204 Cal. App. 3d 750, 759 (1988) (Fish & Game Code).

Here, Plaintiff predicates his claims on Defendant's conduct of unlawfully labeling "sugar" as "evaporated cane juice" and using the label statement "All Natural" when products contained unnatural ingredients. Defendant's unlawful conduct entitles Plaintiff to this relief under the UCL, with Plaintiff having standing to pursue those claims since he relied on those regulated statements to make his purchase decisions. California law is clear that reliance by Plaintiff is presumed to the class members, and the absent class members need not individually show reliance.  *See In re Tobacco II*, 207 P.3d 20, 31-38 (Cal. 2009) (holding that only the named plaintiff need show standing, and reliance is presumed to the absent class members); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011)(explaining that a California state law claim under the UCL focuses on "defendant's conduct," rather than any reliance by plaintiff or individualized proof of deception or injury); s*ee also Ries v. Arizona Beverages USA, LLC*, 287 F.R.D. 523, 537-38 (N.D. Cal. 2012)(stating injunctive relief is available under the unlawful prong "without individualized proof of deception, reliance, and injury.").

California law is well-settled that classwide reliance is not required for UCL claims. *See, e.g., Greenwood v. Compucredit Corp*., 2010 WL 291842 (N.D. Cal. Jan. 19, 2010); *In re Tobacco II Cases*, 46 Cal. 4th at 326-27; *Steroid Hormone Product Cases*, 181 Cal. App. 4th at 155. All a plaintiff must show under the UCL is he or she suffered injury-in-fact and lost money as a result of the unfair competition. *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at

154. Once the named plaintiff has met this burden, "no further individualized proof of injury or causation is required to impose restitution liability against the defendant in favor of absent class members. *Id.* at 154.

The Ninth Circuit case of *Stearns* (referenced *supra*) is applicable for this point. There, the Ninth Circuit reversed the trial court's decision that "individual issues predominated for purposes of the UCL claim because individualized proof of reliance and causation would be required." *Stearns*, 655 F.3d at 1020. Reversing the trial court, the *Stearns* Court held that "[a] [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. ***None of these elements are required to state a claim for injunctive relief under the UCL."*** *Id*. (emphasis added).

As such, concerning Plaintiff's UCL claim, the questions is simple: is Defendant's conduct of representing "sugar" as "evaporated cane juice" lawful or not? If it is unlawful, Plaintiff relied on the statements to make his purchases, and he and the class are entitled to relief they seek. If not, Defendant prevails. Under both scenarios, this common question predominates throughout the class.

Plaintiff's claim under the "unlawful" prong focuses directly on Defendant's misbranding conduct.  The conduct giving rise to Plaintiff's claims, and the law making those claims legally viable are all identical and apply class-wide.[33] Plaintiff has lost money as a result of Defendant's unfair competition, and therefore restitution liability can be imposed on Defendant on behalf of the absent Class members.

### 2.    CLRA Claim

There are no individual reliance issues related to Plaintiff's CLRA claim because classwide reliance is presumed when the misrepresentations or omissions would have been material to "reasonable persons." *Steroid Hormone Product Cases*, 181 Cal. App. 4th at 156-57. As the court in *Keilholtz v. Lennox Hearth Products Inc*., held:

> [T]he causation required by the [CLRA] does not make plaintiffs' claims
> unsuitable for class treatment. Causation as to each class member is commonly

[33] See discussion in Section IV (A), *supra*; see also *In re Tobacco II*, 207 P.3d at 26-38.

proved more likely than not by materiality. That showing will undoubtedly be conclusive as to most of the class.

268 F.R.D. 330, 343 (N.D. Cal. 2010). *See also, Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007).

California law demonstrates that Defendant's regulated statements are material as a matter of law, and Plaintiff here relied on those statements. *Kwikset*, 51 Cal. 4th at 321-329. The Declaration of Julie Caswell, Ph.D.'s further demonstrates the representation of "evaporated cane juice" as an ingredient as well as a product being labeled "All Natural" are material to reasonable consumers. Each Class member was subject to the same ingredient labeling misrepresentations during the proposed class period, and each suffered injury from that purchase of the unlawful and misbranded product. Defendant's conduct of misbranding its "sugar" ingredient on its labels is the source of the class members' harm and their claims. The predominance prong is met.

### 3.    Trial Plan

Whether to require a plaintiff to submit a trial plan at the class certificate stage is a predominance issue within the discretion of the Court and is not a mandatory requirement of class certification. *Slack v. Swift Transp. Co. of Arizona, LLC,* 2013 U.S. Dist. LEXIS 165998 (W.D. Wash. Nov. 20, 2013). "[N]o formal trial plan is required by Rule 23." *Dunbar v. Google, Inc.*, 2012 WL 6202797, n. 4 (N.D. Cal. Dec. 12, 2012) citing *Sullivan v. Kelly Services, Inc.*, 268 F.R.D. 356, 365 (N.D. Cal. 2010) (Nothing in Rule 23b requires Plaintiff to submit a formal trial plan along with her motion for class certification. In *Olson v. Tesoro Ref. & Mktg. Co.*, 2007 WL 2703053 at 7 (W.D. Wash. Sept. 12, 2007) the Court "reject[ed] defendant's contention [] that a trial plan [was] required for class certification, " stating "[i]n *Chamberlan v. Ford Motor Co.,* 402 F.3d 952, 961 n. 4 (9th Cir.2005) (per curium), the Ninth Circuit "decline[d] Ford's 'suggestion that the district court's failure to adopt a trial plan or to articulate how the class action would be tried was an abuse of discretion ... [since] [n]othing in the Advisory Committee Notes suggests grafting a requirement for a trial plan onto the rule.'" Plaintiff is prepared to submit a trial plan if the Court so requires.

### 4.    Defendant's Financial Records Provide a Basis For The Court To Award Restitution and/or Class-wide Damages

1

2        Plaintiff's claims include restitution under the UCL and damages under the CLRA.

3 Plaintiff's expert, Oral Capps, Ph.D., in his declaration attached as Exhibit Z, describes sound

4 methods by which the Court may award restitution or a jury may award damages. Dr. Capps'

5 declaration is consistent with the holding in *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013),

6 that damages models must be tied to viable causes of action.

7
<br>
          **a.**       **The Court Has Broad Discretion To Award Restitution Or**
8                           **Restitutionary Disgorgement**

9        California law is well-settled that this Court has broad discretion to fashion an appropriate

10 remedy under the UCL for Defendant's unlawful and misleading label practices. Plaintiff's

11 expert has proffered viable and sound methods of determining an appropriate award of restitution

12 to the class and/or for a jury to award damages. In *Korea Supply Co. v. Lockheed Martin Corp.,*

13 29 Cal. 4th 1144-52 (2003), the California Supreme Court held that "[t]he object of restitution is

14 to restore the status quo by returning to the plaintiff funds in which he or she has an ownership

15 interest." *Korea Supply*, 29 Cal. 4th at 1149. Although California prohibits award of non-

16 restitutionary disgorgement based upon the investment profits or costs savings made by the

17 defendant under the rule of *Madrid v. Perot Systems Corp.*, 130 Cal. App. 4th 440, 453 (2005)

18 and *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1016 (2006), this Court

19 may return what was taken from the class. Plaintiff seeks restitution for the funds in which he and

20 the class have an ownership interest. In fact, Plaintiff's restitution claim is consistent with

21 controlling California authority.

22        Dr. Capps' Declaration demonstrates that a determination of an appropriate award of

23 restitution or damages is measurable with common evidence and will result in a remedy for the

24 class. Restitution may be awarded using average retail prices, average wholesale prices, or using

25 a benefit of the bargain approach. Defendant's records will provide substantial common evidence

26 to award restitution based on average retail or wholesale prices for the products. Likewise, by

27 utilizing comparable products without the misbranding statements, the benefit-of-the-bargain rule

28 is relatively easy to implement. Regarding benefit of the bargain, Regarding benefits of the

1   bargain analysis, Dr. Capps' declaration includes an analysis of the price of the comparable

2   product Whole Foods 365 Vanilla Almond Milk (32 ounce). As set forth in Dr. Capps'

3   declaration, the common evidence is that for the class period Blue Diamond's products

4   commanded a premium.  For instance, during the class period Blue Diamond Growers' 32 ounce

5   chocolate almond milk sold at Safeway grocery stores for $3.29, or roughly 10.3 cents per ounce.

6   Blue Diamond's chocolate almond milk contains "evaporated cane juice" and is labeled "All

7   Natural".  Whole Foods 365 Vanilla Almond Milk (32 ounce) is a comparable product to the

8   aforementioned Blue Diamond Growers almond milk product.  Whole Foods 365's brand of

9   almond milk contains "organic cane sugar" and not the misleading and unlawful language

10  "evaporated cane juice".  At the present time, labels of Whole Foods 365 Vanilla Almond Milk

11  do not display the misbranding statement "All Natural".  During this same time period, Whole

12  Foods 365 Vanilla Almond Milk was less expensive than the Blue Diamond Growers almond

13  milk products; a 32 ounce container sold for $1.99, or roughly 6.2 cents per ounce. The price

14  difference per ounce subsequently amounts to 4.1 cents per ounce or alternatively, an overcharge

15  of approximately 39.5 percent. By utilizing comparable products without the misbranding

16  statements, the benefit-of-the-bargain rule is relatively easy to implement.

17

18      **b.      Werdebaugh's Proposed Method of Proving CLRA Damages
            Shows That A Remedy May Be Awarded On A Class-Wide
19          Basis**

20      Dr. Capps also provides a sound method which supports class-wide damages under

21  Plaintiff's CLRA claim.  In *In re : Cathode Ray Tube (CRT) Antitrust Litig*., 2013 U.S. Dist.

22  LEXIS 137945 (N.D. Cal. June 20, 2013), Judge Samuel Conti, applying the holding of *Comcast*,

23  held that courts "have never required a precise mathematical calculation of damages before

24  deeming a class worthy of certification." *In re Scrap Metal Antitrust Litig*., 527 F.3d 517, 535

25  (6th Cir.2008).  Indeed, *Comcast* did not articulate any requirement that a damage calculation be

26  performed at the class certification stage.

27      This conclusion is supported by the court's decision in *In re High-Tech Employee*

28  *Antitrust Litig*., 289 F.R.D. 555, 2013 WL 1352016, *28-29 (N.D. Cal April 5, 2013), where,

after discussing the *Comcast* decision, the court still did not require plaintiffs' expert to have performed a damage calculation at the class certification stage. As a result, Judge Conti held that *Comcast* had no application as to the damage analysis in *In re : Cathode Ray Tube (CRT) Antitrust Litig*.

As other courts have recognized, "the issue at class certification is not which expert is the most credible, or the most accurate modeler, but rather have the plaintiffs demonstrated that there is a way to prove a class-wide measure of damages through generalized proof." *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82 (D. Conn. 2009). Plaintiffs are not required to "prove the merits of their case-in-chief at the class certification stage." *Id*. at 101.

### B.    A Class Action Is Superior

Defendant sold products that were unlawfully misbranded. Further, Defendant made material misrepresentations about its products to induce class members to rely on them and purchase the product. The unlawful labeling statements are material. (Ex. "O," Caswell Declaration).  Rule 23(b)(3) enumerates the following factors for the Court to consider in its superiority analysis: (A) the interest of members of the class in individually controlling the prosecution ... of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by ... members of the class; (C) the desirability ... of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. FED. R. CIV. P. 23(b)(3). In the Ninth Circuit, the ultimate test for superiority of the class action mechanism requires "determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023, citing 7A Wright & Miller, Federal Practice and Procedure, § 1779 (2d ed. 1986).

### 1.    Class Members Have No Interest In Pursing Individual Litigation

The first factor to be considered is the interest of each class member in "individually controlling the prosecution or defense of separate actions." FED. R. CIV. P. (b)(3)(A). Here, as in *Hanlon*, the alternative mechanism would be individual claims for relatively small amounts of damages, literally a few dollars per transaction. Bringing individual claims would not only burden the court system that would be deciding the same legal issues in a number of small cases, but would also not make economic sense for litigants or lawyers. It is clear that in many, if not most, individual cases, "litigation costs would dwarf potential recovery." *Hanlon*, 150 F.3d at 1023; *see also Culinary/Bartender Trust Fund*, 244 F.3d at 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some-perhaps most-will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover.") While the aggregate damages of the class members are large, each class member likely paid only several dollars for the products. Because the costs of litigation and attorneys' fees would swamp any amount that he or she could recover, no individual class member would be motivated to pursue litigation and Defendant would be rewarded for its unlawful labeling. *See Hanlon*, 150 F.3d at 1023.

### 2.      Other Pending Actions

The second factor to be considered, "the extent and nature of any litigation concerning the controversy already commenced," FED. R. CIV. P. 23(b)(3)(B), by members of the classes, also supports proceeding with certification in this action. Plaintiff is aware of one other pending action, *Melvin v. Blue Diamond Growers,* Case No. BC532044, filed as a putative class action in Los Angeles County Superior Court on January 2, 2014.  This case has been pending for approximately 1 ½ years and discovery has been developed, which makes this case the superior vehicle for vindicating the claims of the class.

### 3.      This Court Is The Appropriate Forum For This Litigation

The third factor, the desirability of concentrating the litigation in this forum, further supports the superiority of maintaining this class action.  There are currently several other cases pending in the Northern District of California where the courts are familiar with the legal issues involving misbranding.  Moreover, not only does Plaintiff reside in this forum, the effects of Defendant's misbranding were felt here.  The Honorable Judge Breyer, rejecting a Maryland-

defendant's overtures to declare that the "operative facts" emanated from its distant headquarters, stated:

> By choosing to market and sell shares of the Fund nationwide, rather than just in the state of Maryland, Defendants exposed themselves to the risk of being sued in the districts in which the Fund's shares were sold. The interests of justice do not favor allowing Defendants, the alleged malfeasors, to evade the consequences of their decision and, in so doing, to receive the benefit of their preferred forum.

*Rafton v. Rydex Series Funds*, 2010 WL 2629579 (N.D. Cal. June 29, 2010).

Here, Plaintiff resides in this forum, his purchases of the misbranded food products occurred here; and his reliance on those unlawful labels occurred here, too. Plaintiff's Amended Complaint (Dkt.4 ¶ 14.)

### 4.    There Are No Manageability Issues

Prosecution of the claims of the putative Class members in a single class action would not create more management problems than the alternative (*i.e.*, the prosecution of tens of thousands of separate lawsuits by each class member). Significantly, it is proper for a court, in deciding the "best" available method, to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

Given the number and importance of the common questions described above, the adjudication of class claims would not be significantly more burdensome than if the matter were prosecuted individually. Indeed, a determination that one label is misbranded is a determination that all such labels are misbranded. Moreover, it is well accepted that "a class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *In re VisaCheck / MasterMoney Antitrust Litig.*, 280 F.3d at 140 (the mere possibility of complexity or un-manageability does not defeat a class action).

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion to certify this case as a class action, appoint him as Class Representative, and appoint his counsel as Class Counsel.

1    Dated: January 17 2014

2                                              CHRIS WERDEBAUGH

3                                              /s/ Pierce Gore
                                               Pierce Gore (SBN 128515)
4                                              PRATT & ASSOCIATES
                                               1871 The Alameda, Suite 425
5                                              San Jose, CA 95126
                                               Telephone: (408) 369-0800
6                                              Fax:  (408) 369-0752
                                               pgore@prattattorneys.com

7
                                               Dewitt M. Lovelace
8                                              Gary Yarborough
                                               Valerie Lauro Nettles
9                                              LOVELACE LAW FIRM, P.A.
                                               12870 U.S. Hwy 98 West, Suite 200
10                                             Miramar Beach, FL32550
                                               Telephone: (850) 837-6020
11                                             Fax: (850) 837-4093
                                               dml@lovelacelaw.com

12
                                               Colin H. Dunn
13                                             Clifford Law Offices, P.C.
                                               120 North LaSalle, Suite 3100
14                                             Chicago, Illinois 60602
                                               Telephone: (312) 899-9090
15                                             Fax:  (312) 251-1160
                                               chd@cliffordlaw.com

16

17

18

19

20

21

22

23

24

25

26

27

28