1  HANSON BRIDGETT LLP
   LAWRENCE M. CIRELLI, SBN 114710
2  lcirelli@hansonbridgett.com
   MEGAN OLIVER THOMPSON, SBN 256654
3  moliverthompson@hansonbridgett.com
   GEOFFREY R. PITTMAN, SBN 253876
4  gpittman@hansonbridgett.com
   425 Market Street, 26th Floor
5  San Francisco, California 94105
   Telephone:    (415) 777-3200
6  Facsimile:    (415) 541-9366

7  Attorneys for Defendant Blue Diamond Growers

8                    **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

10

11

12 | CHRIS WERDEBAUGH, individually and on behalf of other similarly situated, | CASE NO. 5:12-cv-02724 LHK

13 |                        Plaintiff, | **DEFENDANT BLUE DIAMOND GROWERS' MEMORANDUM OF POINTS AND AUTHORITIES IN**

14 |              v. | **OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION,**

15 | BLUE DIAMOND GROWERS, | **APPOINTMENT OF CLASS REPRESENTATIVE AND**

16 |                       Defendant. | **APPOINTMENT OF CLASS COUNSEL**

17 | Date:      April 24, 2014
   | Time:      1:30 p.m.
18 | Place:     Courtroom 8, 4th Floor
   | Judge:     Hon. Lucy H. Koh
19 |
   | Action Filed:     May 29, 2012
20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED...................................................................... vii

I.      INTRODUCTION......................................................................................................... 1

II.     PERTINENT FACTS.................................................................................................... 2

    A.    The proposed Class representative, Chris Werdebaugh........................................ 2

    B.    The nationwide variation in Almond Breeze almondmilk sales. .......................... 4

III.    ARGUMENT ............................................................................................................... 4

    A.    Plaintiff has not satisfied the requirements of Rule 23(a). .................................. 5

        1.    Plaintiff's claims are not typical of the putative class.................................. 5

        2.    Plaintiff is not an adequate class representative.......................................... 7

        3.    Plaintiff has not proposed an ascertainable class. ...................................... 9

    B.    The proposed class should not be certified because Plaintiff has not satisfied the commonality requirement of Rule 23(a)(2) or the predominance requirement of Rule 23(b)(3). .............................................................................. 11

        1.    Werdebaugh has failed to show that reliance, materiality, and causation can be proved with common evidence. ...................................... 11

            a.    Werdebaugh is not entitled to a presumption of reliance with respect to his "All Natural" claims because there is no common definition of "All Natural." ............................................... 11

            b.    Werdebaugh is not entitled to a presumption of reliance because what is material varies from consumer to consumer. ........ 13

            c.    The allegedly deceptive labeling statements are not specifically regulated and, therefore, are not material under *Kwikset*. .......................................................................... 14

        2.    Plaintiff's proposed damages models fail to show that damages can be calculated on a classwide basis without resort to individualized proof. ........................................................................................................ 16

    C.    Plaintiff's proposed nationwide class fails due to multiple choice of law inquiries. .......................................................................................................... 20

    D.    There is no basis to certify a Rule 23(b)(2) class given Plaintiff's prayer for monetary damages.............................................................................................. 22

    E.    Plaintiff cannot serve as a class representative because he lacks standing. ........... 23

        1.    Plaintiff cannot show Article III standing or injury-in-fact. ...................... 23

2.  Plaintiff's alleged reliance on the ECJ ingredient statement is implausible. .............................................................. 24

IV.  CONCLUSION .............................................................................. 25

OPPOSITION TO MOTION FOR CLASS CERTIFICATION

# **TABLE OF AUTHORITIES**

**Page**

## **FEDERAL CASES**

*Amchem Prods. v. Windsor*
   521 U.S. 591 (1997) ........................................................................ 11

*Astiana v. Ben & Jerry's Homemade, Inc.*
   No. C 10-4387 PJH, 2014 U.S. Dist. LEXIS 1640 (N.D. Cal. Jan. 7, 2014) ...............17, 19

*Astiana v. Kashi Co.*
   291 F.R.D. 493 (S.D. Cal. 2013) ........................................................ 1, 12, 13, 20

*Avoy v. Turtle Mountain, LLC*
   No. 13-CV-0236-LHK, 2014 U.S. Dist. LEXIS 19241 (N.D. Cal. Feb. 14, 2014) ........... 25

*Brazil v. Dole Food Co., Inc.*
   No. 12-CV-01831-LHK, 2013 U.S. Dist. LEXIS 136921 (N.D. Cal. Sept. 23, 2013) ....... 17

*Bruno v. Eckhart Corp.*
   280 F.R.D. 540 (C.D. Cal. 2012) ........................................................ 21

*Comcast Corp. v. Behrend*
   133 S. Ct. 1426 (2013) ............................................................. 5, 16, 20

*Diacakis v. Comcast Corp.*
   No. C 11-3002 SBA, 2013 U.S. Dist. LEXIS 64523 (N.D. Cal. May 3, 2013) ................. 10

*Evans v. Linden Research, Inc.*
   No. C 11-01078 DMR, 2012 U.S. Dist. LEXIS 166006 (N.D. Cal. Nov. 20, 2012) .......... 23

*Fine v. Conagra Foods, Inc.*
   No. CV-10-01848, 2010 U.S. Dist. LEXIS 101830  (C.D. Cal. Aug. 26, 2010) ............. 7, 8

*Freeman v. Time, Inc.*
   68 F.3d 285 (9th Cir. 1995) ........................................................... 13, 14

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*
   270 F.R.D. 150 (S.D.N.Y. 2010) ......................................................... 8-9

*Gen. Tel. Co. v. Falcon*
   457 U.S. 147 (1982) ..................................................................... 5, 7

*Gerlinger v. Amazon.com, Inc.*
   526 F.3d 1253  (9th Cir. 2008) ........................................................... 24

*Gianino v. Alacer Corp.*
   846 F. Supp. 2d 1096 (C.D. Cal. 2012) ............................................... 20, 21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................... 5, 7, 11

*Hanon v. Dataproducts Corp.*
   976 F.2d 497 (9th Cir. 1992) ....................................................................... 5, 6

*Harris v. Vector Mktg. Corp.*
   753 F. Supp. 2d 996 (N.D. Cal. 2010) ............................................................ 8

*Hodes v. Van's Int'l Foods*
   No. CV-09-1530 RGK (FFMx), 2009 U.S. Dist. LEXIS 72913 (C.D. Cal. July 23,
   2009)................................................................................................................ 9

*Holt v. Globalinx Pet LLC*
   No. SA CV 12-0041 DOC, 2014 U.S. Dist. LEXIS 11825 (C.D. Cal. Jan. 30, 2014) ....... 20

*In re Hitachi Television Optical Block Cases*
   No. 08-cv-1746, 2011 U.S. Dist. LEXIS 135 (S.D. Cal., Jan. 3, 2011)............................ 21

*In re POM Wonderful LLC Mktg. & Sales Practices Litig.*
   No. ML 10-02199 DDP (RZx), 2012 U.S. Dist. LEXIS 141150 (C.D. Cal. Sept. 28,
   2012)................................................................................................................ 21

*In re Vioxx Class Cases*
   180 Cal.App.4th, 116 (2009) ......................................................................... 13

*Kane v. Chobani, Inc.*
   No. 12-cv-02425-LHK, 2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept. 19,
   2013)................................................................................................................ 17

*Kane v. Chobani, Inc.*
   No. 12-cv-02425-LHK, 2014 U.S. Dist. LEXIS 22258, (N.D. Cal. Feb. 20,
   2014)................................................................................................... 1, 6, 23, 25

*Kottaras v. Whole Foods Markets, Inc.*
   281 F.R.D. 16 (D.D.C. 2010) ......................................................................... 19

*Kowalsky v. Hewlett-Packard Co.*
   No. 5:10-cv-02176-LHK, 2012 U.S. Dist. LEXIS 34597 (N.D. Cal. Mar. 14, 2012) .. 20, 22

*Mahfood v. QVC, Inc.*
   No. 06-0659-AG (ANx), 2008 U.S. Dist. LEXIS 105229 (C.D. Cal. Sept. 22, 2008) ....... 22

*Major v. Ocean Spray Cranberries, Inc.,*
   No. 5:12-cv-03067 EJD, 2013 U.S. Dist. LEXIS 81394 (N.D. Cal. June 10, 2013) ........ 5, 6

*Mazur v. eBay, Inc.*
   257 F.R.D. 563 (N.D. Cal. 2009) ................................................................... 10, 20

*Mazza v. American Honda Motor Co.*
   666 F.3d 581 (9th Cir. 2012)...................................................................... 20, 21, 22

*McLaughlin v. Am. Tobacco Co.*
   522 F.3d 215 (2d Cir. 2008) ......................................................................... 20

*Molski v. Gleich*
   318 F.3d 937 (9th Cir. 2003) ......................................................................... 22

*Monsanto Co. v. Geertson Seed Farms*
        130 S. Ct. 2743 (2010) ............................................................................................ 23

*Nelsen v. King County*
        895 F.2d 1248 (9th Cir. 1990) ............................................................................... 23

*Ogden v. Bumble Bee Foods, LLC*
        No. 5:12-CV-01828-LHK, 2014 U.S. Dist. LEXIS 565 (N.D. Cal. Jan. 2, 2014) ........ 17, 19

*Oshana v. Coca-Cola Co.*
        472 F.3d 506 (7th Cir. 2006) .................................................................................. 10

*Pelayo v. Nestle USA, Inc.*
        CV 13-5213-JFW, 2013 U.S. Dist. LEXIS 154434 (C.D. Cal. Oct. 25, 2013) ...... 12, 13, 16

*Red v. Kraft Foods, Inc.*
        No. CV-10-1028-GW (AGRx), 2012 U.S. Dist. LEXIS 186948 (C.D. Cal. Apr. 12,
        2012) ................................................................................................................ 9, 17

*Ries v. Ariz. Beverages USA LLC*
        287 F.R.D. 523 (N.D. Cal. 2012) ........................................................................... 19

*Sethavanish v. ZonePerfect Nutrition Co.*
        No. 12-2907-SC, 2014 U.S. Dist. LEXIS 18600 (N.D. Cal. Feb. 13, 2014) ............... 9, 10

*Sokol v. New United Motor Mfg., Inc.*
        No. C 97-4211 SI, 1999 U.S. Dist. LEXIS 20215 (N.D. Cal. 1999) ................................. 22

*Stearns v. Ticketmaster Corp.*
        655 F.3d 1013 (9th Cir. 2011.) ...................................................................... 5, 6, 13

*Thurston v. Bear Naked, Inc.*
        No. 3:11-cv-02890-H (BGS), 2013 U.S. Dist. LEXIS 151490 (S.D. Cal.
        July 30, 2013) ................................................................................... 1, 12, 13, 20

*Wal-Mart Stores, Inc. v. Dukes*
        131 S. Ct. 2541 (2011) .......................................................................... *passim*

*Weiner v. Snapple Bev. Corp.*
        2010 U.S. Dist. LEXIS 79647 (S.D.N.Y. Aug. 3, 2010) .................................. 18

*Wiener v. Dannon, Inc.*
        255 F.R.D. 658 (C.D. Cal. 2009) ........................................................................ 5, 6

*Xavier v. Philip Morris USA, Inc.*
        787 F. Supp. 2d 1075 (N.D. Cal. 2011) ...................................................... 9, 10


**STATE CASES**

*Colgan v. Leatherman Tool Grp., Inc.*
        135 Cal. App. 4th 663 (2006) ................................................................................ 17

*Korea Supply Co. v. Lockheed Martin Corp.*
    29 Cal. 4th 1134 (2003)................................................................................ 17

*Kwikset Corp. v. Superior Court*
    51 Cal. 4th 310 (2011)................................................................. 6, 14, 15, 16

*Wash. Mut. Bank v. Superior Court*
    24 Cal. 4th 906 (2001)................................................................................ 21


## RULES

Federal Rule of Civil Procedure 23 ................................................................... *passim*

Federal Rule of Civil Procedure 23(a) ................................................................. 5, 7

Federal Rule of Civil Procedure 23(a)(2) ................................................................ 11

Federal Rule of Civil Procedure 23(a)(3) .................................................................. 5

Federal Rule of Civil Procedure.23(a)(4) .................................................................. 7

Federal Rule of Civil Procedure 23(b)(2) ................................................................ 22

Federal Rule of Civil Procedure 23(b)(3) ................................................................ 11


## REGULATIONS

7 C.F.R. § 205.605(b)................................................................................... 1, 12

21 C.F.R. § 10.115 .........................................................................................15

56 Fed. Reg. 60421 (Nov. 27, 1991)..................................................................... 16

58 Fed. Reg. 2302 (Jan. 6, 1993) ...............................................................11, 12, 16

79 Fed. Reg. 12507 (Mar. 5, 2014) .......................................................................15

## STATEMENT OF ISSUES TO BE DECIDED

1. **Typicality.** Has Plaintiff shown that he is a typical class member where he is suing over 17 products that he did not purchase and where he: (1) failed to read challenged labeling statements; (2) purchased the challenged product *after* filing this lawsuit; (3) continues to purchase products with the challenged ingredients; (4) did not pay a premium and price played no role in his decision to purchase the challenged product; and (5) purchased the product for reasons unique to him?

2. **Adequacy of Representation.** Has Plaintiff shown that he and his counsel are adequate representatives where he: (1) never reviewed either complaint filed in this action; (2) filed a First Amended Complaint with affirmative misrepresentations with no basis in fact; (3) knows very little about the substance of this litigation outside of what counsel has told him; and (4) has only minimally participated in this litigation?

3. **Ascertainability.** Has Plaintiff shown that the proposed class is "ascertainable" where no company records exist to identify customers or their purchases, where there is no showing that consumers kept their receipts, and where the class definition necessarily includes a large number of uninjured persons?

4. **Commonality and Predominance.** Has Plaintiff met his burden to show that he can prove his claims by common evidence where:  (1) there is no common definition of "All Natural," and where the challenged ingredient is certified for use in "organic" products; (2) Plaintiff has offered no substantiated evidence of materiality or deception; (3) the challenged labeling statements are not specifically regulated; and (4) individual issues predominate with respect to restitution and damages?

5. **Nationwide Class.** Can a nationwide class be certified where material differences in state consumer protection laws have been shown and the inclusion of class members outside of California would require the Court to apply the laws of all 50 states?

6. **Rule 23(b)(2).** Has Plaintiff satisfied the requirements of Rule 23(b)(2) where his lawsuit primarily seeks monetary damages and where the injunctive relief sought is equally obtainable through an individual action?

7. **Standing.** Has Plaintiff met his burden to prove Article III and statutory standing where he cannot demonstrate an injury-in-fact and where his alleged reliance on the ingredient statement "evaporated cane juice" is implausible?

## I.    INTRODUCTION

This case is not worthy of class treatment.  Plaintiff Chris Werdebaugh alleges that he was misled by the labeling statements "All Natural" and "evaporated cane juice" on Defendant Blue Diamond Growers' ("Blue Diamond") Almond Breeze products.  More specifically, Plaintiff claims that Blue Diamond's "All Natural" labeling statement on its Chocolate Almond Breeze product is unlawful and misleading because the product contains potassium citrate.  However, potassium citrate is one of the ingredients that is allowed to be used in products that are certified as "organic."[1]  As Judge Huff has held in two similar food labeling class actions,[2] where the challenged ingredient can be used in "organic" products, there is no common meaning of "All Natural," and class certification is improper.  The same is true here.

Further, Plaintiff's "evaporated cane juice" claim is equally unavailing for class treatment because Plaintiff has failed to demonstrate that he plausibly relied on the ingredient statement "evaporated cane juice" when he purchased the product.  Plaintiff testified that despite reading the clear labeling statement that the product contained 20 grams of sugars and admitting that he is unaware of any type of "cane" other than sugar cane that is used in food products, he was misled by the term "evaporated cane juice."  As this Court recently held, however, such a theory of reliance is wholly implausible.[3]  Thus, Plaintiff lacks standing and certification should be denied.

Class certification is also inappropriate because Plaintiff has failed to meet his burden to satisfy the requirements of Rule 23.  The typicality and adequacy of representation requirements are not satisfied because Plaintiff is subject to unique defenses and has created significant credibility issues by filing a complaint with material misrepresentations.  Plaintiff has also failed to demonstrate an ascertainable class.  Further, commonality and predominance are also lacking because Plaintiff offers no common evidence of deception or materiality and his proposed

---

[1]  *See* 7 C.F.R. § 205.605(b).

[2]  *Astiana v. Kashi Co.*, 291 F.R.D. 493, 508 (S.D. Cal. 2013); *Thurston v. Bear Naked, Inc.*, No. 3:11-cv-02890-H (BGS), 2013 U.S. Dist. LEXIS 151490, *23-26 (S.D. Cal. July 30, 2013).

[3]  *Kane v. Chobani*, No. 12-cv-02425-LHK, 2014 U.S. Dist. LEXIS 22258, *18-26 (N.D. Cal. Feb. 20, 2014).

OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1   damages model fails to show that damages can be calculated on a classwide basis without resort to

2   individualized proof.  Instead of meeting his burden for certification, Plaintiff improperly attempts

3   to distract the Court with a lengthy merits discussion derived from testimony by a Blue Diamond

4   employee.  This distraction should be ignored and class certification should be denied.

## II.        PERTINENT FACTS

**A.        The proposed Class representative, Chris Werdebaugh.**

7           Chris Werdebaugh seeks to represent a nationwide class of consumers who purchased Blue

8   Diamond's almondmilk products that bear the labeling statements "All Natural" and/or

9   "evaporated cane juice."[4]  (Proposed Order Granting Plaintiff's Motion for Class Certification,

10  Dkt. No. 74-1, at 2:3-6.)  Werdebaugh alleges to have purchased only one of Blue Diamond's

11  products:  the shelf stable Chocolate Almond Breeze.  (First Amended Complaint ("FAC"), Dkt.

12  No. 38, ¶ 2; Pltf. Depo.[5] at 40:18-21, 41:9-14.)  He testified that he bought this product for the first

13  time in April 2012 at Whole Foods, but he no longer has the receipt for his purchase and can only

14  guess at the price he paid.  (*Id.* at 58:13-15, 75:1-15, 107:2-108:4, 143:18-144:3.)  He claims that

15  he was looking for a healthy "treat" alternative to white dairy milk for his children.  (*Id.* at 69:3-8,

16  80:10-19.)  After being introduced to his attorney, Pierce Gore, through his friend's wife (who is

17  Sharon Pratt of Pratt & Associates – the law firm that Mr. Gore is affiliated with), Werdebaugh

18  claims that he poured out the remaining two cartons of chocolate almondmilk.  (*Id.* at 83:20-85:21,

19  67:6-16, 68:12-16, 79:5-11.)  Despite having alleged in the FAC that he would not have purchased

20  the product but for the "All Natural" and "evaporated cane juice" (also referred to herein as

21  "ECJ") labeling statements, Werdebaugh produced a representative sample of grocery receipts

22  showing that he bought at least two more cartons of Chocolate Almond Breeze in November 2012

---

24  [4]  The class as defined in Plaintiff's Motion for Class Certification, for Appointment of Class
    Representative and for Appointment of Class Counsel ("Motion") is substantially narrowed from
25  the class alleged in the FAC, which included several other non-almondmilk Blue Diamond
    products described therein as "Substantially Similar."  (FAC, ¶¶ 3, 4, 8.)
26
27  [5]  Excerpts from Chris Werdebaugh's deposition are attached as Exhibit A to the Declaration of
    Lawrence M. Cirelli in Support of Blue Diamond Growers' Opposition to Plaintiffs' Motion for
28  Class Certification ("Cirelli Decl.")  (Cirelli Decl., ¶ 3, Ex. A ["Pltf. Depo."].)

1   after this lawsuit was filed. (*Id.* at 56:13-57:14, 60:1-12, 70:15-74:25.) And despite having also

2   alleged that he paid a premium for the product because of these labeling statements, Werdebaugh

3   admitted that he pays a premium for shopping at Whole Foods. (*Id.* at 75:1-19, 100:20-101:4.)

4   Moreover, Werdebaugh stated that price was not a factor in his decision to purchase the Chocolate

5   Almond Breeze and that he did not look for any alternatives, let alone any less expensive products.

6   (*Id.* at 99:17-100:6.)

7           Werdebaugh's various assertions regarding his reliance on the "All Natural" and ECJ

8   labeling statements are inconsistent. Though Werdebaugh says that the "All Natural" labeling

9   statement was one of the primary reasons he bought Chocolate Almond Breeze, he cannot recall

10  purchasing any other product solely because of an "All Natural" labeling statement. (Pltf. Depo.,

11  101:5-20, 126:3-12.) He also admits to not having read the back panel or seeing all of the

12  statements on the label. (*Id.* at 43:13-21, 44:3-11.) Despite having alleged in the FAC that the

13  "All Natural" statement was misleading due to the presence of cocoa (dutch process), potassium

14  citrate, vitamin a palmitate, vitamin d2, and d-alpha-tocopherol in the product, Werdebaugh now

15  takes issue with only potassium citrate. (*Id.* at 47:14-50:19.) Even though Werdebaugh claims to

16  seek out "natural" and "organic" products, he still buys products that are not labeled as "natural"

17  and products that contain artificial ingredients. (*Id.* at 38:17-39:1.) He also cannot specify any

18  ingredients that would prevent him from purchasing any product. (*Id.* at 123:1-4.)

19          Werdebaugh maintains that he did not know what ECJ was when he bought the Almond

20  Breeze product in April 2012. He assumed that "it was natural juice that was extracted from the

21  almond." (Pltf. Depo., 32:1-5.) Though he claims to not have understood "cane" to refer to

22  "sugar cane," he was unable to identify any type of "cane" other than sugar cane. (*Id.* at 34:23-

23  35:25.) And he purchased the product even though he saw the label's reference to "sugars, 20g"

24  because "I'm not sure if that's an actual squeezed element of an almond that naturally occurs or

25  not." (*Id.* at 46:6-24.) Even though Werdebaugh testified that he now knows that ECJ is a sugar,

26  he still buys products that contain ECJ, including Horizon Organic Chocolate Milk. (*Id.* at

27  136:20-138:14; *see also* Declaration of Geoffrey R. Pittman in Support of Defendant Blue

28  Diamond Growers' Motion for Class Certification ("Pittman Decl."), ¶ 9, Ex. E.)

**B.     The nationwide variation in Almond Breeze almondmilk sales.**

The products at issue for the proposed nationwide class are all of Blue Diamond's almondmilk products that bear the labeling statements "All Natural" and/or "evaporated cane juice." Plaintiff has identified 18 such products in his class certification papers. (Motion, Exs. A-K, AA-GG.) These products include refrigerated and shelf-stable versions of sweetened and unsweetened almondmilk of various flavors. (*Id.*) Blue Diamond's almondmilk products are sold in every state. (Declaration of John O'Shaughnessy in Support of Blue Diamond Growers' Opposition to Plaintiffs' Motion for Class Certification ("O'Shaughnessy Decl."), ¶ 6.) The almondmilk products are sold in a variety of sales channels, including grocery, natural food stores, drug stores, and mass merchandisers. (Cirelli Decl., ¶ 4, Ex. B ["Ugone Report"], ¶¶ 10, 32, 60, 79.) Within each sales channel, the almondmilk products are sold in numerous different stores. (*Id.*) At different points in time throughout the class period, at different retailers, the almondmilk products were subject to various promotions and/or discounts, including coupons. (*Id.*, ¶ 79.)

Although Plaintiff seeks damages based in part on the supposed "premium" paid for Blue Diamond's products, except for a very limited amount (less than 0.1%) of direct sales to consumers through www.bluediamond.com and Blue Diamond's three retail stores, Blue Diamond does not set the retail price for any of the Almond Breeze products identified. (O'Shaughnessy Decl., ¶¶ 4-5.) Rather, the individual retailers set the retail price. (*Id.*) Moreover, there is wide variation in retail prices across the individual products, sales channels, individual retailers, geographic regions, and time period. (Ugone Report, ¶¶ 53-77.) For example, the price charged in 2012 for the very product allegedly purchased by Werdebaugh – Chocolate Almond Breeze – varied by 30% across sales channels. (*Id.*, ¶¶ 58-59.) In addition, the price charged in 2012 for the top selling shelf-stable product varied by 26% across sales channels, by 31% across different grocery outlets, and by 40% across cities in California. (*Id.*, ¶¶ 59, 61, 64.)

### III.     ARGUMENT

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (citation omitted). Because Rule 23 "does not set forth a mere pleading standard," a

party must "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).  The Court must conduct a rigorous analysis to determine whether the prerequisites of Rule 23 have been met and should refuse certification if not fully satisfied that they have.  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

**A.      Plaintiff has not satisfied the requirements of Rule 23(a).**

**1.      Plaintiff's claims are not typical of the putative class.**

Rule 23(a)(3) requires that "the claims or defenses of representative parties are typical of the claims or defenses of the class."  The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  While "reasonably coextensive" claims with absent class members will satisfy Rule 23(a)(3)'s typicality requirement (*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)), the class must be limited to "those fairly encompassed by the named plaintiff's claims."  *Dukes*, 131 S. Ct. at 2550 (quoting *Falcon*, 457 U.S. at 156).  A proposed class representative fails the typicality requirement if he or she cannot assert the claims sought to be certified.  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019-20 (9th Cir. 2011.)

Here, Werdebaugh's claims are atypical of those of the putative class because he only purchased a single product – Blue Diamond's shelf stable Chocolate Almond Breeze (Pltf. Depo. at 40:18-21, 41:9-14.) – and did not purchase any of the other 17 Almond Breeze products that are included in the proposed class definition.  *Major v. Ocean Spray Cranberries, Inc.*, No. 5:12-cv-03067 EJD, 2013 U.S. Dist. LEXIS 81394, *11-14 (N.D. Cal. June 10, 2013); *Wiener v. Dannon, Inc.*, 255 F.R.D. 658, 666 (C.D. Cal. 2009).  In *Major* – another food labeling class action brought by Werdebaugh's counsel – Judge Davila denied plaintiff's motion for class certification on the grounds that "[p]laintiff's proposed classes are so broad and indefinite that they encompass products that she herself did not purchase."  Under *Major*, Werdebaugh fails to satisfy the

typicality requirement for all products other than Chocolate Almond Breeze.[6]

Further, Werdebaugh's claims also fail to satisfy the typicality requirement because he did not read or review the back label of the product before purchasing it, even though the FAC alleges that this panel contained two of the three allegedly unlawful and misleading "all natural" statements being challenged by this lawsuit.[7]  (Pltf. Depo. at 42:8-11, 43:13-21, 44:3-11; FAC, ¶ 58.)  To successfully pursue a consumer fraud action based on allegedly false or misleading statements, plaintiffs must plead and prove actual reliance.  *See, e.g., Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326-27 (2011).  As this Court recently recognized, this requirement applies equally to the UCL, the FAL, and CLRA, and to all three prongs of the UCL, where, as here, Plaintiff's claims allege deceptive labeling.  *Chobani*, 2014 U.S. Dist. LEXIS 22258 at *18-26.  Moreover, it is indisputable that a consumer cannot rely on statements that he or she did not read.  *See, e.g., Stearns*, 655 F.3d at 1019-20.  Thus, because Werdebaugh did not read or review the same labeling statements as members of the putative class, his claims are not typical of other putative class members.[8]

Werdebaugh also fails to satisfy the typicality requirement for the additional reason that he "is subject to unique defenses which threaten to become the focus of the litigation."  *Hanon*, 976 F.2d at 508 (citations omitted).  <u>First</u>, Werdebaugh admitted during his deposition that he and his wife purchased two cartons of Chocolate Almond Breeze during a shopping trip on November 21,

---

[6]  The cases Plaintiff cites for the proposition that a plaintiff has standing to sue on "substantially similar" products are inapposite as each of those cases involved motions to dismiss, not motions for class certification, which necessarily require more than merely satisfying a pleading standard. (*See* Motion at 12:25-13:10.)  The class certification decisions in *Major* and *Wiener* are more instructive to the present case.

[7]  The two statements that Werdebaugh did not read were as follows:  (1) "*Almond Breeze® Almondmilk is an all natural, great tasting NON-DAIRY BEVERAGE*"; and (2) "*All Natural with added Vitamins and Minerals.*"  (FAC, ¶ 58.)  This fact also raises credibility issues that go to the adequacy of Werdebaugh and his counsel as class representative and class counsel (see discussion in Section IV.A.2 below).

[8]  Further supporting Werdebaugh's lack of typicality, while the FAC challenges five allegedly "artificial" ingredients (FAC, ¶ 62), Werdebaugh was only concerned with one – potassium citrate – and did not know what the other four were when he purchased the product.  (Pltf. Depo. at 47:14-50:19.)

2012 – nearly six-months *after* he became aware of the alleged misbranding statements and filed this lawsuit on May 29, 2012.  (Pltf. Depo. at 70:15-74:25.)  Thus, he is subject to the unique defenses of lack of materiality and causation.  Second, even though he was made aware of the alleged misbranding issues regarding the Chocolate Almond Breeze product by his attorneys, Werdebaugh continues to purchase products containing the very ingredients that he takes issue with here:  ECJ and potassium citrate.  (*Id.* at 61:13-63:10, 96:12-97:10, 136:20-138:14; *see also* Pittman Decl., ¶ 9.)  What's more, he has never even looked to see if these products contain evaporated cane juice.  (*Id.* at 135:12-18, 138:3-9.)  This testimony exposes Werdebaugh to a substantial causation defense.  Third, Werdebaugh's deposition testimony establishes that the only "premium" he paid on the product was due to the store he chose to shop at – Whole Foods; he never looked for or identified any alternative products and price played no role in his decision to purchase the Chocolate Almond Breeze.  (*Id.* at 75:1-23, 99:17-100:6, 100:20-101:4.)  Last, Werdebaugh's claims are atypical because his asserted reasons for purchasing the product – that it was an alternative to white dairy milk for his kids, that the product was labeled "all natural," and that it contained chocolate (Pltf. Depo. at 69:3-8, 79:13-80:19, 99:5-15) – are unique to him and do not account for the myriad other reasons why members of the putative class chose to purchase Blue Diamond's Almond Breeze products.  *See, e.g., Fine v. Conagra Foods, Inc.*, No. CV-10-01848, 2010 U.S. Dist. LEXIS 101830, *9-11 (C.D. Cal. Aug. 26, 2010).  Therefore, Werdebaugh has failed to satisfy his burden to show that his claims are typical.

### 2.  Plaintiff is not an adequate class representative.

For many of the same reasons that Werdebaugh fails the typicality requirement, he also fails to satisfy the adequacy of representation requirement.  *See, e.g., Falcon*, 457 U.S. at 158 n.13 ("The commonality and typicality requirements of Rule 23(a) tend to merge").  Rule 23(a)(4) permits class certification only if the "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal adequacy:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.  Plaintiff has failed to satisfy his burden to

1    prove adequacy.

2           First, as demonstrated above, Werdebaugh is not an adequate class representative because

3    his claims are not co-extensive with the claims of the class.  *See, e.g., Fine*, 2010 U.S. Dist.

4    LEXIS 101830 at *11.

5           Second, neither Plaintiff nor his counsel are adequate because they have made affirmative

6    misrepresentations about key facts in the FAC that raise significant credibility issues.  For

7    example, the FAC alleges that Werdebaugh reasonably relied on – and based and justified his

8    decision to purchase the product on – the following labeling statements on the Chocolate Almond

9    Breeze packaging:  "*All Natural*"; "*Almond Breeze® Almondmilk is an all natural, great tasting*

10   *NON-DAIRY BEVERAGE*"; and "*All Natural with added Vitamins and Minerals*."  (FAC, ¶¶ 58,

11   60.)  As set forth above, however, Werdebaugh testified that he never looked at the back panel of

12   the product and never read two of the three allegedly unlawful and misleading "all natural"

13   statements.  (Pltf. Depo. at 42:8-11, 43:13-21, 44:3-11.)  In addition, the FAC alleges that

14   Werdebaugh saw and relied on statements made on Blue Diamond's website (FAC, ¶¶ 62-63);

15   however, Werdebaugh testified that he has never visited the Blue Diamond website.  (Pltf. Depo.

16   at 141:13-144:3.)  The FAC also alleges that Werdebaugh spent "more than twenty-five ($25.00)"

17   on the purchased product (FAC, ¶ 77); however, Werdebaugh testified that he purchased four

18   cartons of Chocolate Almond Breeze for which he does not have a receipt and could only guess

19   that he spent $3-$4 per carton.  (Pltf. Depo. at 75:1-15, 107:2-108:4, 143:18-144:3.)  Lastly, the

20   FAC alleges that Werdebaugh stopped purchasing the product after he learned that it was falsely

21   labeled; however, Werdebaugh's testimony and documentary evidence show that he and his wife

22   purchased two cartons of Chocolate Almond Breeze nearly six months *after* the original complaint

23   was filed.  (*Id.* at 70:15-74:25.)  Plaintiff's counsel's decision to file an FAC with material

24   misrepresentations regarding Werdebaugh's experiences raises serious credibility issues and

25   renders him an inadequate class representative.  *See, e.g., Harris v. Vector Mktg. Corp.*, 753 F.

26   Supp. 2d 996, 1015 (N.D. Cal. 2010) ("The honesty and credibility of a class representative is a

27   relevant inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on

28   class claims"; *see also Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160

1    (S.D.N.Y. 2010) (same concerns can be considered for putative class counsel).

2         <u>Third</u>, based on Werdebaugh's very limited involvement in this litigation to date and the

3    fact that all of his knowledge about his claims has been derived solely from his attorneys calls into

4    question whether he will prosecute this action vigorously on behalf of the class.  Most glaringly,

5    Werdebaugh testified that he never read or reviewed either of the complaints before they were

6    filed in this case.  (Pltf. Depo. at 129:15-130:6, 131:5-11.)  Further, Werdebaugh has very limited

7    knowledge about the ingredients challenged in this lawsuit (*id.* at 32:1-5, 32:6-10, 32:11-18,

8    32:19-24), and the scant knowledge that he does have was given to him solely by his attorneys.

9    (*Id.* at 32:19-24, 34:5-10.)  In addition, in the nearly two years since this action was filed,

10   Werdebaugh's limited involvement amounted to a cumulative total of 10 hours on this case before

11   he was deposed.  (*Id.* at 147:7-25.)  Lastly, when asked what he thought a class action is and what

12   his role in this case is, Werdebaugh was only able to give vague and incomplete answers.  (*Id.* at

13   148:1-14.)  Accordingly, Werdebaugh is not an adequate class representative.

14        **3.    Plaintiff has not proposed an ascertainable class.**

15        Plaintiff's bid for certification fails for the additional reason that he has not proposed an

16   ascertainable class.  "[T]he party seeking certification must demonstrate that an identifiable and

17   ascertainable class exists."  *Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D.

18   Cal. 2011).  "The class definition must be sufficiently definite so that it is administratively feasible

19   to determine whether a particular person is a class member."  *Sethavanish v. ZonePerfect Nutrition*

20   *Co.*, No. 12-2907-SC, 2014 U.S. Dist. LEXIS 18600, *13 (N.D. Cal. Feb. 13, 2014) (citation

21   omitted).  Werdebaugh has failed to even address this issue – let alone meet his burden to define

22   an ascertainable class – in his Motion.  For that reason alone, class certification should be denied.

23        Courts in other food labeling class actions have denied certification on ascertainability

24   grounds where, as here, the defendant is a wholesale manufacturer that does not possess records of

25   customer identities or their purchases.  *See, e.g., Sethavanish*, 2014 U.S. Dist. LEXIS 18600 at

26   *13-18; *Red v. Kraft Foods, Inc.*, No. CV-10-1028-GW (AGRx), 2012 U.S. Dist. LEXIS 186948,

27   *13-19 (C.D. Cal. Apr. 12, 2012); *Hodes v. Van's Int'l Foods*, No. CV-09-1530 RGK (FFMx),

28   2009 U.S. Dist. LEXIS 72913, *10-11 (C.D. Cal. July 23, 2009).  Here, except for the *de minimis*

1    amount (less than 0.1%) of direct sales of Almond Breeze products to consumers through

2    www.bluediamond.com and at Blue Diamond's three retail stores, Blue Diamond's company

3    records contain zero customer identifying information.  (O'Shaughnessy Decl., ¶ 7.)  This defeats

4    ascertainability.  *See, e.g., Sethavanish*, 2014 U.S. Dist. LEXIS 18600 at *13-18; *Carrera v Bayer

5    Corp.*, 727 F.3d 300, 303-12 (3d Cir. 2013).

6           Like the plaintiff in *Sethavanish,* Werdebaugh offers no explanation for how he will prove

7    who purchased Blue Diamond's Almond Breeze products.  2014 U.S. Dist. LEXIS 18600 at *16-

8    18.  He has no proof of his alleged April 2012 purchase and can only guess at the price he paid.

9    (Pltf. Depo. at 75:1-15, 107:2-108:4, 143:18-144:3.)  Determining who purchased Blue Diamond's

10   Almond Breeze products would therefore require individual consumers to come forward with

11   affidavits stating what flavors and how much Almond Breeze they purchased.  This consumer "say

12   so" type of evidence flies in the face of a defendant's due process right to challenge class

13   membership and encourages fraudulent and inaccurate claims.  *Sethavanish*, 2014 U.S. Dist.

14   LEXIS 18600 at *13-18; *Carrera*, 727 F.3d at 308-310; *Xavier*, 787 F. Supp. 2d at 1089-91.

15          Plaintiff's proposed class fails the ascertainability requirement for the additional reason

16   that it is tremendously overbroad and includes people who were not injured.  Courts within the

17   Ninth Circuit have routinely denied class certification where, as here, the proposed class includes

18   people who were not injured in the same manner as the named plaintiff or who were not injured at

19   all.  *See, e.g., Diacakis v. Comcast Corp.*, No. C 11-3002 SBA, 2013 U.S. Dist. LEXIS 64523,

20   *10-13 (N.D. Cal. May 3, 2013) (class certification denied on ascertainability grounds where class

21   definition included people who were not deceived and, therefore, not injured); *Mazur v. eBay, Inc.*,

22   257 F.R.D. 563, 567-68 (N.D. Cal. 2009) (same); s*ee also Oshana v. Coca-Cola Co.*, 472 F.3d

23   506, 513-14 (7th Cir. 2006) (same).  Werdebaugh's proposed class potentially includes people

24   who bought Blue Diamond's Almond Breeze products who:  (1) did not see or rely on the "All

25   Natural" or "evaporated cane juice" labeling statements; (2) bought the products for reasons

26   wholly unrelated to the challenged labeling statements; (3) read the challenged labeling statements

27   and were not deceived by them based on their understanding of the terms "All Natural" and

28   "evaporated cane juice"; and (4) would have purchased the product regardless of the challenged

1   statements.  By definition, these putative class members did not suffer any injury.  Thus,

2   Plaintiff's proposed class fails on ascertainability grounds.

3   **B.**   **The proposed class should not be certified because Plaintiff has not satisfied the commonality requirement of Rule 23(a)(2) or the predominance requirement of Rule**

4         **23(b)(3).**

5       Rule 23(b)(3) "is an adventuresome innovation of the 1966 amendments" to the class

6   certification rules, "framed for situations in which class-action treatment is not as clearly called

7   for." *Dukes*, 131 S. Ct. at 2558 (internal citations omitted).  Rule 23(b)(3) calls for two separate

8   inquiries: (1) do issues common to the class "predominate" over issues unique to individual class

9   members, and (2) is the proposed class action "superior" to other methods available for

10   adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3); *Hanlon*, 150 F.3d at 1022.  The

11   predominance analysis under Rule 23(b)(3) is more stringent than the commonality requirement of

12   Rule 23(a)(2) and "tests whether proposed classes are sufficiently cohesive to warrant adjudication

13   by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997).  "Commonality

14   requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'"

15   which "does not mean merely that they have all suffered a violation of the same provision of law."

16   *Dukes*, 131 S. Ct. at 2551.

17       **1.**   **Werdebaugh has failed to show that reliance, materiality, and causation can be proved with common evidence.**

18

19           **a.**   **Werdebaugh is not entitled to a presumption of reliance with respect to his "All Natural" claims because there is no common definition of "All**

20               **Natural."**

21       The term "All Natural" is not susceptible to common proof.  The FDA has never

22   promulgated a formal definition of the term "natural" with respect to foods and has recognized

23   that consumers, food industry experts, and scientists have widely divergent views about the

24   definition of the term "natural" when used to describe food products.  *See* 58 Fed. Reg. 2302, 2407

25   (Jan. 6, 1993) (noting that commentators "provided a wide range of ideas" regarding the definition

26   of natural.)  Reinforcing the fact that "All Natural" lacks any common meaning, Plaintiff's

27

28

1   counsel's definitions of "All Natural" in the FAC (*id.* at ¶¶ 31-35, 38-39)[9] differ considerably from

2   Werdebaugh's own definitions of "All Natural."  (Pltf. Depo. at 53:5-14, 54:5-18.)[10]

3          Contrary to Plaintiff's assertion, Blue Diamond's "All Natural" representation is not

4   "material" such that it would yield an inference of reliance under either the UCL or the CLRA.[11]

5   Indeed, Judge Marilyn L. Huff has twice declined to certify an "All Natural" class based on the

6   very same allegations presented here.  *Kashi*, 291 F.R.D. at 508; *Bear Naked*, 2013 U.S. Dist.

7   LEXIS 151490 at *23-26.  In *Kashi* and *Bear Naked*, Judge Huff concluded that the plaintiffs

8   could not show common proof of reliance based on the term "All Natural" because some of the

9   challenged ingredients were allowed in certified "organic" products by regulation and consumers

10  "often equate 'natural' with 'organic.'"  *Id.*  Judge Huff's reasoning applies here.

11         Plaintiff asserts that the "All Natural" statement on Blue Diamond's labels is deceptive

12  because the products contain the ingredient potassium citrate.  But potassium citrate is one of the

13  ingredients that is allowed to be used in products that are certified "organic."  *See* 7 C.F.R.

14  § 205.605(b).  Further, consumers, including Plaintiff, often equate "natural" with "organic" or

15  hold "organic" to a higher standard.  *See, e.g., Kashi*, 291 F.R.D. at 508; *Bear Naked*, 2013 U.S.

16  Dist. LEXIS 151490, *23-25; *see also Pelayo*, 2013 U.S. Dist. LEXIS 154434 at *14

17  ("[c]onsumers generally conflate the notions of 'natural' and 'organic'").  Plaintiff testified during

18  his deposition that products that are organic are also natural.  (Pltf. Depo., 55:7-16, 56:1-7.)  As

19  _____

20  [9]  The definitions of "natural" provided in the FAC include products that do not contain: "added

21  color," "synthetic substances and flavors," or "coloring or preservative[s]."  (FAC, ¶¶ 31-32, 34.)
    Another definition referenced in the FAC for "All Natural" is "nothing artificial or synthetic

22  (including all color additives regardless of source) has been included in, or has been added to, a
    food that would not normally be expected to be in the food."  (*Id.*, ¶ 34 [citing 58 Fed. Reg. at

23  2407].)

24  [10]  Werdebaugh provided the following definitions of "natural" and "all natural" during his
    deposition:  (1) "Natural would be, being that this an almond product, I would imagine 'natural' is

25  coming straight from the tree and squeezed. . . . 'All natural' means comes right from where it
    grows into the packaging"; and (2) "That it comes naturally from the earth and what's in it, even if

26  there's mixed ingredients or natural as well, they come from the same – same way, it's nothing
    artificial."  (Pltf. Depo. at 53:5-14, 54:5-18.)

27  [11]  In dismissing a complaint based on similar allegations *with prejudice*, Judge Walter concluded
    that "All Natural" is not deceptive *as a matter of law*.  *Pelayo v. Nestle USA, Inc.*, CV 13-5213-

28  JFW, 2013 U.S. Dist. LEXIS 154434, *13-17 (C.D. Cal. Oct. 25, 2013).

Judge Huff aptly recognized, "[c]lass members' views of "All Natural" may very well accommodate the presence of the challenged ingredient[]." *Kashi*, 291 F.R.D. at 508; *Bear Naked*, 2013 U.S. Dist. LEXIS 151490, *25.

Moreover, Plaintiff's own allegations as to what makes Blue Diamond's "All Natural" statement misleading are inconsistent.  In the FAC, Plaintiff challenged five ingredients on the ground that, as allegedly artificial ingredients, they caused the "All Natural" statement to mislead consumers.  (FAC, ¶ 62.)  But during his deposition, Plaintiff stated that potassium citrate was the only allegedly artificial ingredient that concerned him.  (Pltf. Depo., 47:14-50-19.)

Just as in *Kashi* and *Bear Naked*, Plaintiff "fail[s] to show that either consumers or food producers have any kind of uniform definition of 'All Natural' that affects purchasing decisions, such that the 'All Natural' representation was not materially false." *Kashi*, 291 F.R.D. at 507-08; *Bear Naked*, 2013 U.S. Dist. LEXIS 151490, *23.  Thus, Plaintiff has failed to show that "a sufficient portion of class members would have relied to their detriment on the representation, or that Defendant's representation of 'All Natural' in light of the presence of the challenged ingredient[] would be considered to be a material falsehood by class members." *Kashi*, 291 F.R.D. at 508; *see also Bear Naked*, 2013 U.S. Dist. LEXIS 151490 at *25.  Plaintiff's failure to make these showings renders it unlikely that the alleged misrepresentation is material.  "If the misrepresentation or omission is not material as to all class members, the issue of reliance 'would vary from consumer to consumer' and the class should not be certified." *Stearns*, 655 F.3d at 1022-23 (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 128 (2009)).

### b. Werdebaugh is not entitled to a presumption of reliance because what is material varies from consumer to consumer.

Materiality is defined with reference to the *reasonable* consumer under California law, not the "least sophisticated consumer" or an "unwary consumer." *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Pelayo*, 2013 U.S. Dist. LEXIS 154434 at *9 (citing *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1300-01 (2011)).  With respect to Blue Diamond's Almond Breeze products, materiality varies from consumer to consumer.  Although Werdebaugh singled out two labeling statements on Blue Diamond's Almond Breeze packages for this lawsuit, numerous other

1   factors are important to other consumers' decisions to purchase the products.  For example,

2   consumers choose dairy alternative beverages like almondmilk for a variety of reasons, including

3   health benefits (reduction of health problems such as obesity, high cholesterol levels, etc.);

4   varieties of choice; vegan diet; lactose intolerance and milk allergies; and support from

5   associations and government.  (Ugone Report, ¶ 45.)  And consumers likewise purchase Almond

6   Breeze for a variety of reasons *that are unrelated to the challenged labeling statements*, including

7   because of caloric content, the Blue Diamond brand name, flavor (e.g., Original, Chocolate,

8   Vanilla), taste, lactose free, unsweetened, almond milk and coconut milk blend, cholesterol free,

9   made from real almonds and coconut, soy free, dairy free, gluten free, and price.  (*Id.*, ¶ 47.)

10          Werdebaugh's attempt to take advantage of the presumption of reliance accorded class

11   members in appropriate cases thus fails.  His assumption that all consumers purchased Blue

12   Diamond's almondmilk products for the same two reasons is unfounded.  Indeed, the opinion of

13   his expert, Dr. Caswell, on this point is similarly unsubstantiated.  (Motion, Ex. O.)  Dr. Caswell's

14   materiality opinion is based on no studies, surveys, research, or empirical evidence and, further, it

15   is inconsistent with California law requiring that materiality be evaluated from the vantage point

16   of a reasonable consumer.  *Freeman*, 68 F.3d at 289.  As set forth in more detail in Blue

17   Diamond's Evidentiary Objections to Dr. Caswell's Declaration, the conclusions reached by Dr.

18   Caswell are not reliable and her expert report should be excluded from consideration.[12]

19
                    **c.      The allegedly deceptive labeling statements are not specifically**
20                         **regulated and, therefore, are not material under *Kwikset*.**

21          Contrary to Werdebaugh's assertions, the "All Natural" and ECJ labeling statements are

22   not "material as a matter of law" because they have not been specifically regulated as were the

23   representations in *Kwikset*.  In *Kwikset*, the labeling statement at issue was "Made in the U.S.A."

24   51 Cal. 4th at 329.  The California Supreme Court determined that this representation on product

25   labels is material to consumers, in part because the "Legislature ha[d] recognized the materiality

26   ───────────────

27   [12]  The opinions contained in the Declaration of F. Edward Scarbrough (Dkt. No. 75-7) should
      similarly be excluded from consideration for the reasons set forth in Blue Diamond's Evidentiary
28   Objections to Dr. Scarbrough's Declaration filed herewith.

1  of this representation by specifically outlawing deceptive and fraudulent 'Made in America'

2  representations." *Id.* No such specific legislation exists here.

3       No prohibition against using the "All Natural" and "evaporated cane juice" terminology

4  appears in any state or federal regulations. None of the Sherman Law provisions cited in the FAC

5  prohibit Blue Diamond's use of this terminology. (FAC, ¶¶ 31, 42, 64-75.) Rather, the most

6  specific statements regarding the use of ECJ and "All Natural" appear in non-binding FDA policy

7  statements.

8       With respect to Werdebaugh's ECJ claims, a draft FDA "Guidance for Industry" merely

9  advises the industry of the FDA's view on the use of the term ECJ. (Cirelli Decl., ¶ 6, Ex. D.)

10  The draft guidance is neither an FDA regulation nor binding law but, rather, represents the FDA's

11  current thinking on the topic as well as the FDA's current policy. 21 C.F.R. § 10.115; Cirelli

12  Decl., ¶ 6, Ex. D. As the FDA stated, the guidance "should be viewed only as recommendations,

13  unless specific regulatory or statutory requirements are cited."[13] (*Id.*) Notably, the FDA *just this*

14  *week* reopened the comment period for this draft guidance "to request further comments, data, and

15  information about the basic nature and characterizing properties of the ingredient sometimes

16  declared as 'evaporated cane juice,' how this ingredient is produced, and how it compares with

17  other sweeteners." *See* 79 Fed. Reg. 12507 (Mar. 5, 2014) (attached to the Cirelli Decl. as Exhibit

18  E). The FDA specifically states in its recent notice that "[w]e have not reached a final decision on

19  the common or usual name for this ingredient . . ." *Id.*

20       Similarly, there is no binding state or federal regulation with respect to the term "All

21  Natural." Rather, the FDA has issued a non-binding policy statement "regarding the use of

22  'natural,' as meaning that nothing artificial or synthetic (including all color additives regardless of

23  source) has been included in, or has been added to, a food that would not normally be expected to

24  

_____

25  [13] The draft guidance provides, in pertinent part, as follows: "FDA's guidance documents,

26  including this guidance, do not establish legally enforceable responsibilities. Instead, guidance documents describe the Agency's current thinking on a topic and should be viewed only as

27  recommendations, unless specific regulatory or statutory requirements are cited. The use of the word *should* in Agency guidance means that something is suggested or recommended, but not

28  required." (Cirelli Decl., ¶ 6, Ex. D.)

1   be in the food." 58 Fed. Reg. at 2407. The FDA restated this policy after soliciting, reviewing,

2   and considering comments from consumers and the industry in determining whether to proceed in

3   developing a definition for the term "natural." 56 Fed. Reg. 60421, 60466 (Nov. 27, 1991).

4   Although the FDA stated its continued belief that adequately defining the term "natural" could

5   abate the ambiguity surrounding the use of the term, the FDA ultimately decided not to undertake

6   rulemaking to establish a definition for "natural" at that time due to "resource limitations and other

7   agency priorities."[14] 58 Fed. Reg. at 2407. The FDA's "informal policy" "does not establish a

8   legal requirement." *Pelayo*, 2013 U.S. Dist. LEXIS 154434 at *14.

9        Because none of these guidance or policy statements appear in any state or federal

10  regulations, they are not "material as a matter of law" under *Kwikset* and, therefore, cannot form

11  the basis for Werdebaugh's assertion that reliance can be proved on a classwide basis.

12              **2.     Plaintiff's proposed damages models fail to show that damages can be
13                       calculated on a classwide basis without resort to individualized proof.**

14       Plaintiff has failed to establish through evidentiary proof that his damages can be measured

15  on a classwide basis, as required under *Comcast*. 133 S. Ct. at 1432. Further, "at the class

16  certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent

17  with its liability case." *Id.*, 133 S. Ct. at 1433. Plaintiff has not met his burden of showing that

18  there is a classwide method of awarding relief that is consistent with his UCL, FAL, or CLRA

19  claims. Plaintiff relies on his damages expert, Dr. Oral Capps, to provide the methodologies for

20  calculating an award on a classwide basis. But Dr. Capps' four damages methodologies—

21  restitution, restitutionary disgorgement, benefit of the bargain, and regression analysis—and the

22  bases therefore, fall short of the *Comcast* requirements.

23       For Plaintiff's UCL claims, Dr. Capps proposes that the putative class can be compensated

24  _____

25  [14]  The FDA policy statement provides, in pertinent part, as follows: "After reviewing and
    considering the comments, the agency continues to believe that if the term "natural" is adequately
26  defined, the ambiguity surrounding use of this term that results in misleading claims could be
    abated. However, as the comments reflect, there are many facets of this issue that the agency will
27  have to carefully consider if it undertakes a rulemaking to define the term "natural." Because of
    resource limitations and other agency priorities, FDA is not undertaking rulemaking to establish a
28  definition for "natural" at this time." 58 Fed. Reg. at 2407.

1   through restitution or restitutionary disgorgement[15] by providing putative class members with a

2   total or partial refund of the retail purchase price or the wholesale price of the product.

3   (Declaration of Dr. Oral Capps, Jr. ("Capps Decl." (Dkt. No. 77-4), ¶¶ 8-9.)  Dr. Capps' methods

4   for achieving the proposed awards, however, are contrary to California law.  A restitution award

5   "must be supported by substantial evidence" and "must correspond to a measurable amount

6   representing the money that the defendant has acquired from each class member by virtue of its

7   unlawful conduct."  *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2014 U.S.

8   Dist. LEXIS 1640, *36 (N.D. Cal. Jan. 7, 2014); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal.

9   App. 4th 663, 699-700 (2006) ("restitutionary awards encompass quantifiable sums").  Further,

10  restitution is measured by the difference in value between what the plaintiff paid and the value of

11  what the plaintiff received.  *Ogden*, 2014 U.S. Dist. LEXIS 565 at *49.  Indeed, "to recover under

12  this measure, there must be evidence of the actual value of what the plaintiff received."  *Id.*

13          In direct contradiction to this well-established precedent, Dr. Capps ignores the value

14  actually received by class members, disregards the lack of correlation to any claimed economic

15  injury that is attributable to the challenged labeling statements, and fails to account for the

16  inevitable lack of documentary evidence (i.e., receipts) necessary for putative class members to

17  prove how much they spent.  (Ugone Report, ¶¶ 26-30.)  Further, Dr. Capps' "illegal product"

18  theory carries no weight – as this Court has recognized in similar cases – because putative class

19  members derived some benefit from their purchases.  *Kane v. Chobani, Inc.*, No. 12-CV-02425-

20  LHK, 2013 U.S. Dist. LEXIS 134385, *33-34 (N.D. Cal. Sept. 19, 2013); *Brazil v. Dole Food Co.,*

21  *Inc.*, No. 12-CV-01831-LHK, 2013 U.S. Dist. LEXIS 136921, *28-29 (N.D. Cal. Sept. 23, 2013).

22  Dr. Capps' methodologies fail to account for any lack of connection between the challenged

23  labeling statements and the claimed economic injury.  (Ugone Report, ¶¶ 25-42.)

24          For Plaintiff's CLRA claims, Dr. Capps proposes that classwide damages can be measured

25

26  ─────────────────────

27  [15]   Nonrestitutionary disgorgement is not an available remedy in a UCL class action.  *Red*, 2012
    U.S. Dist. LEXIS 186948 at *37; *see also Ogden v. Bumble Bee Foods, LLC*, No. 5:12-CV-01828-
    LHK, 2014 U.S. Dist. LEXIS 565, *54 (N.D. Cal. Jan. 2, 2014) (citing *Korea Supply Co. v.*
28  *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003)).

using a benefit of the bargain approach or a regression analysis.  (Capps Decl., ¶¶10-22.)  The benefit of the bargain model requires a comparator product—an almondmilk beverage that is similar to the Almond Breeze products at issue but that does not bear the challenged "All Natural" and ECJ statements.[16]  (Ugone Report, ¶¶ 31-33.)  In an attempt to address past mistakes identified in other cases[17], Dr. Capps refers to one purported comparator product: Whole Foods 365 Vanilla Almond Milk (32 ounce).  (Capps Decl., ¶ 14.)  But it is evident he did not look closely at the label or the other products on the shelf.  A review of the label on the product reveals that it contains the very same supposedly artificial ingredient challenged here (i.e., potassium citrate) and it is labeled as "organic," which Werdebaugh admitted is the same as "natural."  (Pittman Decl., ¶¶ 3, 5, 8.)  In addition, prior to reformulation of the product in 2013, the label indicated that "organic evaporated cane juice" was an ingredient.  (*Id.*, ¶¶ 6-7; Ugone Report, ¶ 32.)  Moreover, the Whole Foods almond milk product is currently priced *the same as* the Almond Breeze product at Whole Food stores in San Francisco and Palo Alto.  (Pittman Decl., ¶¶ 3-4; Ugone Report, ¶ 32.)  Accordingly, Dr. Capps' evidence for his purported comparator product is wholly unsubstantiated, incomplete, and false.  Dr. Capps' failure to adequately identify a comparator product renders his proposed damages methodology unworkable.  Rule 23 cannot be satisfied where, as here, Plaintiff's damages expert "has done nothing to confirm that his proposed approaches would be workable in this case."  *Weiner v. Snapple Bev. Corp.*, 2010 U.S. Dist. LEXIS 79647, *26 (S.D.N.Y. Aug. 3, 2010).

Finally, Dr. Capps' regression analysis does not withstand the rigorous examination required by Rule 23.  For this methodology, Dr. Capps proposes to quantify the percentage of sales allegedly attributable to the challenged labeling statement by multiplying the same percentage by the dollar amount spent by each class member on the products at issue.  (Capps Decl., ¶¶ 16-22.)  But Dr. Capps' description of his regression analysis is incomplete and thereby

---

[16]  Dr. Ugone's report cites the difficulty in determining a comparator product when almondmilk competes with a variety of other dairy alternative beverages.  (Ugone Report, ¶ 32.)

[17]  *See* Conagra's Opposition to Plaintiff's Motion for Class Certification filed in *Jones v. Conagra Foods, Inc.*, Case No. 12-cv-1633-CRB (N.D. Cal.) (Dkt. No. 149).

fails to provide assurances that this methodology reliably isolates Blue Diamond's sales related to the "All Natural" and "evaporated cane juice" statements.  (Ugone Report, ¶¶ 34-41.)  Dr. Capps' assurances that he may be able to establish a damages model in the future have been rejected in the past and should not be accepted here.  *See Ogden*, 2014 U.S. Dist. LEXIS 565 at *52-53 (granting summary judgment against plaintiff based on Capps' failure to provide sufficient description of methodology for determining restitution); *Kottaras v. Whole Foods Markets, Inc.*, 281 F.R.D. 16, 25 (D.D.C. 2010) (denying class certification in part because Capps' methodology was "too vague for the Court to even evaluate" when he had "not yet performed a single regression" and "could not even tell the Court the precise analyses he intended to undertake").

Moreover, because Dr. Capps' regression analysis assumes that all class members were impacted by the same percentage, his damages model ignores the large degree of pricing variation experienced by individual consumers across products, sales channels, retailers, geographic regions, and time.  (Ugone Report, ¶¶ 37-38.)  For example, the price for the top selling shelf-stable Blue Diamond almondmilk product in 2012 varies by 26% across sales channels, by 31% across the top three retailers, and by 40% across cities in California.  (*Id.*, ¶¶ 59, 61, 64.)  The wide variation in retail prices for Blue Diamond's almondmilk products makes clear that individualized proof is necessary in order to accurately and appropriately calculate damages.  *Ben & Jerry's*, 2014 U.S. Dist. LEXIS 1640, *40; *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 541 (N.D. Cal. 2012).  Further, Dr. Capps' failure to explain how Blue Diamond is responsible for these varying retail prices, when Blue Diamond does not set retail prices[18], is just one more reason why his methodologies are flawed and unworkable.  (O'Shaughnessy Decl., ¶¶ 4-5.)

In fact, Dr. Capps' use of a "weighted average" price measure would result in overcompensation of some class members and under compensation of others.  (Ugone Report, ¶¶ 37-38.)  This result is a violation of the Rules Enabling Act, which "forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right . . .'"  *Dukes*, 131 S. Ct. at 2561.  In this

---

[18]  Blue Diamond does not set retail prices with the exception of less than 1% of sales attributed to sales online and at Blue Diamond's own retail stores.  (O'Shaughnessy Decl., ¶ 4.)

1    instance, "a class cannot be certified on the premise that [Blue Diamond] will not be entitled to

2    litigate its statutory defenses to individual claims." *Id.* Indeed, it is widely recognized that

3    "estimating the gross damages to the class as a whole and only subsequently allowing for

4    processing of individual claims would inevitably alter defendants' substantive right to pay

5    damages reflective of their actual liability." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 230

6    (2d Cir. 2008) (partially abrogated on other grounds); *see also Dukes*, 131 S. Ct. at 2561; *Mazur*,

7    257 F.R.D at 572.

8         Dr. Capps' expert report thus fails to provide the evidentiary proof that damages can be

9    established on a classwide basis, as *Comcast* requires in order to certify a class.

10   **C.    Plaintiff's proposed nationwide class fails due to multiple choice of law inquiries.**

11        Plaintiff's proposed nationwide class is barred by the Ninth Circuit's decision in *Mazza v.*

12   *American Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012).  In *Mazza*, the Ninth Circuit

13   reversed the district court's class certification decision and held that a nationwide class could not

14   be certified under California's consumer protection laws where the proposed class included

15   members who purchased products in different jurisdictions with materially different laws.  *Id.*

16   *Mazza* involved the very same consumer protection statutes at issue here and is controlling.  For

17   the same reasons articulated in *Mazza* – and applied by several district courts, including this one,

18   to deny certification of nationwide classes[19] – this Court should not certify a class under California

19   law that includes persons who purchased Blue Diamond's Almond Breeze products outside of

20   California.  The inclusion of such persons would require the Court to apply the laws of 50

21   different states thereby resulting in a predominance of individual issues.

22        Under California's choice of law rules, "the class action proponent bears the initial burden

23   to show that California has 'significant contact or significant aggregation of contacts' to the claims

24   of each class member."  *Kashi*, 291 F.R.D. at 509 (quoting *Wash. Mut. Bank v. Superior Court*, 24

---

26   [19]  *See, e.g., Kashi*, 291 F.R.D. at 509-10; *Bear Naked*, 2013 U.S. Dist. LEXIS 151490 at *33-37;

27   *Kowalsky v. Hewlett-Packard Co.*, No. 5:10-cv-02176-LHK, 2012 U.S. Dist. LEXIS 34597, *19-23 (N.D. Cal. Mar. 14, 2012); *Holt v. Globalinx Pet LLC*, No. SA CV 12-0041 DOC, 2014 U.S.

28   Dist. LEXIS 11825, *18-23 (C.D. Cal. Jan. 30, 2014); *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1098-1103 (C.D. Cal. 2012).

1    Cal. 4th 906, 921 (2001)).  Here, Plaintiff has failed to meet this burden by failing to even address

2    the issue in his motion.  Certification should be denied on this basis alone.

3          Even if the Court assumes that California has sufficient contacts to the claims of each class

4    member, "California law may only be used on a classwide basis if the interests of other states are

5    not found to outweigh California's interest in having its law applied."  *Mazza*, 666 F.3d at 589-90.

6    Under California's three-step governmental interest test, California law cannot be applied on a

7    nationwide basis in this case.

8          First, there are material differences between the consumer protection laws of California

9    and those of the 49 other states.  *See Mazza*, 666 F. 3d at 591; *see also Gianino*, 846 F. Supp. 2d at

10   1100-1102; *In re Hitachi Television Optical Block Cases*, No. 08-cv-1746, 2011 U.S. Dist. LEXIS

11   135, *17 (S.D. Cal., Jan. 3, 2011).  As detailed in Exhibit C to the Cirelli Declaration, the

12   following material differences between the UCL, FAL, and CLRA and the consumer protection

13   statutes of the 49 other states exist:  (1) injury requirements, (2) deception requirements,

14   (3) scienter, (4) reliance, (5) pre-filing notice requirements, (6) statutes of limitation,

15   (7) restrictions on consumer protection class actions, and (8) remedies.  *Gianino*, 846 F. Supp. 2d

16   at 1100-1101; *Mazza*, 666 F.3d at 591.  These material differences require the Court to move to

17   the second step of the governmental interest test.[20]

18         Second, Blue Diamond's Almond Breeze products are sold by retailers in all 50 states.

19   (O'Shaughnessy Decl., ¶ 6.)  As the Ninth Circuit recognized in *Mazza*, "[e]very state has a strong

20   interest applying its own protection laws to those transactions."  666 F.3d at 591-92.  As the court

21   in a *Gianino* recognized, cases like these "implicate[] each state's interest" because they involve

22   allegations that "consumers from . . . [all 50] states were defrauded into buying and using a

23   product in their state."  846 F. Supp. 2d at 1102.

24         Third, as the Ninth Circuit concluded in *Mazza*, each state's interest in protecting

25   _____

26   [20]  Plaintiff's anticipated reliance on *In re POM Wonderful LLC Mktg. & Sales Practices Litig.*,
     No. ML 10-02199 DDP (RZx), 2012 U.S. Dist. LEXIS 141150, *8-14 (C.D. Cal. Sept. 28, 2012)

27   and *Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012) is inapposite because, unlike the
     plaintiffs in those cases, Blue Diamond has demonstrated material differences in state law and has

28   shown that other states' interests outweigh California's.

_____

1   consumers and regulating businesses that sell goods within its borders outweighs any "attenuated"

2   interest that California has in applying its own law.  666 F.3d at 594.  The principles of federalism

3   dictate that "each [s]tate may make its own reasoned judgment about what conduct is permitted or

4   proscribed within its borders."  *Id.* at 591.  Applying that well-recognized principle here requires

5   that "each class member's consumer protection claim should be governed by the consumer

6   protection laws of the jurisdiction in which the transaction took place."  *Id.* at 594.  Because the

7   laws of all 50 states will have to be applied in this case, common questions do not predominate.

8   Therefore, as this Court held in *Kowalsky*, Plaintiff's proposed nationwide class should not be

9   certified.  2012 U.S. Dist. LEXIS 34597 at *19-23.

10  **D.      There is no basis to certify a Rule 23(b)(2) class given Plaintiff's prayer for monetary
11          damages.**

12          Rule 23(b)(2) does not authorize class certification when, as here, each class member

13  might be entitled to an individualized award of monetary damages.[21]  *Dukes*, 131 S. Ct. at 2557.

14  In fact, Rule 23(b)(2) can be read to apply only to requests for injunctive or declaratory relief and

15  to preclude class certification of monetary claims at all.  *Id.*  Plaintiff's repeated requests for

16  monetary damages indicate that Plaintiff's primary goal is not injunctive relief as is required for a

17  Rule 23(b)(2) class.  *Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003) ("The claim for monetary

18  damages must be merely secondary to a primary claim for injunctive or declaratory relief").

19  Because Plaintiff primarily seeks monetary relief in the form of restitution, disgorgement of

20  profits, and CLRA damages (FAC, ¶ 30-31), Plaintiff's request for Rule 23(b)(2) certification

21  should be denied.  *Mahfood v. QVC, Inc.*, No. 06-0659-AG (ANx), 2008 U.S. Dist. LEXIS

22  105229, *10-11 (C.D. Cal. Sept. 22, 2008).

23          Moreover, a class action is inappropriate when, as here, the relief sought by an individual

24  plaintiff would produce the same results as a class action.  *Sokol v. New United Motor Mfg., Inc.*,

25  No. C 97-4211 SI, 1999 U.S. Dist. LEXIS 20215, *17-18 (N.D. Cal. 1999) (class certification

26  _____

27  [21]  Rule 23(b)(2) allows class treatment only when "the party opposing the class has acted or
    refused to act on grounds that apply generally to the class, so that final injunctive relief or
28  corresponding declaratory relief is appropriate respecting the class as a whole."

denied because all putative class members would benefit from injunction issued on behalf of single plaintiff).  Plaintiff's individual claims seek injunctive relief to stop Blue Diamond from marketing and selling its Almond Breeze products as currently labeled.  These injunctive relief claims plainly encompass the interests of putative class members and, therefore, should not proceed on a class basis.

**E.    Plaintiff cannot serve as a class representative because he lacks standing.**

As a threshold matter, in order to maintain a class action lawsuit, Plaintiff must show that he has Article III standing as well as statutory standing to sue under the UCL, FAL, and CLRA. "On a motion for class certification, Plaintiffs must demonstrate, not merely allege, that they have suffered injury-in-fact to establish Article III standing to bring the claims asserted on behalf of the . . . [c]lass." *Evans v. Linden Research, Inc.*, No. C 11-01078 DMR, 2012 U.S. Dist. LEXIS 166006, *17 (N.D. Cal. Nov. 20, 2012); *see also Nelsen v. King County*, 895 F.2d 1248, 1249-50 (9th Cir. 1990) ("Standing is a jurisdictional element that must be satisfied prior to class certification.").  To satisfy Article III's standing requirements, Plaintiff must demonstrate:  "(1) an injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury is redressable by a favorable ruling." *Chobani*, 2014 U.S. Dist. LEXIS 22258 at *17 (citing *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010)).  Further, as this Court has recognized, to have standing under the UCL, FAL, and CLRA, Plaintiff must demonstrate that he actually relied on Blue Diamond's alleged misrepresentations and that he suffered economic injury as a result. *Chobani*, 2014 U.S. Dist. LEXIS 22258 at *18-20.  Because Plaintiff has failed to meet his burden to demonstrate either constitutional or statutory standing, certification should be denied.

**1.    Plaintiff cannot show Article III standing or injury-in-fact.**

Plaintiff's only claimed injury in this case is economic (i.e., he paid an "unwarranted premium" for the product and allegedly would not have purchased the product absent Blue Diamond's challenged labeling statements).  (FAC, ¶¶ 12, 79, 103, 112.)  Werdebaugh confirmed this fact when he testified that his only issue with the product was the product's label (Pltf. Depo. at 51:17-20, 66:15-67:5; 97:11-20), and that he and his children consumed the Chocolate Almond

1    Breeze product without suffering any injuries.  (*Id.* at 46:25-47:4; 77:21-78:12; 88:9-13.)

2    However, despite *alleging* that he suffered economic injury because he paid a premium for Blue

3    Diamond's product (FAC, ¶¶ 12, 103, 112), Werdebaugh cannot *demonstrate* that he suffered any

4    such injury.  As the Ninth Circuit has held, there is no injury-in-fact establishing Article III

5    standing where the plaintiff fails to show that he paid more for a product than he would have

6    absent defendant's allegedly wrongful conduct.  *Gerlinger v. Amazon.com, Inc.*, 526 F.3d 1253,

7    1256 (9th Cir. 2008).

8           Werdebaugh cannot demonstrate that he paid a premium for Blue Diamond's Chocolate

9    Almond Breeze product because price did not play a factor in his decision to purchase the product.

10   (Pltf. Depo. at 99:17-100:6; 100:20-101:4.)  What's more, Werdebaugh:  (1) never looked for any

11   alternative products – let alone any less expensive products – to Chocolate Almond Breeze (*id.* at

12   75:20-23, 99:17-100:2); (2) never purchased any other almond milk, soy milk, or rice milk

13   products at any time (*id.* at 70:1-14); (3) never found an alternative product to Chocolate Almond

14   Breeze (*id.* at 69:21-25); (4) admitted that the only premium he paid was due to the store he chose

15   to shop at – Whole Foods (*id.* at 75:1-19, 100:20-101:4); and (5) admitted that he does not know if

16   he paid a premium for the Chocolate Almond Breeze product and that he has never made any

17   effort to find out.  (*Id.* at 142:2-12.)  For each of these reasons, Plaintiff has not and cannot

18   demonstrate that he has suffered a sufficient injury-in-fact to establish Article III standing based

19   on a price-premium damages theory.

20          **2.      Plaintiff's alleged reliance on the ECJ ingredient statement is implausible.**

21          Plaintiff has also failed to demonstrate that he plausibly relied on Blue Diamond's

22   evaporated cane juice labeling statement when he purchased the product.  In his Motion, Plaintiff

23   claims that he was "misled by Defendant's use of the term "evaporated cane juice" because that

24   term falsely suggests that the sweetener was a juice and not what it really was – either sugar or

25   dried cane syrup."  (Motion at 3:19-21.)  The Motion further argues that "Defendants deceived the

26   Plaintiff about the presence of added sugars that Plaintiff sought to avoid."  (*Id.* at 4:20-21.)  The

27   FAC contains similar allegations and uses the terms "evaporated cane juice" and "dried cane

28   syrup" interchangeably.  (FAC, ¶¶ 8, 42, 46, 48, 63.)

1    Werdebaugh's deposition testimony, however, reveals that his claims of reliance on the

2    ECJ labeling statement are wholly implausible.  <u>First</u>, Werdebaugh testified that he saw the

3    evaporated cane juice ingredient statement on the label before purchasing the product and also saw

4    the clear statement on the nutrition facts panel that the product contained "Sugars 20g."  (Pltf.

5    Depo. at 34:23-35:6, 46:6-18.)  <u>Second</u>, Werdebaugh also testified that while he did not

6    understand what the term "cane" was referring to in the ingredient "evaporated cane juice," he

7    admitted that he is unaware of any type of "cane" other than sugar cane that is used in food

8    products.  (*Id.* at 35:7-25.)  <u>Third</u>, despite allegations in the FAC and in Plaintiff's Motion to the

9    contrary, Werdebaugh admitted that he does not know what the ingredient "dried cane syrup" is

10   and it would not have impacted his decision to purchase Chocolate Almond Breeze had the

11   product been labeled as containing "evaporated cane syrup" or "dry cane syrup" instead of ECJ.

12   (*Id.* at 128:1-25, 130:7-22.)  Lastly, Plaintiff's response that he thought the 20 grams of sugar in

13   the product was not added sugar because he was not sure if it was "an actual squeezed element of

14   an almond that naturally occurs or not" is not plausible.  (*Id.* at 46:19-24.)  As this Court has

15   recently recognized, it is implausible for plaintiffs to think that defendants' products did not

16   contain added sugars or that evaporated *cane* juice refers to anything other than sugar *cane*.

17   *Chobani*, 2014 U.S. Dist. LEXIS 22258 at *26-34; *see also Avoy v. Turtle Mountain, LLC*, No.

18   13-CV-0236-LHK, 2014 U.S. Dist. LEXIS 19241, *14-23 (N.D. Cal. Feb. 14, 2014).  Therefore,

19   Werdebaugh lacks standing because he cannot show that he plausibly relied on Blue Diamond's

20   ECJ ingredient statement.  Thus, certification should be denied.

### IV.    CONCLUSION

22   For the foregoing reasons, the Court should deny Plaintiff's motion for class certification.

24   DATED: March 7, 2014                    HANSON BRIDGETT LLP

26                                          By: /s/ *Lawrence M. Cirelli*
27                                          LAWRENCE M. CIRELLI
                                           MEGAN OLIVER THOMPSON
                                           GEOFFREY R. PITTMAN
28                                          Attorneys for Defendant Blue Diamond Growers