Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 369-0800
Fax: (408) 369-0752
pgore@prattattorneys.com

Dewitt M. Lovelace (*pro hac vice*)
LOVELACE LAW FIRM, P.A.
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone: (850) 837-6020
Fax: (850) 837-4093
dml@lovelacelaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHRIS WERDEBAUGH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BLUE DIAMOND GROWERS<br><br>Defendant. | Case No. 5:12-CV-02724 LHK<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, FOR APPOINTMENT OF CLASS REPRESENTATIVE, AND FOR APPOINTMENT OF CLASS COUNSEL**<br><br>Hearing Date: April 24, 2014<br>Time: 1:30 p.m.<br>Location: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy M. Koh |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................................... iii

STATEMENT OF THE ISSUES TO BE
    DECIDED……………………………………………………………………………V

INTRODUCTION........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    A.    Plaintiff's Claims Are Typical of Class Members' Claims. .................................... 2

    B.    Plaintiff Werdebaugh Is An Adequate Class Representative ................................... 4

    C.    The Class Is Ascertainable ...................................................................................... 5

    D.    All Requirements of Rules 23(a)(2) And 23(b)(3) Are Satisfied ........................... 6

        1.    Plaintiff Is Entitled To A Presumption of Materiality ............................ 6

        2.    Plaintiff Is Entitled To A Presumption Of Reliance ............................... 7

        3.    Predominance of Liability Issues ............................................................ 8

        4.    Predominance of Proof Regarding Restitution ....................................... 9

        5.    Plaintiff's Proposed Theories of Damages Are Allowed Methods of
            Recovery Under the CLRA ................................................................... 10

    E.    This Case Satisfies Rule 23(b)(2)'s Requirements................................................ 12

    F.    This Litigation Concerns Common Questions Of Law and Fact.................................... 13

    G.    Choice of Law Issues Do Not Prevent Certification........................................... 13

    H.    Plaintiff Has Standing To Pursue His Claims On Behalf Of The Class ......................... 15

CONCLUSION ........................................................................................................................... 16

**TABLE OF AUTHORITIES**

**CASES**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)……………..………………8

*Astiana v. Kashi Co.,*
    291 F.R.D. 493, 500 (S.D. Cal. 2013…………………………………….………………..6

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.,*
    917 F.2d 1171, 1175 (9th Cir. 1990)……………………………….………………..2, 3

*Carrerra v. Bayer Corp.,*
    727 F.3d 300 (3d. Cir. 2013)………………………………………………………..5

*Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163, 180 (1999)…………………………………………………...………13

*Chavez v. Blue Sky Natural Bev. Co,*
    268 F.R.D. 365, 377 (N.D. Cal. 2010)…………………………………….…………3, 5

*Colgan v. Leatherman Tool Group, Inc.,*
    135 Cal. App. 4th 663, 700, 38 Cal. Rptr. 3d 36 (2006)……………………………..10

*Comcast Corp. v. Behrend,*
    2013 WL 1222646, *5 (U.S. Mar. 27, 2013)…………………………………………..9

*Delarosa v. Boiron, Inc.,*
    275 F.R.D. 582, 595 (C.D. Cal. 2011)………………………………………………..6

*Garamendi v. Mission Ins. Co.,*
    131 Cal. App. 4th 30, 41, 31 Cal. Rptr. 3d 395 (2005)…………………………...……14

*Guido v. L'Oreal, USA, Inc.,*
    2013 U.S. Dist. LEXIS 94031, *51-54 (C.D. Cal. July 1, 2013)……………………....6

*Hinojos v. Kohl's Corp.,*
    718 F.3d 1098 (9th Cir. 2013)………………………………………………..6, 7

*In re: Cathode Ray Tube (CRT) Antitrust Litig.,*
    2013 U.S. Dist. LEXIS 137945 (N.D. Cal. June 20, 2013)……………………..……4, 11

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    M 02-1486 PJH, 2006 WL 1530166, at *4 (N.D. Cal. June 5, 2006)…………………………2

*In re POM Wonderful, LLC Marketing and Sales Practices Litig.,*
    2012 WL 4490860 (C.D. Cal. 2012)…………………………………………………6

*In re THQ, Inc. Secs. Litig.,*
    No. CV 00–1783AHM(EX), 2002 WL 1832145, at *11 (C.D. Cal. Mar. 22, 2002)…………13

*In re Tobacco II Cases,*
    46 Cal. 4th 298, 93 Cal. Rptr. 3d 559, 207 P.3d 20, 39-41 (Cal. 2009)…………………..……7

*Johns v. Bayer Corp.,*
     280 F.R.D. 551, 560 (S.D. Cal. 2012…………………………………………………...6

*Johnson v. Gen. Mills, Inc.,*
     276 F.R.D. 519, 524 (C.D. Cal. 2011)……………………………………………………6

*Jones v. ConAgra Foods, Inc.,*
     912 F. Supp. 2d 889, 901 (N.D. Cal. Dec. 17, 2012)…………………………………..15

*Kasky v. Nike Inc.,* 27 Cal. 4th 939, 951 (2002)……………………………………....………13

*Manchouck v. Mondelez Int'l lnc,*
     2013 U.S. Dist. LEXIS 138877, 2013 WL 5400285, at *2 (N.D. Cal. Sept. 26, 2013)……….15

*Mazza v. Am. Honda Motor Co.,*
     666 F.3d 581, 589 (9th Cir. 2012)…………………………………………………………13

*McCrary v. The Elations Co., LLC,*
     2014 U.S. Dist. LEXIS 8443, at *24, 25 (C.D. Cal. Jan. 13, 2014)…………….…….…....……5

*Medrazo v. Honda of North Hollywood,*
     205 Cal. App. 4th 1 (Cal. App. 2d Dist. 2012)……………………………………………10

*Moeller v. Taco Bell Corp.,*
     220 F.R.D. 604, 611 (N.D. Cal. 2004)……………………………………………………….4

*Occidental Land, Inc. v. Super. Ct.,*
     18 Cal. 3d 355, 134 Cal. Rptr. 388, 556 P.2d 750, 754 (Cal. 1976)……………………....…7

*Park v. Welch Foods, Inc.,*
     Case No. 5:12-cv-6449, Dkt. 49 (N.D. Cal.)(J. Grewal)………………………………………9

*Ries v. Arizona Beverages USA, LLC,*
     287 F.R.D. 523, 536 (N.D. Cal. 2012…………………………………………………………6

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.,*
     2008 WL 4906433 (C.D. Cal. 2008)…………………………………………………………6

*Sanbrook v. Office Depot, Inc.,*
     2009 WL 840020, at *5 (N.D. Cal. Mar. 30, 2009)…………………………………….……9

*Sethavanish v. ZonePerfect Nutrition Co.,*
     2014 U.S. Dist. LEXIS 18600 (N.D. Cal. Feb. 13, 2014)……………………………………6

*Shersher v. Superior Court,*
     154 Cal. App. 4th 1491 (Cal. App. 2d Dist. 2007)…………………………………….…....…9

*Staton v Boeing Co,*
     327 F.3d 938, 957 (2003)………………………………………………………………………3

*Surowitz v. Hilton Hotels Corp.,*
     383 U.S. 363, 366, 86 S. Ct. 845, 15 L. Ed. 2d 807 (1966)………………………….…....…4

*Swearingen v. Yucatan Foods, L.P.,*

2014 U.S. Dist. LEXIS 18094 *21 (N.D. Cal. Feb. 7, 2014)…………………………………3

*United States v. Gonzalez-Alvarez,*
    277 F.3d 73, 78 (1st Cir. 2002)……………………………………………………………9

*Vasquez v. Super. Ct,*
    4 Cal. 3d 800, 94 Cal. Rptr. 796, 484 P.2d 964, 973 n.9 (Cal. 1971)…………………………7

*Wal Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541, 2557 (2011)…………………………………………………………………12

*Wang v. Chinese Daily News, Inc.,*
    737 F.3d 538, 545 (9th Cir. 2013)…………………………………….……....……8

*Washington Mut. Bank, FA v. Superior Court,*
    24 Cal. 4th 906, 919-20, 103 Cal. Rptr. 2d 320, 15 P.3d 1071 (2001)…………………………14

*Wiener v Dannon,*
    255 FRD 658 (CD Cal 2009)…………………………………………………………..3

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168, 1175 (9th Cir. 2010)……………………………………………………2

## STATUTES AND RULES

Fed. R. Civ. P. 23………………………………………………………...…………….*passim*

21 C.F.R. § 101.4(a)(1)………………………………………………………………...8

21 C.F.R. § 102.5(a)………………………………………………………………………8

21 C.F.R. § 102.5(d)………………………………………………………………...…8

21 C.F.R. § 101.22………………………………………………………………………..8

## STATEMENT OF THE ISSUES TO BE DECIDED

1.      Whether the proposed class satisfies the requirements of Fed. R. Civ. P. 23(a).

2.      Whether the proposed class satisfies the requirements of Fed. R. Civ. P. 23(b)(2).

3.      Whether the proposed class satisfies the requirements of Fed. R. Civ. P. 23(b)(3).

**INTRODUCTION**

Plaintiff seeks to certify as a class all purchasers of Defendant's Shelf Stable Almond Milk and Refrigerated Almond Milk products.  First, Defendant sweetened those products with "sugar," but listed the sugar not as "sugar," which would have been lawful, but as "evaporated cane juice," ("ECJ") which is unlawful. Second, the products include the statement "All Natural" when, in fact, the products contain synthetic ingredients that preclude the use of the term "All Natural."  Put simply, the products are not all natural.

Through these practices, Defendant deprives consumers of the ability to know what ingredients are in the products. California law requires Defendant to supply an accurate and understandable meaning on the labels of its products. It is important that labels comply with California law to ensure consumers are informed.  In his opening brief, Plaintiff set forth facts demonstrating that Defendant ignored relevant California law and FDA guidance and warning letters by continuing to unlawfully misbrand the sugar in its almond milk products as "evaporated cane juice."

In addition to the misbranding with regard to "evaporated cane juice," the principal display panel of Blue Diamond's Almond Breeze Chocolate Almond Milk states, in part, that the product is "All Natural," despite the fact that the product contains the artificial and unnatural ingredient potassium citrate.  Plaintiff's claims concerning the "All Natural" labeling on Defendant's products are based on the use of this "All Natural" label designation despite the fact that the products contain the artificial and unnatural ingredient potassium citrate.

Defendant's wrongful conduct is systematic and uniform. Plaintiff relied on Defendant's misbranding statements and, as a result, purchased Defendant's products. The labels at issue are exactly alike regardless of where the product is sold and regardless of flavor. The unlawfulness of the "evaporated cane juice" and "All Natural" ingredient labeling applies no matter the individual circumstances of the buyer, and the question of law regarding that labeling is identical. This presents a classic case for class certification under Federal Rules of Civil Procedure 23 (b)(2) and 23 (b)(3).

## ARGUMENT

### A.    Plaintiff's Claims Are Typical of Class Members' Claims.

Defendant first argues that Plaintiff's claims are not typical of the claims of absent class members.  In making this argument, Defendant misinterprets the standard for demonstrating typicality as one in which every class member must have *exactly the same* claims and defenses as Plaintiff Werdebaugh.  *See, e.g.,* Def. Mem. at 7:14-19.  This is certainly not the Rule 23 standard. Typicality results if the representative plaintiffs' claims "arise[ ] from the same event, practice or course of conduct that gives rise to the claims of the absent class members and if their claims are based on the same legal or remedial theory." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* M 02-1486 PJH, 2006 WL 1530166, at *4 (N.D. Cal. June 5, 2006) (citations omitted). The typicality standard requires only that the named plaintiffs' claims be "reasonably coextensive with those of absent class members[,] not substantially identical." *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.,* 917 F.2d 1171, 1175 (9th Cir. 1990). Any factual variations do not defeat typicality where the underlying claims rely on the same legal or remedial theory. *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175 (9th Cir. 2010) (reversing district court's denial of class certification in breach of warranty case).

Plaintiff proposes a single class of purchasers of Defendant's almond milk products.  Plaintiff purchased Defendant's Almond Breeze Shelf Stable Chocolate Almond Milk and every other almond milk product Defendant sold bears identical misbranding  label statements as the purchased product and is included in the class definition:  "evaporated cane juice" and "All Natural."  Every almond milk product sold by Defendant and labeled "All Natural" contains the same allegedly unnatural ingredient:  potassium citrate.  The Blue Diamond products come in a number of different flavors, but the flavors are a distinction without a difference. For example, the use of the label statement "evaporated cane juice" on vanilla almond milk is unlawful for the exact same reason that the use of the label statement "evaporated cane juice" on chocolate almond milk is unlawful. The lawfulness, *vel non*, of the label statement has nothing to do with the flavor. Stated another way, the Sherman Law does not make use of the term "evaporated cane juice" dependent on the flavor of the product.  The same applies to Defendant's use of the label statement "All Natural."

Defendant argues that Plaintiff's claims are not typical of the class claims because he did not

purchase all of the products included in the class definition.  Def. Mem. at 3.  However, Plaintiff's claims are centered on Defendant's products that are misbranded in exactly the same way as set out in Plaintiff's proposed class definition. A similar issue was presented in *Chavez v. Blue Sky Natural Bev. Co*, 268 F.R.D. 365, 377 (N.D. Cal. 2010), as follows:

> Under Rule 23(a)(3)'s permissive standards, "representative claims are `typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F3d at 1020. Plaintiff's claims here arise out of the allegedly false statement, worded in several variations, made on every Blue Sky container indicating that the beverages are connected to Santa Fe, New Mexico and therefore arise from the same facts and legal theory. Because plaintiff alleges that all the Blue Sky beverages bore substantially the same misrepresentation, these claims are distinguishable from the class claims alleged in *Wiener v Dannon*, 255 FRD 658 (CD Cal 2009) in which the court held that the named plaintiff was not typical because she had only purchased one of several lines of yogurt, each claiming different health benefits. Wiener determined that these differences "lead to a substantial divergence in the evidence" required to prove that the statements were false or misleading. *Id* at 666. Although plaintiff did not purchase each type of beverage carrying the misleading label, his claims are "`reasonably coextensive with those of absent members.'"*Staton v Boeing Co*, 327 F.3d 938, 957 (2003) (quoting *Hanlon*, 150 F3d at 1020).

The *Blue Sky* analysis applies with equal force to this case.  Any individual determinations necessary to decide this case are outweighed by the common question:  the unlawfulness of Defendant's label statements regarding ECJ and "All Natural."  Although Plaintiff did not purchase every product included in the class definition, it is enough that his situation shares a common issue of law or fact and is 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief of the class members.  *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990). The label statements at issues in this case are lawful or not regardless of which Blue Diamond almond milk product or flavor it is on. *See, e.g., Swearingen v. Yucatan Foods, L.P.*, 2014 U.S. Dist. LEXIS 18094 *21 (N.D. Cal. Feb. 7, 2014) ("Plaintiffs' claim rises or falls on whether the challenged term violates the FDA's food labeling regulations and therefore renders the class products 'unlawful' under the UCL.").[1]

---

[1] Though in a 12(b)(6) context, this Court addressed the issue of substantial similarity in a prior Order in this case.  "The substantially similar approach therefore accommodates the commonsense conclusion that where, as here, a plaintiff claims that he was misled by the improper use of the term "All Natural" on Blue Diamond Almond Breeze Chocolate Almond Milk, *see* FAC ¶ 58, the injury he suffers as a result of that misrepresentation is not meaningfully distinguishable from the injury suffered by an individual who is misled by the use of the term "All Natural" on Almond Breeze Original Refrigerated Almond Milk, *see* FAC ¶ 85. Accordingly, the Court finds that Werdebaugh has adequately demonstrated Article III and statutory standing, at least for purposes of surviving a

### B.   Plaintiff Werdebaugh Is An Adequate Class Representative

Next, Defendant attacks the adequacy of Plaintiff Chris Werdebaugh because he does not have an encyclopedic knowledge of every aspect of this case.  In reality, Mr. Werdebaugh is a well-qualified class representative.  The Supreme Court has held that dismissal of a class action was not warranted even when the plaintiff showed that "she did not understand the complaint at all, that she could not explain the statements made in the complaint, that she had a very small degree of knowledge as to what the lawsuit was about, that she did not know any of the defendants by name, that she did not know the nature of their alleged misconduct." *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366, 86 S. Ct. 845, 15 L. Ed. 2d 807 (1966). A party is required to be familiar with the basic elements of the claim, and will be deemed inadequate only if he or she is startlingly unfamiliar with the case. It is not necessary that a representative be intimately familiar with every factual and legal issue in the case. *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 137945 (N.D. Cal. June 20, 2013), citing *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004).

Notwithstanding Defendant's skilled cherry-picking of items from Mr. Werdebaugh's deposition, the record demonstrates that Plaintiff is more than an adequate class representative.  He has:  (1) met with his attorneys several times in-person and by telephone to pursue the case (Pltf. Depo. at pp. 24-25); (2) reviewed a deposition transcript from the case of *Brazil v. Dole* to prepare for his own deposition (*Id.* at 28); (3) readily stated the basis of the lawsuit (*Id.* at 31); (4) observed the back-panel labeling regarding ECJ the first time he purchased Defendant's product (*Id.* at 35); (5) stated that he would not have purchased the product had it been labeled with "sugar" instead of "evaporated cane juice" (*Id.* at 37); (6) stated that he read and relied upon the "all natural label" when purchasing the product (*Id.* at 42); (6) retained receipts as evidence for this lawsuit (*Id.* at 58).  The totality of Plaintiff's deposition demonstrates the inaccuracy of Defendant's argument that Mr. Werdebaugh is inadequate.  He has a good working knowledge of this case and is aware of his duties

---

motion to dismiss." *Werdebaugh v. Blue Diamond Growers*, 2013 U.S. Dist. LEXIS 144178, 47-48 (N.D. Cal. Oct. 2, 2013)Blue Diamond asks this Court to parse the issues too finely and ignore the context of the "substantial similarity" inquiry as it relates to typicality under Rule 23.  Just as in the Rule 12(b)(6) context, it is common sense that the substantially similar products are proper for inclusion into the class of products sought to be certified in this case.  The Court should reject Blue Diamond's position.

as a class representative.

Defendant attacks Plaintiff's adequacy based upon Plaintiff's production of a grocery receipt, dated after Plaintiff filed this action that includes one Blue Diamond almond milk product.  Def.'s Mem. at p. 8.  However, Plaintiff fully explained in his deposition: 1) he stopped purchasing Blue Diamond almond milk products; 2) his reasons for doing so; 3) he had no recollection of the purchase; and 4)the purchase was likely made by his wife in preparation for a birthday party for one of their children.  Pltf. Depo. at 73-74.  Defendant's attempt to impugn Plaintiff's honesty fails.

Based upon the standard for the adequacy of class representatives, the record is clear that Plaintiff is an adequate class representative.

**C.     The Class Is Ascertainable**

Defendant cites *Carrera v. Bayer Corp.,* 727 F.3d 300 (3d. Cir. 2013) for the proposition, *inter alia,* that a class is not ascertainable and may not be certified where company records do not identify who the individual purchasers are, how much they bought, or which varieties of product they bought. Def.'s Mem. at p. 24-25.  Recently, Judge Jesus Bernal of the Central District of California analyzed *Carrera* and found it to be inconsistent with Ninth Circuit law:

> Carrera eviscerates low purchase price consumer class actions in the Third Circuit…While this may now be the law in the Third Circuit, it is not currently the law in the Ninth Circuit. In this Circuit, it is enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description.

*McCrary v. The Elations Co., LLC,* 2014 U.S. Dist. LEXIS 8443, at *24, 25 (C.D. Cal. Jan. 13, 2014).

As Judge Bernal recognized, Courts in the Ninth Circuit have repeatedly held that a class is ascertainable is the class definition includes objective criteria by which consumers can determine if they are members of the class.  *Id.; see also Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 377 (N.D. Cal. 2010)("By these objective criteria the members of the class can be ascertained by tangible and practical standards for determining who is and who is not a member of the class"). Judge Bernal certified a class of Elations joint supplement purchasers because "the class definition clearly define[d] the characteristics of a class member by providing a description of the allegedly offending product and the eligible dates of purchase," and a prospective class member "would have sufficient information to determine whether he or she was an Elations customer who viewed the specified label

1  during the class period." *McCrary,* 2014 U.S. Dist. LEXIS 8443 at *24.[2] [3]

2         In this case, the class definition is simple and straightforward.  Plaintiff seeks to certify a class

3  consisting of all persons in the United States who, since May 19, 2008, until the date of notice,

4  purchased almond milk products manufactured, distributed and/or sold by Blue Diamond Growers

5  containing the label statements "evaporated cane juice" and/or "All Natural."  This definition

6  employs objective criteria, i.e., dates during which purchases had to be made, the geographic region

7  in which those purchases had to have been made, and the exact products that had to have been

8  purchased. The definition does not rely on any subjective criteria.  Under controlling Ninth Circuit

9  precedent, that is all that is required.

10        **D.      All Requirements of Rules 23(a)(2) And 23(b)(3) Are Satisfied**

11                **1.      Plaintiff Is Entitled To A Presumption of Materiality**

12        Defendant argues that Plaintiff cannot present common proof that the label representations

13  are material as a matter of law pursuant to the rule of *Hinojos v. Kohl's Corp.,* 718 F.3d 1098 (9th Cir.

14  2013) because the statements have not been specifically regulated by legislative act, but merely the

15  subject of FDA guidance and warning letter.  *See* Def. Mem. at 14-15.  Defendant's argument fails for

16  the simple reason that Defendant's label statements are in fact subject to specific regulation by

17  legislative act.  In fact, this Court has already held in this cause that the use of "evaporated cane

18  juice" violates the FDA's viewpoint. (Order Denying Motion to Dismiss, Dkt. 65, at 15:10-25).

19

20  [2] Contrary to the Third Circuit's reasoning in *Carrera,* courts in this Circuit routinely certify classes of
    purchasers of over-the-counter products where it would be impossible to identify and notice every

21  member of the class.  *See, e.g., Astiana v. Kashi Co.,* 291 F.R.D. 493, 500 (S.D. Cal. 2013)(snack
    products); *In re POM Wonderful, LLC Marketing and Sales Practices Litig.,* 2012 WL 4490860 (C.D. Cal.

22  2012)(juice products); *Guido v. L'Oreal, USA, Inc.,* 2013 U.S. Dist. LEXIS 94031, *51-54 (C.D. Cal.
    July 1, 2013)(hair products); *Johns v. Bayer Corp.,* 280 F.R.D. 551, 560 (S.D. Cal. 2012)(multivitamins);

23  *Ries v. Arizona Beverages USA, LLC,* 287 F.R.D. 523, 536 (N.D. Cal. 2012)(tea products); *Delarosa v.
    Boiron, Inc.,* 275 F.R.D. 582, 595 (C.D. Cal. 2011)(homeopathic products); *Johnson v. Gen. Mills, Inc.,*

24  276 F.R.D. 519, 524 (C.D. Cal. 2011)(yogurt products); *Chavez,* 268 F.R.D. 365 (beverages); *Rivera v.
    Bio Engineered Supplements & Nutrition, Inc.,* 2008 WL 4906433 (C.D. Cal. 2008)(nutritional

25  supplements).  To accept Defendant's invitation to deny certification in this case based on
    ascertainability grounds would be contrary to the prevailing law in the Ninth Circuit.

26  [3] While Judge Samuel Conti recently found *Carrera* to be persuasive authority in *Sethavanish v.*

27  *ZonePerfect Nutrition Co.,* 2014 U.S. Dist. LEXIS 18600 (N.D. Cal. Feb. 13, 2014), Plaintiff respectfully
    submits that Judge Conti's opinion is against the weight of authority in the Ninth Circuit.  The better

28  course is to allow certification where the class definition describes objective criteria that allow a class
    member to identify himself or herself as a member of the class.

1    Plaintiff's allegations regarding ECJ are governed by 21 C.F.R. §§ 101.4(a)(1), 102.5(a), and 102.5(d).

2    (Id.). These statutes mandate that an ingredient contained in a product be labeled with its common or

3    usual name. Because "evaporated cane juice" is not the common or usual name for the actual

4    ingredient – sugar – Defendant has violated these statutes.

5         By the same token, Plaintiff's "all natural" claims are regulated under 21 C.F.R. § 101.22,

6    wherein the requirements for labeling a product and/or its ingredients "natural" or "artificial" are set

7    forth. This Court has noted that the FDA has indicated its commitment to its interpretation that

8    "synthetic" materials are not "natural." (Order Denying Motion to Dismiss, Dkt. 65, at 16:23-17:25).

9    Where, as in this case, a legislative body has prohibited a particular misleading advertising practice, it

10   is evidence that the legislature has deemed that the practice constitutes a "material"

11   misrepresentation, and courts must defer to that determination. *Hinojos v. Kohl's Corp.*, 718 F.3d at

12   1107.  Because all of the issues in this case are regulated by specific legislative acts, the *Hinojos* rule

13   establishes the materiality of the ECJ and "All Natural" label representations in this case.

14                      **2.      Plaintiff Is Entitled To A Presumption Of Reliance**

15        Defendant argues that Plaintiff is not entitled to a presumption of reliance in this case

16   because there is not a common definition of "All Natural."  Def. Mem. at 11-13.  Defendant further

17   argues that Plaintiff "admits to not having read the back panel or seeing all of the statements on the

18   label." *Id.* at 3.  Contrary to Defendant's position, both California's Consumer Legal Remedies Act

19   and its Unfair Competition Law allow for a presumption of reliance. *Vasquez v. Super. Ct*, 4 Cal. 3d

20   800, 94 Cal. Rptr. 796, 484 P.2d 964, 973 n.9 (Cal. 1971); *see also In re Tobacco II Cases*, 46 Cal. 4th 298,

21   93 Cal. Rptr. 3d 559, 207 P.3d 20, 39-41 (Cal. 2009); *Occidental Land, Inc. v. Super. Ct.*, 18 Cal. 3d 355,

22   134 Cal. Rptr. 388, 556 P.2d 750, 754 (Cal. 1976) ("[A]n inference of reliance arises if a material false

23   representation was made to persons whose acts thereafter were consistent with reliance upon the

24   representation."). Plaintiff has alleged that the named plaintiff and class members would not have

25   paid for the misbranded products had Blue Diamond not included the misleading label

26   representations on its products.  Plaintiff testified that he relied on the ECJ and "All Natural"

27   labeling when purchasing Defendant's product.  *See* Pltf. Depo. at pp. 45, 48, 51.

28

Defendant's argument that Plaintiff did not read the back panel ingredient list and/or the side panel is flatly contradicted by Plaintiff's deposition testimony, wherein he states, among other things, that he examined the back panel of the products as well as the side panel.  Pltf. Depo. at pp. 42, 43. Defendant's argument in this regard manufactured out of whole cloth.

As discussed supra, this Court has already noted the regulatory prohibition against using "natural" statement on product containing "synthetic" ingredients. (Dkt. 65, 16:23-17-25). Plaintiff's expert witness, Dr. Ed Scarbrough, provided a declaration with Plaintiff's principal brief (Doc # 75-7) detailing the fact that potassium citrate, which is an ingredient in every product included in Plaintiff's class definition, is not a natural ingredient.  Dr. Scarbrough stated that the FDA has a long-standing policy that the use of the term "natural" means that "nothing artificial or synthetic (including all color additives) regardless of source) has been added to a food that would not normally be expected to be in the food.  (Doc # 75-7, para. 16).  Dr. Scarbrough sets forth in detail that potassium citrate is a synthetic, non-natural, substance because it is prepared by neutralizing citric acid with potassium hydroxide or potassium carbonate.  *Id.* at para. 17.

Defendant's argument that there is no definition of "all natural" is belied by the law already recognized by this Court and the facts set forth in Dr. Scarbrough's declaration.  Defendant's argument is also rebutted by the fact that 21 C.F.R. § 101.22 contains an extensive discussion of what products and ingredients may be called natural and what may not be called natural.  Therefore, there is a common definition of "all natural" and Plaintiff is entitled to the presumption of reliance on this issue.

### 3.    Predominance of Liability Issues

The predominance inquiry of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). Accordingly, the predominance analysis "focuses on the relationship between the common and individual issues in the case." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013). In this case the facts, as well as the law, cohere around the label representations at issue.  Each Class member purchased Defendant's misbranded product. Each Class member was subject to the same unlawful and deceptive labeling statements during the proposed class period. A finding of Defendant's culpability for a single Class member will yield the

same result for all. Inasmuch as the claims against Defendant arise out of the same unlawful, unfair and deceptive practices and are premised on the same legal theories, the predominance of common questions of law and fact is clear.[4]

### 4.   Predominance of Proof Regarding Restitution

Plaintiff's restitution request fits squarely with controlling law.[5] In *Sherser* v. Superior Court, the court stated:

> The only requirements the UCL and California's false advertising law, Bus. & Prof. Code, § 17500 et seq., impose on such recovery are that the plaintiff must be a "person in interest" (that is, the plaintiff must have had an ownership interest in the money or property sought to be recovered), and the defendant must have acquired the plaintiff's money or property by means of unfair competition or some other act prohibited by the UCL or the false advertising law.

*Shersher v. Superior Court*, 154 Cal. App. 4th 1491 (Cal. App. 2d Dist. 2007). Plaintiff alleges that she has an ownership interest in the property sought to be recovered.  Plaintiff alleges that Defendant acquired her property by means of an act prohibited by the UCL, namely misbranding the labels on its products. Under these circumstances, the *Korea Supply* ruling, as mischaracterized by Defendant, has no bearing on Plaintiff's demand for restitution.   Defendant further attempts to discredit Dr. Capps' methodologies in performing a restitution analysis under the UCL by attempting to argue that because Defendant does not "set retail prices" that his "methodologies are flawed and unworkable" (Def.'s Memo p. 19: 19-21).  But Defendants' argument is a thinly veiled attempt to thwart liability

---

[4] Differences among class members concerning the amount of their individual damages, which are unavoidable in class action litigation, do not prevent a suit from proceeding as a class action. *Blackie*, 524 F.2d at 905. Remedies, whether they be in the form of restitution or damages, can be proven on a classwide basis. *See* Exhibit K, Capps Decl., which is consistent with the Supreme Court's order in *Comcast Corp. v. Behrend*, 11-864, 2013 WL 1222646, *5 (U.S. Mar. 27, 2013).

[5] If the Court determined that the class should be awarded full restitution (the retail prices paid by the class), because, *inter alia*, the product is illegal to sell or hold this would also be a common calculation using average retail prices.  This is also a proper measure of damages easily calculated on a class-wide basis.  *See Chavez v. Blue Sky Natural Beverage Co.*, 340 F. App'x 359, 361 (9th Cir. 2009); *Sanbrook v. Office Depot, Inc.*, 2009 WL 840020, at *5 (N.D. Cal. Mar. 30, 2009) ("Furthermore, the injury suffered by each class member is likely equivalent as well: the purchase price of the Plan."); *United States v. Gonzalez-Alvarez*, 277 F.3d 73, 78 (1st Cir. 2002)("where a product cannot be sold lawfully it has a value of zero..."); *Park v. Welch Foods, Inc.*, Case No. 5:12-cv-6449, Dkt. 49 (N.D. Cal.)(J. Grewal) ("The fact remains, however, that in California, '[i]t is unlawful for any person to . . . hold or offer for sale any food that is misbranded,' and the statute establishing that is subject to the punishments described above.").

for manufacturing and selling misbranded food products by hiding behind the fact that it is not a

retail establishment but instead sells its products to a retail establishment, thus making Plaintiff and

the Class an indirect purchaser.[6]   However, this assertion runs completely contra to *Shersher* and

would obliterate the entire purpose of restitution under the UCL which is to protect both consumers

and competitors by promoting fair competition in commercial markets for goods and services.  In

*Shersher*, when Defendant Microsoft attempted to thwart liability under the UCL by hiding behind the

retailer, the Court held:

> "Nothing in *Korea Supply* conditions the recovery of restitution on the plaintiff having
> made direct payments to a defendant who is alleged to have engaged in false
> advertising or unlawful practices under the UCL. The only requirements the UCL
> and the false advertising law impose on such recovery are that the plaintiff must be a
> "person in interest" (that is, the plaintiff must have had an ownership interest in the
> money or property sought to be recovered), and the defendant must have acquired
> the plaintiff's money or property "by means of ... unfair competition" or some other
> act prohibited by the UCL or the false advertising law. Plaintiff in this case has
> alleged that he paid money to a retailer to purchase Microsoft's product based on
> false or misleading statements on the product package. This assertion, if true,
> supports a claim for restitution." *Id* at 1498.

Defendant in this case cannot be allowed to violate the UCL by introducing misbranded food

products into the chain of commerce while laying blame on the retailer for the damages to the

Plaintiff and the Class that may result. It should be noted that no case relied upon by Blue Diamond

holds  that the difference in price paid and value received is ***the only*** proper measure of restitution.

Trial courts have "broad discretion" under the UCL and CLRA to grant equitable relief and fashion

an appropriate award of restitution, subject to the limitation that the remedy must be supported by

substantial evidence. *See Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 700, 38 Cal. Rptr.

3d 36 (2006).

**5.    <u>Plaintiff's Proposed Theories of Damages Are Allowed Methods of
Recovery Under the CLRA</u>**

Defendant's argument that Dr. Capps' regression analysis would fail to adequately calculate

---

[6] The absurdity of Defendant's position is clear when one considers that it has refused to provide
complete sales figures for its products during the class period.  On the one hand, Defendant claims
that Plaintiff cannot certify a class without a complete economic analysis of restitutionary factors.
On the other hand, it says it has no duty to provide the data that is required for such an analysis.  It is
an untenable situation for any class plaintiff.  A similar situation was present in the case of *Medrazo v.
Honda of North Hollywood,* 205 Cal. App. 4th 1 (Cal. App. 2d Dist. 2012), where the trial court denied
certification because plaintiff had insufficient data, but the court of appeals reversed because it was
clear that the defendant had refused to provide the necessary data.

CLRA damages under Rule 23 is contrary to the controlling law in this jurisdiction and is an overreaching and erroneous analysis of the *Comcast* decision.

In his opinion from *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 137945 (N.D. Cal. June 20, 2013), Judge Samuel Conti applied the holding of *Comcast* to describe the role of a damages expert at the class certification stage:

> Courts "have never required a precise mathematical calculation of damages before deeming a class worthy of certification." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir.2008); *see also LCDs*, 267 F.R.D. at 606 (*quoting* SRAM, 2008 U.S. Dist. LEXIS 107523, 2008 WL 447592, at *6 ("In price-fixing cases, '[p]laintiffs are not required to supply a precise damage formula at the certification stage.")). Thus, the fact that Dr. Netz did not actually calculate the "but-for" prices paid by consumers using any one of her methodologies is not dispositive of plaintiffs' motion for certification. This conclusion is not precluded by the Supreme Court's recent *Comcast* decision. Indeed, *Comcast* did not articulate any requirement that a damage calculation be performed at the class certification stage.  Instead, it merely rejected plaintiffs' expert's damage model, which addressed impact based on four impact theories, because the expert had not isolated damages resulting from the single theory of antitrust impact that the district court had accepted. *Comcast*, 133 S.Ct. at 1431. The Supreme Court held that "a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory."

This conclusion is supported by the court's decision in *In re High-Tech Employee Antitrust Litig.*, 289 F.R.D. 555, 2013 WL 1352016, *28-29 (N.D. Cal April 5, 2013), where, after discussing the *Comcast* decision, the court did not require plaintiffs' expert to have performed a damage calculation at the class certification stage. In fact, the court granted class certification despite the fact that plaintiffs' expert only proposed a "plausible" model for calculating damages. *Id.* (quoting *Comcast*, 133 S.Ct. at 1426 for proposition that damages "[c]alculations need not be exact, but at the class-certification stage (as at trial) any model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation") (emphasis added). As a result, Judge Conti held that *Comcast* had no application as to the damage analysis in *In re: Cathode Ray Tube (CRT) Antitrust Litig.*

As other courts have recognized, "the issue at class certification is not which expert is the most credible, or the most accurate modeler, but rather have the plaintiffs demonstrated that there is a way to prove a class-wide measure of damages through generalized proof." *EPDM*, 256 F.R.D. at 100. Plaintiffs are not required to "prove the merits of their case-in-chief at the class certification

stage. They need not demonstrate that their multiple regression analysis captures all the proper

variables and thus reaches the 'right' answer, as the defendants would require them to.... It is

unnecessary to delve further into the merits by going point-by-point through each expert's theory to

decide who has designed the 'better' multiple regression equation." *Id.* at 101.

### E.   This Case Satisfies Rule 23(b)(2)'s Requirements

Plaintiff seeks an injunction to stop Defendant from continuing to sell its unlawfully branded

products.  Certification of this claim under Rule 23(b)(2) requires that Plaintiff show that Defendant

"has acted or refused to act on grounds generally applicable to the class, thereby making appropriate

final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  FED.

R. CIV. P. 23(b)(2). Plaintiff has met this standard by demonstrating that he labels at issue are uniform

across the class and they are unlawful in precisely the same ways.

Certification under Rule 23(b)(2) is warranted because Plaintiff seeks an injunction to stop

Defendant from continuing to sell its unlawful product. Citing *Wal Mart Stores, Inc. v. Dukes*. 131 S.

Ct. 2541, 2557 (2011), Defendant argues that a class may not be certified for injunctive relief when

monetary damages claims are not merely incidental to the injunctive relief remedy.  Defendant has

not considered the full context of the *Wal Mart* discussion of the limitations of Rule 23(b)(2):

> Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or
> refused to act on grounds that apply generally to the class, so that final injunctive
> relief or corresponding declaratory relief is appropriate respecting the class as a
> whole." One possible reading of this provision is that it applies only to requests for
> such injunctive or declaratory relief and does not authorize the class certification of
> monetary claims at all. We need not reach that broader question in this case, because
> we think that, at a minimum, claims for individualized relief (like the backpay at issue
> here) do not satisfy the Rule. The key to the (b)(2) class is "the indivisible nature of
> the injunctive or declaratory remedy warranted--the notion that the conduct is such
> that it can be enjoined or declared unlawful only as to all of the class members or as
> to none of them." *Nagareda*, 84 N. Y. U. L. Rev., at 132. In other words, Rule
> 23(b)(2) applies only when a single injunction or declaratory judgment would provide
> relief to each member of the class. It does not authorize class certification when each
> individual class member would be entitled to a different injunction or declaratory
> judgment against the defendant.

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011).

The core of the *Wal-Mart* ruling on Rule 23(b)(2) certification is that a class may not be

certified when each individual class member would be entitled to a different injunction or declaratory

judgment against the defendant.  Thus, the *Wal Mart* ruling does no harm to the Plaintiff's request

for a Rule 23(b)(2) class in this case.  The Plaintiff seeks a single injunction to stop Defendant from continuing to sell its unlawful products.  This is not an instance where many different fact situations would require many individual injunctions against a defendant. Further, Plaintiff's restitution and damages claims do no flow from the requested injunctive relief. Plaintiff seeks certification of her restitution and damages claims under Rule 23(b)(3). Defendant's reliance on *Wal Mart* is misplaced.

## F.    This Litigation Concerns Common Questions Of Law and Fact

The commonality requirement is satisfied if the claims of the prospective class have even one significant issue common to the class. *See, e.g., Hanlon*, 150 F.3d at 1019-1020*; see also In re THQ, Inc. Secs. Litig.*, No. CV 00–1783AHM(EX), 2002 WL 1832145, at *11 (C.D. Cal. Mar. 22, 2002). To satisfy this provision, a common question "must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011).

The key common question on Plaintiff's UCL, FAL, and CLRA claims is whether the labels at issue are unlawful, unfair, deceptive or misleading to reasonable consumers. *See Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (UCL prohibits conduct that is unfair or deceptive, even if it is not unlawful).  Here, the question of "unlawfulness" is a common question. If Defendant's product is "misbranded" under the Sherman Law, Defendant could not lawfully sell the product. Cal. Health and Safety Code § 110760. There is also no doubt that the question of deceptiveness under the UCL is common: as it asks whether "members of the public are likely to be deceived." *Kasky v. Nike Inc.*, 27 Cal. 4th 939, 951 (2002).

## G.    Choice of Law Issues Do Not Prevent Certification

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 589 (9th Cir. 2012). Under California's choice of law rules, the class action proponent bears the initial burden to show that California has "significant contact or significant aggregation of contacts" to the claims of each class member. *Wash. Mut. Bank v. Sup. Ct.*, 24 Cal.4th 906, 921, 103 Cal. Rptr. 2d 320, 15 P.3d 1071 (2001) (citations omitted). Such a showing is necessary to ensure that application of California

law is constitutional. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310-11, 101 S. Ct. 633, 66 L. Ed. 2d 521 (1981). Once the class action proponent makes this showing, the burden shifts to the other side to demonstrate "that foreign law, rather than California law, should apply to class claims." *Wash. Mut. Bank*, 24 Cal.4th at 921.

California courts use a three-step governmental interest analysis for approaching choice of law questions. *McCann v. Foster Wheeler*, 48 Cal. 4th 68, 87-88, 105 Cal. Rptr. 3d 378, 225 P.3d 516 (2010). This analysis begins by determining whether the laws of each relevant jurisdiction differ on the applicable points of law; then examines each jurisdiction's interest in the application of its own law to the circumstances in the case; and finally weighs the interests of the various jurisdictions to determine "which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *Id.* "The fact that two or more states are involved does not in itself indicate there is a conflict of laws problem." *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919-20, 103 Cal. Rptr. 2d 320, 15 P.3d 1071 (2001). If there are no material differences in the laws of the different jurisdictions, "there is no problem and the trial court may find California law applicable to class claims." *Id.* The proponent of the other forum's law bears the burden of establishing that the other forum's law differs materially from California's, and demonstrate how applying that law will further the interest of that jurisdiction. *Garamendi v. Mission Ins. Co.*, 131 Cal. App. 4th 30, 41, 31 Cal. Rptr. 3d 395 (2005).

In this case, Defendant has met its burden at the first step in the choice of law analysis. It has provided a spreadsheet detailing the relevant laws in other jurisdictions. However, Defendant fails to meet its burden as to the second and third steps of the choice of law analysis. No analysis is included in its opposition brief concerning each jurisdiction's interest in the application of its own law to the circumstances in the case. Defendant has not weighed the interests of the various jurisdictions to determine "which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *McCann*, 48 Cal.4th at 87-88. Because Defendant bears the burden of proving all three steps in the California choice of law analysis, Defendant's superficial analysis fails. Also, the evidence indicates Defendant labeled its products and placed them into the chain of commerce to a nation of affected consumers, including those from California. For this reason, California has a strong interest in applying its law to this case. Moreover, the differences in state laws

could be managed by dividing states with substantively identical laws into subclasses.  In this way, the material differences in state law would be respected, but the case could go forward as a class action.

If this Court finds that *Mazza* precludes certification of a nationwide class because of the existence of material differences between the laws of various states, Plaintiff requests that, in the alternative, a California-only class of consumers be certified.  Such a class would meet all the requirements of Rule 23 and no conflict of laws issue would exist.

## H.    Plaintiff Has Standing To Pursue His Claims On Behalf Of The Class

To establish standing, Plaintiff is required to allege that he either paid a price premium for a mislabeled product, or would not have purchased the product had he known about the mislabeling conduct.  *See Manchouck v. Mondelez Int'l Inc*, 2013 U.S. Dist. LEXIS 138877, 2013 WL 5400285, at *2 (N.D. Cal. Sept. 26, 2013) (finding standing under Article III and the UCL where complaint alleged that "plaintiff paid a 'price premium' because the product claimed to be 'made with real fruit,'" and that "[p]laintiff would not have purchased the two products at that price point absent the alleged misstatements"); *see also Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 901 (N.D. Cal. Dec. 17, 2012) (holding allegations "that plaintiffs would not have purchased a product if the product had been labeled accurately is sufficient to establish injury under California's consumer laws"); *see also Kwikset*, 51 Cal. 4th at 329 ("For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately.").

Plaintiff meets and exceeds this standard in this case.  Throughout the First Amended Complaint, it is alleged that (1) Plaintiff paid a price premium for the Blue Diamond products and (2) would not have purchased the products is he had known that the label representations were false. His testimony comports with this requirement and provides him standing. Further, because the representations at issue are material, his reliance is imputed to the class.   Defendant elicited nothing in Plaintiff's deposition testimony to contradict the fact that he has standing to pursue his claims in this case   Therefore, Defendant's argument that standing is lacking in this case fails.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion to certify this case as a class action, appoint him as Class Representative, and appoint his counsel as Class Counsel.

Dated: March 28, 2014.                    PLAINTIFF CHRIS WERDEBAUGH

/s/ Dewitt M. Lovelace
Dewitt M. Lovelace (*pro hac vice*)
LOVELACE LAW FIRM, P.A.
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone: (850) 837-6020
Fax: (850) 837-4093
dml@lovelacelaw.com

Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 369-0800
Fax:  (408) 369-0752
pgore@prattattorneys.com

Brian Herrington (*pro hac vice*)
BARRETT LAW GROUP, P.A.
PO Box 927
Lexington, MS 39095
Telephone: 662.834.2488
Fax: 662.834.2628
bherrington@barrettlawgroup.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing was filed and served via the Court's ECF filing system this 28th day of March, 2014.

/s/ Dewitt M. Lovelace
Dewitt M. Lovelace