1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9         NORTHERN DISTRICT OF CALIFORNIA

10              SAN JOSE DIVISION

11  CHRIS WERDEBAUGH, individually and on      )   Case No.: 12-CV-2724-LHK
    behalf of all others similarly situated,      )
12                                             )
                   Plaintiff,                   )   ORDER GRANTING IN PART AND
13        v.                                    )   DENYING IN PART PLAINTIFF'S
                                               )   MOTION FOR CLASS
14  BLUE DIAMOND GROWERS,                      )   CERTIFICATION
                                               )
15                 Defendant.                   )
                                               )
16  _____ )

17

18          Plaintiff Chris Werdebaugh ("Werdebaugh" or "Plaintiff") brings this putative class action

19  against Blue Diamond Growers ("Blue Diamond" or "Defendant"), alleging that Defendant's

20  package labeling is unlawful, deceptive, and misbranded in violation of California law. Plaintiff

21  moves to certify a nationwide class of consumers who purchased certain Blue Diamond products

22  during the class period ("Mot."). ECF No. 74. Defendant filed an opposition ("Opp'n"), ECF No.

23  97, and Plaintiff filed a reply ("Reply"), ECF No. 115. The Court held a hearing on the instant

24  motion on May 22, 2014. Having considered the submissions of the parties, the relevant law, the

25  record in this case, and the oral arguments presented at the hearing, the Court hereby GRANTS IN

26  PART and DENIES IN PART Plaintiff Werdebaugh's Motion for Class Certification.

27

28

United States District Court
For the Northern District of California

# I.      BACKGROUND

## A.      Factual Background

Blue Diamond is a California corporation and a leading producer of almond milk products and snack foods. *See* Mot. at 3. Blue Diamond sells the vast majority of its products—more than 99.9%—to retailers and distributors for eventual sale to consumers at grocery and other retail stores throughout the United States. Declaration of John O'Shaughnessy in Support of Blue Diamond Growers' Opposition to Plaintiffs' Motion for Class Certification ("O'Shaughnessy Decl."), ¶¶ 4, 5.

Werdebaugh is a California consumer who purchased Blue Diamond's shelf stable Chocolate Almond Breeze almond milk product ("Purchased Product") as a healthy "treat" alternative to white dairy milk for his children. *See* Deposition of Christopher Werdebaugh ("Werdebaugh Depo"), ECF No. 101-1 at 69, 80. Since April 11, 2008, Werdebaugh purchased four cartons of the Purchased Product at $3–4 per carton. Werdebaugh Depo at 75, 107–08, 143–44. Werdebaugh contends that the Purchased Product's label bears false, misleading, and unlawful claims. *See* Mot. at 2. Specifically, the label statements on the Purchased Product alleged to be false and misleading include: (1) listing the sweetener used in its almond milk products "not as 'sugar,' . . . but as 'evaporated cane juice,'" and (2) "includ[ing] the statement 'All Natural' when, in fact, the products contain synthetic ingredients . . . ." *Id*. at 1. Werdebaugh asserts that he "reasonably relied on those statements for his purchase decision, and would not have bought the product otherwise." *Id*. at 5.

Werdebaugh seeks to certify a class of purchasers of Blue Diamond products that are substantially similar to the variety Werdebaugh himself purchased. *Id*. at 1. Plaintiff contends that there are two types of products at issue, Shelf Stable Almond Milk and Refrigerated Almond Milk, both of which come in several flavors. *Id*. Because the allegedly misleading and unlawful labeling statements found on the cartons of Almond Breeze Chocolate Almond Milk purchased by Werdebaugh are identical to those found on Shelf Stable Almond Milk and Refrigerated Almond Milk products of all flavors (collectively, "Substantially Similar Products"), Plaintiff seeks to

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1  certify a class that includes purchasers of all Substantially Similar Products. *Id*. These Substantially

2  Similar Products include (1) eleven varieties labeled with the ingredient evaporated cane juice; and

3  (2) seven varieties labeled "All Natural" despite containing synthetic ingredients. *See* ECF Nos.

4  74-1, 74-2, 74-3, 74-4, 74-5, 74-6, 74-7, 75-1, 75-2, 75-3, 75-4 (Blue Diamond product labels with

5  "Evaporated Cane Juice" statements); 78, 78-1, 78-2, 78-3, 78-4, 78-5, 78-6 (Blue Diamond

6  product labels with "All Natural" statements).

7  **1.     Evaporated Cane Juice Claims**

8          Werdebaugh alleges that Blue Diamond's use of the term "evaporated cane juice" as an

9  ingredient on the package labels of the Purchased Product and Substantially Similar Products

10  violates federal regulations and California law. Mot. at 4–5. Specifically, Werdebaugh contends

11  that Defendant's use of the term "evaporated cane juice" violates: (a) the FDA's definition of the

12  term "juice"; (b) the FDA's requirements for identifying cane syrup on food labels; and (c) the

13  FDA's blanket requirement that foods must be referred to by their common or usual names and not

14  by names "confusingly similar to the name of another food that is not reasonably encompassed

15  within the same name." *Id*. at 3–4 (quoting 21 C.F.R. § 102.5(a)).

16          First, according to Werdebaugh, 21 C.F.R. § 120.1(a) defines "juice" as "the aqueous liquid

17  expressed or extracted from one or more fruits or vegetables, purees of . . . fruits or vegetables, or

18  any concentrates of such liquid or puree." *Id*. (quoting FDA October 2009 Guidance for Industry

19  Letter) (internal quotation marks omitted). Although sugar cane is a vegetable, Werdebaugh

20  represents that the FDA "considers the term 'vegetable' in the context of the juice definition to

21  refer more narrowly to edible plant parts that consumers are accustomed to eating as vegetables in

22  their diet." *Id*. Because "the juice or extract of sugar cane is not the juice of a plant that consumers

23  are accustomed to eating as a vegetable in their diet," sugar cane or any extract of sugar cane does

24  not qualify as "juice" under the regulation defining that term. *Id*. Second, Werdebaugh asserts that

25  federal regulations not only proscribe identifying sugar cane and cane syrup as "juice," but

26  mandate that sugar cane be identified as "sugar" or "syrup." First Amended Complaint ("FAC"),

27  ECF No. 38 at ¶¶ 42, 46, 63 (citing 21 C.F.R. §§ 101.4(b)(20) (sugar); 168.130 (cane syrup)).

28

3

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

Third, Werdebaugh alleges that use of the term evaporated cane juice violates the FDA's requirement that ingredients be described by their common or usual names, as established by regulation or common usage. Mot. at 4. (citing 21 C.F.R. § 102.5(d)). Because evaporated cane juice is "'confusingly similar to the name of [another] food that is not reasonably encompassed within the same name,'" Werdebaugh contends that the term cannot satisfy the FDA's common name or usage requirement, and is misleading and deceptive in violation of California and federal law. *Id*. (quoting 21 C.F.R. § 102.5(a)).

Plaintiff contends that the FDA's intention to regulate evaporated cane juice based on these requirements is expressed in an October 2009 Guidance for Industry letter on the topic ("2009 Guidance"), *see id*. at 5; ECF 76-2 (FDA Guidance letter), as well as in "warning letters to the industry" on this issue, ECF 76-3 (warning letter).

### 2.    "All Natural" Claims

Werdebaugh also alleges that Blue Diamond's use of the term "All Natural" on the Purchased Product and Substantially Similar Products violates federal regulations and California law. Mot. at 5–6. Werdebaugh asserts the artificial ingredient potassium citrate is present in the Purchased Product and Substantially Similar Products labeled "All Natural." *Id*. at 2. Werdebaugh argues that 21 C.F.R. § 101.22 prohibits Defendant from labeling its products as "All Natural" when those products contain potassium citrate. *Id*. at 17. According to Werdebaugh, the FDA has "repeatedly affirmed" this policy in regulatory publications, *see* 58 Fed. Reg. 2302-01, 2407 (Nov. 6, 1993), policy guidelines, *see* FDA Compliance Policy Guide § 587.100, and "numerous warning letters." *See* FAC ¶¶ 33, 35–36. Werdebaugh contends that Defendant's labeling representation that the Purchased Product and Substantially Similar Products are "All Natural " is false and misleading in violation of California law and federal regulation because these products in fact contain the ingredient potassium citrate. Mot. at 5–7.

### B.    Putative Class Claims

Werdebaugh alleges that by manufacturing, advertising, distributing, and selling misbranded products, Defendant has violated California Health & Safety Code Sections 110390,

4

110395, 110398, 110400, 110660, 110720, 110725, 110735, 110740, 110760, 110765, and 110770. *See* FAC ¶¶ 64–75. In addition, Werdebaugh asserts that Defendant has violated the standards set by 21 C.F.R. §§ 101.4(a)(1), 101.22, 101.30, 102.5(a), 102.5(d), and 120.1(a), as well as by 21 U.S.C. § 343, which have been incorporated by reference into California's Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code §§ 109875 *et seq*. *See* FAC ¶¶ 26–27, 76; *see also* Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to [federal statutes governing food labeling] in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state.").

Based on these alleged regulatory and statutory violations, Werdebaugh's FAC alleges the following causes of action: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*., for unlawful, unfair, and fraudulent business acts and practices (claims 1, 2, and 3); (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq*., for misleading, deceptive, and untrue advertising (claims 4 and 5); and (3) violation of the CLRA, Cal. Civ. Code §§ 1750 *et seq*. (claim 6). *See* FAC ¶¶ 96–155.

Werdebaugh has moved for class certification of these claims pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3). Mot. at 3. Plaintiff seeks to certify the following nationwide class:

> All persons in the United States who, from May 19, 2008, until the date of notice, purchased almond milk products manufactured, distributed and/or sold by Blue Diamond Growers containing the label statements "evaporated cane juice" and/or "All Natural."

Mot. at i.

### C.    Procedural History

Werdebaugh filed his original Complaint on May 29, 2012. ECF No. 1. Blue Diamond filed an Answer on September 25, 2012. ECF No. 20. The Parties stipulated to Plaintiff filing an amended complaint as well as to the Court dismissing with prejudice claims in the original Complaint based on the Magnuson-Moss Warranty Act and Song-Beverly Consumer Warranty

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Act. ECF Nos. 36, 37.

Werdebaugh filed his FAC on May 24, 2013. ECF No. 38. Blue Diamond filed its Motion to Dismiss or, in the alternative, to strike particular allegations in the FAC on June 24, 2013. ECF No. 46. Blue Diamond moved to dismiss for four reasons, arguing that: (1) Plaintiff's claims are preempted by the Federal Food, Drug, and Cosmetic Act, on the bases of implied preemption, express preemption, and the doctrine of primary jurisdiction; (2) Plaintiff lacks standing to challenge the Substantially Similar Products because he did not purchase them; (3) Plaintiff's claims are not pled with the particularity required under Fed. R. Civ. P. 9(b); and (4) California's conflict-of-laws analysis prohibits non-California plaintiffs from bringing a claim under the UCL, FAL, or CLRA. *See id.* at i. Blue Diamond moved to strike Werdebaugh's claim for monetary relief under the CLRA arguing that he did not properly seek leave to amend on that basis. *Id.* On July 22, 2013, Werdebaugh filed his Opposition, ECF No. 48, as well as a request that the Court take judicial notice of certain exhibits, ECF No. 49. Defendant filed its Reply on August 30, 2013. ECF No. 58.

On October 2, 2013, the Court denied Defendant's motion to dismiss and motion to strike. ECF No. 65. The Court denied Blue Diamond's motion to dismiss in full, finding that: (1) Plaintiff's claims were not preempted by federal law and application of the doctrine of primary jurisdiction was not warranted in this case; (2) Werdebaugh had adequately alleged Article III and statutory standing at the pleading stage with respect to the Substantially Similar Products; (3) Plaintiff had met the heightened pleading standards of 9(b) with respect to all of his Purchased Product and Substantially Similar Product claims; and (4) striking the nationwide class allegations at the motion to dismiss stage would be premature. *Id.* at 14, 16, 18, 20–21; 23–24; 26; 27. Because the Court also found that Werdebaugh's amendment of the CLRA claim was proper, the Court declined to strike Werdebaugh's claim for monetary relief under the CLRA. *Id.* at 29. Defendant subsequently filed an Answer to the Amended Complaint on November 1, 2013. ECF No. 69.

On January 17, 2014, Werdebaugh moved for class certification. ECF No. 74. Defendants filed an opposition on March 7, 2014, ECF No. 98, along with evidentiary objections to Plaintiff's

6

expert declarations filed in support of class certification, ECF Nos. 102–03.[1] Plaintiff responded to Defendant's evidentiary objections on March 20, 2014, ECF Nos. 110–11, and on March 28, 2014 filed a reply, ECF No. 115. Defendant subsequently filed two statements of recent decision, ECF Nos. 116, 120. The Court held a hearing on May 22, 2014.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 23, which governs class certification, has two sets of distinct requirements that Plaintiffs must meet before the Court may certify a class. Plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy at least one of the prongs of Rule 23(b).

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Courts refer to these four requirements, which must be satisfied to maintain a class action, as "numerosity, commonality, typicality and adequacy of representation." *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 588 (9th Cir. 2012). Further, courts have implied an additional requirement under Rule 23(a): that the class to be certified be ascertainable. *See Marcus v. BMW of North America, LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012); *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 671–72 (N.D. Cal. 2011).

In addition to meeting the requirements of Rule 23(a), the Court must also find that Plaintiffs have satisfied "through evidentiary proof" one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). The Court can certify a Rule 23(b)(1) class when Plaintiffs make a showing that there would be a risk of substantial prejudice or inconsistent adjudications if there were separate adjudications. Fed. R. Civ. P. 23(b)(1). The Court can certify a Rule 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory

---

[1] The court does not rely in this order on the declarations of Julie Caswell or Edward Scarbrough. Accordingly, Blue Diamond's evidentiary objections to those declarations are OVERRULED AS MOOT.

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, the Court can certify a Rule 23(b)(3) class if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)); *see also Mazza*, 666 F.3d at 588 ("'Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23.'" (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, amended by 273 F.3d 1266 (9th Cir. 2001)). Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195. Within the framework of Rule 23, the Court ultimately has broad discretion over whether to certify a class. *Zinser*, 253 F.3d at 1186.

**III.    DISCUSSION**

Werdebaugh seeks to certify a nationwide class of consumers who purchased Blue Diamond products during the class period under both Rule 23(b)(2) and Rule 23(b)(3). Mot. at i, 8, 14, 15. Plaintiff requests certification of a class seeking restitution and damages under Rule 23(b)(3), and certification of an injunctive relief class under Rule 23(b)(2). The Court addresses Werdebaugh's standing to sue before turning to the requirements of Rule 23(a) and Rule 23(b).

**A.    Standing**

Blue Diamond challenges Werdebaugh's constitutional and statutory standing to bring suit on behalf of the proposed class. Opp'n at 23–25. For the following reasons, the Court finds that Werdebaugh has standing to pursue his claims for damages under Rule 23(b)(3), but not for

8

injunctive relief under 23(b)(2).

#### 1.      Article III and Statutory Standing

"In a class action, standing is satisfied if at least one of named plaintiff[s] meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001)). Not only must at least one named plaintiff satisfy constitutional standing requirements, but the plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Article III standing to sue requires a plaintiff show "(1) an injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury is redressable by a favorable ruling." *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1128 (N.D. Cal. 2014) (citing *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010)). Under California's UCL and FAL, a private person has statutory standing only if she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see also Kwikset*, 51 Cal. 4th at 322. Similarly, to bring a case under the CLRA, "[a] plaintiff . . . must not only be exposed to an unlawful practice but also have suffered some kind of damage." *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011) (internal quotation marks omitted).

In cases such as this, both Article III standing and standing under the UCL, FAL, and CLRA can be established by showing the plaintiff either: (1) paid a price premium for a mislabeled product; or (2) would not have purchased the product had he known about the misbranding. *Chobani,* 973 F. Supp. 2d at 1128 ("Article III's standing requirements may be satisfied by allegations that a plaintiff purchased a product he otherwise would not have purchased, or spent more on such product, in reliance on the defendant's misrepresentations."); *see also Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 962 (N.D. Cal. 2013) (holding that "Brazil suffered a concrete and particularized injury . . .  [because] he allegedly was deceived, and then paid money that he would not otherwise have paid had he known about the true nature of Defendants' products"); *Mazza*, 666 F.3d at 595 ("Plaintiffs contend that class members paid more for the CMBS than they otherwise

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

would have paid, or bought it when they otherwise would not have done so, because Honda made deceptive claims . . . . To the extent that class members were relieved of their money by Honda's deceptive conduct—as Plaintiffs allege—they have suffered an 'injury in fact.'"); *In re Google AdWords Litig.*, No. 05-3369, 2012 WL 28068, at *10 (N.D. Cal. Jan. 5, 2012) ("The requirement of concrete injury is satisfied when the Plaintiffs and class members in UCL and FAL actions suffer an economic loss caused by the defendant, namely the purchase of defendant's product containing misrepresentations."); *Manchouck v. Mondelez Int'l Inc.*, No. 13-2148, 2013 WL 5400285, at *2 (N.D. Cal. Sept. 26, 2013) (finding plaintiff had both constitutional and statutory standing where the complaint alleged "plaintiff paid a 'price premium' because the product claimed to be 'made with real fruit,'" and that "[p]laintiff would not have purchased the two products at that price point absent the alleged misstatements"); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 329 (2011) ("For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately."); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 901 (N.D. Cal. 2012) (allegations "that plaintiffs would not have purchased a product if the product had been labeled accurately [were] sufficient to establish injury under California's consumer laws").

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Because the elements of Article III standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.*; *see also In re iPhone Application Litig.*, No. 11-2250, 2013 WL 6212591 (N.D. Cal. Nov. 25, 2013). On a motion for class certification, this means Plaintiff must show standing "through evidentiary proof." *Comcast*, 133 S. Ct. at 1432; *see also Evans v. Linden Research, Inc.*, No. 11-1078, 2012 WL 5877579 (N.D. Cal. Nov. 20, 2012) (At class certification,

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

1   "Plaintiffs must demonstrate, not merely allege, that they have suffered an injury-in-fact to

2   establish Article III standing to bring the claims asserted on behalf of the [class]."); *Nelsen v. King*

3   *Cnty.*, 895 F.2d 1248, 1249–50 (9th Cir.1990) ("Standing is a jurisdictional element that must be

4   satisfied prior to class certification."); *In re First Am. Corp. ERISA Litig.*, No. 07-1357, 2009 WL

5   928294 (C.D. Cal. Apr. 2, 2009) ("[A]t the class certification stage, . . .  unlike on a motion to

6   dismiss, the would-be class representative must show standing, rather than merely allege it."); *In re*

7   *Abbott Labs. Norvir Anti-Trust Litig.*, No. 04-1511, 2007 WL 1689899 (N.D. Cal. June 11, 2007)

8   ("[I]t is 'well-settled that prior to the certification of a class, and technically speaking before

9   undertaking any formal typicality or commonality review, the district court must determine that at

10  least one named class representative has Article III standing to raise each class subclaim.'"

11  (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1287–88 (11th Cir.

12  2001)); *cf. Baghdasarian v. Amazon.com, Inc.*, No. 05-8060, 2009 WL 4823368 (C.D. Cal. Dec. 9,

13  2009) *aff'd*, 458 F. App'x 622 (9th Cir. 2011) ("At the class certification stage, Plaintiff must make

14  certain allegations concerning standing. . . . [At] summary judgment, Plaintiff must establish

15  certain facts.").

16          Accordingly, to establish standing, Werdebaugh must show, and not merely allege, either

17  that he would not have purchased the product had he known about the misbranding or that he paid

18  a price premium. Werdebaugh contends that he has standing to bring his "All Natural" claims and

19  "Evaporated Cane Juice" on both theories. Mot. at 1–2; Reply at 15. Blue Diamond challenges both

20  bases. *see* Opp'n at 24–25. The Court finds that Werdebaugh's deposition testimony clearly shows

21  that he would not have purchased Blue Diamond almond milk had he known about the

22  misbranding for the reasons stated below. Accordingly, the Court need not address Defendant's

23  price premium arguments.

24          Werdebaugh claims that he was "misled by Defendant's use of the term 'evaporated cane

25  juice' because that term falsely suggests that the sweetener was a juice and not what it really was—

26  either sugar or dried cane syrup." Mot. at 3. In essence, "Defendants deceived the Plaintiff about

27  the presence of added sugars that Plaintiff sought to avoid." *Id*. at 4. Werdebaugh alleges

28

**United States District Court**
For the Northern District of California

11

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

United States District Court
For the Northern District of California

1    throughout his FAC that he would not have purchased Defendant's products had he known that the

2    label representations were false. *See, e.g.*, FAC ¶ 61 ("Plaintiff was misled by Defendant's

3    unlawful and misleading label on this product. Plaintiff would not have otherwise purchased this

4    product had he known the truth about this product."); *id*. ¶ 110 ("Plaintiff and members of the

5    Class suffered a substantial injury by virtue of buying Defendant's Purchased Product and

6    Substantially Similar Products that they would not have purchased absent Defendant's

7    [misrepresentations].").

8            Werdebaugh's deposition testimony bears out the FAC's allegations of reliance.

9    Werdebaugh repeatedly states that he relied on the label statements in purchasing Blue Diamond's

10   almond milk product. When he purchased the almond milk, Werdebaugh was "unfamiliar with the

11   product," and "the 'all natural' label stood out" to him. Werdebaugh Depo at 41. He "stood at the

12   shelf and saw this packaging and picked it up, read the labels, and made the purchase." *Id*.

13   According to Werdebaugh, the "'all natural' label was a substantial reason why [he] bought

14   [Defendant's] product and [he] relied on that." *Id*. at 48. Werdebaugh further testified that he was

15   concerned about seeing "evaporated cane juice" on the ingredients list, but did not know that it is

16   "the equivalent of table sugar." *Id*. at 35, 63. According to Werdebaugh, discovering this fact

17   affected his subsequent purchase decisions. *Id*. at 63.

18           Apparently conceding that Plaintiff has shown reliance on the "All Natural" label

19   statements, Blue Diamond's reliance arguments are limited to Werdebaugh's standing to bring

20   claims based on the "Evaporated Cane Juice" label statements. *See* Opp'n at 24. According to Blue

21   Diamond, "it is implausible for plaintiffs to think that defendants' products did not contain added

22   sugars or that evaporated cane juice refers to anything other than sugar cane." *Id*. at 25 (citing *Avoy*

23   *v. Turtle Mountain, LLC*, No. 13-236, 2014 WL 587173, at *6 (N.D. Cal. Feb. 14, 2014)).

24   Defendant contends that Werdebaugh's deposition testimony shows that: (1) he saw the evaporated

25   cane juice ingredient statement on the label before purchasing the product and also saw on the

26   nutrition facts panel that the almond milk contained 20 grams of sugars; (2) he did not understand

27   what the term "cane" in "Evaporated Cane Juice" meant, and that he was not aware of the use of

28

12

1    "cane" in any other food product; and (3) he does not know what "evaporated cane syrup" or

2    "dried cane syrup" is, and that his purchasing decision likely would not have been impacted by the

3    use of those terms in lieu of "Evaporated Cane Juice." *Id.*

4        Defendant's arguments that Werdebaugh cannot show reliance on the allegedly misleading

5    label statements are unavailing. Specifically, the Court finds *Chobani* and *Turtle Mountain*, two

6    decisions of this Court upon which Defendant relies, distinguishable.

7        In *Turtle Mountain*, the plaintiff sought products with no added sugar, and alleged that the

8    defendant's use of the term "Evaporated Cane Juice" misled her into purchasing defendant's frozen

9    dessert products. *Turtle Mountain*, 2014 WL 587173, at *5. In that case, the Court found the

10   plaintiff's allegations of reliance implausible for several reasons, none of which apply here. The

11   products at issue in *Turtle Mountain* contained other ingredients that explicitly used the word

12   "sugar," which cast doubt on the plaintiff's claims that she was misled into believing the frozen

13   desserts had no added sugars. *Id.* The plaintiff in that case failed to provide any explanation of how

14   she could have been misled into thinking no sugars were added to the defendant's dessert products

15   given the presence of other ingredients she knew to be sugars or sugar-equivalents. *Id.* at *6.

16       With regard to *Chobani*, plaintiffs in that case disavowed any theory that evaporated cane

17   juice was a healthier form of sugar. Rather, plaintiffs relied on a theory that they believed that

18   evaporated cane juice was "some type of ingredient healthier than sugar." *Chobani*, 973 F. Supp.

19   2d at 1132. Plaintiffs therefore claimed that they did not know that evaporated cane juice was a

20   sweetener. The Court found the plaintiffs' allegations of reliance on the ECJ label implausible for

21   two reasons. First, plaintiffs in their complaint acknowledged that *dried cane* syrup was a form of

22   sugar. *Id.* at 1133. In light of this acknowledgement, plaintiffs did not explain how plaintiffs could

23   have believed that *evaporated cane* juice was not a form of sugar. Specifically, despite the fact that

24   plaintiffs knew that dried cane syrup was a form of sugar, plaintiffs provided no alternative

25   understanding of what they believed evaporated cane juice to be. *Id.* at 1133–34. Second, plaintiffs

26   acknowledged in their complaint that fruit *juice* concentrate is a well-known added sugar. *Id.* at

27   1134. The Court found that this undermined plaintiffs' "purported reliance on the word 'juice' in

28

United States District Court
For the Northern District of California

13

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

'evaporated cane juice' as denoting something 'healthy' . . . ." *Id.* In sum, in *Chobani*, plaintiffs' acknowledgement in their complaint that they knew that both *dried cane* syrup and fruit *juice* concentrate were added sugars led the Court to find implausible plaintiffs' contention that they relied on their understanding that *evaporated cane juice* was not sugar.

The Court finds Werdebaugh's claims distinguishable from those in *Chobani* and *Turtle Mountain*. First, it does not appear that Blue Diamond's products contain any ingredients such as those in *Turtle Mountain* that would have indicated to Werdebaugh the presence of added sugars. *See, e.g.,* 74-2 (Blue Diamond product label with "Evaporated Cane Juice" statement), 75-1 (Blue Diamond product label with "All Natural" statement). Werdebaugh testified that he thought the 20 grams of sugar in the product he purchased was not added sugar, but rather was "an actual squeezed element of an almond that naturally occurs." Werdebaugh Depo at 46. Defendant contends that this is not plausible, but provides no argument in support. Opp'n at 25. Nothing in the record contradicts Werdebaugh's view, and Defendant provides no reason for the Court to find otherwise. Second, Werdebaugh testified that he does not know what dried cane syrup is, in contrast to the plaintiffs in *Chobani* and *Turtle Mountain*. *See* Werdebaugh Depo at 128. Werdebaugh testified that his purchasing decision would not have been affected by the presence of dried cane syrup, but this is not fatal to Plaintiff's theory of reliance in light of the fact that Werdebaugh did not know what that ingredient even was. *Id.* at 130. The fact that the presence of dried cane syrup would not have impacted Werdebaugh's purchasing decision simply shows that unlike the plaintiffs in *Chobani* and *Turtle Mountain*, Werdebaugh does not know what dried cane syrup is.

The Court finds that Plaintiff has introduced sufficient evidence that he relied on Blue Diamond's allegedly misleading label statements in making his purchases.[2] Accordingly, the Court concludes that Plaintiff has standing to bring class claims for monetary relief under the UCL, FAL, and CLRA.

---

[2] Because merits discovery is ongoing, further inquiry may be appropriate at the summary judgment stage should further factual evidence that bears on Werdebaugh's standing come to light.

14

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 2.    Standing to Seek Injunctive Relief Under Rule 23(b)(2)

Plaintiff requests certification of the proposed class under Rule 23(b)(3) seeking damages, and separately an injunctive relief class under Rule 23(b)(2). *See* Reply at 13 ("Plaintiff's restitution and damages claims do no [sic] flow from the requested injunctive relief. Plaintiff seeks certification of his restitution and damages claims under Rule 23(b)(3)."). As discussed above, Plaintiff has standing to bring class claims for damages under the UCL, FAL, and CLRA. However, the Court finds that Werdebaugh lacks standing to bring claims for injunctive relief.

An injunctive class can be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Unlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class. Rather, only a showing of cohesiveness of class claims is required. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

Although the parties did not raise the issue of Plaintiff's standing to pursue injunctive relief in their briefs, "federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *United States v. Hays*, 515 U.S. 737, 742 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230–231 (1990)); *see also Catholic League for Religious & Civil Rights v. City & Cnty. of San Francisco*, 624 F.3d 1043, 1065 (9th Cir. 2010).

To establish standing for prospective injunctive relief, Plaintiff must demonstrate that "he has suffered or is threatened with a 'concrete and particularized' legal harm . . . coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'" *Bates*, 511 F.3d at 985 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc) ("[T]o establish standing to pursue injunctive relief . . . [plaintiffs] must demonstrate a real and immediate threat of repeated injury in the future.").[3] A plaintiff must establish a "real and immediate threat of repeated injury." *Bates*,

---

[3] This requirement separate from the minimum threshold requirements for Article III standing to bring a damages claim discussed in the previous section. *Clark v. City of Lakewood*, 259 F.3d 996,

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

511 F.3d at 985. The alleged threat cannot be "conjectural" or "hypothetical." *Lyons*, 461 U.S. at 101–02. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Finally, a named plaintiff must show that he himself is subject to a likelihood of future injury. Allegations that a defendant's conduct will subject unnamed class members to the alleged harm is insufficient to establish standing to seek injunctive relief on behalf of the class. *Hodgers–Durgin v. De La Vina*, 199 F.3d 1037, 1045–45 (9th Cir. 1999).

Several courts in this district have held in similar cases that "to establish standing, [a plaintiff] must allege that he intends to purchase the products at issue in the future." *Rahman v. Mott's LLP*, No. 13-3482, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014); *see also Jou v. Kimberly–Clark Corp.*, No. 13-3075, 2013 WL 6491158, at *13 (N.D. Cal. Dec. 10, 2013) (rejecting "Plaintiffs' contention that it is unnecessary for them to maintain any interest in purchasing the products in the future" in order to establish standing for injunctive relief); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533–34 (N.D. Cal. 2012) (finding plaintiffs had standing to pursue injunctive relief where they alleged intention to purchase products in the future); *Delarosa v. Boiron, Inc.*, No. 10-1569, 2012 WL 8716658, at *3–6 (N.D. Cal. Dec. 28, 2012) (finding plaintiff lacked standing where she did not dispute she had no intention to purchase product in the future); *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 626 (N.D. Cal. 2011); *see also Mason v. Nature's Innovation, Inc.*, No. 12-3019, 2013 WL 1969957, at *4 (S.D. Cal. May 13, 2013) (collecting cases and concluding that "[g]uided by the Ninth Circuit's interpretation of Article III's standing requirements, this Court agrees with the courts that hold that a plaintiff does not have standing to seek prospective injunctive relief against a manufacturer or seller engaging in false or misleading advertising unless there is a likelihood that the plaintiff would suffer future harm from the defendant's conduct—i.e., the plaintiff is still interested in purchasing the product in question").

---

1006 (9th Cir. 2001) ("A determination that a plaintiff has standing to seek damages does not ensure that the plaintiff can also seek injunctive or declaratory relief.").

16

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    Furthermore, "[p]lacing this requirement on Plaintiffs does not thwart the objective of

2    California consumer protection laws since it is not impossible that a consumer would be interested

3    in purchasing the products at issue if they were labeled correctly." *Jou*, 2013 WL 6491158, at *4;

4    *see also Mason*, 2013 WL 1969957 at *4 ("[I]t is an exaggeration to claim that injunctive relief

5    would never be available in false advertising cases. There are cases where a consumer would still

6    be interested in purchasing the product if it were labeled properly—for example, if a food item

7    accurately stated its ingredients."); *Ries*, 287 F.R.D. at 532 (finding standing to seek class-wide

8    injunctive relief where named plaintiffs had a "stated intent to purchase" the challenged product in

9    the future). Also, while plaintiffs face constitutional hurdles to obtaining injunctive relief in federal

10   court, they have the alternative of seeking an injunction in state court. *See Freeman v. ABC Legal*

11   *Servs., Inc.*, 877 F. Supp. 2d 919, 924 (N.D. Cal. 2012) ("[I]n federal court, a plaintiff must still

12   demonstrate Article III standing to seek injunctive relief, even if she would otherwise have

13   standing in state court.").

14        Here, because Werdebaugh has not alleged, let alone provided evidentiary proof, that he

15   intends or desires to purchase Blue Diamond almond milk products in the future, there is no

16   likelihood of future injury to Plaintiff that is redressable through injunctive relief, and Plaintiff

17   lacks standing to pursue that remedy. *See Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 979 (9th

18   Cir. 2011). As a result, Plaintiff is precluded from seeking injunctive relief on a classwide basis,

19   and the Court declines to certify the proposed class under Rule 23(b)(2).

20        **B.    Ascertainability**

21        "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party

22   seeking class certification must demonstrate that an identifiable and ascertainable class exists."

23   *Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-2907, 2014 WL 580696 (N.D. Cal. Feb. 13,

24   2014). A class is ascertainable if the class is defined with "objective criteria" and if it is

25   "administratively feasible to determine whether a particular individual is a member of the class."

26   *See Wolph v. Acer America Corp.*, No. 09-1314, 2012 WL 993531, at *1–2 (N.D. Cal. Mar. 23,

27   2012) (certifying a class where "the identity and contact information for a significant portion of

28

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

United States District Court
For the Northern District of California

these individuals can be obtained from the warranty registration information and through Acer's customer service databases"); *see also Hofstetter v. Chase Home Finance, LLC*, No. 10-01313, 2011 WL 1225900, at *14 (N.D. Cal. Mar. 31, 2011) (certifying class where "defendants' business records should be sufficient to determine the class membership status of any given individual."); *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) (denying the ascertainability of a class that smoked cigarettes for "at least twenty years"); *Tietsworth v. Sears, Roebuck & Co.*, No. 09-288, 2013 WL 1303100, at *3–4 (N.D. Cal. Mar. 28, 2013) (denying certification where "ascertaining class membership would require unmanageable individualized inquiry").

Werdebaugh has precisely defined the class based on objective criteria: purchase of Blue Diamond almond milk products within the class period. Reply at 6. The class definition "simply identifies purchasers of Defendant's products that included the allegedly material misrepresentations." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) (finding a class of customers who purchased Kashi products labeled as containing "Nothing Artificial" during the class period to be ascertainable and rejecting argument that because "Defendant does not have records of consumer purchases, and potential class members will likely lack proof of their purchases, . . . the Court will have no feasible mechanism for identifying class members"). Likewise, "[b]ecause the alleged misrepresentations appeared on the actual packages of the products purchased, there is no concern that the class includes individuals who were not exposed to the misrepresentation." *Id*. In the Ninth Circuit, "this is enough to satisfy Rule 23(a)'s implied ascertainability requirement." *Forcellati v. Hyland's, Inc.*, No. 12-1983, 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014) (certifying class of consumers who purchased "Defendants' children's cold or flu products within a prescribed time frame"); *see also McCrary v. The Elations Co., LLC*, No. 13-242, 2014 WL 1779243, at *7–9 (C.D. Cal. Jan. 13, 2014) (class ascertainable where "the class definition clearly define[d] the characteristics of a class member by providing a description of the allegedly offending product and the eligible dates of purchase"); *Guido v. L'Oreal, USA, Inc.*, No. 11-1067, 2013 WL 3353857, at *18 (C.D. Cal. July 1, 2013) (finding class ascertainable where

18

1    "the requirement for membership in the class [was] whether a consumer purchased a product after

2    a particular date").

3            Blue Diamond contends that the proposed class is not ascertainable because no company

4    records exist to identify purchasers or which products they bought. Opp'n at 9–10. Blue Diamond

5    notes that the company itself does not maintain records of customer identities or purchases other

6    than the 0.01% of its products that are sold directly to consumers through Blue Diamond's website

7    or handful of retail stores. *Id.* at 10.[4]

8            Defendant's concern is that class members will not have actual proof that they belong in the

9    class. Blue Diamond bases its argument largely on *Sethavanish*, 2014 WL 580696, at *5, which

10   found persuasive the Third Circuit's reasoning in *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir.

11   2013). In *Carrera*, the Third Circuit found that a putative class of purchasers of the defendant's

12   diet supplement was not ascertainable because there was insufficient evidence to show that retailer

13   records could be used to identify class members. *Carrera*, 727 F.3d at 308–09. The Third Circuit

14   rejected plaintiff's proposal to use affidavits submitted by putative class members because this

15   process deprived the defendant of the opportunity to challenge class membership. *Id.* at 309.

16   Additionally, the Third Circuit held that "there is a significant likelihood their recovery will be

17   diluted by fraudulent or inaccurate claims," and that absent class members could then argue that

18   they are not bound by a judgment because the named plaintiff did not adequately represent them.

19   *Id.* at 310.

20           "While [*Carerra*] may now be the law in the Third Circuit, it is not currently the law in the

21   Ninth Circuit." *McCrary*, 2014 WL 1779243, at *8. "In this Circuit, it is enough that the class

22   definition describes a set of common characteristics sufficient to allow a prospective plaintiff to

_____

[4] Blue Diamond further contends that allowing class members to self-identify would violate its due
process right to raise individual challenges to class members. Opp'n at 10. However, "because
Defendants' liability will be determined in the aggregate, and they will have no claim to any
leftover damages, whether any given individual is or is not a rightful class member is entirely
immaterial to Defendants' monetary liability in this case." *Forcellati*, 2014 WL 1410264, at *6.
"Accordingly, Defendants have no due process interest in challenging class membership that stands
in the way of certification." *Id.*; *see also Hilao v. Estate of Marcos*, 103 F.3d 767, 786 (9th Cir.
1996) (noting that a defendant's interest is "only in the total amount of damages for which it will
be liable," not "the identities of those receiving damage awards").

19

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1    identify himself or herself as having a right to recover based on the description." *Id*. (internal

2    quotation marks omitted); *see also Astiana*, 291 F.R.D. at 500 ("As long as the class definition is

3    sufficiently definite to identify putative class members, the challenges entailed in the

4    administration of this class are not so burdensome as to defeat certification." (internal quotation

5    marks and alteration omitted)).

6          Where courts have denied class certification because the proposed class was not

7    ascertainable, identification of class members posed far greater difficulties than it is likely to pose

8    in this case. *See, e.g.*, *Xavier*, 787 F. Supp. 2d at 1090 (proposed class unascertainable where class

9    definition included persons who had smoked a certain number of Marlboro cigarettes potentially

10   over a period of decades because (1) manufacturer lacked data on individual smokers, (2) plaintiffs

11   merely offered broad demographic data on smoking, (3) smoking habits were likely to change over

12   such a long time period, and (4) asking individual class members to submit affidavits attesting to

13   their belief that they had smoked 146,000 Marlboro cigarettes asked too much of potential class

14   members' memories). In *Astiana v. Ben & Jerry's Homemade, Inc.*, Judge Hamilton found

15   unascertainable a plaintiff's proposed class of those who had purchased Ben & Jerry's ice cream

16   that contained alkalized cocoa processed with a synthetic ingredient. No. 10-4387, 2014 WL

17   60097, at *3 (N.D. Cal. Jan. 7, 2014). In *Ben & Jerry's*, however, only one of the defendant's

18   fifteen suppliers had used a synthetic ingredient, and the plaintiff could provide no method of

19   identifying which consumers had purchased ice cream from that supplier. *Id*. The proposed class in

20   this case is distinguishable. Unlike in *Ben & Jerry's*, here all purchasers of Blue Diamond's

21   almond milk products are included in the class definition, and all cartons of the challenged almond

22   milk products bore the alleged mislabeling. The class period here is also far shorter than in *Xavier*,

23   and inviting plaintiffs to submit affidavits attesting to their belief that they have purchased a carton

24   of Blue Diamond almond milk in the past several years is much likelier to elicit reliable affidavits

25   than asking potential class members to recall whether they had smoked 146,000 of a certain

26   cigarette over the course of several decades. *See Xavier*, 787 F. Supp. 2d at 1090 ("Swearing 'I

27   smoked 146,000 Marlboro cigarettes' is categorically different from swearing 'I have been to Paris,

28

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

France,' or 'I am Jewish,' or even 'I was within ten miles of the toxic explosion on the day it happened.'").

Put simply, in the Ninth Circuit "[t]here is no requirement that the identity of the class members . . . be known at the time of certification." *Ries*, 287 F.R.D. at 535 (alteration in original). Rather, they need only be "parameters for membership in the class are set by objective criteria" such that it is "administratively feasible to determine whether a particular individual is a member of the class." *Wolph*, 2012 WL 993531, at *1–2.[5] Because Werdebaugh's proposed class is sufficiently definite to identify putative class members, the Court finds the proposed class sufficiently ascertainable.[6]

### C.     Rule 23(a) requirements

Blue Diamond challenges Werdebaugh's ability to satisfy each of the four requirements for class certification under Rule 23(a), and the Court addresses each in turn.

#### 1.     Numerosity

Under Rule 23(a)(1), a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean impossibility," but rather asks the court to assess the difficulty or inconvenience of joining all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964). In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it. *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.5 (9th Cir. 1977).

Werdebaugh does not proffer an exact figure for the size of the class. However, Defendant does not dispute the numerosity of the proposed class, and courts may infer numerosity from the evidentiary record. *Zeisel v. Diamond Foods, Inc*., No. 10-1192, 2011 WL 2221113 (N.D. Cal. June 7, 2011). Here, Defendant's expert calculates that between June 2008 and December 2013,

---

[5] Four judges dissented from the Third Circuit's denial of rehearing en banc in *Carrera*. That dissent agrees with this lower burden of ascertainability, particularly in light of the fact that the ascertainability requirement is rooted in common law and is not compelled by the text of Rule 23.
[6] The Court also notes that because the Court finds certification in this case is proper only as to a class of California purchasers, the burden of ascertaining the identity of class members will ultimately be much lighter than it would have been were the class comprised of purchasers from all 50 states.

21

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   Blue Diamond sold more than 200 million units of the challenged products. *See* Export Report of

2   Keith Ugone ("Ugone Report"), ECF No. 101-2, Ex. 6; *see also id.* at 14; ECF No. 76-5 (Blue

3   Diamond press release reporting total sales exceeded $1 billion in fiscal year 2011–12). From this,

4   the Court infers that the class numbers at least in the thousands. Accordingly, the Court finds that

5   joinder of the many members of the class would be impractical, and 23(a)(1) satisfied.

6                **2.     Commonality**

7       "Commonality requires the plaintiff to demonstrate that the class members 'have suffered

8   the same injury,'" which "does not mean merely that they have all suffered a violation of the same

9   provision of law." *Dukes*, 131 S. Ct. at 2551. The "claims must depend on a common contention"

10  and "[t]hat common contention . . . must be of such a nature that it is capable of classwide

11  resolution—which means that determination of its truth or falsity will resolve an issue that is

12  central to the validity of each one of the claims in one stroke." *Id*. Commonality is satisfied by "the

13  existence of shared legal issues with divergent factual predicates" or a "common core of salient

14  facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d

15  1011, 1019–20 (9th Cir. 1998). All questions of fact and law need not be common to satisfy the

16  rule. *Id*. Rather, in deciding whether plaintiffs share a common question with the prospective class,

17  the named plaintiffs must share at least one question of fact or law with the prospective class.

18  *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (citation omitted); *see Mazza*, 666 F.3d at

19  589 ("[C]ommonality only requires a single significant question of law or fact.").

20      Blue Diamond contends that Werdebaugh's class claims fail the commonality requirement

21  under Rule 23(a)(2). Blue Diamond first argues that "Werdebaugh is not entitled to a presumption

22  of reliance because what is material varies from consumer to consumer." Opp'n at 13. Blue

23  Diamond contends that class members may have purchased its products for myriad other reasons,

24  and that therefore reliance cannot be presumed based on the allegedly misleading label statements.

25  *Id*. at 13–14. The law is to the contrary. Werdebaugh's UCL, FAL, and CLRA claims depend on

26  whether the labels at issue are unlawful, unfair, deceptive, or misleading to *reasonable* consumers.

27  *See Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (noting

28

22

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

United States District Court
For the Northern District of California

1   that the UCL prohibits conduct that is unfair, deceptive, or unlawful). A plaintiff can establish that

2   a misrepresentation is material and thus violative of the consumer protection laws at issue in this

3   case by showing that "a reasonable man would attach importance to its existence or nonexistence

4   in determining his choice of action in the transaction in question." *In re Steroid Hormone Prod.*

5   *Cases*, 181 Cal. App. 4th 145, 157 (2010) (noting also that "materiality is generally a question of

6   fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably

7   find that a reasonable man would have been influenced by it"). Whether Blue Diamond's label

8   statements constitute material misrepresentations does not depend on the subjective motivations of

9   individual purchasers, and the particular mix of motivations that compelled each class member to

10  purchase the products in the first place is irrelevant. *See Ries*, 287 F.R.D. at 537 ("[V]ariation

11  among class members in their motivation for purchasing the product, the factual circumstances

12  behind their purchase, or the price that they paid does not defeat the relatively 'minimal' showing

13  required to establish commonality."); *see also Mazza*, 666 F.3d at 589 (noting plaintiff bears

14  "limited burden" to demonstrate single common question of law or fact); *Hanlon*, 150 F.3d at

15  1019–22; *In re Ferrero Litigation*, 278 F.R.D. 552, 558 (S.D. Cal. 2011) (finding commonality

16  where claims were based on "common advertising campaign"). Materiality is therefore a question

17  common to the class, the resolution of which "will resolve an issue that is central to the validity of

18  each of the claims in one stroke." *Dukes*, 131 S. Ct. 2541, 2545 (2011).  Because "an inference of

19  reliance arises if a material false representation was made to persons whose acts thereafter were

20  consistent with reliance upon the representation," should Werdebaugh prevail in proving that Blue

21  Diamond's label misstatements were material, he will have established a presumption of reliance as

22  to the entire class as well. *Occidental Land, Inc. v. Super. Ct.*, 18 Cal. 3d. 355, 363 (1976); *see also*

23  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326–28 (2009).

24     Second, and relatedly, Blue Diamond argues that the allegedly deceptive labeling

25  statements are not specifically regulated and, therefore, are not material under *Kwikset*. 51 Cal. 4th

26  at 329. Opp'n at 14–16. Specifically, Defendant contends that the only prohibitions that might bear

27  on the label statements at issue are "non-binding FDA policy statements." *Id*. at 15. At this stage,

28

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1   the Court need not decide whether the label statements at issue are material as a matter of law.

2   Rather, the Court only need find that materiality of the label statements is a question common to

3   the class.[7]

4           Finally, Blue Diamond argues that the "All Natural" label statements are not susceptible to

5   common proof because "All Natural" has no common definition. Opp'n at 11–15. Blue Diamond

6   relies on *Astiana*, 291 F.R.D. at 507–09, in which the court denied class certification of a broad

7   class in favor of certifying a narrower class because the court found that "All Natural" had no

8   common meaning as to the broad class. *Astiana* itself relies on *In re Vioxx Class Cases*, 180 Cal.

9   App. 4th 116, 129 (2009). In *Vioxx*, the court found that "if the issue of materiality or reliance is a

10  matter that would vary from consumer to consumer, the issue is not subject to common proof, and

11  the action is properly not certified as a class action." *Vioxx*, 180 Cal. App. 4th at 129; *see also*

12  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022–23 (9th Cir. 2011) ("If the misrepresentation

13  or omission is not material as to all class members, the issue of reliance 'would vary from

14  consumer to consumer' and the class should not be certified."). In *Vioxx*, which was based on

15  alleged misrepresentations regarding the pain relief drug Vioxx, the court determined that "the

16  decision to prescribe Vioxx is an individual decision made by a physician in reliance on many

17  different factors, which vary from patient to patient." *Id*. at 133. Additionally, there was evidence

18  that "some patients would rather assume the known risk of taking Vioxx in exchange for pain

19  relief, thereby mandating an individual inquiry into patient desires." *Id*. (internal quotation marks

20  omitted). In that context, even though materiality is an objective standard, the individualized nature

21  of prescribing a drug precluded materiality from being a question common to the class.

22          Similarly, cases consistent with *Vioxx* generally involve representations that differ for each

23  proposed class member or unique individual decisions. For example, in *Kaldenbach v. Mut. of*

24  *Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 846–47 (2009), the court denied class certification

---

[7] The Court notes that contrary to Defendant's contentions, Werdebaugh's claims do not rest solely on non-binding FDA guidance. The Court previously rejected this same argument in its order denying Blue Diamond's motion to dismiss. *See* ECF No. 65, at 15 (noting that Plaintiff's Evaporated Cane Juice claims were grounded in 21 C.F.R. §§ 120.1, 168.130); *id.* at 16–17 (discussing Plaintiff's All Natural claims in light of 21 C.F.R. § 101.22).

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

United States District Court
For the Northern District of California

1   because the defendant, which sold insurance policies, made different statements and presentations

2   to each customer. As such, no set of statements were common to the class. *See also Fairbanks v.*

3   *Farmers New World Life Ins. Co.*, 197 Cal. App. 4th 544, 562-65 (2011) (discussing and following

4   *Kaldenbach*). Another example is *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices &*

5   *Products Liab. Litig.*, No. 09-2100, 2012 WL 865041, at *20 (S.D. Ill. Mar. 13, 2012), which

6   followed *Vioxx* and held that "[b]ecause YAZ is a prescription medication, the question of

7   uniformity must consider representations made to each putative class member and her prescribing

8   physician." *Id*.

9       Unlike *Vioxx*, this case presents specific alleged misrepresentations common to the class:

10  Blue Diamond's "All Natural" and "Evaporated Cane Juice" label statements. Blue Diamond did

11  not make individualized representations to proposed class members, nor did proposed class

12  members likely rely on the advice of a doctor or any other professional. Therefore, the objective

13  inquiry into whether "a reasonable consumer would attach importance" to Blue Diamond's label

14  statements is a question common to the class. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th

15  Cir. 2013)

16      Likewise, *Astiana* itself, upon which Blue Diamond explicitly relies, is distinguishable. The

17  plaintiffs in *Astiana* sought certification of a much broader class that Werdebaugh seeks here. In

18  *Astiana*, "Plaintiffs challenge[d] over 90 different products labeled 'All Natural,' with different

19  ingredients and different advertising campaigns, and which consequently inspire[d] different

20  calculations in the minds of prospective customers." *Astiana*, 291 F.R.D. at 508. No such problem

21  exists here. Werdebaugh only challenges seven products labeled "All Natural" based only on the

22  products' inclusion of potassium citrate. Opp'n at 4. Blue Diamond does not assert that differences

23  in its products' labels cause prospective consumers to understand the representations differently.

24  The court in *Astiana* was also concerned that proposed class members' understanding of "All

25  Natural" might differ based on the ingredient alleged to be unnatural. *Astiana*, 291 F.R.D. at 508.

26  Here, Werdebaugh challenges only one included ingredient: potassium citrate. In the end, the

27  *Astiana* court granted class certification of a narrower class of "Kashi products containing calcium

28

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

**United States District Court**
For the Northern District of California

pantothenate, pyridoxine hydrochloride, and/or hexane-processed soy ingredients but labeled 'All Natural.'" *Id.* at 509. The definition of "All Natural" was sufficiently common for those three ingredients such that the narrower class definition raised questions sufficiently common to the class to pass Rule 23(a)(2)'s commonality requirement. Werdebaugh's proposed class here is similar to the narrower class certified in *Astiana*. The putative class here challenges eighteen products based on two allegedly deceptive and misleading label statement, and one ingredient. Whether the alleged deceptions in the label statements "All Natural" and "Evaporated Cane Juice" are material is a question common to the class.

### 3.      Typicality

Under Rule 23(a)(3) the representative party must have claims or defenses that are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." *Rodriguez*, 591 F.3d at 1124 (citations omitted). This requirement is "permissive and requires only that the representative's claims are reasonably co-extensive with those of the absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Reasonably coextensive claims with absent class members will satisfy the typicality requirement, but the class must be limited to "those fairly encompassed by the named plaintiff's claims." *Dukes* at 131 S. Ct. at 2550. "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanlon*, 976 F.2d at 508 (citations omitted). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Id.*

Blue Diamond argues Werdebaugh's claims are atypical because: (1) the class includes products Werdebaugh himself did not purchase; (2) Werdebaugh did not read each of the alleged misrepresentations on the product labels before his purchases; and (3) Werdebaugh is subject to unique defenses that threaten to become the focus of the litigation. Opp'n at 5–7. For the following reasons, the Court is not persuaded and finds Werdebaugh's claims typical of the proposed class.

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    First, Blue Diamond argues that Werdebaugh's claims are atypical because he purchased

2 only one of the eighteen total products included in the class definition. Opp'n at 5. Werdebaugh

3 purchased Blue Diamond Almond Breeze Shelf Stable Chocolate Almond Milk, which bears both

4 alleged misrepresentations, "All Natural" and "Evaporated Cane Juice." Mot. at 2. Each other

5 product included in the class definition is an almond milk product, and each bears one or both of

6 the same misbranded label statements. *See* ECF Nos. 74-1, 74-2, 74-3, 74-4, 74-5, 74-6, 74-7, 75-1,

7 75-2, 75-3, 75-4 (Blue Diamond product labels with "Evaporated Cane Juice" statements); 78, 78-

8 1, 78-2, 78-3, 78-4, 78-5, 78-6 (Blue Diamond product labels with "All Natural" statements). Each

9 product branded "All Natural" included the same allegedly unnatural ingredient, potassium citrate.

10 Mot. at 2. The challenged products are different flavors, but Plaintiff's legal theory is identical for

11 all claims: Werdebaugh alleges that Blue Diamond's placement of the statement "All Natural" on

12 the accused products was unlawful or misleading because the accused products contain potassium

13 citrate, and that use of the term "Evaporated Cane Juice" was likewise unlawful or misleading

14 because the term does not reflect what the ingredient really is, sugar. *Id*. Thus whatever flavor an

15 accused product may be, "other members have the same or similar injury, . . . the action is based on

16 conduct which is not unique to the named plaintiffs, and . . . other class members have been injured

17 by the same course of conduct." *Hanlon*, 976 F.2d at 508.

18    Blue Diamond bases this typicality challenge on Judge Davila's decision in *Major v. Ocean

19 Spray Cranberries, Inc.*, No. 12-3067, 2013 WL 2558125, at *4 (N.D. Cal. June 10, 2013).

20 However, the *Major* case involved unique facts that justified the court's finding that typicality was

21 lacking in that case. In *Major*, the proposed class was "broad and indefinite," as it "would [have]

22 include[d] any of Defendant's products represented to contain no artificial colors, flavors or

23 preservatives but which contained artificial colors, flavors or preservatives." *Id*. The plaintiff in

24 *Major* attempted to include entire product lines based on a single purchase, and the plaintiff

25 "fail[ed] to link any of those products to any alleged misbranding issue" related to the plaintiff's

26 purchase. *Id*. Furthermore, the *Major* court observed "that the labels and nutrition claims on each

27 of Defendant's products may be unique to that product itself." *Id*. The plaintiff purchased a

28

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

**United States District Court**
For the Northern District of California

1  pomegranate blueberry drink and alleged misrepresentations based on label language making

2  specific claims about blueberries. Yet the plaintiff sought to certify a class that would include

3  products having label statements making no claims about blueberries. As the *Major* court

4  explained, "[t]he evidence needed to prove Plaintiff's claim that the Diet Sparkling Pomegranate

5  Blueberry drink contained false or misleading labeling is not probative of the claims of unnamed

6  class members who purchased products within the 'Sparkling' line that did not contain

7  blueberries." *Id.*

8  Here, all products included in the proposed class definition, including the product

9  Werdebaugh himself purchased, have the same "All Natural" or "Evaporated Cane Juice" label

10  statements. This case more closely resembles cases in this Circuit in which courts have found the

11  typicality requirement met, even when the representative plaintiff did not purchase every accused

12  product. *See, e.g.*, *Astiana*, 291 F.R.D. at 502–03; *Ries*, 287 F.R.D. at 539–40; *Chavez v. Blue Sky*

13  *Natural Bev. Co.*, 268 F.R.D. 365, 377–78 (N.D. Cal. 2010).

14  Second, Blue Diamond argues that Werdebaugh's claims are atypical because before

15  purchasing Blue Diamond almond milk, Werdebaugh did not read or review the back label, which

16  contained two of three "All Natural" statements. Opp'n at 6. Defendant correctly notes that to

17  successfully pursue a consumer fraud action based on allegedly false or misleading statements,

18  plaintiffs must plead and prove actual reliance. *Id.* (citing *Kwikset*, 51 Cal. 4th at 326–27). But

19  Defendant cites no authority for the proposition that Werdebaugh must have read and relied upon

20  *all* the alleged misrepresentations on the product. Even if Werdebaugh did not read two "All

21  Natural" statements on the package, he read the third, and Defendant provides no reason to

22  distinguish between the three statements.[8] In addition, Defendant provides no authority that

23  requires Plaintiff to have read all of the misrepresentations. Accordingly, the Court is satisfied that

24

25

26  _____

[8] Plaintiff read the statement "All Natural" on the front of the package, but did not read two other
27  statements on the back panel, which read: (1) "Almond Breeze® Almondmilk is an all natural,
great tasting NON-DAIRY BEVERAGE"; and (2) "All Natural with added Vitamins and
28  Minerals." FAC ¶ 58.

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

United States District Court
For the Northern District of California

1   by reading the statement "All Natural" once on the package, Werdebaugh satisfies the typicality

2   requirement under Rule 23(a)(3).

3          Third, Blue Diamond contends that for various reasons Werdebaugh "'is subject to unique

4   defenses which threaten to become the focus of the litigation.'" Opp'n at 6 (quoting *Hanon v.*

5   *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Blue Diamond points out several facts

6   that may be unique to Werdebaugh, including that he: (1) purchased more of the almond milk after

7   commencing the instant lawsuit; (2) continues to purchase products with evaporated cane juice and

8   potassium citrate; (3) paid more for his purchase because he shopped at Whole Foods, and never

9   looked for cheaper alternatives to Blue Diamond products; and (4) purchased Blue Diamond

10  almond milk as a healthy alternative for his children. *Id.* at 6–7.

11         However, "Rule 23(a)(3) focuses on "the defendants' conduct and plaintiff's legal theory."

12  *Sisley v. Sprint Commc'ns Co., L.P.*, 284 F. App'x 463, 468 (9th Cir. 2008). Moreover, "individual

13  experience with a product is irrelevant" because "the injury under the UCL, FAL and CLRA is

14  established by an objective test. Specifically, this objective test states that injury is shown where

15  the consumer has purchased a product that is marketed with a material misrepresentation, that is, in

16  a manner such that 'members of the public are likely to be deceived.'" *Bruno v. Quten Research*

17  *Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011). "That Plaintiffs may have considered other

18  factors in their purchasing decisions does not make them atypical." *Astiana*, 291 F.R.D. at 503; *see*

19  *also Bruno*, 280 F.R.D. at 534 (rejecting argument that plaintiff was atypical because she

20  considered other facts in making purchases).

21         Regardless of what other motivations Werdebaugh may have had when he purchased Blue

22  Diamond's almond milk, he shares with the proposed class the same interests in determining

23  whether Blue Diamond products were deceptively advertised and labeled. Plaintiff seeks to show

24  misrepresentations common to the Substantially Similar Products; these representations are thus

25  common to the proposed class. Werdebaugh's claims arise out of the same facts and same legal

26  theory as the rest of the proposed class. *See Chavez*, 268 F.R.D. at 377 ("Plaintiff's claims here

27  arise out of the allegedly false statement, worded in several variations, made on every Blue Sky

28

29

**United States District Court**
For the Northern District of California

1  container indicating that the beverages are connected to Santa Fe, New Mexico and therefore arise

2  from the same facts and legal theory."). Although plaintiff did not purchase each type of almond

3  milk which carried the allegedly misleading label, his claims are "'reasonably coextensive with

4  those of absent members.'" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (2003) (quoting *Hanlon*, 150

5  F.3d at 1020). Accordingly, the Court finds that Werdebaugh's claims are typical of the proposed

6  class.

7  **4.     Adequacy**

8  In the Ninth Circuit, to test the adequacy of a class representative, courts ask two questions:

9  "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class

10  members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on

11  behalf of the class?" *Staton*, 327 F.3d at 957 (citing *Hanlon*, 150 F.3d at 1020).

12  The Court finds Werdebaugh to be an adequate class representative. Werdebaugh and the

13  proposed class share the same claims and interest in obtaining relief, and he is vigorously pursuing

14  relief on behalf of the proposed class. The Court also finds that Plaintiff's counsel has experience

15  in prosecuting consumer fraud and warranty class actions. *See* ECF Nos. 76-6, 77, 77-1, 77-2, 77-3

16  (Declarations of class counsel detailing experience prosecuting consumer fraud class actions).

17  Blue Diamond challenges Werdebaugh's adequacy as a class representative on three

18  grounds. Opp'n at 7–9. First, Blue Diamond contends that Werdebaugh's claims are not

19  coextensive with the entire class, referring the Court to Blue Diamond's arguments regarding

20  typicality. *Id*. at 8. This argument fails for similar reasons as do Blue Diamond's typicality

21  arguments. Werdebaugh and the class were exposed to the same alleged misrepresentation on Blue

22  Diamond product labels, and Werdebaugh maintains that absent the Defendant's deception, he

23  would have either paid less for a Blue Diamond product or purchased a different product

24  altogether. FAC ¶¶ 61, 110. Werdebaugh's interests are therefore coextensive with the proposed

25  class.

26  Second, Blue Diamond asserts that Werdebaugh and his counsel made "affirmative

27  misrepresentations about key facts in the FAC that raise significant credibility issues." Opp'n at 8.

28

30

**United States District Court**
For the Northern District of California

1    In support of this argument Blue Diamond points to several allegations in the FAC, *see, e.g.*, FAC

2    ¶ 77 (stating Werdebaugh spent "more than twenty-five ($25.00)" on Blue Diamond almond milk),

3    that have not been borne out in discovery, *see, e.g.*, Werdebaugh Depo at 75, 107–108, 143–44

4    (testifying that he purchased four cartons at $3–4 per carton). However, these inconsistencies fall

5    far short of constituting "affirmative misrepresentations about key facts." For example, Blue

6    Diamond argues that Werdebaugh's deposition testimony and documents produced in discovery

7    show that, in contrast to statements in the FAC, Werdebaugh stopped purchasing Blue Diamond

8    almond milk after he learned of the alleged false label statements, "he and his wife purchased two

9    cartons of Chocolate Almond Breeze nearly six months after the original complaint was filed."

10   Opp'n at 8. This is, at most, a minor inconsistency, and is not evidence of "affirmative

11   misrepresentations" of the kind that would render Werdebaugh an inadequate class representative.

12   In fact, on this particular issue it appears to the Court that the FAC and Werdebaugh's statements

13   are consistent. The FAC states that Werdebaugh, not his wife, stopped purchasing Blue Diamond's

14   products, *see* FAC ¶ 80, and in his deposition Werdebaugh stated that he had no knowledge of the

15   subsequent purchases and speculated that his wife may have purchased the almond milk for a

16   birthday party, *see* Werdebaugh Depo at 70–74. The Court finds Blue Diamond has not sufficiently

17   challenged Werdebaugh's honesty and credibility to support its argument that he is an inadequate

18   class representative.

19          Finally, Blue Diamond argues that Werdebaugh's "very limited involvement in this

20   litigation to date and the fact that all of his knowledge about his claims" comes from his attorneys

21   "calls into question whether he will prosecute this action vigorously on behalf of the class." Opp'n

22   at 9. Defendant fails to show that Werdebaugh is so uninterested in or uninformed about the case so

23   as to be an inadequate representative of the class. *See Moeller v. Taco Bell Corp.*, 220 F.R.D. 604,

24   611 (N.D. Cal. 2004) ("The threshold of knowledge required to qualify a class representative is

25   low; a party must be familiar with the basic elements of her claim[ ], and will be deemed

26   inadequate only if she is 'startlingly unfamiliar' with the case." (citation omitted)). To the contrary,

27   Plaintiff is sufficiently familiar with her claims to adequately represent the members of the

28

31

1    proposed class. *See, e.g.*, Werdebaugh Depo at 28 (stating that Werdebaugh reviewed a deposition

2    transcript from another case to prepare for his deposition), 41 (describing the circumstances of his

3    almond milk purchase), 54 (explaining his reliance on the label statements in purchasing Blue

4    Diamond almond milk), 58 (stating that he saved receipts as evidence for the lawsuit).

5           Accordingly, the Court concludes that Werdebaugh and his counsel are adequate

6    representatives of the proposed classes and therefore that Rule 23(a)(4) is satisfied in this case.

7           **D.      Rule 23(b)(3) Requirements**

8           For a class action to be certified under Rule 23(b)(3), the class representatives must show

9    that "the questions of law or fact common to the members of the class *predominate* over any

10   questions affecting only individual members and that a class action is *superior* to other available

11   methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3)

12   (emphases added). The Court first addresses predominance before turning to superiority.

13          **1.      Predominance**

14          Plaintiffs seek to certify a nationwide class alleging California state law claims. Under Rule

15   23(b)(3), plaintiffs must show "that the questions of law or fact common to class members

16   predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

17          "The Rule 23(b)(3) predominance inquiry" is meant to "tes[t] whether proposed classes are

18   sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*,

19   521 U.S. 591, 623 (1997). The Ninth Circuit has held that "there is clear justification for handling

20   the dispute on a representative rather than an individual basis" if "common questions present a

21   significant aspect of the case and they can be resolved for all members of the class in a single

22   adjudication . . . ." *Hanlon*, 150 F.3d at 1022. In ruling on a motion for class certification based on

23   Rule 23(b)(3), the district court must conduct a rigorous analysis to determine whether the class

24   representatives have satisfied both the predominance and superiority requirements. *See Zinser*, 253

25   F.3d at 1186.

26          Blue Diamond raises three types of predominance arguments. The first—that the term "All

27   Natural" has no common meaning—is identical to Blue Diamond's commonality argument

28

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

regarding the same term. This argument fails to defeat Werdebaugh's showing that common

questions predominate, as required by Rule 23(b)(3), for the same reasons set forth above regarding

commonality under Rule 23(a)(2). Therefore, for the reasons stated in the commonality section

above, the Court concludes that common questions will predominate on all liability questions,

including issues of materiality and reliance. The Court need not decide whether the

misrepresentations were in fact material. The Court merely concludes that these liability questions

are common to all class members.

The Court focuses its discussion in this section on Blue Diamond's remaining

predominance contentions. The Court first discusses choice-of-law issues involved in certifying a

nationwide class before turning to Blue Diamond's predominance challenges to Werdebaugh's

proposed damages models.

### a. Nationwide Class Allegations

Defendant argues that were the Court to certify the proposed class under Rule 23(b)(3),

individual issues would predominate as the Court would be obliged to apply the laws of 50

different states. Opp'n at 20. The Court agrees, and concludes that because the proposed

nationwide class fails the predominance requirement under Rule 23(b)(3), certification of such a

class would be improper.

In a CAFA diversity action, this Court applies California's choice of law rules. *See Klaxon*

*Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Bruno*, 280 F.R.D. at 538 n.7. "Under

California's choice of law rules, the class action proponent bears the initial burden to show that

California has significant contact or significant aggregation of contacts to the claims of each class

member." *Mazza*, 666 F.3d at 589. "Once the class action proponent makes this showing, the

burden shifts to the other side to demonstrate that foreign law, rather than California law, should

apply to class claims." *Id*. at 590.

"[C]onduct by a defendant within a state that is related to a plaintiff's alleged injuries and is

not 'slight and casual' establishes a 'significant aggregation of contacts, creating state interests.'"

*AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1113 (9th Cir. 2013) (citations

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1     omitted). Here, Defendants are headquartered in California and their alleged misconduct originated

2     in California. *See* FAC ¶ 17; O'Shaughnessy Decl. ¶¶ 1, 3. Accordingly, the Court finds that

3     Plaintiff has met his initial burden. "California has a constitutionally significant aggregation of

4     contacts to the claims of each putative class member in this case," and application of California law

5     here poses no constitutional concerns. *Mazza*, 666 F.3d at 591; *see also Clothesrigger, Inc. v. GTE*

6     *Corp.*, 191 Cal. App. 3d 605 (1987) (concluding application of California law was constitutionally

7     permissible where defendant's principal offices were in California and the allegedly fraudulent

8     misrepresentations emanated from California); *In re Charles Schwab Corp. Sec. Litig.*, 264 F.R.D.

9     531, 538 (N.D. Cal. 2009) (location of the defendant's headquarters is also a relevant factor in

10    significant contact or aggregation of contacts analyses).

11            Because the Court is satisfied that California has sufficient contacts with the proposed class

12    claims, the burden is on Defendant to show "that foreign law, rather than California law, should

13    apply." *Mazza*, 666 F.3d at 590. California law may be applied on a class wide basis only if "the

14    interests of other states are not found to outweigh California's interest in having its law applied."

15    *Id.* (quoting *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 921 (2001)). To determine

16    whether the interests of other states outweigh California's interest, courts administer the following

17    three-step government interest test. The court must first determine whether the law of the other

18    states is materially different from California law. *Mazza*, 666 F.3d at 590. Second, if there are

19    differences, the court determines whether the other state has an interest in having its law applied.

20    *Id.* at 591–92. Third, if another state has an interest, the court determines which state's interest

21    would be most impaired if its policy were subordinated to the law of another state. *Id.* at 593. In

22    *Mazza*, the Ninth Circuit vacated a district court's certification of a nationwide class based on the

23    same California consumer protection laws at issue here—the UCL, FAL, and CLRA. *Id.* at 594.

24    The facts and claims here closely parallel those in *Mazza*, and consequently so does the Court's

25    analysis.

26            Plaintiff concedes that Defendant has met its burden on the first step of California's choice-

27    of-law analysis, and the Court agrees. Reply at 14. Werdebaugh brings claims under the same

28

34

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

United States District Court
For the Northern District of California

1    California consumer protection statutes as the plaintiffs in *Mazza*: the UCL, FAL, and CLRA. *See*

2    FAC ¶¶ 96–155. Defendant identifies the same material differences between California's consumer

3    protection regime and that of other states that dissuaded the Ninth Circuit from applying California

4    law to other states, *see Mazza*, 666 F.3d at 591, including: (1) injury requirements, (2) deception

5    requirements, (3) scienter, (4) reliance, (5) pre-filing notice requirements, (6) statutes of limitation,

6    (7) restrictions on consumer protection class actions, and (8) remedies. Opp'n at 21; *see also*

7    Declaration of Lawrence Cirelli, Ex. C, ECF No. 101.

8         As for the second step, the Court finds that the other 49 states each have an interest in

9    applying their own law. As the Ninth Circuit explained in *Mazza*, "each foreign state has an interest

10   in applying its law to transactions within its borders," which means that "if California law were

11   applied to [a nationwide class], foreign states would be impaired in their ability to calibrate liability

12   to foster commerce." 666 F.3d at 593. This reflects the "principle of federalism that each State may

13   make its own reasoned judgment about what conduct is permitted or proscribed within its borders."

14   *Id.* at 591 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003)).

15        Here, the purported nationwide class here consists of members from 50 states. *See*

16   O'Shaughnessy Decl. ¶ 6. Plaintiff alleges that consumers from each of the 50 states were

17   subjected to misleading and unlawful representations on which they relied in purchasing Blue

18   Diamond almond milk products. Mot. at 3–6. Blue Diamond denies that its products are misleading

19   or unlawful. *See* Opp'n at 2–4. Given the parties' respective positions, all 50 states have an interest

20   in having their own laws applied to the consumer transactions that took place within their borders.

21   *Gianino v. Alacer*, 846 F. Supp. 2d. 1096, 1102 (C.D. Cal. 2012). Each state has "an interest in

22   being able to delineate the appropriate standard of liability and the scope of recovery based on its

23   understanding of the balance between the interests of individuals and corporate entities operating

24   within its territory." *Frezza v. Google Inc.*, No. 12-237, 2013 WL 1736788, at *7 (N.D. Cal. Apr.

25   22, 2013).

26        At the final step, where the states have conflicting policies, the Court must determine which

27   state's interest would be more impaired if its policy was subordinated to the policy of the other

28

                                        35

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

state. *See Mazza*, 666 F.3d at 593–94. This last step of the analysis does not permit the Court to weigh the conflicting state interests to determine which conflicting state law manifests the "better" or "worthier" social policy. *Id.* (citing *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 97 (2010)). Rather, "the Court must recognize the importance of federalism and every state's right to protect its consumers and promote those businesses within its borders." *Gianino*, 846 F. Supp. 2d. at 1103. Here, for the reasons stated below, for purchases made outside California, the Court finds that other states' interests would be more impaired by applying California law than would California's interests by applying other states' laws.

California undoubtedly has a significant interest in applying its own consumer protection laws to transactions within California. Blue Diamond is headquartered in Sacramento, California, sells many products in this state, and likely made the corporate decisions regarding packaging, labeling, and marketing of Blue Diamond products here. *See* FAC ¶ 17; O'Shaughnessy Decl. ¶¶ 1, 3 (General Manager of Blue Diamond's Consumer Products Division, John O'Shaughnessy, is located in Sacramento, California, and is "involved in strategic business decisions, including Blue Diamond's pricing strategy and sales of the Almond Breeze products that are at issue in this litigation"); Ugone Report ¶ 21 (Blue Diamond "led the development of California's almond industry from a minor domestic specialty crop to the world leader in almond production and marketing. Blue Diamond's Sacramento processing facility, a plant covering 33 city blocks on 90 acres, is the largest nut processing plant in the world."). However, California's interest in applying its law to nonresidents who purchased Blue Diamond products in other states is more attenuated. *See Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982).

California courts recognize that the predominant interest in "regulating or affecting conduct within its borders" lies with the state which is "the place of the wrong." *Hernandez v. Burger*, 102 Cal. App. 3d 795, 801–02 (1980). The place of the wrong is the geographic location where the misrepresentations were communicated to the consumer. *See McCann*, 48 Cal. 4th at 94 n.12. For nonresident consumers of Blue Diamond products, the place of the wrong is not California, but rather the state in which each consumer resides. *See Mazza*, 666 F.3d at 593–94 ("[T]he last events

36

1   necessary for liability as to the foreign class members—communication of the advertisements to

2   the claimants and their reliance thereon in purchasing vehicles—took place in the various foreign

3   states, not in California.").

4        Blue Diamond's liability accrued when Plaintiff and class members purchased Blue

5   Diamond almond milk products containing the allegedly deceptive and misleading label

6   statements. Thus "the place of the wrong" in this case is the point of purchase by each class

7   member—in other words, in each of the 50 states. Each state has an interest in "protecting their

8   consumers from in-state injuries caused by a California corporation doing business within their

9   borders and in delineating the scope of recovery for the consumers under their own laws." *Gianino*,

10   846 F. Supp. 2d at 1103. Plaintiff has identified no countervailing California interest that

11   outweighs the other states' interest in effecting their policy choices, and the Ninth Circuit has held

12   that under such circumstances, "California's interest in applying its law to residents of foreign

13   states is attenuated." *Mazza*, 666 F.3d at 594.

14        Accordingly, the Court concludes that each other state would be impaired in its ability to

15   protect consumers within its borders if California law were to be applied to all claims of the

16   nationwide class. Each nonresident class member's claims should be governed by and decided

17   under the consumer protection laws of the states in which the various class members reside and in

18   which the transactions took place. Because adjudication of the nationwide claims will require

19   application of the laws of 50 states, common questions of law would not predominate for the

20   proposed nationwide class, as is required by Rule 23(b)(3). Significantly different legal issues will

21   arise out of the claims of class members from the various states, and these different legal issues

22   eclipse any common issues of law that exist. Certification of the nationwide class under California

23   law therefore would be improper.

24        In his reply, Werdebaugh alternatively requests certification of a California-only class.

25   Reply at 15. If the class is comprised entirely of California consumers, only California law need be

26   applied. For such a class, common issues would predominate over individual ones. Certification

27

28

37

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

**United States District Court**
For the Northern District of California

would be proper if all other requirements for class certification are met. Accordingly, the Court narrows the proposed class to exclusively California consumers.

### b.      Damages Models under UCL, CLRA, and FAL

A Plaintiff that seeks certification under Rule 23(b)(3) must present a damages model that is consistent with its liability case. *See Comcast*, 133 S. Ct. at 1433 (rejecting class certification where damages model accounted for four possible theories of antitrust injury when district court had limited case to single theory of antitrust impact). Plaintiff's damages "model purporting to serve as evidence of damages in this class action must measure only those damages attributable to [the defendant's conduct]. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.* (internal citations and quotations omitted).

*Comcast* has been interpreted as "reiterat[ing] a fundamental focus of the Rule 23 analysis: The damages must be capable of determination by tracing the damages to the plaintiff's theory of liability. So long as the damages can be determined and attributed to a plaintiff's theory of liability, damage calculations for individual class members do not defeat certification." *Lindell v. Synthes USA*, No. 11-02053, 2014 WL 841738, at *14 (E.D. Cal. Mar. 4, 2014). According to the Ninth Circuit, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

Here, the Court first considers what damages are recoverable as a result of Blue Diamond's alleged mislabeling and then assesses whether Werdebaugh has presented a damages model capable of isolating those damages.

The UCL, FAL and CLRA authorize a trial court to grant restitution to private litigants asserting claims under those statutes. *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 694 (2006). Restitutionary relief is an equitable remedy, and its purpose is "to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003); *see also Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 177 (2000).

38

United States District Court
For the Northern District of California

The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received. *Colgan*, 135 Cal. App. 4th at 700 (rejecting restitutionary award for products "Made in U.S.A." where expert "did not attempt to quantify either the dollar value of the consumer impact or the advantage realized by [the defendant]"). This calculation contemplates the production of evidence that attaches a dollar value to the "consumer impact or advantage" caused by the unlawful business practices. *Id*. Restitution can then be determined by taking the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair, or fraudulent business practices. *See, e.g.*, *Ben & Jerry's Homemade*, 2014 WL 60097, at *12–13 (rejecting class certification for "all natural" ice cream labels based in part on insufficient proof of damages). Accordingly, Werdebaugh must present a damages methodology that can determine the price premium attributable to Blue Diamond's use of the labeling statements "All Natural" and "Evaporated Cane Juice."

Werdebaugh's damages expert, Dr. Oral Capps, presents three damages models: (1) a Full Refund Model, (2) a Price Premium Model, and (3) a Regression Model. The Court addresses each in turn.

### i.    Full Refund Model

Dr. Capps first proposes refunding the entire purchase or "register" price of the challenged product. Declaration of Oral Capps ("Capps Decl."), ECF No. 77-4, ¶¶ 10–12. This is not the proper measure of damages. As discussed above, "[t]he difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution." *Vioxx*, 180 Cal. App. 4th at 131; *see also Ogden v. Bumble Bee Foods, LLC*, No. 12-01828, 2014 WL 27527, at *13 (N.D. Cal. Jan. 2, 2014) ("[A] claim for restitution requires that Ogden also present evidence of the difference in value between what she spent and what she received."). Dr. Capps's full refund model is deficient because it is based on the assumption that consumers receive no benefit whatsoever from purchasing the accused products. This cannot be the case, as consumers received benefits in the form of calories, nutrition, vitamins, and minerals. *See In re POM Wonderful LLC*,

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   No. 10-2199, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) (rejecting a full refund model

2   because consumers benefited from consumption of the defendant's products). Class members may

3   not "retain some unexpected boon, yet obtain the windfall of a full refund and profit from a

4   restitutionary award." *Id*. Because the California consumer protection statutes upon which

5   Werdebaugh brought this case authorize the recovery only of whatever price premium is

6   attributable to Blue Diamond's use of the allegedly misleading label statements, Dr. Capps' Full

7   Refund Model is inconsistent with Plaintiff's liability case and must be rejected.[9]

8                          **ii.        Price Premium Model**

9           Dr. Capps next proposes a Price Premium Model. Capps Decl. ¶¶ 13–17. Under this

10  approach, Dr. Capps compares the price of the accused Blue Diamond products to the price of

11  allegedly comparable products that do not have the "All Natural" and "Evaporated Cane Juice"

12  label statements and calculates the entire price difference as restitution for Blue Diamond's alleged

13  misrepresentations. *Id.* ¶ 14.

14          However, the Price Premium Model runs afoul of *Comcast*. Dr. Capps has no way of

15  linking the price difference, if any, to the allegedly unlawful or deceptive label statements or

16  controlling for other reasons why allegedly comparable products may have different prices.

17  "Rather than answer the critical question why that price difference exist[s], or to what extent it [is]

18  the result of [Blue Diamond's] actions, [Dr. Capps] instead assumed that 100% of that price

19  difference [is] attributable to [Blue Diamond's] alleged misrepresentations." *POM*, 2014 WL

20  1225184, at *5.

21          The proposed Price Premium Model inadequately tracks Werdebaugh's theory of liability

22  in several other respects. First, Dr. Capps' comparison product itself includes the ingredient to

23  which Plaintiff objects in Blue Diamond almond milk: potassium citrate.[10] *See* Declaration of

24  Geoffrey Pittman ("Pittman Decl."), ECF No. 100 ¶ 3, 5, 8; *see also* Pittman Decl., Ex. D, ECF No.

---

[9] Dr. Capps also proposes an identical disgorgement model. This is rejected for the same reasons as
the Full Refund Model. *See Ogden*, 2014 WL 27527, at *13.
[10] Although the Whole Foods almond milk is not labeled "All Natural," it is labeled "Organic," *see*
ECF No. 100-4, which Werdebaugh stated he believed would likely be all natural as well, *see*
Werdebaugh Depo at 55–56.

40

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

**United States District Court**
For the Northern District of California

100-4 (Whole Foods Organic Almondmilk Vanilla ingredients list). Second, according to Blue Diamond, until 2013 the label for the Whole Foods alternative listed "organic evaporated cane juice" as an ingredient. *See* Pittman Decl. ¶¶ 6–7. Finally, Blue Diamond reports that the Whole Foods alternative is currently priced the same as the challenged Blue Diamond version at Whole Foods stores in San Francisco and Palo Alto. *Id.* ¶¶ 3–4.

Werdebaugh's deposition testimony also casts doubt on the Price Premium Model. Werdebaugh testified that consumers typically pay a premium simply by purchasing from Whole Foods, a distinction for which Dr. Capps does not account in his Price Premium Model. *See* Werdebaugh Depo at 75 ("You typically pay a premium at Whole Foods on a product like [Blue Diamond almond milk]."); 100 ("Q. And you know that at Whole Foods, I think you said you pay a premium when you go there? A. Yeah."). Werdebaugh also testified that for him, price was not an important factor. *Id.* at 101 ("Q. I'm assuming at least at that end, price wasn't an issue because you're going to a place where you pay a premium; fair? A. That's fair.").

The Price Premium Model's inability to account for any differences between the accused Blue Diamond products and Dr. Capps' chosen comparable products, or for any factors that may cause consumers to prefer the accused Blue Diamond products over other identical products—such as brand loyalty or quality differences between brand and generic products—renders the Price Premium Model insufficient under *Comcast*. As Judge Dean Pregerson summarized in the *POM* case, "the Price Premium model simply calculates what the price difference [is]. This damages 'model' does not comport with *Comcast*'s requirement that class-wide damages be tied to a legal theory, nor can this court conduct the required 'rigorous analysis' where there is nothing of substance to analyze." *POM*, 2014 WL 1225184, at *5. Therefore, because the Price Premium Model does not offer a class-wide measure of damages that is tied to the proper legal theory, the Price Premium Model does not comply with the predominance requirement of Rule 23(b)(3). *Comcast*, 133 S. Ct. at 1430.

### iii.     Regression Model

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1     Dr. Capps' final proposed damages model is an "econometric or regression analysis," ("the

2 Regression Model"). Capps Decl. ¶ 16. "Regression analysis involves the relationship between a

3 variable to be explained, known as the 'dependent variable,' such as the quantity demanded of a

4 particular good or the price of a particular good, and additional variables that are thought to

5 produce or to be associated with the dependent variable, known as the 'explanatory' or

6 'independent' variables. . . . Regression analysis may be useful in determining whether a particular

7 effect is present as well as in measuring the magnitude of a particular effect." *Id*. ¶ 17. Dr. Capps

8 explains: "It is well documented in the economics literature that commonly recognized factors are

9 associated with sales, the dependent variable in the regression analyses, namely price of the

10 product, prices of competing and complementary products, income, advertising, seasonality, and

11 regional differences. . . . By controlling for these factors and considering differences in sales of

12 Blue Diamond Growers almond milk products before and after the labeling of the language 'All

13 Natural' as well as before and after the introduction of the label statement 'Evaporated Cane Juice,'

14 a quantitative measure of damages in this litigation may be provided." *Id*. ¶ 18. In other words, Dr.

15 Capps proposes to determine Blue Diamond's gains from its alleged misrepresentations by

16 examining sales of its accused products before and after Blue Diamond placed the alleged

17 misrepresentations on its product labels, using regression analysis to control for other variables that

18 could otherwise explain changes in Blue Diamond's sales. Dr. Capps asserts that with further

19 discovery he can apply his Regression Model to calculate damages for all eighteen accused Blue

20 Diamond products. *Id*. ¶ 19. Blue Diamond challenges the Regression Model on two grounds.

21     First, Blue Diamond argues that the Regression Model raises individual issues because it

22 will be unable to account for "pricing variation experienced by individual consumers across

23 products, sales channels, retailers, geographic regions, and time." Opp'n at 19. Because of these

24 variations, Blue Diamond contends, different consumers allegedly suffered different amounts of

25 damages. For example, Blue Diamond states that "the price for the top selling shelfstable Blue

26 Diamond almondmilk product in 2012 varies by 26% across sales channels, by 31% across the top

27 three retailers, and by 40% across cities in California." *Id*. However, Blue Diamond does not

28

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

United States District Court
For the Northern District of California

explain how these regional price differences would impact the actual measure of damages in the Regression Model: price changes within regions that correspond to the introduction and/or removal of the allegedly misleading label statements. For example, if a carton of Blue Diamond almond milk costs $4.00 in San Francisco and $3.00 in Sacramento, this $1.00 unit disparity does not necessarily influence how the price would change as a result of amending the product's label to claim that the almond milk is "All Natural." If both prices increase by $0.10, purchasers in San Francisco and Sacramento have both suffered the same amount in damages, $0.10. Even if the price increase is proportional, the price change will still result in largely similar damages to both purchasers: if prices increase by 5%, the purchaser in San Francisco will pay $0.20 more per carton, and the purchaser in Sacramento $0.15. Regardless, damages can be tied to the liability theory and calculated on a classwide basis.

If Blue Diamond were to introduce evidence that prices would increase by 20% in San Francisco and only 2% in Sacramento, the Regression Model might well fail under *Comcast*. However, Blue Diamond presents no argument whatsoever about how regional differences in price would affect regional differences in price *change*, and the Court sees no reason why this might be the case. Blue Diamond makes two additional, related arguments: that Dr. Capps fails "to explain how Blue Diamond is responsible for these varying retail prices, when Blue Diamond does not set retail prices," and that "Dr. Capps' use of a 'weighted average' price measure would result in overcompensation of some class members and under compensation of others" in violation of the Rules Enabling Act. *Id*. By focusing on regional price differences rather than regional price *changes*, neither argument undermines Dr. Capps' Regression Model.

To the extent that Blue Diamond objects to regional price disparities, and not differences in price changes, Dr. Capps' Regression Model controls for any such regional differences to ensure that the resulting damages figures only cover the benefit Blue Diamond received from its label statements. Capps Decl. ¶ 19. *Comcast* establishes that "[c]alculations need not be exact, but at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case." *Comcast*, 133 S. Ct. at 1433 (citation and quotation omitted). The

United States District Court
For the Northern District of California

1    Regression Model comports with this requirement. Even if there are regional differences as Blue

2    Diamond contends, the Regression Model is sufficiently precise under *Comcast* and the model's

3    ability to control for other factors that could affect Blue Diamond's sales ensures that Dr. Capps'

4    damages figures are tied only to Blue Diamond's liability. Therefore, because Werdebaugh has

5    advanced a damages methodology that is capable of "tracing the damages to the plaintiff's theory

6    of liability" Werdebaugh has successfully shown that questions common to the class predominate.

7    *Lindell*, 2014 WL 841738, at *14.

8          Second, Blue Diamond argues that "Dr. Capps' description of his regression analysis is

9    incomplete and thereby fails to provide assurances that this methodology reliably isolates Blue

10   Diamond's sales related to the "All Natural" and "evaporated cane juice" statements." Opp'n at

11   18–19.

12         Having rejected Defendant's objections to the specifics of Dr. Capps' methodology, the

13   only remaining question is whether Werdebaugh has sufficiently defined and described Dr. Capps'

14   proposed Regression Model such that it may be deemed a workable means of calculating damages.

15   *See In re High-Tech Employee Antitrust Litig.*, 289 F.R.D. 555, 582 (N.D. Cal. 2013) (finding

16   proposed regression analysis provided "a plausible methodology for showing generalized harm to

17   the Class as well as estimating class-wide damages" despite defendants' criticisms regarding the

18   model's design and sensitivity). "The real question before this court is whether the plaintiffs have

19   established a *workable* multiple regression equation, not whether plaintiffs' model actually *works* .

20   . . .'" *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 100 (D.

21   Conn. 2009). Because "*Comcast* did not articulate any requirement that a damage calculation be

22   performed at the class certification stage," that Dr. Capps has yet to actually run the regressions

23   and provide results is not fatal to Werdebaugh's reliance on the Regression Model. *In re Cathode*

24   *Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2013 WL 5429718 (N.D. Cal. June 20, 2013)

25   *report and recommendation adopted*, MDL No. 1917, 2013 WL 5391159 (N.D. Cal. Sept. 24,

26   2013); *see also Chavez*, 268 F.R.D. at 379 ("At class certification, plaintiff must present a likely

27

28
                                                    44

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

**United States District Court**
For the Northern District of California

1   method for determining class damages, though it is not necessary to show that his method will

2   work with certainty at this time." (internal quotation marks omitted)).

3       Blue Diamond cites two previous cases in which Dr. Capps' proposed methodologies were

4   rejected and asserts that "Dr. Capps' assurances that he may be able to establish a damages model

5   in the future have been rejected in the past and should not be accepted here." Opp'n at 19; *see also*

6   *Ogden*, 2014 WL 27527, at *13; *Kottaras v. Whole Foods Markets, Inc.*, 281 F.R.D. 16, 25 (D.D.C.

7   2010).

8       In *Ogden*, this Court found summary judgment proper with respect to plaintiffs' damages

9   claims because rather than calculating damages, Dr. Capps had only "stated that he *could* provide

10  such an estimate and offered a general description of several methods he might use to do so."

11  *Ogden*, 2014 WL 27527, at *13. The Court concluded that Dr. Capps' "description of methodology

12  [was] not evidence of the proper amount of restitution in [that] case." *Id*. The Court's grant of

13  summary judgment to the defendants in *Ogden* was based on the fact that discovery had closed and

14  the plaintiff had neither "explain[ed] her failure to provide any evidence of the actual amount of

15  restitution to which she [was] entitled, nor [requested] further discovery" on the issue. *Id*.

16      The court in *Kottaras* rejected Dr. Capps' proposed method of showing "monetary loss

17  attributable to the anti-competitive aspect of the merger between" two supermarket chains. 281

18  F.R.D. at 22. The court initially noted that the plaintiff was not required to "offer evidence as to the

19  amount of damages at [the class certification] stage;" but rather she only needed to "show that the

20  fact of damage [could] be proven using common evidence." *Id*.

21      Subjecting Dr. Capps' proposed regression analysis to "rigorous analysis," the court

22  rejected the proposed model because: (1) while it may have been sufficient to calculate what losses

23  consumers suffered as a result of the merger, the model failed "to take into account any benefits

24  customers may have received thereby"; and (2) the proposed model was "not sufficiently

25  developed to meet Plaintiff's burden of showing that common questions predominate over

26  individual ones, as required by Rule 23(b)(3)." *Id*. at 24, 26. The court quoted a case from this

27  district for the proposition that courts are "increasingly skeptical of plaintiffs' experts who offer

28

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

only generalized and theoretical opinions that a particular methodology may serve this purpose without also submitting a functioning model that is tailored to market facts in the case at hand." *Id.* at 27–27 (citing *In re Graphics Processing Units Antitrust Litigation*, 253 F.R.D. 478, 492 (N.D. Cal. 2008)).

In this case the Court finds Dr. Capps' Regression Model sufficient under *Comcast*. As outlined above, Dr. Capps' regression would control for other factors (such as price, seasonality, and regional differences) that could explain changes in Blue Diamond's sales figures that may otherwise erroneously be attributed to Blue Diamond's label statements. Moreover, the regression compares data on identical Blue Diamond products—the product before the label statement was introduced, and the same product after its label included the alleged misrepresentation. *See* Capps Decl. ¶¶ 18, 19. Unlike in *Ogden*, discovery has not yet closed in this case, and Defendants provide no basis to believe that if Plaintiff obtains the discovery outlined in Dr. Capps's report and apparently requested by Plaintiff, *see id.* ¶ 19, the regression analysis will be unworkable. *See* ECF No. 114, at 2 (setting fact and expert discovery cut-offs of July 18, 2014 and September 12, 2014, respectively). Dr. Capps' proposed model in *Kottaras* accounted for the adverse price impacts of a supermarket merger but completely omitted any measurement of the benefits of such a merger. *Kottaras*, 281 F.R.D. at 23–24. By contrast, the proposed regression here contemplates factors other than the alleged misbranding which might influence price changes over time, including "expenditures associated with the advertising and promotion" of the products at issue, prices of complementary products, disposable personal income of consumers, and population. Capps Decl. ¶ 19. In sum, while Dr. Capps has yet to run the model and determine what price differences, if any, are attributable to the alleged label misrepresentations, he sets forth what is in the Court's view a workable model of calculating damages, and which is tied to Werdebaugh's theory of liability as required under *Comcast*.

Importantly, Defendant's arguments are not directed to the tool of regression analysis itself. A regression model like that proposed by Dr. Capps seeks to isolate the effect of the allegedly misleading label change on the price of Defendant's products by controlling for various factors

46

United States District Court
For the Northern District of California

1   other than the label change itself, such as regional price variance, price changes that result from

2   increasing or decreasing demand for complementary products, and inflation. Rather, Blue Diamond

3   attacks the specific variables of the regression Dr. Capps proposes. However, such attacks do not

4   undermine the fundamental workability of Dr. Capps' proposed damages model. Accordingly,

5   because Werdebaugh's proposed damages model provides a means of showing damages on a

6   classwide basis through common proof, the Court concludes that Werdebaugh has satisfied the

7   Rule 23(b)(3) requirement that common issues predominate over individual ones.

8             **2.**        **Superiority**

9        A class action brought under Rule 23(b)(3) must be "superior to other available methods for

10   fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To make this

11   determination the Court considers: (1) the class members' interests in individually controlling the

12   prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the

13   controversy already begun by or against class members; (3) the desirability or undesirability of

14   concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in

15   managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D).

16        The superiority requirement tests whether "classwide litigation of common issues will

17   reduce litigation costs and promote greater efficiency." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d

18   1227, 1234 (9th Cir. 1996). "If each class member has to litigate numerous and substantial separate

19   issues to establish his or her right to recover individually a class action is not superior." *Zinser*, 253

20   F.3d at 1192.

21        Here, Plaintiff asserts he was misled by Blue Diamond advertising that its almond milk

22   products were "All Natural" and contained "Evaporated Cane Juice." Mot. at 1–3. Among the class

23   members, these claims are common, involve small sums, and do not depend on individual

24   determinations. Where a case involves multiple claims for relatively small individual sums, some

25   plaintiffs may not be able to proceed as individuals because of the disparity between their litigation

26   costs and what they hope to recover. *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v.*

27   *Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001). The members of Plaintiff's proposed

28

Case No.: 12-CV-2724-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1    class would find individual actions economically infeasible given the small size of each class

2    member's claim. *See Deposit. Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). Finally, Blue

3    Diamond does not dispute that a class action is superior to other available methods for the fair and

4    efficient adjudication of this controversy. Because class action is the superior method of efficiently

5    and fairly adjudicating Plaintiff and class members' claims in this case, the Court finds the

6    superiority requirement of Rule 23(b)(3) met.

7    **IV.    CONCLUSION**

8           For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Class Certification.

9    Werdebaugh has satisfied the requirements of Rules 23(a) and 23(b)(3), and the Court CERTIFIES

10   the following class: "All persons in California who, from May 19, 2008, until the date of notice,

11   purchased almond milk products manufactured, distributed and/or sold by Blue Diamond Growers

12   containing the label statements 'evaporated cane juice' and/or 'All Natural.' The following persons

13   are expressly excluded from the Class: (i) Defendant and its subsidiaries and affiliates; (ii) all

14   persons who make a timely election to be excluded from the Class; (iii) governmental entities; and

15   (iv) the Court to which this case is assigned and its staff." The Court APPOINTS Plaintiff Chris

16   Werdebaugh as the class representative, and Pierce Gore of Pratt & Associates, Brian Herrington of

17   Barrett Law Group, P.A., Dewitt M. Lovelace of Lovelace Law Firm, P.A. and Colin Dunn of

18   Clifford Law Offices, P.C. as class counsel. Within 14 days of the date of this Order, Werdebaugh

19   shall file an amended complaint that amends the class definition to comport with the Court's

20   certified class definition. Plaintiffs may not make any other substantive change to the complaint,

21   unless Defendant stipulates to the change. The Court DENIES Plaintiff's Motion for Class

22   Certification of a nationwide class.

23   **IT IS SO ORDERED.**

24   Dated: May 23, 2014                          _Lucy H. Koh_____

25                                                LUCY H. KOH
                                                  United States District Judge
26

27

28

48